UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
SCOTT PELLEGRINO, on behalf of himself and all
others similarly situated; and CHRISTINE VAN OSTRAND
on behalf of herself and all others similarly situated,

                                Plaintiffs,

                - against -

NEW YORK STATE UNITED TEACHERS; UNITED                           Docket No.:
TEACHERS OF NORTHPORT, as representative of the                  2:18-cv-03439-JMA-GRB
class of all chapters and affiliates of New York State
United Teachers; NORTHPORT-EAST NORTHPORT
UNION FREE SCHOOL DISTRICT, as representative
of the class of all school districts in the State of New York;
ANDREW CUOMO, in his official capacity as governor
of New York; LETITIA JAMES, in her official capacity
as Attorney General of New York; JOHN WIRENIUS,
in his official capacity as chair of the New York Public
Employment Relations Board; ROBERT HITE, in his
official capacity as member of the New York Public
Employment Relations Board,

                                Defendants.
------------------------------------------------------------------------X


# STATE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT


                                LETITIA JAMES
                                Attorney General
                                State of New York
                                Attorney for State Defendants
                                300 Motor Parkway, Suite 230
                                Hauppauge, New York 11788

**Of Counsel:**

ROBERT E. MORELLI
Assistant Attorney General

## TABLE OF CONTENTS

Table of Authorities…………………………………………………………………………iii

Preliminary Statement…………..............................................................................................1

Factual and Procedural Background.......................................................................................2

    I.  *Agency Fees and Civil Service Law § 208 Prior to the Supreme Court's*
    *Janus Decision… … … … … … … … … … ….......................................................................2*

    II.  *The Supreme Court's Janus Decision and its Impact on the Defendants.............................4*

    III. *Janus's Impact on Van Ostrand and Pellegrino……………...............................................6*

    IV. *The Allegations—and Lack Thereof—in the Complaint…………………….………7*

Argument................................................................................................................................8

    I.  THE COMPLAINT FAILS TO STATE ANY FACIALLY PLAUSIBLE
    CLAIMS AGAINST THE STATE DEFENDANTS............................................................9

    II. PLAINTIFFS LACK STANDING TO CHALLENGE §§ 208(3)(a), 208(1)(b)(i),
    208(4)(a), AND/OR OTHER STATUTES OR CONTRACTUAL PROVISIONS..........11

        A. *Plaintiffs are Not State Employees, and Therefore are Not Impacted by*
        *§ 208(3)(a); Nor Have They Alleged Injuries-in-Fact from Similar Statutes*
        *or Contractual Provisions…….....................................................................................12*

        B. *Neither Plaintiff is Attempting to Leave their Union and Somehow Being*
        *Restricted by § 208(1)(b)(i) in Doing So.....................................................................12*

        C. *Plaintiffs are Not Presently Harmed by § 208(4)(a), and the Complaint Does*
        *Not Establish That They Will be Harmed in the Future…………………………..13*

    III. PLAINTIFFS' CHALLENGES TO §§ 208(1)(b)(i) AND 208 (4)(a) ARE
    NOT RIPE…………………………………………………………………………..14

    IV. ANY CHALLENGE TO § 208(3)(a) OR (b) IS MOOT IN LIGHT OF *JANUS'S*
    IMPACT IN NEW YORK AND ON DEFENDANTS…………………………….……16

    V. PLAINTIFFS' ACTION IS BARRED BY THE ELEVENTH AMENDMENT…..……20

        A. *Plaintiffs Have Not Demonstrated Any Need for Prospective Injunctive Relief*..........21

i

      B. *Plaintiffs Have Not Alleged that the State Defendants are Connected to the Enforcement of These Statutes in Any Event*.................................................................22

CONCLUSION...............................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

Abood v. Detroit Bd. of Educ., 431 U.S. 209 (1977)............................................1, 2, 4, 5

Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140 (2d Cir. 2011))..........................11

Ashcroft v. Iqbal, 556 U.S. 662 (2009)..................................................................................8

Babb v. Cal. Teacher's Ass'n, Case No. 8:18-cv-00994-JLS-DFM, Doc. No. 76
(C.D. Cal. Dec. 7, 2018)..........................................................................................16, 20

Bell Atl. v. Twombly, 550 U.S. 544 (2007).............................................................................8

Berman v. N.Y. State Pub. Emp. Fed'n, 16-cv-204 (DLI)(RLM), 2017 U.S. Dist.
LEXIS 51978 (E.D.N.Y. Mar. 31, 2017)..............................................................3, 4, 16

Brennan v. Nassau Cnty., 352 F.3d 60 (2d Cir. 2003).........................................................15

Brisco v. Rice, 2012 U.S. Dist. LEXIS 10001 (E.D.N.Y. Jan 27, 2012)..............................22

Carey v. Inslee, 3:18-cv-5208-RBL, Doc. No. 39 (W.D. Wa. Aug. 21, 2018)..................9, 11

Carter v. HealthPort Techs., LLC, 822 F.3d 47 (2d Cir. 2016)...........................................11

Clarkes v. Suffolk Cnty., No. 17-CV-2711(JMA)(AYS), 2018 US Dist. LEXIS
187603 (E.D.N.Y. Oct. 23, 2018).....................................................................11, 14

Cleveland v. Caplaw Enters., 448 F.3d 518 (2d Cir. 2006)...................................................8

Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75 (2d Cir. 2018)...............................11

Danielson v. Inslee, No. 3:18-cv-05206-RJB, 2018 U.S. Dist. LEXIS 139032
(W.D. Wash. Aug. 16, 2018)..............................................................................17, 20

Danielson v. AMFSCME, Council 28, No. 3:18-cv-05206-RJB, 2018 U.S. Dist.
LEXIS 210650 (W.D. Wa. Nov. 28, 2018).........................................................16–17

Deadwiley v. N.Y. State Off. of Children & Family Servs., 97 F. Supp. 3d 110
(E.D.N.Y. 2015)..................................................................................................8

Domitz v. City of Long Beach, 737 F. App'x 589 (2d Cir. 2018)..........................................21

Ellis v. Wilkinson, 81 F. Supp. 3d 229 (E.D.N.Y. 2015).................................................14, 15

Ex Parte Young, 209 U.S. 123 (1908)……………………………......…………………20–25

Fisher v. JPMorgan Chase Bank, N.A., 740 F. App'x 745 (2d Cir. 2018)………………….....10

Ford v. Reynolds, 316 F.3d 351 (2d Cir. 2003)…………………………………………………21

Fox v. Commonw. Worldwide Chauffeured Transp. of NY, LLC, No. 08-CV-1686,
2009 U.S. Dist. LEXIS 53834 (E.D.N.Y. June 25, 2009)……………….....................................8

Giraldo v. Kessler, 694 F.3d 161 (2d Cir. 2012)…………………………………………………5

Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361 (2d Cir. 2006)…………………………………9

Hariprasad v. New York, 722 F. App'x 102 (2d Cir. 2018)………………………………….....14

Hassan v. Marks, 735 F. App'x 19 (2d Cir. 2018)………………………………………………11

Hirsch v. City of N.Y., No. 18-0405-cv, 2018 U.S. App. LEXIS 28096
(2d Cir. Oct. 4, 2018)……………………………………………………………………………11

In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 725 F.3d 65 (2d Cir. 2013))…………….15

Janus v. AFSCME, Council 31, 585 U.S. ___, 138 S. Ct. 2448 (2018)……..1, 4–7, 12, 16–19, 21

Jarvis v. Cuomo, No. 5:14-cv-1459 (LEK/TWD), 2016 U.S. Dist. LEXIS 6218
(N.D.N.Y. Jan. 20, 2016)…………………………………………………………………….....19

Knife Rights, Inc. v. Vance, 802 F.3d 377 (2d Cir. 2015)………………………………………11

Ladley v. Penn. State Educ. Ass'n, No. CI-14-08552 (Pa. Ct. Com. Pl. Lancaster Cnty.
Oct. 29, 2018)……………………………………………………………………………..17, 20

Lamberty v. Conn. State Police Union, No. 3:15-cv-378 (VAB), 2018 U.S. Dist. LEXIS
179805 (D. Conn. Oct. 19, 2018)………………………………………………………...17–19, 24

Lanning v. City of Glens Falls, 908 F.3d 19 (2d Cir. 2018)……………………………………10

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)………………………………………...14

Makarova v. United States, 201 F.3d 110 (2d Cir. 2000)………………………………………8

Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682 (2d Cir. 2013)…………………………...16

Nassau & Suffolk Cnty. Taxi Owners Ass'n v. New York, No. CV 17-3839 (AKT),
2018 U.S. Dist. LEXIS 171144 (E.D.N.Y. Sept. 28, 2018)………………………….8–9, 23–24

N.Y. v. Shinnecock Indian Nation, 560 F. Supp. 2d 186 (E.D.N.Y. 2008)...........................22

New York v. United States Army Corps of Eng'rs, 896 F. Supp. 2d 180 (E.D.N.Y. 2012).......15

Petion v. Nassau Cnty. Corr. Ctr., No. 15-CV-5770 (JMA)(ARL), 2016 U.S. Dist.
LEXIS 4267 (E.D.N.Y. Jan. 12, 2016)........................................................................20

P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993).....................21

Riley v. Cuomo, No. 2:17-cv-01631 (ADS)(AYS), 2018 U.S. Dist. LEXIS 64535
(E.D.N.Y. Apr. 16, 2018)...............................................................................21–24

Rivers v. Doar, 638 F. Supp. 2d 333 (E.D.N.Y. 2009)...................................................19

Rodriguez v. Cheesecake Factory Inc., No. 16-CV-2006 (JMA)(AKT), 2017 U.S. Dist.
LEXIS 213746 (E.D.N.Y. Aug. 11, 2017)......................................................................8

Schwartz v. HSBC Bank USA, N.A., __ F. App'x __, Nos. 17-2212-cv, 17-2309-cv,
2018 U.S. App. LEXIS 26145 (2d Cir. Sept. 13, 2018)................................................14

Sierra Club v. Morton, 405 U.S. 727 (1972)..............................................................14

Simmonds v. INS, 326 F.3d 351 (2d Cir. 2003).........................................................14

Sira v. Morton, 380 F.3d 57 (2d Cir. 2004)................................................................8

Tomassi v. New York, No. 17-CV-3878 (JMA) (AKT), 2018 U.S. Dist. LEXIS 199357
(E.D.N.Y. Nov. 26, 2018)..............................................................................20–21

UnitedHealthcare of N.Y., Inc. v. Vullo, 323 F. Supp. 3d 470 (S.D.N.Y. 2018)...............14–15

Warth v. Seldin, 422 U.S. 490 (1975)...................................................................11–12

Yohn v. Cal. Teachers Ass'n, No. SACV 17-202-JLS-DFM, 2018 U.S. Dist. LEXIS
209944 (C.D. Cal. Sep. 28, 2018)......................................................................17, 20

**Statutes and Rules**

Civil Service Law § 208.............................................................2–7, 9–16, 19–24

Eleventh Amendment.................................................................2, 20, 21, 23

Fed. R. Civ. Proc. 12...................................................................................2,8

Fed. R. Civ. Proc. 25 .....................................................................................1

### **Preliminary Statement**

In this action, public school teacher Plaintiffs Scott Pellegrino ("Pellegrino") and

Christine Van Ostrand ("Van Ostrand," and, together with Pellegrino, "Plaintiffs") seek

declaratory, injunctive, and compensatory relief against a host of defendants with regard to

portions of New York State's statutory scheme for public employee unions.[1]  The instant motion

is made on behalf of Governor Andrew Cuomo, Attorney General Letitia James, New York State

Public Employment Relations Board's ("PERB") Chairman, John Wirenius, and former PERB

Member Robert Hite (collectively, the "State Defendants"), for an order dismissing Plaintiffs'

Complaint in its entirety against them.[2]

Riding a rising tide of anti-union sentiment across the nation, Plaintiffs filed the instant

Complaint on June 13, 2018, in the hope that the Supreme Court would overturn four decades of

well-settled law concerning the collection of agency fees from public employees stemming from

Abood v. Detroit Bd. of Educ., 431 U.S. 209 (1977).  Less than a month later, on June 27th,

Plaintiffs got the Supreme Court decision they desired in Janus v. AFSCME, Council 31, 585

U.S. ___, 138 S. Ct. 2448 (2018), which declared the collection of agency fees from non-

consenting public employees unconstitutional in violation of the First Amendment.

Yet in filing this suit before Janus was decided—and in their haste to capitalize on the

significant change to the legal landscape following the decision itself—Plaintiffs have not only

rendered their Complaint moot, but also eliminated their own constitutional standing to pursue

---

[1]  Although Plaintiffs seek relief as proposed representatives of two distinct classes of individuals, they have not moved for class certification.  Unless and until such certification is granted by the Court, the State Defendants will treat this action as a suit brought by these two individual Plaintiffs, and hereby reserve all remaining arguments concerning class certification or the propriety of Plaintiffs' standing as class representatives.

[2]  Pursuant to F.R.C.P. 25(d), A.G. James has been automatically substituted for former A.G. Barbara Underwood, as Underwood's tenure as Attorney General ended on January 1, 2019.  As it is unclear whether Plaintiffs intended to sue all three members of PERB, even though Hite is no longer a PERB Member, the caption has not been amended to substitute either of the two other current PERB Members in his place.

this action.  Briefly, the Complaint is subject to dismissal for at least five reasons: first, failure to

state a claim under F.R.C.P. 12(b)(6); second, lack of standing; third, ripeness; fourth, mootness;

and fifth, the Eleventh Amendment.

**Factual and Procedural Background**

I.    *Agency Fees and Civil Service Law § 208 Prior to the Supreme Court's* Janus *Decision*

In 1977, the Supreme Court decided <u>Abood</u>, holding that public sector employees could

be required to contribute fees to their representative union that reflect the unions' actual expenses

for representational services, even if those employees chose not to become union members.

<u>Abood</u> required public sector employees to pay these fees for representative services

notwithstanding any objections to the non-representational activities or positions espoused and

advocated by the union itself, as public sector unions are required to represent all employees in a

defined collective bargaining unit.  These required contributions are known as agency fees or fair

share fees, and in New York, they were statutorily authorized by Section 208(3) of the Civil

Service Law.

Section 208(3)(a) applies to State employees, while § 208(3)(b) applies to "employees

within a negotiating unit of other than state employees."  In the context of the instant suit

involving "other than state employees," the only Defendant which would have the authority to

withhold agency fees is the Northport-East Northport Union Free School District (the "District");

as pursuant to § 208(3)(b), the District's "fiscal or disbursing officer" is charged with making

"such deductions and transmit[ting] the sum so deducted" to the relevant union.  Defendant

United Teachers of Northport ("UTN") receives the funds deducted by the District's disbursing

officer; and none of the State Defendants have any role in the deductions or transmissions

between the District and UTN under § 208(3)(b).  It is unclear what role—if any—Defendant

2

New York State United Teachers ("NYSUT," and collectively with UTN, the "Union Defendants") plays in this process, as it is not directly affected by § 208(3)(a).

Other portions of Civil Service Law § 208 also affect a public employee's relationship with his or her representative union, including §§ 208(1)(b)(i) and (4)(a).[3]  Section 208(1)(b)(i) affirms a union's right to membership dues deduction from an employee's salary "after receiving proof of a signed dues deduction authorization card," and provides that the "right to such membership dues deduction shall remain in full force and effect until an individual employee revokes membership in the employee organization in writing in accordance with the terms of the signed authorization."  Section 208(4)(a), in contrast, obligates a public employer to notify and provide certain specific information to an employee's representative union "[w]ithin thirty days of a public employee first being employed or reemployed . . . or . . . being promoted or transferred to a new bargaining unit."  Though these provisions affect the State Defendants inasmuch as they could be considered public employers, in the context of this suit by non-state employees, Plaintiffs are only affected by these sections of § 208 vis-à-vis their specific municipal employer and representative union, and the State Defendants are not involved with applying these provisions to Plaintiffs.

Section 208(3) in particular has faced continual scrutiny from anti-union public employees, and was upheld by Chief Judge Dora Irizarry of the E.D.N.Y. as recently as March of 2017.  See Berman v. N.Y. State Pub. Emp. Fed'n, 16-cv-204 (DLI)(RLM), 2017 U.S. Dist. LEXIS 51978 (E.D.N.Y. Mar. 31, 2017) (for the convenience of the Court, all unreported cases are annexed as Exhibit 1 to this Memorandum).  Although at the time Judge Irizarry dismissed

---

[3] Although the Complaint attaches a copy of Civil Service Law § 208 as Exhibit 1, the copy attached does not include subsections (1)(b)(i) or (4)(a), and was likely prepared prior to § 208's most recent amendment, effective April 12, 2018.

Berman, Abood was still good law and § 208(3) had been upheld by the Second Circuit, see id. at *7–8, public employees dissatisfied with their representative unions began to suspect a potential change in the mindset of the Supreme Court.  In fact, Berman opposed the motion to dismiss his complaint on the grounds that the Supreme Court was likely to overturn Abood, an effort which Judge Irizarry described as "an attempt to read the tea leaves in recent Supreme Court decisions."[4]  See 2017 U.S. Dist. LEXIS 51978 at *8.  On Sept. 28, 2017, the Supreme Court granted certiorari in Janus, which addressed the same question as Abood, and the case was orally argued on Feb. 26, 2018.  Plaintiffs—likely attempting to read similar tea leaves to those scried by Berman's plaintiff—commenced the instant suit on June 13, 2018.[5]

II.   *The Supreme Court's* Janus *Decision and its Impact on the Defendants*

Fourteen days later, the Supreme Court's Janus decision was published, renouncing Abood and reversing 40+ years of settled law.  Over an amicus brief written by the State of New York on behalf of 19 other states and a passionate dissent from Justices Sotomayor, Kagan, Ginsberg, and Breyer, the majority concluded that "public-sector agency shop arrangements violate the First Amendment." Janus, 138 S. Ct. at 2478.  On this basis, the Court declared that "[n]either an agency fee nor any other payment to the union may be deducted from a

---

[4] Although Berman was incorrect in predicting that the Court would overturn Abood in Friedrichs v. California Teacher's Ass'n, the Court's decision in Janus achieved this same result. Berman has since filed a motion for reconsideration of Judge Irizarry's March 31, 2017 decision based on Janus, implicating many of the same justiciability concerns presented to this Court in the various motions to dismiss.  See Berman, 16-cv-204 (DLI)(RLM), Docket Nos. 52, 58, 59, 60, 61.  Berman's motion was fully submitted on August 23, 2018, and the parties—which include the Commissioner of the N.Y. State Office of Temporary and Disability Assistance and the State Comptroller—are awaiting a decision.

[5] Nor is the instant suit the only one of its kind; and Plaintiffs' lead counsel Jonathan Mitchell has also filed at least 12 similar suits in a number of other states throughout the country.  See Crockett v. NEA-Alaska, 3:18-cv-00179-JWS (D. Alaska); Babb v. Cal. Teacher's Ass'n, 8:18-cv-00994-JLS-DFM (C.D. Cal.); Martin v. Cal. Teacher's Ass'n, 2:18-cv-08999-JLS-DFM (C.D. Cal.); Hernandez v. AFSCME Cal., 2:18-cv-02419-WBS-EFB (E.D. Cal.); Akers v. Maryland State Educ. Ass'n, 1:18-cv-01797-RDB (D. MD); Hoekman v. Educ. Minnesota, 18-cv-1686-SRN-SER (D. MN); Prokes v. AFSCME, Council 5, 18-cv-02384-SRN-ECW (D. MN); Smith v. N.J. Educ. Ass'n, 1:18-cv-10381-RMB-KMW (D.N.J.); Lee v. Ohio Educ. Ass'n, 1:18-cv-01420-JRA (N.D. OH); Diamond v. Penn. State Educ. Ass'n, 3:18-cv-00128-KRG (W.D. PA); Carey v. Inslee, 3:18-cv-05208-RBL (W.D. WA); Danielson v. Inslee, 3:18-cv-05206-RJB (W.D. WA).

nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." Id. at 2486.  Yet, notwithstanding that the Court wholly rejected Abood, Janus's holding is quite narrowly tailored; particularly as the Court explicitly stated that "States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions." Id. at 2485 n.27.

In response to Janus, the District entirely ceased the collection of agency fees under § 208(3)(b) from its employees, and has no plans to reinstate this practice in the future. See The District's Aug. 20, 2018 Letter, p.2 (Document No. 32) ("When the Supreme Court overruled its prior precedent, the District immediately acknowledged and followed the new law by immediately stopping the collection of agency fees.").  Similarly, the Union Defendants, as the recipients of agency fees previously collected under § 208(3)(b), have "requested that employers discontinue collecting fair share fees" and simultaneously "disclaimed the right to future fair share fees" in response to Janus.  See The Union Defendants' Aug. 20, 2018 Letter, p.2 (Document No. 31).  Governor Cuomo has also acknowledged that Janus no longer allows the collection of agency fees from public employees, and directed the State Department of Labor to issue further guidance on its effects in New York; while the State Comptroller issued Payroll Bulletin No. 1660, directing State agencies to cease the collection of agency fees from State employees.  Copies of both Governor Cuomo's directive to the Department of Labor and the Comptroller's bulletin are annexed as Exhibits A and B, respectively, to the undersigned's Declaration accompanying this motion, and the Court may take judicial notice of them as matters of public record.  See Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012).

III.     Janus's *Impact on Van Ostrand and Pellegrino*

Although both Van Ostrand and Pellegrino are public school teachers—and therefore,
municipal rather than State employees—who disapproved of their representative unions, see
Compl. ¶¶ 12–13 & 17, their individual relationships with those unions differed prior to Janus.
Due to their actions after Janus, however, both Plaintiffs are now in essentially the same
situation.

Crucially, Van Ostrand was the only Plaintiff who actually paid agency fees under
§ 208(3)(b) at the time the Complaint was filed, as she entirely refused to join her union.  Id.
¶¶ 17–18, 29.  She lives in Tioga County, in upstate New York, and is employed by the Union-
Endicott Central School District.  Id. ¶¶ 5, 17.  Neither NYSUT nor UTN is her representative
union, see Compl. Ex. B at Art. 1 § A(1), and neither that union nor her employer—the relevant
entity for purposes of any injunctive relief prohibiting the collection of § 208(3)(b) agency fees
as concerns her—is named as a defendant in this action, see generally Compl.

In contrast, Pellegrino voluntarily and affirmatively chose to join UTN—and pay "full
membership dues"—despite his opposition to "NYSUT's political advocacy and collective-
bargaining activities."  Id. ¶¶ 12–13.  Though he bemoans this decision as a Hobson's choice, it
appears that he rationally evaluated the cost of paying agency fees vs. full membership dues, and
determined that "the difference in money . . . would not have been worth the loss of his vote and
whatever little influence he might be able to exert in collective-bargaining matters."  Id. at ¶ 13.

Upon the issuance of the Janus decision, however, Pellegrino promptly "resigned his
union membership and revoked his consent to payroll deductions."  See Plaintiffs' Aug. 27, 2018
Letter, p.3 (Document No. 33).  Upon information and belief, the other Defendants processed his
resignation without incident, and Pellegrino is no longer a UTN member, nor has he paid either

6

union dues or agency fees for a number of months.  Similarly, upon information and belief,

agency fees have not been collected from Van Ostrand since the Janus decision.  At present,

therefore, neither Plaintiff is a member of their representative unions, and neither is currently

paying or will pay—either voluntarily or involuntarily—agency fees or membership dues to their

unions.[6]

IV.    The Allegations—and Lack Thereof—in the Complaint

Seen with the background provided above, it is plainly apparent that the Complaint does

not accurately reflect either of the Plaintiffs' present circumstances, or the current—and future—

reality of agency fees under § 208(3) in New York State.  To this end, the only mention of the

State Defendants in the Complaint is in paragraphs 9–11, which generally state who each is.

Aside from these paragraphs, there are absolutely no allegations—factual or otherwise—

connecting the State Defendants to the statutes or actions challenged in this suit.  More

importantly, however, the Complaint lacks factual allegations demonstrating why Plaintiffs

require prospective injunctive relief against any of the State Defendants, regardless of the

changes to the parties' circumstances following Janus.

Nevertheless, the Complaint asserts three causes of action and contains no less than 20

separate demands for relief against all of the various Defendants.  See Compl. ¶¶ 43–45.  As

specifically concerns the State Defendants, however, Plaintiffs advance two causes of action and

seek declarations that: (1) §§ 208(3)(a) and 208(3)(b) are unconstitutional, id. ¶ 45(e); (2) that

§ 208(4)(a) is unconstitutional, id. ¶ 45(n); (3) that § 208(1)(b)(i) is unconstitutional, id. ¶ 45(q);

and (4) injunctive relief prohibiting any enforcement of these statutes or collective bargaining

_____

[6] As the State Defendants are uninvolved with the deduction and transferal of either agency fees under § 208(3)(b) or union membership dues, the undersigned believes that these statements will be borne out by the materials accompanying the other Defendants' motions to dismiss Plaintiffs' Complaint.

agreements that "requires any payment of money as a consequence for exercising one's

constitutional right not to join or financially support a public-employee union," id. ¶ 45(m).  As

discussed below, however, this action is subject to dismissal against the State Defendants.

### Argument

The standard for a Rule 12(b)(6) motion to dismiss is well-settled:

> [A] plaintiff must allege sufficient facts "to state a claim to relief
> that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.
> 544, 570 (2007).  A claim is facially plausible only "when the
> plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing
> Twombly, 550 U.S. at 556).  Mere labels and legal conclusions will
> not suffice.  Twombly, 550 U.S. at 555.  In reviewing a motion to
> dismiss, the Court must accept the factual allegations set forth in the
> complaint as true and draw all reasonable inferences in favor of the
> plaintiff.  Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir.
> 2006).  When deciding a motion to dismiss, a court may consider
> materials attached to the complaint, materials integral to the
> complaint, and materials incorporated into the · complaint by
> reference.  Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

Rodriguez v. Cheesecake Factory Inc., No. 16-CV-2006 (JMA)(AKT), 2017 U.S. Dist. LEXIS

213746, at *4 (E.D.N.Y. Aug. 11, 2017) (Azrack, J.).  The standard for a Rule 12(b)(1) motion is

also well-settled:

> "A case is properly dismissed for lack of subject matter jurisdiction
> under Rule 12(b)(1) when the district court lacks the statutory or
> constitutional power to adjudicate it."  Makarova v. United States,
> 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).
> In making this determination, "'courts must accept as true all
> material factual allegations in the complaint' and 'refrain from
> drawing from the pleadings inferences favorable to the party
> asserting [jurisdiction].'"  Deadwiley v. New York State Office of
> Children & Family Servs., 97 F. Supp. 3d 110, 114 (E.D.N.Y. 2015)
> (quoting Fox v. Commonw. Worldwide Chauffeured Transp. of NY,
> LLC, No. 08-CV-1686, 2009 U.S. Dist. LEXIS 53834, 2009 WL
> 1813230, at *1 (E.D.N.Y. June 25, 2009)).

Nassau & Suffolk Cnty. Taxi Owners Ass'n v. New York, No. CV 17-3839 (AKT), 2018 U.S. Dist. LEXIS 171144, at *19 (E.D.N.Y. Sept. 28, 2018) (Tomlinson, M.J.).

## I.  THE COMPLAINT FAILS TO STATE ANY FACIALLY PLAUSIBLE CLAIMS AGAINST THE STATE DEFENDANTS

Except with regards to describing Plaintiffs' status as municipal public employees required—before Janus—to pay agency fees under § 208(3)(b), the Complaint is extremely factually sparse. This is particularly notable as concerns their attempts to invalidate certain portions of § 208, and their purported causes of action against the State Defendants.

To illustrate, there are no allegations that either Plaintiff is a State employee subject to § 208(3)(a); nor could there be, given Plaintiffs' undisputed status as municipal employees rather than State employees. See Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361 (2d Cir. 2006) (rejecting arguments that the State was the employer of municipality's public school teachers in Title VII context). Therefore, there are no allegations—or permissible inferences—that any of the State Defendants are responsible for the actions complained of in this suit, in that they do not actually deduct agency fees or union dues from Plaintiffs' wages and transmit them to a union pursuant to either §§ 208(3)(a) or (b). Cf. Compl. ¶¶ 21–22 (alleging—albeit incorrectly—that NYSUT collects the agency fees from public employees); see also Carey v. Inslee, 3:18-cv-5208-RBL, Doc. No. 39 (W.D. Wa. Aug. 21, 2018) (dismissing claims brought by plaintiff public school teachers against Washington state defendants with prejudice because they had no involvement in deducting agency fees).

For the same reasons, the Complaint lacks allegations—and there are no permissible inferences—that the State Defendants (1) have somehow disclosed or are going to disclose Plaintiffs' personal information to a union under § 208(4)(a), or (2) that the State Defendants have restricted Pellegrino's ability to leave UTN in any way, because the State Defendants are

9

not Plaintiffs' employers.  Nevertheless, the Complaint does not allege that either Plaintiff actually falls within the ambit of § 208(4)(a) in any event, as both are already employed rather than being first employed or reemployed, and neither are allegedly going to be promoted or transferred to a new bargaining unit.  Nor does it contain factual allegations showing how Pellegrino—as the former union member—was limited by any Defendant in revoking his prior consent to the deduction of union dues or resigning from UTN pursuant to § 208(1)(b)(i).

Finally, although Plaintiffs seek an injunction against all Defendants with respect to the enforcement of certain portions of federal/State law or provisions of collective-bargaining agreements, the factual basis for this demand is insufficiently pled as well.  For example, absolutely no detail about the complained-of laws or contractual provisions is provided beyond a generalized statement that they "require[] any payment of money as a consequence for exercising one's constitutional right not to join or financially support a public-employee union."  See Compl. ¶ 45(m).  While Plaintiffs are presumably referring to § 208(3), this is the only inference that can be drawn from these allegations, as no further laws—either federal or State—are identified in the Complaint, nor are any specific provisions of any collective-bargaining agreements provided as examples.  Similarly, there are no factual allegations actually linking any of the State Defendants to the enforcement of these entirely undescribed laws or provisions, or any allegations demonstrating how these things actually affect Plaintiffs.

As a result, the Complaint is subject to dismissal in its entirety as against the State Defendants, because Plaintiffs have not alleged facts to state any facially plausible claims to relief against them.  See e.g. Lanning v. City of Glens Falls, 908 F.3d 19, 29 (2d Cir. 2018) (affirming dismissal of complaint that failed to allege facts supporting cause of action against defendant); Fisher v. JPMorgan Chase Bank, N.A., 740 F. App'x 745, 747 (2d Cir. 2018) (same);

Hirsch v. City of N.Y., No. 18-0405-cv, 2018 U.S. App. LEXIS 28096, at *3 (2d Cir. Oct. 4, 2018) (same); Hassan v. Marks, 735 F. App'x 19, 20–21 (2d Cir. 2018) ("Even construed liberally, the complaint contains no factual allegations supporting [plaintiff's] assertion that the State Defendants . . . conspired to deprive [plaintiff] of his easement rights—the predicate for [plaintiff's] various claims."); see also Carey, 3:18-cv-5208-RBL, Doc. No. 39.

## II.   PLAINTIFFS LACK STANDING TO CHALLENGE §§ 208(3)(a), 208(1)(b)(i), 208(4)(a), AND/OR OTHER STATUTES OR CONTRACTUAL PROVISIONS

The absence of factual allegations in the Complaint also causes Plaintiffs to run afoul of Article III's jurisdictional standing requirements.[7]  Demonstrating standing is Plaintiffs' burden, and requires allegations showing "such a personal stake in the outcome of the controversy as to warrant [the] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [plaintiff's] behalf." Knife Rights, Inc. v. Vance, 802 F.3d 377, 383 (2d Cir. 2015) (internal quotation marks omitted).  "The task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (alterations in original, quoting Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011)).  The first element in the standing analysis is that of an injury-in-fact, and as this Court has previously observed, "'[a] federal court's jurisdiction . . . can be invoked only when the plaintiff [herself] has suffered some threatened or actual injury resulting from the putatively illegal action.'" Clarkes v. Suffolk Cnty., No. 17-CV-2711(JMA)(AYS), 2018 US Dist. LEXIS 187603, at *10 (E.D.N.Y. Oct. 23, 2018) (Azrack, J.) (quoting Warth v. Seldin, 422 U.S. 490,

---

[7] Although standing is typically a "threshold matter" for the Court's jurisdictional analysis, Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 80 (2d Cir. 2018), it is addressed as the second point here because the previously-discussed dearth of factual allegations in the Complaint further emphasize the absence of standing.

499 (1975)).  Here, neither Plaintiff has standing to challenge §§ 208(3)(a), 208(1)(b)(i),

208(4)(a), and/or any other undescribed statutes or portions of collective bargaining agreements.

A.  *Plaintiffs are Not State Employees, and Therefore Are Not Impacted by § 208(3)(a); Nor Have They Alleged Injuries-in-Fact from Similar Statutes or Contractual Provisions.*

As previously discussed, Pellegrino and Van Ostrand are employees of the District and

the Union-Endicott Central School District, respectively.  Neither is employed by the State of

New York or any of the State Defendants.  This means that § 208(3)(a) simply does not affect

them, as that section is only applicable to unions "recognized or certified as the exclusive

representative of employees of the state." See § 208(3)(a).  As a result, notwithstanding the lack

of allegations in the Complaint, Plaintiffs cannot suffer injury from § 208(3)(a), and therefore

lack standing to challenge this section of the statute as unconstitutional. See also Plaintiffs' Aug.

27, 2017 Letter, p.2 (Document No. 35) (describing this objection as "well taken").

Similarly, Plaintiffs lack standing to the extent they seek to preclude the enforcement of

"any provision of federal or New York law, or any provision of a collective bargaining

agreement, that requires any payment of money as a consequence for exercising one's

constitutional right not to join or financially support a public-employee union." See Compl.

¶ 45(m).  Notwithstanding the pre-Janus application of § 208(3)(b)—addressed infra—Plaintiffs

have again failed to allege anything about other federal/State statutes or provisions of collective

bargaining agreements that have similar effects; and this means that they have not established

their standing to challenge these entirely undescribed statutes or agreements.

B.  *Neither Plaintiff is Attempting to Leave their Union and Somehow Being Restricted by § 208(1)(b)(i) in Doing So.*

Next, Pellegrino was the only Plaintiff who potentially had standing—at least, prior to his

resignation from UTN—to challenge any alleged restrictions on his ability to leave UTN

imposed pursuant to § 208(1)(b)(i).  Neither the Complaint nor the collective bargaining

agreement between UTN and the District attached as Exhibit 2 to the Complaint, however, actually show that Pellegrino had to do anything specific prior to resigning his membership in UTN. Instead, paragraph 26—the only portion of the Complaint mentioning this section of § 208—speaks entirely in the hypothetical, proposing a theoretical "open-enrollment" period for resignation of membership and revocation of consent to dues-deductions. See Compl. ¶ 26. Moreover, as mentioned above, Pellegrino's resignation from UTN and revocation of consent to dues deduction was processed entirely without incident; and he has not been a UTN member nor paid union dues for a number of months. Both Plaintiffs, therefore, lack the necessary standing to challenge § 208(1)(b)(i). See also Plaintiffs' Aug. 27, 2017 Letter, p.2 (Document No. 35) (conceding that Pellegrino "will continue to have standing until he is assured that his demands to cancel his membership and halt union-related payroll deductions are being honored").

C. *Plaintiffs are Not Presently Harmed by § 208(4)(a), and the Complaint Does Not Establish That They Will be Harmed in the Future.*

Finally, § 208(4)(a) is also only mentioned once in the Complaint—in ¶ 25—and again, is discussed only on a general, hypothetical level, bereft of factual allegations about any specific impact on Plaintiffs. Plaintiffs acknowledge that § 208(4)(a) only requires the provision of an employee's home address when persons are newly "hired, reemployed, or promoted or transferred to a new bargaining unit." See Compl. ¶ 25. Yet, the allegations about the Plaintiffs themselves reveal that this portion of § 208 does not currently affect them, because both are already employed rather than being newly hired or reemployed in a different bargaining unit. See id. ¶¶ 12 & 17. Although Plaintiffs argue that this statute "inflicts present-day injury by impeding their future job prospects" inasmuch as it "prevents them from ever accepting a promotion or transfer or a job in a new bargaining unit," see Plaintiffs' Aug. 27, 2017 Letter, p.2 (Document No. 35), their Complaint lacks any factual allegations to this effect, let alone any

13

allegations that affirmatively and plausibly show that this injury is anything more than wildly speculative at the current point in time.

For these reasons, neither Plaintiff has standing to challenge §§ 208(1)(b)(i), 208(3)(a), 208(4)(a), or other statutes or contractual provisions, and these aspects of the Complaint must be dismissed in their entirety. See e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 563 (1992) ("[T]he 'injury in fact' test . . . requires that the party seeking review be himself among the injured." (quoting Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972)); Schwartz v. HSBC Bank USA, N.A., __ F. App'x __, Nos. 17-2212-cv, 17-2309-cv, 2018 U.S. App. LEXIS 26145, at *4–6 (2d Cir. Sept. 13, 2018) (affirming dismissal for lack of standing where plaintiff merely pled injuries in "short, conclusory paragraphs" that failed to discuss him or provide "evidence or support" for his purported injuries); Hariprasad v. New York, 722 F. App'x 102, 103 (2d Cir. 2018) (affirming dismissal for lack of standing where plaintiff did not allege that he, specifically, was harmed by the challenged practices); Clarkes, 2018 US Dist. LEXIS 187603, at *10 (dismissing complaint for lack of standing where plaintiffs did not demonstrate that they were personally harmed by the challenged actions).

## III.   PLAINTIFFS' CHALLENGES TO §§ 208(1)(b)(i) AND 208(4)(a) ARE NOT RIPE

In addition to affirmatively and plausibly demonstrating standing, "for claims to be justiciable under Article III, courts have long recognized that the controversy, as an initial matter, must be ripe." Ellis v. Wilkinson, 81 F. Supp. 3d 229, 237 (E.D.N.Y. 2015) (Bianco, J.) (internal quotation marks omitted).  Here, the Court is faced with a question of constitutional ripeness, which "prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003).  "A requirement for constitutional ripeness is 'that the plaintiff's injury be imminent rather than conjectural or hypothetical.'"

UnitedHealthcare of N.Y., Inc. v. Vullo, 323 F. Supp. 3d 470, 485 (S.D.N.Y. 2018) (quoting In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 725 F.3d 65, 110 (2d Cir. 2013)).

Ripeness and standing are closely related—and often analyzed together—because "both are concerned with whether a case has been brought prematurely," Ellis, 81 F. Supp. 3d at 237 (internal quotation marks omitted), and courts have found that when a plaintiff lacks standing due to the absence of an injury-in-fact, they also lack a constitutionally ripe claim, see New York v. United States Army Corps of Eng'rs, 896 F. Supp. 2d 180, 195 (E.D.N.Y. 2012) (Garufis, J.) ("[B]ecause the court has held that there is no present injury-in-fact, the court believes it is clear that Plaintiffs have not alleged a constitutionally ripe claim." (citing Brennan v. Nassau Cnty., 352 F.3d 60, 65 n.9 (2d Cir. 2003)). As argued above, Plaintiffs lack an injury-in-fact with respect to §§ 208(1)(b)(i) and 208(4)(a)—as well as under § 208(3)(a) and/or any other statutory or collective bargaining agreement provisions—and this also requires a finding that these claims are not ripe for judicial review and must be dismissed.

Yet, even if the Court were to look at the issues independently, it should reach the same result. To illustrate, Plaintiffs cannot be injured by § 208(3)(a) at all, let alone imminently. Nor have they identified any other statutes or contractual provisions that will actually and imminently cause them injury. Then, inasmuch as Pellegrino—because Van Ostrand is not a union member—is neither allegedly or actually attempting to leave his union and being restricted in doing so by conditions imposed pursuant to § 208(1)(b)(i), he has no "imminent" injury. Instead, any injury under § 208(1)(b)(i) would be purely conjectural and hypothetical; and frankly, as the allegations in the Complaint are explicitly based on theoretical examples, they compel this conclusion. See Compl. ¶ 26 (prefacing a potential injury with "for example").

15

Similarly, any injury caused by § 208(4)(a) would only occur if Plaintiffs changed to a new bargaining unit, and—based on the absence of any allegations to this effect in the Complaint—neither Plaintiff is actually contemplating, attempting, or going to do this. Again, this means that they lack an "imminent" injury sufficient to satisfy the requirements of constitutional ripeness; and instead, any injury is purely conjectural or hypothetical. Yet, even if they were seeking to change bargaining units, Plaintiffs' injuries would still be conjectural or hypothetical, because this would not only require that they find an available position in a different bargaining unit, but also that they interview for and be offered the position; something which is outside of their ability to control, and contingent on any number of events which may or may not happen in the future. See Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2d Cir. 2013) ("A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks omitted)). These aspects of the Complaint, therefore, must be dismissed for this reason as well.

IV.    **ANY CHALLENGE TO § 208(3)(a) or (b) IS MOOT IN LIGHT OF *JANUS'S* IMPACT IN NEW YORK AND ON DEFENDANTS**

As mentioned above, the instant action is not the only one of its kind challenging various agency fee statutes that remain "on the books"—yet are no longer enforced—due to Janus. This action is also not unique in that the defendants in most, if not all, of the other similar actions have also sought to dismiss those challenges as moot in light of Janus. These exact issues, therefore, are currently under consideration by a number of courts across the country, including before Judge Irizarry in a motion for reconsideration currently pending in Berman.

Unfortunately for Plaintiffs, however, those courts who have rendered decisions have found that the issues **are** moot. See e.g., Babb v. Cal. Teacher's Ass'n, Case No. 8:18-cv-00994-JLS-DFM, Doc. No. 76 (C.D. Cal. Dec. 7, 2018) (plaintiffs represented by Mitchell); Danielson

16

v. AMFSCME, Council 28, No. 3:18-cv-05206-RJB, 2018 U.S. Dist. LEXIS 210650, at *3

(W.D. Wa. Nov. 28, 2018); Lamberty v. Conn. State Police Union, No. 3:15-cv-378 (VAB),

2018 U.S. Dist. LEXIS 179805, at *26–27 (D. Conn. Oct. 19, 2018); Yohn v. Cal. Teachers

Ass'n, No. SACV 17-202-JLS-DFM, 2018 U.S. Dist. LEXIS 209944, at *11 (C.D. Cal. Sep. 28,

2018); Danielson v. Inslee, No. 3:18-cv-05206-RJB, 2018 U.S. Dist. LEXIS 139032, at *9 (W.D.

Wash. Aug. 16, 2018) (plaintiffs represented by Mitchell); Ladley v. Penn. State Educ. Ass'n,

No. CI-14-08552 (Pa. Ct. Com. Pl. Lancaster Cnty. Oct. 29, 2018).

Lamberty—recently decided by Judge Bolden in the District of Connecticut—is

particularly instructive, and this Court should reach the same result. There, like here, public

employee plaintiffs sought declaratory and injunctive relief against Connecticut's agency fee

statutes. Lamberty, 2018 U.S. Dist. LEXIS 179805, at *2–3. There, like here, the state and

union defendants opposed, arguing that the court should dismiss the case as moot because

defendants had totally ceased the collection of agency fees as well as issued guidance and

statements about Janus's effect and implementation throughout the state. Id. at *3, 7–8.

Describing mootness as a threshold issue, and citing a host of Supreme Court cases, the court

explained that a "case becomes moot when there is no longer an ongoing injury that can be

redressed through judicial action," and "[i]f an intervening circumstance deprives the plaintiff of

a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no

longer proceed and must be dismissed as moot." Id. at *12–13 (internal quotation marks

omitted).

"It is well-settled that significant changes in law are one type of intervening circumstance

that can moot a claim or case," but, it is "also well-settled that, where a defendant's 'voluntary

cessation' of injury-causing conduct is alleged to have mooted a case, the case is not

17

automatically deemed moot; rather, the defendant must show that the conduct is unlikely to

reoccur with respect to the plaintiffs before the court" <u>Id.</u> at *13–14 (citing cases). Seizing on

the "voluntary cessation" exception to mootness, <u>Lamberty's</u> plaintiffs—exactly like Plaintiffs

here—argued that the mere fact that the law "remain[ed] intact and on the books" after <u>Janus</u>

meant defendants could "resume withholding agency fees at any time." <u>Id.</u> at *24; <u>cf.</u> Plaintiffs'

Aug. 27, 2018 Letter, p.1–2 (Document No. 35) ("So long as the statutes . . . remain on the

books—and their enforcement has not been enjoined—the state defendants retain the legal

prerogative to enforce them at any time they wish.").

     Yet, the court explicitly and thoroughly rejected this argument, observing that "there was

nothing voluntary about this decision" to stop collecting agency fees in light of <u>Janus</u>, and noted

that the defendants still complied notwithstanding their public denouncements of the Supreme

Court's holding. <u>Id.</u> at *24–25. Continuing, the court explained that the defendants did this

> not because they wanted to evade the Court's jurisdiction . . . but
> because the Supreme Court's new and controlling
> precedent . . . announced a broad rule invalidating every state law
> permitting agency fees to be withheld. . . .
>
> The law of the land thus has changed and there no longer is a legal
> dispute as to whether public sector unions can collect agency fees.
> They cannot. Moreover, none of the Defendants in this case are
> disputing that the law of the land has changed, or are trying to collect
> agency fees.

<u>Id.</u> at *25–26. As a result, the court concluded that "there is nothing for this Court to order to

Defendants to do now," and dismissed the case as moot. <u>Id.</u> at *26–27.

     The same result should occur here. New York State fought very hard against <u>Janus</u>—

submitting an amicus brief to the Supreme Court on behalf of 19 other states and the District of

Columbia—while Governor Cuomo has been openly critical of the decision's impact on the

labor movement in New York, publishing a June 27, 2018 opinion piece in the N.Y. Daily News

and signing Executive Order 183 to protect against further erosion of organized labor in New York's public sector. Copies of these documents are annexed as Exhibits C, D, and E, respectively, to the undersigned's Declaration accompanying this motion. Yet, despite such strongly held beliefs that <u>Janus</u> is bad for the citizens of this State and detrimental to organized labor in the country at large, **the State still complied with the new law of the land** and not only ceased any deduction of agency fees under § 208(3)(a), but also provided guidance to public sector employers and employees about how to comply with <u>Janus</u>.

These actions unambiguously show that the State Defendants are committed to upholding the law as pronounced by the Supreme Court—even if they do not necessarily agree with it—and demonstrate that there cannot be any "reasonable" expectation that the now-unconstitutional collection of agency fees under either § 208(3)(a) or (b) will return in the future.[8] <u>Jarvis v. Cuomo</u>, No. 5:14-cv-1459 (LEK/TWD), 2016 U.S. Dist. LEXIS 6218, at *10 (N.D.N.Y. Jan. 20, 2016) (explaining with respect to another mooted aspect of agency fee collection that "[i]t is well established that a defendant cannot reasonably be expected to resume conduct that it acknowledges is contrary to binding precedent") <u>aff'd</u> 660 F. App'x 72 (2d Cir. 2016); <u>Rivers v. Doar</u>, 638 F. Supp. 2d 333, 338 (E.D.N.Y. 2009) (Block, J.) (finding case moot because "[d]efendants have made a visible public commitment before plaintiffs, the state legislature and the New York public . . . and in the absence of evidence to the contrary, the Court must show deference to their official acts and pronouncements").

---

[8] Additionally, given that all Defendants have now ceased the collection of agency fees in light of <u>Janus</u> and have no plans to reinstate them in the future, Plaintiffs lack the requisite injury-in-fact to establish standing for this aspect of their action. This also means that this portion of the Complaint is no longer ripe, because any potential resurrection of agency fees under either § 208(3)(a) or (b) following <u>Janus</u> is now purely hypothetical and conjectural, rather than actual and imminent. Therefore, as any harm Plaintiffs now face from § 208(3) is entirely speculative, these points also support the dismissal of this portion of the action, because "there is no reason for the Court to award relief rooted solely in speculation." <u>Lamberty</u>, 2018 US Dist. LEXIS 179805, at *27.

This also illustrates the fault underlying any arguments based on the situations presented
to other courts following the Obergefell decision, see Plaintiffs' Aug. 27, 2018 Letter, p.1
(Document No. 35), because in the instant situation, there is absolutely no reason to believe that
Defendants would now reverse what they have already done to comply with Janus and willfully
disobey the Supreme Court. See Danielson, 2018 U.S. Dist. LEXIS 139032, at *8–9 (rejecting
Plaintiffs' exact arguments); Yohn, 2018 U.S. Dist. LEXIS 209944, at *9–10 (same); Babb, Case
No. 8:18-cv-00994-JLS-DFM, Doc. No. 76, p.2 (same); Ladley, No. CI-14-08552, at p. 19–21
(same). As a result, this Court should rule in accordance with the other courts that have already
considered this issue and dismiss the challenges to § 208(3)(a) and (b) as moot, rejecting any
arguments to the contrary. See e.g., Danielson, 2018 U.S. Dist. LEXIS 139032, at *9; Yohn,
2018 U.S. Dist. LEXIS 209944, at *11; Lamberty, 2018 U.S. Dist. LEXIS 179805, at *26–27;
Babb, Case No. 8:18-cv-00994-JLS-DFM, Doc. No. 76; Ladley, No. CI-14-08552.

## V.   **PLAINTIFFS' ACTION IS BARRED BY THE ELEVENTH AMENDMENT**

As this Court has previously recognized, "[p]ursuant to the Eleventh Amendment, an
unconsenting State is immune from suits brought in federal courts by her own citizens," Tomassi
v. New York, No. 17-CV-3878 (JMA) (AKT), 2018 U.S. Dist. LEXIS 199357, at *4 (E.D.N.Y.
Nov. 26, 2018) (Azrack, J.) (internal quotation marks omitted), and this immunity also applies to
state officials in their official capacities. Although there are exceptions to this rule prohibiting
suit against the State, only that provided by the Ex Parte Young doctrine could be applicable
here. Ex Parte Young provides that "suits against state officials in their official capacities are
permitted for prospective injunctive relief to stop ongoing violations of federal law." Petion v.
Nassau Cnty. Corr. Ctr., No. 15-CV-5770 (JMA)(ARL), 2016 U.S. Dist. LEXIS 4267, at *9
(E.D.N.Y. Jan. 12, 2016) (Azrack, J.). This doctrine, however, does not permit declarations that

state officials "violated federal law in the past."[9]  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

The Eleventh Amendment goes to a State's sovereign immunity, and implicates the Court's subject matter jurisdiction.  Tomassi, 2018 U.S. Dist. LEXIS 199357, at *5.  Contrary to Plaintiffs' statement in their August 27, 2018 letter (Document 35), whether or not the Eleventh Amendment is an affirmative defense is currently an open question in the Second Circuit.  See Riley v. Cuomo, No. 2:17-cv-01631 (ADS)(AYS), 2018 U.S. Dist. LEXIS 64535, at *4–5 (E.D.N.Y. Apr. 16, 2018) (Spatt, J.) (citing cases).  Even if it was an affirmative defense, however, "[a] complaint may be dismissed on the basis of an affirmative defense if, as here, the facts supporting the defense appear on the face of the complaint."  Domitz v. City of Long Beach, 737 F. App'x 589, 590 (2d Cir. 2018) (internal quotation marks omitted).  Here, the Eleventh Amendment bars Plaintiffs' claims, and Ex Parte Young is not applicable.

A.  *Plaintiffs Have Not Demonstrated Any Need for Prospective Injunctive Relief.*

"In seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future—otherwise there is no remedial benefit that he can derive from such judicial decree."  Riley, 2018 U.S. Dist. LEXIS 64535, at *12–13 (internal quotation marks omitted).  Though this point has now been explained *ad nauseum*, the significant changes following Janus make it readily apparent that there is no need for prospective injunctive relief here, as there is no reasonable expectation that Plaintiffs will be injured by any of these portions of § 208 in the future.

---

[9] Additionally, the Eleventh Amendment bars any suit against the State or State officials for money damages.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  Thus, to the extent that the Complaint could be read as seeking monetary damages against the State Defendants, it is subject to dismissal as well.

To illustrate, neither Plaintiff is currently being charged agency fees under § 208(3)(a) or

(b), so no injunctive relief is needed to stop this practice. Nor will Plaintiffs be charged these

agency fees in the future, as they are now illegal following Janus, and all collection of them has

ceased. Then, neither Pellegrino nor Van Ostrand are union members, so neither faces a

situation where § 208(1)(b)(i) can be applied to them in an unconstitutional manner, either at

present or in the immediate future. Similarly, Plaintiffs are not impacted by § 208(4)(a), as

neither have alleged facts showing that this statute affects them at present.

Plaintiffs, therefore, do not require prospective injunctive relief for any ongoing violation

of federal law, and cannot rely on the Ex Parte Young doctrine. See Riley, 2018 U.S. Dist.

LEXIS 64535, at *12–13. Instead, any relief available to Plaintiffs would either be purely

retroactive—particularly as concerns the prior practice of collecting agency fees under

§ 208(3)—or wildly speculative and in the nature of a disfavored "follow the law" injunction.

N.Y. v. Shinnecock Indian Nation, 560 F. Supp. 2d 186, 189 (E.D.N.Y. 2008) (Bianco, J.)

(collecting cases and explaining that an injunction to "obey the law" in the absence of an

allegedly imminent violation of the law is inappropriate).

### B.   *Plaintiffs Have Not Alleged that the State Defendants are Connected to the Enforcement of These Statutes in Any Event.*

Even if Plaintiffs did require prospective injunctive relief, they have still failed to

demonstrate each of the State Defendants' "direct connection to, or responsibility for, the alleged

illegal action" so as to make them amenable to suit under Ex Parte Young. Brisco v. Rice, 2012

U.S. Dist. LEXIS 10001, at *14 (E.D.N.Y. Jan 27, 2012) (Bianco, J.) (internal quotation marks

omitted); see also Riley, 2018 U.S. Dist. LEXIS 64535, at * 10–11 ("[W]hen a plaintiff seeks

prospective relief against a state official in their official capacity where the plaintiff alleges that a

particular statute is unconstitutional, the state officer . . . must have some connection with the

22

enforcement of the act that includes both a particular duty to enforce the statute in question and a

demonstrated willingness to exercise that duty." (internal quotation marks omitted)).  As the

Supreme Court explained in Ex Parte Young:

> In making an officer of the state a party defendant in a suit to enjoin
> the enforcement of an act . . . it is plain that such officer must have
> some [specific] connection with the enforcement of the act, or else
> it is merely making him a party as a representative of the state, and
> thereby attempting to make the state a party.

209 U.S. 123, 157 (1908).  Therefore, in situations where a complaint lacks specific allegations

connecting an official to the allegedly illegal activities, the Ex Parte Young exception does not

apply, and the claims are barred by the Eleventh Amendment.  See e.g. Nassau & Suffolk Cnty.

Taxi, 2018 U.S. Dist. LEXIS 171144, at *26–28 (dismissing claims against Gov. Cuomo where

there are no allegations demonstrating his responsibility for, or connection to, the challenged

actions); Riley, 2018 U.S. Dist. LEXIS 64535, at *17–18 (same).

As a threshold matter, the State Defendants here are not amenable to suit under Ex Parte

Young inasmuch as they are not Plaintiffs' "employers"; meaning they are not directly connected

to or responsible for any allegedly unconstitutional actions against Plaintiffs.  Rather, any

connection the State Defendants would have with the challenged statutes here is wholly

secondary, based on a nebulous and undescribed supervisory or enforcement authority.  Yet, the

Complaint does not actually contain allegations showing that the State Defendants have this sort

of connection to the challenged statutes; let alone that any of the State Defendants have

previously enforced or are going to enforce these statutes in the future to Plaintiffs' detriment.

Instead, the Complaint contains only the most cursory description of what each of the

State Defendants' role is within the State government; devoid of any connection to the

challenged portions of § 208, and insufficient to impose liability under Ex Parte Young.  For

example, Governor Cuomo is literally sued in his official capacity as "the representative of the

23

State," see Compl. ¶ 9, in **direct contravention** to Ex Parte Young's prohibition on making the

state a party to a suit, see 209 U.S. at 157.  Similarly, A.G. James is sued because she "is charged

with enforcing the state's laws," see Compl. ¶ 10, and this is also insufficient to demonstrate her

connection to the challenged statutes for purposes of Ex Parte Young.  See e.g. Nassau & Suffolk

Cnty. Taxi, 2018 U.S. Dist. LEXIS 171144, at *26–28 (collecting cases and explaining that

"courts in the Second Circuit have not extended the exception under Ex [P]arte Young on the

basis that a state official has a general duty to execute and enforce state laws" (internal quotation

marks omitted); Riley, 2018 U.S. Dist. LEXIS 64535, at * 16–18 ("[T]he vast majority of

courts . . . have held . . . that a state official's duty to execute the laws is not enough by itself to

make that official a proper party in a suit challenging a state statute" (internal quotation marks

omitted, alterations in original)).

The same conclusion applies to both Wirenius and Hite, as neither are alleged to have

enforcement authority with respect to any specific section of § 208, see Compl. ¶ 11, nor is this

apparent from the text of § 208 itself.  See Riley, 2018 U.S. Dist. LEXIS 64535, at *17

(dismissing against Governor because there were no allegations against him and the only statute

cited did not "afford any duty or power" to him either); cf. Nassau & Suffolk Cnty. Taxi, 2018

U.S. Dist. LEXIS 171144, at *26–28 (refusing to dismiss against Commissioner of DMV

because she was statutorily charged with promulgating the challenged regulations).  Yet even

assuming that they are specifically tasked with enforcing or supervising § 208, Plaintiffs' current

need for prospective injunctive relief is still wildly speculative, as there is no indication that

either Wirenius, Hite, or even PERB generally is facing an issue under these portions of § 208

and is likely to act in an unconstitutional manner.  Cf. Lamberty, 2018 U.S. Dist. LEXIS 179805,

at *26–27 ("Plaintiffs' motion contains nothing to suggest that any reversal to a pre-Janus view

of the law is imminent.  As a result, their real concern is some unknown event at some unknown

time.").  As a result, Plaintiffs' have failed to satisfy this aspect of the <u>Ex Parte Young</u> exception

to the Eleventh Amendment as well, and the Complaint must therefore be dismissed against the

State Defendants.

<u>**Conclusion**</u>

Plaintiffs in the instant suit find themselves in something of a curious position, in that

although they have received that which they desire, their Complaint is subject to complete

dismissal against the State Defendants for the host of reasons discussed above.  While the State

Defendants have not addressed some of the other substantive points contained in their earlier

letter to the Court (Document No. 30), they do not intend to waive these arguments, and will

vigorously pursue them in the event that Plaintiffs are able to overcome the significant

jurisdictional hurdles now facing them in light of <u>Janus</u> and their own actions following that

decision.  For the reasons set forth above, however, it is respectfully requested that the Court

dismiss the Complaint in its entirety against the State Defendants.

Dated: Hauppauge, New York
      January 18, 2019

LETITIA JAMES
Attorney General
State of New York
Attorney for State Defendants

By:

ROBERT E. MORELLI
Assistant Attorney General
300 Motor Parkway, Suite 230
Hauppauge, N.Y. 11788

STATE OF NEW YORK )
                  )  SS.:
COUNTY OF SUFFOLK )

EVELYN ORELLANA, being duly sworn, deposes and says: deponent is not a party to

the action, is over 18 years of age and is employed in the office of LETITIA JAMES, Attorney

General of the State of New York, attorney for defendant.  On January 18, 2019, she served a

copy of the enclosed State Defendants' Memorandum of Law in Support of Their Motion to

Dismiss Plaintiffs' Complaint upon the following named persons:

PAUL R. NIEHAUS
Kirsch & Niehaus
150 East 58th Street
22nd Floor
New York, New York 10155

JONATHAN F. MITCHELL
Mitchell Law PLLC
106 East Sixth Street
Suite 900
Austin, Texas 78701

ATTN:  DINA KOLKER
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038

ATTN:  DAVID F. KWEE
Ingerman Smith, LLP
150 Motor Parkway, Suite 400
Hauppauge, New York 11788

the addresses designated by said persons for that purpose by UPS Overnight Mail.

_____
EVELYN ORELLANA

Sworn to before me this
18th day of January, 2019

_____
ROBERT MORELLI
Assistant Attorney General