UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
           :

SCOTT PELLEGRINO, on behalf of himself and all   :
others similarly situated; and CHRISTINE        :
VANOSTRAND, on behalf of herself and all others   :
similarly situated,                    :

            Plaintiffs,     :   Index No. 18-cv-03439

                           :   (JMA)(GRB)
           -against-      :

NEW YORK STATE UNITED TEACHERS; UNITED   :
TEACHERS OF NORTHPORT, as representative of   :
the class of all chapters and affiliates of New York  :
State United Teachers; NORTHPORT-EAST     :
NORTHPORT UNION FREE SCHOOL DISTRICT,  :
as representative of the class of all school districts in  :
the state of New York; ANDREW CUOMO, in his  :
official capacity as Governor of New York;     :
BARBARA UNDERWOOD, in her official capacity as  :
Attorney General of New York; JOHN WIRENIUS, in  :
his official capacity as chair of the New York Public  :
Employment Relations Board; ROBERT HITE, in his  :
official capacity as member of the New York Public  :
Employment Relations Board,         :

           Defendants.    :

-------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF

## <u>UNION DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>

                          STROOCK & STROOCK & LAVAN LLP
                          180 Maiden Lane
                          New York, New York 10038
                          (212) 806-5400

                                  -and-
                          ROBERT T. REILLY, ESQ.
                          52 Broadway, 9th Floor
                          New York, New York
                          (212) 228-3382

                          *Co-counsel for Union Defendants*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**.................................................................................................. iii

**PRELIMINARY STATEMENT**......................................................................................... 1

**STATEMENT OF FACTS** ................................................................................................. 3

    Historic Constitutionality of Agency Fees............................................................. 4

    Relationships Among the Parties ............................................................................ 5

**ARGUMENT** ...................................................................................................................... 8

**I.**     **PLAINTIFFS' CLAIMS FOR PROSPECTIVE RELIEF ARE MOOT BECAUSE AGENCY FEES ENDED AFTER JANUS**............................................ 9

**II.**    **PLAINTIFFS' FEDERAL CLAIM FOR REPAYMENT OF PRE-JANUS AGENCY FEES FAILS AS A MATTER OF LAW**........................................... 12

    **A.**   Union Defendants Cannot Be Liable for the Repayment of Agency Fees Collected in Good Faith Based Upon a Presumptively Valid Statute and Forty Years of Supreme Court Jurisprudence .............................................................................. 12

    **B.**   No Plaintiff Can Assert a Claim For Agency Fees Against Any Defendant, Because Plaintiffs Failed to Name Necessary Parties ......................................................... 17

**III.**   **THE COMPLAINT FAILS TO STATE A CLAIM FOR THE TORT OF CONVERSION UNDER NEW YORK COMMON LAW**.......................................... 17

    **A.**   Plaintiffs' Conversion Claim is Duplicative of, and Subsumed Within, Their First Amendment Claim................................................................................................. 17

    **B.**   Plaintiffs Have Failed to Satisfy the "Martin Rule" and Cannot Allege a Conversion Claim Against Union Defendants Under New York Law .......................................... 18

    **C.**   The Complaint Further Fails to State A Plausible Claim for the Tort of Conversion Under New York Common Law Because Pre-Janus Deductions Were Authorized Under Presumptively Valid Law ......................................................................... 20

    **D.**   This Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' State Law Claims Based on PERB's Exclusive and Nondelegable Jurisdiction Over Alleged Violations of The Taylor Law......................................................................... 21

**IV.**   **PLAINTIFFS FAIL TO STATE ANY CLAIM ON BEHALF OF CURRENT OR FORMER UNION MEMBERS**........................................................................ 23

    **A.**   Plaintiffs Lack Standing to Bring Challenges to N.Y.Civ. Serv. Law §208(1)(b)(i) and Time Period Limitations in Dues Deduction Authorizations.............................. 24

    **B.**   Union Membership Cards Are Valid and Enforceable Private Agreements ............. 25

        1.   Union Membership is a Private Contractual Relationship................................. 25

        2.   Mr. Pellegrino's Allegations of Coercion Cannot Obviate His Contractual Obligations.................................................................................................. 28

**C.** Window Period Agreements Are Valid Contractual Obligations .............................. 30

**V.      PLAINTIFFS' CHALLENGE TO THE STATUTORY REQUIREMENT THAT PUBLIC EMPLOYERS SHARE EMPLOYEES' CONTACT INFORMATION WITH THE UNION ALSO FAILS TO STATE A CLAIM** ....................................... 33

**CONCLUSION** ....................................................................................................... 38

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

767 Third Ave, LLC v. Orix Capital Markets, LLC,
 26 A.D.3d 216 (1st Dep't 2006) ............................................29

Abood v. Detroit Bd. of Educ.,
 431 U.S. 209 (1977)................................................................ *passim*

Aikens v. California,
 406 U.S. 813 (1972) (*per curiam*) ......................................11

Ashcroft v. Iqbal,
 556 U.S. 662 (2009)..........................................................8, 9, 20

Ballas v. McKiernan,
 41 A.D.2d 131 (2d Dep't 1973), aff'd, 35 N.Y.2d 14 (1974).................25

Bd. of Educ., Cent. School Dist. No. 1 of Town of Grand Island v. Helsby,
 37 A.D.2d 493 (4th Dep't 1971), aff'd, 32 N.Y.2d 660 (1973)............21

Belgau et al. v. Inslee et al.,
 No. 18-5620 RJB, 2018 WL 4931602 (W.D. Wash. Oct. 11, 2018)..........26, 27, 32

Bell Atl. Corp. v. Twombly,
 550 U.S. 544 (2007)..........................................................8, 9, 20

Bennett v. Spear,
 520 U.S. 154 (1997)................................................................24

Bradley v. Roe,
 282 N.Y. 525 (1940) ...............................................................20

Brady v. United States,
 397 U.S. 742 (1970)................................................................26

Brown v. Sombrotto,
 523 F. Supp. 127 (S.D.N.Y. 1981).........................................26

Buckley v. Valeo,
 424 U.S. 1 (1976)...................................................................34

Calastri v. Overlock,
 125 A.D.3d 554 (1st Dep't 2015) ........................................18

Carlson v. United Academics,
 265 F.3d 778 (9th Cir. 2001) .................................................11

Chicago Teachers Union v. Hudson,
    475 U.S. 292 (1986)...................................................................................15

Christian Coalition v. Cole,
    355 F.3d 1288 (11th Cir. 2004) ...............................................................11

Clapper v. Amnesty Int'l USA,
    568 U.S. 398 (2013)...................................................................................8

Clement v. City of Glendale,
    518 F.3d 1090 (9th Cir. 2008) .................................................................13

Cohen v. Cowles Media Co.,
    501 U.S. 663 (1991)...................................................................................26

Colavita v. New York Organ Donor Network, Inc.,
    8 N.Y.3d 43 (2006) ...................................................................................18

Coltec Indus. Inc., v. Hobgood,
    280 F.3d 262 (3d Cir. 2002)......................................................................26

Cooper v. New York State Dep't of Labor,
    819 F.3d 678 (2d Cir. 2016)......................................................................9

Copeland v. Vance,
    893 F.3d 101 (2d Cir. 2018)......................................................................31

Cummaro et al. and Westchester Cty. Dep't of Corr. Superior Off. Assoc., Inc.,
    26 PERB ¶ 3077 (1993) ...........................................................................36

DaimlerChrysler Corp. v. Cuno,
    547 U.S. 332 (2006)...................................................................................8

Danielson v. Am. Fed. of State, Cty. And Mun. Employees, Council 28, AFL-
    CFO,
    340 F. Supp. 3d 1083 (W.D.Wash. 2018) (Danielson II) ......................10, 11, 13, 14

Danielson v. Inslee,
    No. 3:18-cv-05206-RJC, 2018 WL 3917937 (W.D. Wash. Aug. 16, 2018)
    (Danielson I) ...........................................................................................10

DeCherro v. Civil Serv. Emp. Ass'n., Inc.,
    60 A.D.2d 743 (3d Dep't 1977)................................................................22

Dingle v. Stevenson,
    840 F.3d 171 (4th Cir. 2016), cert. denied, 137 S. Ct 2094 (2017) ........26

Ellis v. Bhd. Of Ry. Clerks,
    466 U.S. 435 (1984).........................................................................................15

ESI, Inc. v. Coastal Power Prod. Co.,
    995 F. Supp. (S.D.N.Y. 1998)........................................................................18

Farrell v. IAFF,
    781 F. Supp. 647 (N.D. Cal. 1992) ...............................................................28

Fisk v. Inslee,
    No. 17-35927, 2019 WL 141253 (9th Cir. Jan 9, 2019).................................. *passim*

Fisk v. Inslee,
    No. C16-5889RBL, 2017 WL 4619223 (W.D.Wash. 2017) aff'd, 2019 WL
    141253 (9th Cir. Jan. 9, 2019) .................................................................27, 31

Ford v. Reynolds,
    326 F. Supp. 2d 392 (E.D.N.Y. 2004), aff'd, 167 F. App'x 248 (2d Cir. 2006) ...................24

Friedrichs v. California Teachers Assn.,
    578 U.S. ___, 136 S.Ct. 1083 (2016) (*per curiam*) .........................................4, 15

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,
    528 U.S. 167 (2000)........................................................................................8

Goldstein v. Olympus Optical Co., Inc.,
    98 A.D.2d 991 (4th Dep't 1983) ....................................................................20

Hanna v. Plumer,
    380 U.S. 460 (1965).........................................................................................9

Harper v. Virginia Dep't of Taxation,
    509 U.S. 86 (1993).........................................................................................12

Harris v. Quinn,
    134 S. Ct. 2618 (2014).......................................................................13, 14, 15, 32

Hoffman v. Inslee,
    No. 14-CV-200 (MJP), 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016) .............................15

Hosokawa v. Screen Actors Guild-American, Federation of Television and Radio,
    Artists,
    234 F. Supp. 3d 437 (S.D.N.Y. 2017).........................................................26, 27

Ifill v. New York State Court Officers Ass'n,
    655 F. Supp. 2d 382 (S.D.N.Y. 2009)......................................................21, 22, 23

Iron Arrow Honor Soc'y v. Heckler,
    464 U.S. 67 (1983) ..................................................................................................8

Janus v. AFSCME et al.,
    1:15-cv-01235, Dkt. 184 ......................................................................................12

Janus v. Am. Federation of State, Cty., and Mun. Employees, Council 31,
    585 U.S. ___, 138 S.Ct. 2448 (2018) ................................................................ *passim*

Jarvis v. Cuomo,
    No. 5:14-cv-1459, 2016 WL 278934 (N.D.N.Y. Jan. 21, 2016), aff'd 660 F.
    App'x 72 (2d Cir. 2016), cert. denied, 137 S. Ct. 1204 (2017) ...................................11, 13, 14

Jefferson Cty Bd. of Sup'rs v. New York State Public Employment Relations Bd.,
    36 N.Y.2d 534 (1975) ............................................................................................21

John Doe No. 1 v. Reed,
    697 F.3d 1235 (9th Cir. 2012) .................................................................................33, 34, 35

Johnson v. Kay,
    860 F.2d 529 (2d Cir. 1988)..................................................................................25

Jordan v. Fox, Rothschild,
    20 F.3d 1250 (3d Cir. 1994)..................................................................................13

Jund v. Town of Hempstead,
    941 F.2d 1271 (2d Cir. 1991) ................................................................................19

Kidwell v. Transp. Commc'ns Int'l,
    946 F.2d 283 (4th Cir. 1991) ................................................................................28

Komolov v. Segal,
    144 A.D.3d 487 (1st Dep't 2016) ......................................................................17, 18

Lahendro v. New York State United Teachers Ass'n,
    88 A.D.3d 1142 (3d Dep't 2011) ...........................................................................19

Lamberty v. Conn. State Police Union,
    No. 3:15-cv-378 (VAB), 2018 WL 5115559 (D. Conn. Oct. 19, 2018)...........................10, 11

Leemhuis v. New York State Public Employees Fed'n, AFL-CIO,
    121 A.D.2d 796 (3d Dep't 1986) ...........................................................................20

Lehnert v. Ferris Faculty Ass'n,
    500 U.S. 507 (1991)..............................................................................................15

Lemon v. Kurtzman,
    403 U.S. 602 (1971) (Lemon I) ............................................................................16

Lemon v. Kurtzman,
411 U.S. 192 (1973) (Lemon II) .................................................................2, 15, 16

Locke v. Karass,
555 U.S. 207 (2009).........................................................................................15

Lowe v. Feldman,
11 Misc. 2d 8 (Sup. Ct. N.Y. Cty. 1957) .......................................................26

Lugar v. Edmunson Oil Co.,
457 U.S. 922 (1982).........................................................................................12

Madden v. Atkins,
4 N.Y.2d 283 (1958) ........................................................................................19

Martin v. Curran,
303 N.Y. 276 (1951) ..............................................................................2, 19, 20

McAulay v. Bd. of Educ. of City of New York,
76 A.D.2d 779 (1st Dep't 1980) aff'd, 54 N.Y.2d 656 (1981) .............................4, 20

Metro. Opera Ass'n, Inc. v. Local 11, Hotel Emps. and Rest. Emps. Int'l Union,
239 F.3d 172 (2d Cir. 2001).............................................................................37

Minnesota State Bd. for Community Colleges v. Knight,
465 U.S. 271 (1984).........................................................................................30

Modeste v. Local 1199, Drug, Hosp. and Health Care Employees Union,
RWDSU, AFL-CIO,
850 F. Supp. 1156 (S.D.N.Y. 1994), aff'd, 38 F.3d 626 (2d Cir. 1994)...........................19, 20

Moran Towing Corp. v. Urbach,
99 N.Y.2d 443 (2003) ......................................................................................31

Morrisey v. National Maritime Union of America,
544 F.2d 19 (2d Cir. 1976)...............................................................................19

Morton v. Mulgrew,
144 A.D.3d 447 (1st Dep't 2016) ......................................................................19

NAACP v. Alabama ex rel. Patterson,
357 U.S. 449 (1958).........................................................................................34

New York State Club Ass'n, Inc. v. City of New York,
487 U.S. 1 (1988).............................................................................................31

Novella v. Westchester Cty.,
No. 02 Civ. 2192 WBM, 2004 WL 3035405 (S.D.N.Y. Dec. 29, 2004).................................25

O'Shea v. Littleton,
   414 U.S. 488 (1974)............................................................................9

Oquendo v. CCC Terek,
   111 F. Supp. 3d 389 (S.D.N.Y. 2015)..........................................28, 29

Ormiston v. Nelson,
   117 F.3d 69 (2d Cir. 1997).............................................................18

Palladino v. CNY Centro, Inc.,
   23 N.Y.3d 140 (2014) ...................................................................19

Peele v. New York City Dep't of Soc. Services/Human Res. Admin,
   No. 92 Civ. 3765, 1995 WL 728478 (S.D.N.Y. Dec. 8, 1995), aff'd 112 F.3d
   505 (2d Cir. 1996)..........................................................................23

Peil v. Beirne,
   72 A.D.3d 1095 (2d Dep't 2010) ...................................................22

People v. Newspaper & Mail Deliverers Union of New York & Vicinity,
   250 A.D.2d 207 (1st Dep't 1998) ..................................................19

Pinsky v. Duncan,
   79 F.3d 306 (2d Cir. 1996)...........................................12, 13, 15, 20

Printers II, Inc. v. Professionals Pub., Inc.,
   615 F. Supp. 767 (S.D.N.Y. 1985).................................................29

Public Emps. Federation v. Public Employment Relations Bd.,
   93 A.D.2d 910 (3d Dep't 1983)......................................................21

Rumsfeld v. Forum of Academic and Institutional Rights,
   547 U.S. 47 (2006).........................................................................34

Scheffer v. Civil Service Employees Local 828,
   610 F.3d 782 (2d Cir. 2010)...........................................................4

Shah v. Pan Am . World Servs., Inc.,
   148 F.3d 84 (2d Cir. 1998), cert. denied, 525 U.S. 1142 (1999) ...........12

Shea v. McCarthy,
   953 F.2d 29 (2d Cir. 1992).............................................................25

Smith v. Super. Ct. Cty. Of Contra Costa,
   No. 18-cv-05472-VC, 2018 WL 6072806 (N.D. Cal. Nov. 16, 2018) ........26, 27, 32

Smith v. Univ. of Wash.,
   233 F.3d 1188 (9th Cir. 2000) .......................................................11, 27

Summers v. Earth Justice Inst.,
    555 U.S. 488 (2009)..............................................................................33

Susan B. Anthony List v. Driehaus,
    573 U.S. 149 (2014)...............................................................................8

Thyroff v. Nat'l Mut. Ins. Co.,
    8 N.Y.3d 283 (2007)............................................................................18

Torres v. Lacey,
    3 A.D.2d 998 (1st Dep't 1957) ...........................................................19

Matter of United University Professions, Inc. and Barry,
    16 PERB 3040 (1983)..........................................................................21

Vector Research, Inc. v. Howard & Howard Attorneys, P.C.,
    76 F.3d 692 (6th Cir. 1996) .................................................................13

Warth v. Seldin,
    422 U.S. 490 (1975)...............................................................................9

Westchester Co. Dep't of Pub. Safety PBA v. Westchester Co.,
    35 A.D.3d 592 (2d Dep't 2006) ......................................................21, 22

Winner v. Rauner,
    15-CV-7213, 2016 WL 7374258 (N.D. Ill. 2016) .............................15

Wyatt v. Cole,
    504 U.S. 158 (1992).....................................................................2, 12, 13

Wyatt v. Cole,
    994 F.2d 1113 (5th Cir. 1993) ............................................................13

Yohn v. California Teachers Assoc.,
    No. 8:17-cv-00202-JLS-DFM, 2018 WL 5264076 (C.D. Cal. Sept. 28, 2018) .....................10

**Statutes**

42 U.S.C. §1983 .................................................................................... *passim*

N.Y. C.P.L.R. §214 ....................................................................................18

N.Y. Civ. Serv. Law §200 ..........................................................................35

N.Y. Civ. Serv. Law §202 ....................................................................21, 29

N.Y. Civ. Serv. Law §205(5)(d) .................................................................21

N.Y. Civ. Serv. Law §208(1)(b)(i) ......................................................23, 24, 30

N.Y. Civ. Serv. Law §208(3)(b) ........................................................................4, 20, 29

N.Y. Civ. Serv. Law §208(4)(a) ...........................................................................33, 37

N.Y. Civ. Serv. Law §209-a ............................................................................................21

N.Y. Civ. Serv. Law §209-a(1)(a) .................................................................................21

N.Y. Civ. Serv. Law §209-a(2)(a) .............................................................................21, 36

N.Y. General Associations Law §13.............................................................................19

**Other Authorities**

Bulletin No. 1660, Office of the State Comptroller Bureau of State Payroll
    Services (July 3, 2018)............................................................................................10

Guidance for Public-Sector Employers and Employees in New York State, New
    York Department of Labor.  Available at
    https://www.osc.state.ny.us/agencies/pbull/agencies/2017_2018/bulet1660.ht
    m. and https://www.labor.ny.gov/formsdocs/factsheets/pdfs/janus-faq.pdf (last
    visited Oct. 15, 2018)..............................................................................................10

Restatement (Second) of Contracts §17(1) ..................................................................27

## PRELIMINARY STATEMENT

Plaintiffs improperly seek to use the Supreme Court's recent decision in <u>Janus</u> to undermine the foundations of public sector labor policy in New York, rewrite New York contract law, and obtain a monetary windfall for themselves.  In taking this tack, they ask this Court to invalidate the <u>Janus</u> majority's assurances regarding the discrete scope of the decision's impact; according to the Court, "States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions."  <u>Janus v. Am. Federation of State, Cty., and Mun. Employees, Council 31</u>, 585 U.S. ___, 138 S.Ct. 2448, 2485, n.27 (2018).

Plaintiffs' claims are not justiciable and fail to state a claim as a matter of law; they should be dismissed pursuant to FRCP Rules 12(b)(1), (6), and (7).  In short, most of Plaintiffs' claims are moot; <u>Janus</u> already resolved the core constitutional issues regarding agency fees raised by Plaintiffs.  There is nothing for the Court to do prospectively.  Plaintiffs' claims for prospective relief, being moot, should be dismissed for lack of subject matter jurisdiction.  New York State United Teachers ("NYSUT") and United Teachers of Northport ("UTN") (together "Union Defendants") have already acknowledged <u>Janus</u> rendered Civ. Serv. Law §208(3)(a)-(b) and any contractual provisions authorized by it unconstitutional.  Plaintiffs are not required to pay agency fees, and there is no likelihood they will have to do so in the future, given <u>Janus</u>. Federal courts in at least four other cases asserting <u>Janus</u>-related claims for prospective relief have dismissed such claims on the same grounds.

Plaintiffs' claims for repayment of agency fees and dues under 42 U.S.C. §1983 and the tort of conversion fail to state a claim and should also be dismissed.  Union Defendants are shielded by the good faith defense from having to repay fees collected under presumptively valid state laws and decades of jurisprudence confirming that validity.  Since the Supreme Court first

articulated this analogue to qualified immunity in <u>Wyatt v. Cole</u>, 504 U.S. 158 (1992), every circuit court to analyze the good faith defense, including the Second Circuit, has applied it to private parties facing potential liability under §1983.  Moreover, equity does not favor disgorgement of fees lawfully collected at the time and since expended to benefit members and nonmembers.  <u>See</u> <u>Lemon v. Kurtzman</u>, 411 U.S. 192, 203 (1973) (plurality op.) (<u>Lemon II</u>). Were the Court to hold otherwise, it would destabilize public sector labor relations policy as well as create broad uncertainty that good faith reliance on existing law – indeed on repeated and explicit Supreme Court holdings – could later entail damages.

However, the Court need not reach these considerations as the juridical predicate for Plaintiffs' claims for conversion also fail as a matter of law.  First, Plaintiffs failed to plead that every member of Union Defendants ratified the alleged conversion, an essential predicate.  <u>See</u> <u>Martin v. Curran</u>, 303 N.Y. 276 (1951).  Second, there can be no common law liability for conduct *authorized* by a New York statute.  Indeed, Mr. Pellegrino admits he joined UTN and personally authorized dues deduction.  Third, the common law tort of conversion was, in this context, abrogated by the Public Employees Fair Employment Act (commonly, the "Taylor Law"), which granted exclusive non-delegable jurisdiction to the Public Employment Relations Board ("PERB") to hear claims based on alleged coercion in violation of public employees' right to not join a union.

Finally, Plaintiffs lack standing and fail to state a claim on their constitutional challenges to two recent amendments to the Taylor Law, and more broadly, their attack on union membership agreements.  Neither Plaintiff is a union member, nor are they harmed in any way by union membership agreements with other people.  Plaintiffs cannot bootstrap standing by asserting that the existence of agency fees coerced other employees to sign membership

contracts.  There was never a statutory compulsion to be a union member – the Taylor Law explicitly protected a worker's right to not join.

Further, Plaintiffs lack standing and fail to state a claim that their First Amendment rights are infringed by Civ. Serv. Law §208(4), which fixes the time within which public employers must provide a union with contact information for new or returning bargaining unit members. Plaintiffs are long-term employees whose contact information is known by their respective local unions and have not articulated any particularized harm or injury from the amendment.

### STATEMENT OF FACTS

Plaintiffs filed this putative class action seeking: (1) a declaration that N.Y. Civ. Serv. Law §§208(1)(b)(i), 208(3)(a)-(b), and 208(4)(a) are unconstitutional under the First Amendment; (2) an injunction against further collection of agency fees; and (3) repayment of agency fees and allegedly "coerced" membership dues under 42 U.S.C. §1983 and the New York common law tort of conversion.  Mr. Pellegrino and Ms. VanOstrand are public employees under the Taylor Law and are employed as public school teachers by the Northport-East Northport Union Free School District ("Northport") and Union Endicott Central School District ("Union Endicott"), respectively.  Comp. ¶¶12; 17.  Mr. Pellegrino was a dues paying member of UTN, and, through UTN's affiliation with NYSUT, a member of NYSUT.  Comp. ¶¶12-14.  Mr. Pellegrino resigned his membership from UTN after he commenced this action.  See Declaration of Stacey Weisberg, dated January 17, 2019 ("UTN Decl.") ¶12.  Ms. VanOstrand was an agency fee payer nonmember of the Endicott Teachers Association ("ETA"), another NYSUT local affiliate union.  See Declaration of Jennifer Stevenson, dated January 17, 2019 ("ETA Decl.") ¶12.  Union Endicott and ETA are not parties to this action.

3

Mr. Pellegrino purports to represent a proposed class of current or former employees of the State of New York or any of its subunits who were allegedly "threatened" or coerced into electing union membership by New York's agency fee law.  Comp. ¶¶ 35-42.  Ms. VanOstrand purports to represent a proposed class of current or former employees of the State of New York or any of its subunits who paid agency fees to NYSUT or NYSUT affiliated organizations. Comp. ¶¶27-34.

**Historic Constitutionality of Agency Fees**

From 1977 until June 27, 2018, the Supreme Court decision in <u>Abood v. Detroit Bd. of Educ.</u>, 431 U.S. 209 (1977), permitted public sector unions under the First Amendment to collect agency fees from nonmembers to contribute to the cost of collective bargaining, contract administration and grievance adjustment.  The Supreme Court re-affirmed <u>Abood</u> on numerous occasions, most recently by an evenly divided Court in <u>Friedrichs v. California Teachers Assn.</u>, 578 U.S. ___, 136 S.Ct. 1083 (2016) (*per curiam*).

Relying on <u>Abood</u>, New York permitted public employers, including school districts, to enter into agency fee arrangements with the certified or recognized employee organization whereby the employer deducted the fees from the wages of nonmember employees and transmitted such fees to the employee organization.  N.Y. Civ. Serv. Law §208(3)(b).  Only certified or recognized employee organizations with established procedures to refund nonmember employees a proportional share of expenditures used in aid of activities or causes of a political or ideological nature could receive agency fees.  N.Y. Civ. Serv. Law §208(3)(b). New York's agency fee statute was constitutional under <u>Abood</u>.  See <u>McAulay v. Bd. of Educ. of City of New York</u>, 76 A.D.2d 779, 779 (1st Dep't 1980) <u>aff'd</u>, 54 N.Y.2d 656 (1981); <u>see also</u> <u>Scheffer v. Civil Service Employees Local 828</u>, 610 F.3d 782, 793 (2d Cir. 2010) (holding that

union's "constellation of procedures" to refund monies spent on political or ideological activities under §208 were constitutional).  On June 27, 2018, the Supreme Court overruled <u>Abood</u> and held that the First Amendment prohibits public employers from withholding agency fees from nonmember public employees' wages without an employee's prior written consent.  <u>Janus</u>. 138 S. Ct. at 2486.  Union Defendants, as well as Ms. VanOstrand's union and employer all immediately complied with <u>Janus</u>.

**Relationships Among the Parties**

NYSUT is a statewide federation of more than 1,300 local affiliate unions representing bargaining unit members employed by school districts, colleges, universities, health care institutions and other public and private sector employers.  <u>See</u> Declaration of Jeffrey J. Lockwood, dated January 20, 2019 ("NYSUT Decl.") ¶5.  NYSUT is an unincorporated association and has approximately 670,000 active and retired members.  <u>Id.</u>  To benefit its members, NYSUT provides local affiliates with a spectrum of services and benefits related to, among other things, advice, guidance, and support for collective bargaining and compliance with federal, state, and local laws and regulations.  <u>Id.</u> ¶8.

NYSUT is not the certified or recognized employee organization for any public employee within the meaning of the Taylor Law, and it does not have a collective bargaining relationship with any public employer.  <u>Id.</u> ¶¶9-10.  Instead, NYSUT affiliates have collective bargaining relationships with public employers.  On the day the Supreme Court issued <u>Janus</u>, NYSUT sent notices to public employers, including Northport and Union Endicott, to immediately cease agency fee deduction from nonmembers to assist its local affiliates' compliance with <u>Janus</u>.  <u>Id.</u> ¶¶16-17.

UTN is an employee organization under the Taylor Law, and is the recognized exclusive collective bargaining representative for the bargaining unit including teachers employed by Northport.  UTN Decl.¶4.  UTN is an unincorporated association, and has approximately 1,114 active and retired members.  Id. ¶5.  UTN's members are NYSUT members.  Id.  For at least three years before Janus, UTN had no agency fee payers.  Id. ¶11.  UTN and Northport are parties to a collective bargaining agreement ("UTN-Northport CBA").  Comp. ¶14, Ex. 2; UTN Decl.¶4.  Although the UTN-Northport CBA provides for agency fees, UTN disclaimed the right to enforce that provision post-Janus.  UTN Decl.¶19.  It is UTN's understanding that Northport will not intentionally deduct agency fees from any nonmember's wages post-Janus.  Id. ¶20. Should UTN receive agency fees in error, it will refund the amounts.  Id.¶21.

Northport employs Mr. Pellegrino as a teacher, and he is part of the bargaining unit represented by UTN.  UTN Decl.¶¶4, 12.  For approximately 23 years, Mr. Pellegrino was a dues paying UTN member.  UTN Decl. ¶12; see also Comp. ¶12.  Despite his alleged political opposition to UTN and NYSUT, and having no legal requirement to do so, Mr. Pellegrino joined UTN because, in the words of the Complaint, "the difference in money between the full membership dues and the 'agency fees' would not have been worth the loss of his vote and whatever little influence he might be able to exert in collective-bargaining matters."  Comp. ¶13. The Complaint lacks any allegation that UTN, or any UTN representative, threatened Mr. Pellegrino or otherwise coerced him to join the union.  UTN has had Mr. Pellegrino's contact information, including his home address, during his entire membership.  UTN Decl.¶15.  After Janus, and Union Defendants' request for a pre-motion conference on August 27, 2018, Mr. Pellegrino e-mailed Stacey Weisberg, UTN President, and Northport, to resign his membership. Id. ¶12.  Upon receipt of Mr. Pellegrino's e-mail, UTN terminated his membership, and notified

Northport to cease dues deduction. Id. ¶¶13-14. Mr. Pellegrino has not paid membership dues or any other monies to UTN since he resigned. Id. ¶13.

UTN does not represent Ms. VanOstrand's bargaining unit and has had no relationship, nor collected any monies, from her. Id. ¶16. Further, UTN does not have Ms. VanOstrand's contact information, and is ineligible to receive it from her employer under the Taylor Law. See id.

Non-party ETA is an employee organization under the Taylor Law and is the certified exclusive collective bargaining representative for the bargaining unit including teachers employed by Union-Endicott. ETA Decl. ¶4. ETA is an unincorporated association, and has approximately 740 active and retired members. Id. ¶5. ETA's members are NYSUT members. Id. ETA and Union Endicott are parties to a collective bargaining agreement ("ETA-Union Endicott CBA"). Id. ¶4. Union Endicott employs Ms. VanOstrand as a teacher, and she is part of the bargaining unit represented by ETA. Id. ¶¶12-13, 19. ETA has known Ms. VanOstrand's contact information, including her home address for years. Id. ¶19. Ms. VanOstrand never joined ETA. Id. ¶13. She does not allege that ETA, or any ETA representative, threatened or otherwise attempted to coerce her to join the union.

Before Janus, under Abood and New York law, Union Endicott deducted agency fees from Ms. VanOstrand's wages. Id. ¶¶10, 12, 15. However, ETA immediately complied with the Janus decision when it was issued and disclaims any right to enforce agency fees post-Janus. Id. ¶¶11, 21. ETA's understanding is that Union Endicott will not deduct agency fees from nonmembers. Id. ¶22. ETA will refund any future agency fees inadvertently transferred from nonmembers without prior written consent in compliance with Janus. Id. ¶23.

7

By e-mail, dated June 29, 2018, Ms. VanOstrand notified ETA's co-presidents, that given Janus, she wanted no further "union dues," referring to her agency fees, deducted from her paycheck.  Id. ¶14.  ETA responded to Ms. VanOstrand that Union Endicott had been instructed to immediately stop deducting agency fees from nonmembers, specifically Ms. VanOstrand.  Id. ¶17.  Ms. VanOstrand replied to ETA, thanked the co-president, and stated "[s]ounds like it is all taken care of –wonderful!"  Id. ¶ 18.  ETA has received no agency fees from Ms. VanOstrand or any other nonmember post-Janus.  Id. ¶20.  Before the Janus decision, Ms. VanOstrand was the sole nonmember agency fee payer to ETA.  Id. ¶¶12, 15.

## ARGUMENT

The Court lacks subject matter jurisdiction over most of Plaintiffs' claims because they are moot or nonjusticiable under Article III of the United States Constitution, which "limits the jurisdiction of federal courts to 'Cases' and 'Controversies'".  See Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014) (citing Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013)).  A case is nonjusticiable if the plaintiff's claims are moot, Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983), or if the plaintiff lacks standing to bring them, Clapper, 568 U.S. at 408.  Where "a dispute is not a proper case or controversy, the courts have no business deciding it."  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006).

Plaintiffs must establish justiciability "separately for each form of relief sought."  See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 185 (2000).  Here, nearly every claim is either moot or unripe, or Plaintiffs lack standing to bring it.

Plaintiffs' remaining claims should be dismissed for failure to state a claim.  To defeat a FRCP Rule 12(b)(6) motion, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is

plausible when it has "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  A plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." Iqbal, 556 U.S. at 678.  If Plaintiffs have not "nudged their claim across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.  A court must accept as true the allegations in the complaint, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

A federal court exercising supplemental or diversity jurisdiction applies this pleading standard to claims under both state and federal law.  See Hanna v. Plumer, 380 U.S. 460, 465 (1965); Cooper v. New York State Dep't of Labor, 819 F.3d 678, 680 (2d Cir. 2016) (applying federal pleading standards to retaliation claims under the New York State Human Rights Law).[1]

## I.  PLAINTIFFS' CLAIMS FOR PROSPECTIVE RELIEF ARE MOOT BECAUSE AGENCY FEES ENDED AFTER JANUS

Plaintiffs' claims for declaratory and injunctive relief are moot.  Janus definitively held that the First Amendment prohibits agency fees in the public sector.  See Janus, 138 S. Ct. at 2486 ("Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the

---

[1] It is immaterial that this case was brought as a putative class action, because Plaintiffs must allege "that they personally have been injured, not that injury has been suffered by other, unidentified members of the class." See Warth v. Seldin, 422 U.S. 490, 502 (1975) ("Unless these petitioners can thus demonstrate the requisite case or controversy between themselves personally and respondents, 'none may seek relief on behalf of himself or any other member of the class.'" (internal citations omitted)); see also O'Shea v. Littleton, 414 U.S. 488, 494 (1974) (if named plaintiffs cannot "establish[] the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").

employee affirmatively consents to pay.").  Union Defendants do not dispute that.  There is no live controversy about future agency fees.

Immediately after <u>Janus</u>, UTN and ETA ceased implementation of any agency fee provisions, as did their respective public employers.  <u>See</u> UTN Decl. ¶¶18-19; ETA Decl. ¶¶20-21.  Neither Plaintiff has had agency fees deducted post-<u>Janus</u>.[2]  Moreover, there is no likelihood either Plaintiff will have agency fees deducted in the future.  In fact, it is the explicit policy of New York State that agency fees are no longer constitutional and will not be collected, given <u>Janus</u>.[3]

Recently, other courts considering near-identical post-<u>Janus</u> challenges have relied on declarations and state policy changes, like those presented here, to find that similar claims are moot.  <u>See</u>, <u>e.g.</u>, <u>Danielson v. Inslee</u>, No. 3:18-cv-05206-RJC, 2018 WL 3917937, at *2 (W.D. Wash. Aug. 16, 2018) (<u>Danielson I</u>) (in considering mootness "courts may consider evidence beyond the Complaint without converting the motion into one for summary judgment" (citing <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000)); <u>Danielson v. Am. Fed. of State, Cty. And Mun. Employees, Council 28, AFL-CFO</u>, 340 F. Supp. 3d 1083, 1085-86 (W.D.Wash. 2018) (<u>Danielson II</u>) (accord); <u>Yohn v. California Teachers Assoc.</u>, No. 8:17-cv-00202-JLS-DFM, 2018 WL 5264076 at *4 (C.D. Cal. Sept. 28, 2018) (same); <u>Lamberty v. Conn. State Police Union</u>, No. 3:15-cv-378 (VAB), 2018 WL 5115559 (D. Conn. Oct. 19, 2018).

---

[2] <u>See</u> Point II.B., <i>infra</i> for discussion about Mr. Pellegrino, who never paid agency fees because he was a member.

[3] On July 3, 2018, the New York State Comptroller's Office issued Bulletin Number 1660 "[t]o notify agencies of the discontinuance of Agency Shop Fee deductions."  <u>See</u> Bulletin No. 1660, Office of the State Comptroller Bureau of State Payroll Services (July 3, 2018).  Similarly, the New York State Department of Labor has stated that "[e]mployees who do not join the union cannot be required to pay fair-share fees."  <u>See</u> Guidance for Public-Sector Employers and Employees in New York State, New York Department of Labor.  Available at https://www.osc.state.ny.us/agencies/pbull/agencies/2017_2018/bulet1660.htm. and https://www.labor.ny.gov/formsdocs/factsheets/pdfs/janus-faq.pdf (last visited Oct. 15, 2018).,), respectively.

The "voluntary cessation" exception to the mootness doctrine does not apply here. When a defendant changes its position in response to a change in the law, the cessation of the challenged conduct is not considered "voluntary" for mootness analysis.  See Smith v. Univ. of Wash., 233 F.3d 1188, 1194-95 (9th Cir. 2000).  That is true whether the change of position is in response to a newly enacted statute, or the result of a judicial decision.  See Aikens v. California, 406 U.S. 813 (1972) (*per curiam*); Christian Coalition v. Cole, 355 F.3d 1288, 1292-93 (11th Cir. 2004).  Janus changed the legal landscape regarding agency fees.  See Christian Coalition, 355 F.3d at 1292-93.  UTN and ETA responded to that change by immediately ceasing the collection of agency fees.  It cannot reasonably be said that the collection of such fees is likely to resume.  See Danielson II, 340 F. Supp. 3d at 1084 (dismissing agency fee claims against union defendants as moot and noting that it had dismissed all claims against state defendants on the same grounds (citing Danielson I, 2018 WL 3917937, at *2-4); see also Lamberty, 2018 WL 5115559, at *9 (holding that claim was moot because, post-Janus, "[t]he law of the land thus changed and there no longer is a legal dispute as to whether public sector unions can collect agency fees.  They cannot.").

Further, "[i]t is unreasonable to think that the Union would resort to conduct" – even if it had the power to do so unilaterally – "that it had admitted in writing was constitutionally deficient and had attempted to correct." Carlson v. United Academics, 265 F.3d 778, 786 (9th Cir. 2001); Jarvis v. Cuomo, No. 5:14-cv-1459, 2016 WL 278934, at *3 (N.D.N.Y. Jan. 21, 2016) (accord), aff'd 660 F. App'x 72 (2d Cir. 2016) (summary order), cert. denied, 137 S. Ct. 1204 (2017).

II.   **PLAINTIFFS' FEDERAL CLAIM FOR REPAYMENT OF
      PRE-JANUS AGENCY FEES FAILS AS A MATTER OF LAW**

   A.   **Union Defendants Cannot Be Liable for the Repayment of
        Agency Fees Collected in Good Faith Based Upon a Presumptively
        Valid Statute and Forty Years of Supreme Court Jurisprudence**

Private parties have a good faith defense to §1983 liability.  Lugar v. Edmunson Oil Co.,

457 U.S. 922 (1982), and Wyatt, 504 U.S. 158.[4]  The good faith defense bars Plaintiffs' claims

for repayment of agency fees and member dues collected before Janus in reliance on forty years

of universally recognized controlling precedent and adherence to presumptively valid New York

statutes.[5]  See Wyatt, 504 U.S. at 174 (Kennedy, J., concurring) ("a private individual's reliance

on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a

matter of law"); Pinsky v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996) (denying §1983 claim, given

good faith defense, since "it is objectively reasonable to act on the basis of a statute not yet held

invalid").

In Lugar, the Court held that private actors could be held liable, along with government

counterparts, for violations of §1983.  While the Wyatt Court held qualified immunity not

available to private parties sued under §1983, "private defendants faced with §1983 liability

pursuant to [Lugar], could be entitled to an affirmative defense based on good faith and/or

probable cause[.]" Wyatt, 504 U.S. at 169.  There, the Court recognized that "principles of

equality and fairness may suggest . . . that private citizens  . . . should have some protection from

---

[4]  Plaintiffs allege state action by the Union Defendants.  While the Union Defendants are comprised of public
employees, both Union Defendants are private entities and do not concede status as state actors.  However, solely for
the purposes of this motion, Union Defendants do not challenge the assertion that the collection of agency fees was
done under color of state law.

[5]  Plaintiffs presume retroactive application of Janus to agency fees paid pre-Janus.  However, Supreme Court
decisions do not necessarily have general retroactive effect.  See Harper v. Virginia Dep't of Taxation, 509 U.S. 86,
90 (1993); Shah v. Pan Am . World Servs., Inc., 148 F.3d 84, 91 (2d Cir. 1998), cert. denied, 525 U.S. 1142 (1999)
(finding no presumptive retroactivity, and applying the Chevron Oil factors).  The Janus defendants themselves have
noted this on remand.  See Janus v. AFSCME et al., 1:15-cv-01235, Dkt. 184, at 2 n.1.  Nonetheless, solely for
purposes of this motion, Union Defendants assume Janus applies retroactively.

liability, as do their government counterparts," when acting under a presumptively valid law.  Id. at 168.  Then, on remand, the Fifth Circuit allowed defendants to invoke a good faith defense to §1983 liability for reliance on a state attachment statute because (1) they did not know and should not have known that the statute was unconstitutional; and (2) there was no evidence of malice.  See Wyatt v. Cole, 994 F.2d 1113, 1118 (5th Cir. 1993).

Since Wyatt, every circuit court to analyze the applicability of the good faith defense has held that it applies to private parties facing potential liability under §1983.  See, Jarvis, 660 F. App'x 72 (applying the good faith defense in the First Amendment context to agency fee claims post Harris v. Quinn, 134 S. Ct. 2618 (2014)); Clement v. City of Glendale, 518 F.3d 1090 (9th Cir. 2008) (applying the good faith defense to the search and seizure context); Pinsky, 79 F.3d 306 (applying the good faith defense in the attachment context); Vector Research, Inc. v. Howard & Howard Attorneys, P.C., 76 F.3d 692 (6th Cir. 1996) (applying the good faith defense in search and seizure context); Jordan v. Fox, Rothschild, 20 F.3d 1250 (3d Cir. 1994) (applying the good faith defense to a Sixth Amendment violation).

This Court would not be the first to consider – and deny – a demand for reimbursement of agency fees under the good faith defense post-Janus.  The Western District of Washington recently dismissed a similar claim under the good faith defense in Danielson II, 340 F. Supp. 3d at 1083.  The court reasoned that "[t]here is ample authority for the good faith defense to apply in this case," and cited Wyatt, Clement, Pinsky, Vector, and Jordan.  See id. at 1085.  The court found that "[w]hen engaging in bargaining representation and other pro-union activities funded by Plaintiffs' agency fees, the Union Defendant followed the then-applicable laws, because prior to Janus, collection and use of compelled agency fees was lawful."  See id.  Rather, "[t]he constitutional defect – compelling collection of agency fees used for political or ideological

activities and contrary to Plaintiffs' beliefs – could not have been identified by the Union

Defendant, because although the Supreme Court hinted at overruling Abood, it did not explicitly

so determine until Janus." Id.

Similarly, following Harris v. Quinn, 134 S. Ct. 2618 (2014), multiple suits were brought

across the nation seeking retroactive agency fee reimbursement for employees in the quasi-public

sector. None has been successful, including in the Second Circuit. See Jarvis, 660 F. App'x at

75-76.

In Jarvis, the district court found that the good faith defense precluded union liability for

pre-Harris agency fee collection, where "the record indicates that [the union] acted in good faith

when relying on the validly enacted state legislation that authorized the fair share fee as well as

prior Supreme Court precedent[.]" See No. 5:14-cv-1459 (LEK/TWD), 2016 WL 278934, at *5

(N.D.N.Y. Jan. 21, 2016). The court stated that "[a] private individual's reliance on a statute,

prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of

law." Id. (citing Wyatt, 504 U.S. at 174; Pinsky, 79 F.3d at 313).

The Second Circuit affirmed, reasoning that the court "correctly determined that [union]

was here entitled to a good faith defense," as the union "relied on a validly enacted state law and

the controlling weight of Supreme Court precedent." See Jarvis, 660 F. App'x at 75-76

("Because it was objectively reasonable for CSEA 'to act on the basis of a statute not yet held

invalid,' defendants are not liable for damages stemming from the pre-*Harris* collection of fair

share fees." (internal citations omitted)), cert. denied, 137 S. Ct. 1204 (2017). The Second

Circuit rejected the plaintiffs' argument "that a good faith defense cannot apply where, as here,

the underlying constitutional tort does not contain a scienter element," because "affirmative

defenses need not relate to or rebut specific elements of an underlying claim." See id. at 75. See

also, Winner v. Rauner, 15-CV-7213, 2016 WL 7374258 (N.D. Ill. 2016) (applying the good

faith defense for quasi-public home daycare fee payers' claims under §1983); Hoffman v. Inslee,

No. 14-CV-200 (MJP), 2016 WL 6126016, at *5 (W.D. Wash. Oct. 20, 2016).

   Winner v. Rauner presented a near-identical situation.  There, the court reasoned:

> [the union's] reliance on relevant precedent was reasonable. Any
> subjective belief it could have had that the precedent was wrongly
> decided and should be overturned would have amounted to
> telepathy. Therefore, the pleadings are a sufficient basis to
> conclude that the affirmative good-faith defense applies to [the
> union] as a matter of law.

See No. 15 CV 7213, 2016 WL 7374258, *5 (N.D. Ill. Dec. 20, 2016).

   Despite contentions that public sector unions should have been on notice of Abood's

unconstitutionality due to *dicta* in Harris, "[e]very statute should be considered valid until there

is a judicial determination to the contrary."  Pinsky, 79 F.3d at 313.  Where, as here, Abood was

not only the law of the land for forty years, but was also *reaffirmed* multiple times, see, e.g., Ellis

v. Bhd. Of Ry. Clerks, 466 U.S. 435 (1984); Chicago Teachers Union v. Hudson, 475 U.S. 292

(1986); Lehnert v. Ferris Faculty Ass'n, 500 U.S. 507 (1991); Locke v. Karass, 555 U.S. 207

(2009), Harris, 134 S. Ct. 2618; Friedrichs, 136 S.Ct. 1083,[6] it was objectively reasonable – if

not simply common sense – for Union Defendants to rely on its on legality.

   In addition to the good faith defense, the Supreme Court has held that good faith reliance

on presumptively valid statutes "weigh[s] heavily" when considering equitable relief.  See

Lemon II, 411 U.S. at 203.  Here, Union Defendants' good faith reliance should preclude

Plaintiffs' request for the repayment of agency fees.  See Comp. ¶45(g)

---

[6] Notably, while Harris criticized Abood, the Court refrained from overruling it in the public sector context.
Additionally, Friedrichs was affirmed by an evenly-divided court following the death of the honorable Justice
Antonin Scalia.  This *per curiam* affirmation only underscores the inability of the Union Defendants – or any entity
– to predict when or if the Supreme Court may reverse prior constitutional precedent.

In Lemon v. Kurtzman, 403 U.S. 602 (1971) (Lemon I), the Court held that a Pennsylvania statute authorizing state funding for parochial schools violated the Establishment Clause.  In Lemon II, the district court denied injunctive relief barring Pennsylvania from reimbursing schools for services performed before the Lemon I ruling.  The Supreme Court affirmed, reasoning that "reliance interests weigh heavily in the shaping of an appropriate equitable remedy."  Lemon II, 411 U.S. at 203.  The Court further reasoned that the schools had incurred expenses in reliance on the now-defunct state statute, and that "state officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful."  See id. at 209.

Lemon II is directly on point.  Monies were collected and spent in reliance on a presumptively valid state statute, which Union Defendants recognize violates the First Amendment given Janus.  Any equitable rights Plaintiffs may have to the disgorgement of agency fees are heavily outweighed by the Union Defendants' reliance on decades of Supreme Court precedent and state law.  To hold otherwise would cause chaos, for private entities would need live in constant fear of liability stemming from good faith adherence to statute.

Finally, to the extent Plaintiffs also seek the repayment of member dues (not agency fees) under 42 U.S.C. §1983, that claim also fails because member dues were collected pursuant to valid member contracts, not under color of any compulsory law.  As discussed further in Section IV.B, infra union membership is a contract among private parties, not compelled by any law.  Accordingly, Plaintiff Pellegrino cannot state a claim on behalf of union members for the relief sought.

16

**B.      No Plaintiff Can Assert a Claim For Agency Fees Against
          Any Defendant, Because Plaintiffs Failed to Name Necessary Parties**

In any event, neither Plaintiff has standing to assert claims as an agency fee payer against

any Defendant.  Mr. Pellegrino was never an agency fee payer.  Comp. ¶13.  He withdrew his

union membership well after <u>Janus</u> and never paid agency fees after withdrawal.  UTN Decl.

¶¶12-13.  Mr. Pellegrino can make no claims regarding agency fees.  Ms. VanOstrand was an

agency fee payer, but she failed to name or obtain jurisdiction over either her employer or her

local union as defendants.  While ETA is a NYSUT affiliate, that is a distinct contractual

relationship between ETA and NYSUT.  <u>See</u> NYSUT Decl. ¶7; ETA Decl. ¶6).  NYSUT and

ETA are separate entities, and suing one does not result in jurisdiction over the other.  NYSUT is

also not Mr. VanOstrand's bargaining representative, not a party to the ETA-Union Endicott

CBA, and did not receive any agency fees for Ms. VanOstrand from Union Endicott (or

Northport).  <u>NYSUT Decl.</u>, at ¶¶9-10, 12-13.  Neither Mr. Pellegrino nor Ms. VanOstrand can

state a claim for the deduction of agency fees against either Union Defendant.


**III.     THE COMPLAINT FAILS TO STATE A CLAIM FOR THE
          TORT OF CONVERSION UNDER NEW YORK COMMON LAW**

**A.      Plaintiffs' Conversion Claim is Duplicative of,
          and Subsumed Within, Their First Amendment Claim**

Plaintiffs' artful pleading of a tort law claim to avoid the good faith defense fails.  Since

the underlying bases for the conversion claim are identical to those supporting their First

Amendment action, Plaintiffs' tort law claim fails as duplicative of their §1983 claim.

Under New York law, where allegations supporting conversion are the same as those

underlying other faulty claims, the conversion claim is duplicative, and should be dismissed.

<u>See</u>, <u>e.g.</u>, <u>Komolov v. Segal</u>, 144 A.D.3d 487, 488 (1st Dep't 2016) (holding that claims for

conversion "were duplicative of underlying, unenforceable contractual claims and thus

17

constituted an impermissible attempt to circumvent the statute of frauds" (internal citations

omitted)); Calastri v. Overlock, 125 A.D.3d 554, 555 (1st Dep't 2015) (dismissing conversion

counterclaim "as it was duplicative of [parties'] trespass to chattel counterclaim, as the former

arose from the same facts as the latter and alleges the same damages" (internal citation omitted)).

The crux of Plaintiffs' conversion claim is a First Amendment violation stemming from

compelled speech – i.e., agency fee payments.  Yet, as argued supra, that §1983 action fails,

dooming the conversion claim.[7]

### B.    Plaintiffs Have Failed to Satisfy the "Martin Rule" and Cannot Allege a Conversion Claim Against Union Defendants Under New York Law

The tort of conversion is an intentional tort under New York common law.  See Thyroff

v. Nat'l Mut. Ins. Co., 8 N.Y.3d 283 (2007); Colavita v. New York Organ Donor Network, Inc.,

8 N.Y.3d 43 (2006).  Conversion occurs "when someone, intentionally and without authority,

assumes or exercises control over personal property belonging to someone else, interfering with

that person's right of possession."  Colavita, 8 N.Y.3d at 49-50 (citing State of New York v.

Seventh Regiment Fund, 98 N.Y.2d 249 (2002)) (emphasis added).  The statute of limitations for

conversion is three years.  N.Y. C.P.L.R. §214.[8]

Union Defendants are unincorporated associations.  To succeed on a conversion claim

against Union Defendants, Plaintiffs must plausibly plead and prove that every member of the

respective unincorporated associations ratified the alleged conversion.  See Martin v. Curran,

---

[7] Because Mr. Pellegrino and the class he seeks to represent voluntarily paid dues under a binding membership agreement (see discussion infra at IV.B.), they also cannot state a claim for conversion.  See ESI, Inc. v. Coastal Power Prod. Co., 995 F. Supp. at 419, 433  (S.D.N.Y. 1998); Komolov, 144 A.D. at 488.

[8]  While Plaintiffs seek retroactive disgorgement of agency fees and member dues seemingly ad infinitum, the statute of limitations would bar recovery of any monies deducted prior to June 13, 2015-- three years before this suit was filed.  The same limitations period would apply to Plaintiffs' claims under §1983.  Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997).

303 N.Y. 276 (1951).  In <u>Martin</u>, a libel case against an unincorporated association (a labor union

like NYSUT, UTN and non-party ETA), the Court of Appeals, interpreting N.Y. General

Associations Law §13, held that an action against an unincorporated association, or its officers,

could not be maintained if it is not pleaded and proven that each individual member of the

unincorporated association authorized or ratified the action complained of.  <u>Id.</u> at 280.  It does

not matter whether the claim arises out of contract or tort.  <u>Id.</u> at 281-82.  <u>See</u> <u>also</u> <u>Lahendro v.</u>

<u>New York State United Teachers Ass'n</u>, 88 A.D.3d 1142 (3d Dep't 2011).  The New York Court

of Appeals recently reaffirmed <u>Martin</u> in <u>Palladino v. CNY Centro, Inc.</u>, 23 N.Y.3d 140 (2014).

<u>See</u> <u>also</u>, <u>Morton v. Mulgrew</u>, 144 A.D.3d 447, 448 (1st Dep't 2016).[9]

    Federal courts have a long history of applying the <u>Martin</u> rule for intentional tort claims

under New York law.  <u>See</u> <u>Morrisey v. National Maritime Union of America</u>, 544 F.2d 19, 33

(2d Cir. 1976); <u>Modeste v. Local 1199, Drug, Hosp. and Health Care Employees Union,</u>

<u>RWDSU, AFL-CIO</u>, 850 F. Supp. 1156, 1158 (S.D.N.Y. 1994), <u>aff'd</u>, 38 F.3d 626 (2d Cir.

1994).  In <u>Modeste</u>, then Judge Sotomayor noted that <u>Jund v. Town of Hempstead</u>, 941 F.2d

1271, 1281 (2d Cir. 1991), holding <u>Martin</u> rule inapplicable to §1983 claims, applied solely to

federal claims, and reaffirmed that the plaintiffs could not be "granted greater state substantive

rights because they sued in federal court instead of state court."  <u>Modeste</u>, 850 F. Supp. at 1167.

The court further noted that "[u]nquestionably, New York's Martin rule imposes an onerous and

almost insurmountable burden on individuals seeking to impose liability on labor unions."  <u>Id.</u>  at

1168.  But the court stated that it "is in no position to question the wisdom of the New York

Court of Appeals in <u>Martin</u>[,]" and dismissed the state law claims.  <u>See</u> <u>id.</u>

---

[9]  There exist narrow exceptions to the <u>Martin</u> rule not present here.  <u>See</u>, <u>e.g.</u>, <u>Madden v. Atkins</u>, 4 N.Y.2d 283, 296 (1958) (claims involving expulsion from a union); <u>Torres v. Lacey</u>, 3 A.D.2d 998 (1st Dep't 1957) (unintentional torts); <u>People v. Newspaper & Mail Deliverers Union of New York & Vicinity</u>, 250 A.D.2d 207, 214 (1st Dep't 1998) (statutory claims).

Under <u>Twombly</u> and <u>Iqbal</u>, Plaintiffs must plausibly allege that every member of NYSUT and UTN ratified the alleged conversion of their property to satisfy <u>Martin</u>.  The Complaint lacks any such allegation and the conversion claim should be dismissed.

### C.     The Complaint Further Fails to State A Plausible Claim for the Tort of Conversion Under New York Common Law Because <u>Pre-Janus Deductions Were Authorized Under Presumptively Valid Law</u>

Union Defendants cannot be held liable under New York common law for following a New York statute.  <u>See</u> <u>Bradley v. Roe</u>, 282 N.Y. 525 (1940) (estate administrator did not convert stock certificates when it turned over the same to the court under the Surrogate's Court Act); <u>Goldstein v. Olympus Optical Co., Inc.</u>, 98 A.D.2d 991 (4th Dep't 1983) (party acting consistent with statute not liable for conversion).  Plaintiffs have not plausibly alleged that their respective agency fees or membership dues were transferred to Union Defendants without authority under New York law.  Plaintiffs concede that agency fees transferred pre-<u>Janus</u> were authorized by N.Y. Civ. Serv. Law §208(3)(b).  Comp. ¶¶ 20-21.  Additionally, as argued in Section IV.B. *infra*, Mr. Pellegrino cannot plausibly allege that transfer of membership dues was unauthorized, for his membership constituted a contractual relationship.

As the Second Circuit remarked in <u>Pinsky,</u> "[t]here is common law authority that it is objectively reasonable to act on the basis of a statute not held invalid."  79 F.3d 306, 313 (2d Cir. 1996) (citing <u>Birdsall v. Smith</u>, 158 Mich. 390 (1909)).  Until <u>Janus</u>, the agency fees transferred under N.Y. Civ. Serv. Law §208(3)(b) were consistently held constitutional by New York courts. <u>See</u>, <u>e.g.</u>, <u>McAulay</u>, 76 A.D.2d 779 (regarding agency fee deductions for school district employees like Plaintiffs); <u>Leemhuis v. New York State Public Employees Fed'n, AFL-CIO</u>, 121 A.D.2d 796, 798 (3d Dep't 1986) (regarding N.Y. Civ. Serv. Law §208(3)(a), applicable to state

employees).  Therefore, any agency fees collected pre-<u>Janus</u> was with authority, under a then-valid statute and not actionable as conversion.

**D.      This Court Lacks Subject-Matter Jurisdiction Over
         Plaintiffs' State Law Claims Based on PERB's Exclusive and
         <u>Nondelegable Jurisdiction Over Alleged Violations of The Taylor Law</u>**

The Taylor Law vests exclusive jurisdiction in PERB to determine whether public

employers, including school districts, or unions violate public employees' Taylor Law rights

under the Act and, if so, what the appropriate remedy shall be.  <u>See</u> Civil Service Law

§§205(5)(d) and 209-a; <u>see also</u> <u>Jefferson Cty Bd. of Sup'rs v. New York State Public</u>

<u>Employment Relations Bd.</u>, 36 N.Y.2d 534, 538 (1975); <u>Bd. of Educ., Cent. School Dist. No. 1</u>

<u>of Town of Grand Island v. Helsby</u>, 37 A.D.2d 493, 498 (4th Dep't 1971), <u>aff'd</u>, 32 N.Y.2d 660

(1973).  Even where the plaintiff has not expressly alleged a Taylor Law violation, courts have

dismissed claims that, if proven, would constitute an improper practice under the Taylor Law.[10]

<u>See</u> <u>Westchester Co. Dep't of Pub. Safety PBA v. Westchester Co.</u>, 35 A.D.3d 592 (2d Dep't

2006).

In <u>Westchester County</u>, New York's Appellate Division, Second Department, dismissed

claims despite the plaintiff's protest that it had not alleged an improper practice.  The court found

that the complaint, nonetheless, made out an improper practice charge under the Taylor Law:

---

[10]  N.Y. Civ. Serv. Law §202 provides that public employees have the right to refrain from forming, joining or participating in, any employee organization.  N.Y. Civ. Serv. Law §209-a(1)(a) and 2(a) expressly prohibit public employers and employee organizations from engaging in conduct to coerce public employees in the exercise of such rights.  The declaratory relief sought and the authority to order the refund for allegedly coerced dues in derogation of Taylor Law rights is within PERB's exclusive authority and expertise.  <u>See</u> N.Y. Civ. Serv. Law §205(5)(d); <u>Public Emps. Federation v. Public Employment Relations Bd.</u>, 93 A.D.2d 910, 912 (3d Dep't 1983) (noting that "[r]emedies for improper practices are peculiarly within the administrative competence of PERB"); <u>see also</u> <u>Ifill v. New York State Court Officers Ass'n</u>, 655 F. Supp. 2d 382 (S.D.N.Y. 2009); <u>Matter of United University Professions, Inc. and Barry</u>, 16 PERB 3040 (1983) (PERB exercising its jurisdiction in an agency fee case and ordering certain portions of agency fees refunded).

> The plaintiff argues that it cites Civil Service Law §209–a(1)(d) merely for the purpose of demonstrating standing, but that the merits of this action are not within PERB's jurisdiction. We reject its attempt to evade the consequences of its standing argument; clearly, the plaintiff cannot have it both ways.

Id. at 595.  Similarly, New York's Appellate Division, Second Department, dismissed an alleged violation of Taylor Law Section 209-a, holding that such claims are "within the exclusive jurisdiction of the Public Employment Relations Board and, thus, cannot be reviewed in this proceeding." Peil v. Beirne, 72 A.D.3d 1095, 1096 (2d Dep't 2010) (internal citations omitted).

It does not matter whether Plaintiffs pled an improper practice violation under a statute administered by PERB (e.g., the Taylor Law).  What matters is the nature of the underlying conduct, as it is described. See id.; Westchester Cty., 35 A.D.3d at 595.

Plaintiffs' claims that the Union Defendants illegally converted agency fees and membership dues are improper practice allegations falling within the exclusive and nondelegable jurisdiction of PERB.[11]  Throughout their Complaint, Plaintiffs reference PERB and the Taylor Law, and make various allegations as to what the Taylor Law requires, particularly regarding the payment of agency fees to support the political and bargaining activities of NYSUT and its affiliates.  See, e.g., Comp.  ¶¶ 11, 20, 21-23, 25-26.  Plaintiffs also allege that NYSUT is "imposing" agency fees on Ms. VanOstrand and "threatening" to impose agency fees on Mr. Pellegrino if he should quit the union.  Comp. ¶ 22.  Yet, per New York law, such allegations are improper practice allegations under the Taylor Law and are subject to PERB's exclusive jurisdiction.  See Westchester Cty., 35 A.D.3d. at 595.

---

[11]  Courts have recognized one exception to PERB's exclusive jurisdiction, not applicable here, finding concurrent jurisdiction with PERB over breaches of the Duty of Fair Representation.  See, e.g., DeCherro v. Civil Serv. Emp. Ass'n., Inc., 60 A.D.2d 743, 744 (3d Dep't 1977); see also Ifill v. New York State Court Officers Ass'n, 655 F. Supp. 2d 382, 392 n.2 (S.D.N.Y. 2009) (holding that the court could not exercise supplemental jurisdiction over improper practice claims, but noting a jurisdictional exception for breaches of the duty of fair representation).

Significantly, Federal courts have applied New York state law, dismissing alleged

violations of the Taylor Law brought in federal court, and recognizing PERB's jurisdiction.  See,

e.g., Ifill, 655 F. Supp. 2d 382; Peele v. New York City Dep't of Soc. Services/Human Res.

Admin, No. 92 Civ. 3765, 1995 WL 728478 (S.D.N.Y. Dec. 8, 1995) (recognizing that PERB's

authority ousts the court's jurisdiction to adjudicate claims arising from conduct prohibited, or

even arguably protected, by the Taylor Law), aff'd 112 F.3d 505 (2d Cir. 1996) (table).  This

Court is without jurisdiction to entertain Plaintiffs' state law claims, and such claims for

monetary and declaratory relief should be dismissed.

## IV.    PLAINTIFFS FAIL TO STATE ANY CLAIM ON
BEHALF OF CURRENT OR FORMER UNION MEMBERS

With regard to the proposed class of union members, Plaintiffs assert claims for

"compensatory damages" (Comp. ¶¶45 (b) and (h)) in an amount equal to agency fees, and to

invalidate N.Y. Civ. Serv. L §208(1)(b)(i), permitting window periods (Comp. ¶¶45 (q) and

(r)).[12]  Each claim fails.  Initially, Plaintiffs lack standing to challenge window periods as neither

are trying to withdraw union membership, nor are they somehow restricted by N.Y. Civ. Serv.

Law § 208((1)(b)(i).  See also, Brief for State Defendants, pp. 12-13.  Further, Mr. Pellegrino's

previous union membership, and the relationship between a union and a member in general, are

voluntary contractual relationships between private parties.  Mr. Pellegrino's vague contention

that he joined UTN under duress because he would have been charged agency fees can neither

---

[12] In their pre-motion letter, Plaintiffs sought for the first time to assert that all pre-Janus membership cards should
be invalidated.  (Letter to the Court, dated August 27, 2018, Dkt. 33).  Plaintiffs failed to assert that claim in the
Complaint, and the Court should not entertain it.  Furthermore, it has no merit, as Janus solely dealt with a union's
relations with nonmembers.  See Janus, 585 U.S. at ___, 138 S.Ct. at 2485 n.27 ("States can keep their labor-
relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions.").

support a First Amendment challenge, nor grant the ability to avoid valid contractual obligations

under state law.

> ### A.   Plaintiffs Lack Standing to Bring Challenges to N.Y. Civ. Serv. Law §208(1)(b)(i) and Time Period Limitations in Dues Deduction Authorizations

Plaintiffs lack standing to declare N.Y. Civil Service Law §208(1)(b)(i) facially

unconstitutional and to prohibit enforcement of those agreed-upon contractual limitations

(Comp. ¶45(q) and (r)).  Neither Plaintiff has standing to challenge contractual withdrawal time

period limitations (also known as "window periods").

To establish standing, plaintiffs must have suffered a concrete "injury in fact" that is not

hypothetical and is causally connected to the conduct complained of.  See Bennett v. Spear, 520

U.S. 154, 167 (1997) (internal citations omitted).  It must be likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision.  Id.  A plaintiff seeking

declaratory relief must establish standing by "(1) identifying a specific injury he or she has

suffered and (2) demonstrating a likelihood that he or she will be similarly injured in the future."

Ford v. Reynolds, 326 F. Supp. 2d 392, 404-05 (E.D.N.Y. 2004), aff'd, 167 F. App'x 248 (2d

Cir. 2006) (citing Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998)).

Neither Plaintiff suffered injury in fact or is likely to suffer injury in the future, for

neither is a union member subject to a window period.  Ms. VanOstrand was never a union

member.  Mr. Pellegrino lost any standing to challenge union membership when he resigned

UTN membership without condition.  Mr. Pellegrino cannot bootstrap standing by his former

union membership, since he is no longer subject to membership obligations.[13]  See discussion *infra* at IV.B., C.. Claims (q) and (r) should be dismissed for lacking standing.[14]

### B.    Union Membership Cards Are Valid and Enforceable Private Agreements

#### 1.    Union Membership is a Private Contractual Relationship

Mr. Pellegrino may not obtain repayment for member dues he voluntarily agreed to pay in exchange for membership rights.  Union membership is a voluntary contractual relationship stemming from an agreement between private parties, whereby members consent to dues deductions in exchange for voting rights and other benefits.  Recognizing the contractual nature of the union/member relationship, myriad courts have held these agreements are subject to fundamental contract law principles.  See Fisk v. Inslee, No. 17-35927, 2019 WL 141253 (9th Cir. Jan 9, 2019) (a signed membership card is a valid contract and the ability to privately contract is part of the liberty protected by the Due Process Clause and does not raise a First Amendment question); Ballas v. McKiernan, 41 A.D.2d 131, 134 (2d Dep't 1973) (member-union relationship is contractual), aff'd, 35 N.Y.2d 14 (1974); see also Shea v. McCarthy, 953 F.2d 29, 31-32 (2d Cir. 1992) (stating that a union constitution is a contract between the union and its members, and among the members themselves); Johnson v. Kay, 860 F.2d 529, 541 n.5 (2d Cir. 1988) (stating that "[u]nder New York law, 'A union's constitution and by-laws

---

[13]  In their letters dated August 27, 2018, Plaintiffs argue that Mr. Pellegrino "has standing to challenge any law that imposes obstacles to withdrawing from the union, on behalf of himself and his fellow class members who are trying to quit," Dkt. 33 at 3, and that "Mr. Pellegrino has standing to challenge any law that seeks to impede the exit process from the union, and he will continue to have standing until he is assured that his demands to cancel his membership and halt union-related payroll deductions are being honored." Dkt. 35 at 2.  The Union Defendants agree.  However, Mr. Pellegrino was not subject to any obstacles to withdrawing from the union.  He is not subject to continued dues deductions following his withdrawal. See discussion *supra* at 6-7.  Therefore, by Plaintiffs' own logic, he lacks standing to bring this claim.

[14]  Any purported class based on these claims correspondingly fails.  See, e.g., Novella v. Westchester Cty., No. 02 Civ. 2192 WBM, 2004 WL 3035405, at *3 (S.D.N.Y. Dec. 29, 2004) ("Generally, a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified.") (internal citations omitted).

constitute a contract between the union and its members and define not only their relationship but also the privileges secured and the duties assumed by those who become members, unless contrary to public policy.'" (internal citations omitted)); Hosokawa v. Screen Actors Guild-American, Federation of Television and Radio, Artists, 234 F. Supp. 3d 437, 444 (S.D.N.Y. 2017) (same); Brown v. Sombrotto, 523 F. Supp. 127, 133 (S.D.N.Y. 1981) (same); Lowe v. Feldman, 11 Misc. 2d 8, 11 (Sup. Ct. N.Y. Cty. 1957) (holding that labor contracts are, like all contracts, subject to the law of contract).

First Amendment rights do not permit a person to disregard contractual obligations otherwise enforceable under state law.  See Cohen v. Cowles Media Co., 501 U.S. 663, 672 (1991).  Subsequent judicial decisions do not permit parties to rescind contracts valid when entered into, even in plea agreement circumstances where a party has given up personal liberty. See Brady v. United States, 397 U.S. 742 (1970) (could not rescind plea agreement even though agreement was induced by death penalty statute later found to be unconstitutional); see also Dingle v. Stevenson, 840 F.3d 171 (4th Cir. 2016), cert. denied, 137 S. Ct 2094 (2017) (could not rescind plea agreement entered into to avoid the death penalty for a crime committed when the defendant was a juvenile, despite the Supreme Court's post-agreement holding that juvenile death penalty is categorically unconstitutional); Coltec Indus. Inc., v. Hobgood, 280 F.3d 262 (3d Cir. 2002) (agreement entered into by coal company under a statute later found unconstitutional could not be rescinded).

All post-Janus courts to consider the legality of membership cards with dues deduction authorization provisions have held them to be valid expressions of an adult's contracting power. See Fisk, 2019 WL 141253, at *1; Belgau et al. v. Inslee et al., No. 18-5620 RJB, 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018); Smith v. Super. Ct. Cty. Of Contra Costa, No. 18-

cv-05472-VC, 2018 WL 6072806, at *2 (N.D. Cal. Nov. 16, 2018).  As the Ninth Circuit stated

in Fisk, "the First Amendment does not preclude the enforcement of 'legal obligations' that are

bargained-for and 'self-imposed' under state contract law."  See 2019 WL 141253, at *1.

Rather, "[a] person has the right to contract away their First Amendment protections." See

Belgau, 2018 WL 4931602, at *5.

Mr. Pellegrino affirmatively associated with UTN by knowingly entering into a valid,

written agreement for consideration:

> Mr. Pellegrino [. . . .] ***has chosen to remain in the union*** because
> he would have been forced to continue paying "agency fees' had
> he resigned, ***and the difference in money between the full
> membership dues and the "agency fees" would not have been
> worth the loss of his vote and whatever little influence he might
> be able to exert in collective-bargaining matters***.

See Comp. ¶13 (emphasis added).  Mr. Pellegrino pled the elements of a valid contract – *i.e.*,

mutual assent to the agreement, for consideration in the form of full membership dues in

exchange for voting and other privileges.  See, e.g., Restatement (Second) of Contracts §17(1)

("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual

assent to the exchange and a consideration."); see also Hosokawa, 234 F. Supp. 3d at 444 (citing

Ballas, 41 A.D.2d 131, 133); Fisk v. Inslee, No. C16-5889RBL, 2017 WL 4619223 (W.D.Wash.

2017) aff'd, 2019 WL 141253 (9th Cir. Jan. 9, 2019); Smith, 2018 WL 6072806.

Mr. Pellegrino's binding agreement to pay membership dues bars any claim for

"compensatory damages" under §1983 or tort law.  Like the plaintiff in Smith, Mr. Pellegrino

"cannot now invoke the First Amendment to wriggle out of his contractual duties.  Smith, 2018

WL 6072806 at *1.  Since member dues were collected both pre- and post-Janus, not as a

statutorily enforced condition of employment, but as his own choice, Mr. Pellegrino has pled no

state action that forced him to pay membership dues.  Claiming that the existence of agency fees created a state of coercion or duress cannot save his claims.

2.      Mr. Pellegrino's Allegations of Coercion
        Cannot Obviate His Contractual Obligations

Because Mr. Pellegrino admits that he made an economic choice to be a union member, his claim for "compensatory damages" in derogation of that agreement requires him to argue that the agreement should be set aside because he was forced to become a member despite his objection.  In short, he claims duress to obviate his contractual obligations.  However, the facts contained in the complaint demonstrate that this claim too fails as a matter of law.

It is immaterial to the claim that Mr. Pellegrino believed the rights conferred by membership are worth paying slightly more money (rather than, presumably, paying a lot more money) as compared to agency fees.  It does not matter whether the benefits of membership were worth $1 to him or an additional $100 dollars.  Both are economic decisions, not ones raising First Amendment concerns.  See Kidwell v. Transp. Commc'ns Int'l, 946 F.2d 283, 292-93 (4th Cir. 1991) ("[W]here the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced.  The employee is a union member voluntarily."); Farrell v. IAFF, 781 F. Supp. 647 (N.D. Cal. 1992) (accord).  The import is that Mr. Pellegrino admits he joined UTN to receive membership benefits in exchange for paying *more* than he would have had to pay as an agency fee payer.  See Comp. ¶13.

Moreover, under New York law, to set aside a contractual obligation on the theory that one was compelled to enter into the agreement requires both a wrongful threat and preclusion of free will.  See Oquendo v. CCC Terek, 111 F. Supp. 3d 389, 408 (S.D.N.Y. 2015) (a party seeking to void a contract because of duress must show that the contract was secured by a wrongful threat precluding the exercise of free will, under the press of financial circumstances

where circumstances permitted no other alternative).  The key question is has there been a threat which makes the person accede to the contract.  See id.  A party cannot be guilty of duress when it states an intent to act under its legal rights.  See Printers II, Inc. v. Professionals Pub., Inc., 615 F. Supp. 767, 772 (S.D.N.Y. 1985); 767 Third Ave, LLC v. Orix Capital Markets, LLC, 26 A.D.3d 216, 218 (1st Dep't 2006).

Mr. Pellegrino alleges that the Taylor Law itself was coercive since it required agency fees.  Comp. ¶21.  However, the fact that agency fees were compulsory does not mean membership was also compelled; the two are distinct not co-extensive.  Union membership was not and is not a condition of employment in New York, and therefore Mr. Pellegrino cannot argue that the statute itself put him under duress.  See N.Y. Civ. Serv. Law §202.  N.Y. Civ. Serv. Law §208(3)(b) explicitly provides that an employee does not have to be a member.  The Complaint has no allegation that Mr. Pellegrino was threatened by any person or organization to induce his membership.  He faced no risk he would lose his employment had he exercised his First Amendment and Taylor Law right to not join UTN.  Mr. Pellegrino paid *more* money when he joined UTN than he would have had he exercised his right to not join.

Mr. Pellegrino relies entirely on the notion that anyone becoming a union member pre-Janus was inherently under improper duress when signing a membership card.  The fallacy of that argument is underscored by Ms. VanOstrand  (and others), who successfully exercised their rights to refrain from joining a union long before Janus.

The answer is there was no improper coercion.  Before Janus, public employees made economic and moral decisions either to join a union and receive certain benefits in exchange, or to eschew those benefits.  The Complaint concedes that "Ms. VanOstrand refuses to join the NYSUT or its affiliates because she disapproves of their political advocacy and collective-

bargaining activities."  See Comp. ¶ 17.  Mr. Pellegrino could have made the same decision, but

instead joined UTN because he received valuable benefits.  As the Supreme Court has

recognized, employees:

> may well feel some pressure to join the exclusive representative in
> order to give them the opportunity to serve on [. . .] committees or
> to give them a voice in the representative's adoption of positions
> on particular issues.  That pressure, however, is no different from
> the pressure they may feel to join [the union] because of its unique
> status…. Moreover, *the pressure is no different from the pressure*
> *to join a majority party that persons in the minority always feel.*
> *Such pressure is inherent in our system of government; it does not*
> *create an unconstitutional inhibition on associational freedom.*

See Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 289-90 (1984)

(emphasis added).

At most, what Mr. Pellegrino pled is not coercion but that he had limited economic

options regarding being a member or an agency fee payer.  However, Mr. Pellegrino's decision

to join UTN, vote and attempt to influence collective bargaining because he would not save

enough money does not obviate his contractual obligations or implicate the First Amendment.

## C.     Window Period Agreements Are Valid Contractual Obligations

Lack of standing aside, Plaintiffs' facial challenge to §208(1)(b)(i), which itself places no

specific limitations on the withdrawal of membership, is meritless.[15]  These "temporarily

irrevocable payment authorizations" are "well within the ken of unrepresented or lay parties," to

understand and "are common and enforceable in many consumer contracts – e.g., gym

memberships or cell phone contracts[.]"  See Fisk, 2019 WL 141253, at *1.  The statute merely

provides that public employers shall respect whatever contractual terms are contained in the

---

[15]  As discussed *supra* at pp. 6-8, no Defendant has applied a window period to any Plaintiff.  Nor is there any
reasonable risk that one will be applied in the future.

membership agreement between the member and the union.  To succeed on a facial challenge, Plaintiffs would have to show that the statute could not be applied in *any* constitutional manner, which they cannot.  See, e.g., New York State Club Ass'n, Inc. v. City of New York, 487 U.S. 1, 11 (1988) ("to prevail on a facial attack the plaintiff must demonstrate that the challenged law either 'could never be applied in a valid manner' or that even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it 'may inhibit the constitutionally protected speech of third parties.'") (internal citations omitted)); Copeland v. Vance, 893 F.3d 101, 113 (2d Cir. 2018) ("in an ordinary facial vagueness claim, the challenger must show that the statute is invalid in all respects." (citing U.S. v. Salerno, 481 U.S. 739, 745 (1987)); see also Moran Towing Corp. v. Urbach, 99 N.Y.2d 443, 448 (2003) (accord).

Plaintiffs presumably object to membership terms which might provide that, while membership may be cancelled at any time, dues would still be collected for the full period agreed upon in the contract.  The reasons for such terms are understandable:  First, unions require some predictability to plan their finances, resources and services.  Second, unions offer very valuable benefits for members.  An individual could join one month, utilize, for example, union-provided legal services that far exceed the cost of a single month's dues, and then drop membership the next month.[16]  The practice does not differ from that of many sports clubs and other subscription or membership services.  See Fisk, 2019 WL 141253, at *1.

Recently, courts considering near-identical First Amendment challenges to window period provisions in member contracts have enforced those clauses.  See, e.g., Fisk, 2017 WL 4619223, at *5, aff'd, 2019 WL 141253 ("The freedom of speech and the freedom of association

---

[16]  These hypothetical drop-outs are not "free-riders," such as those in Janus who never joined a union and yet receive certain benefits.  These are not even true objectors.  Rather, these are individuals gaming the system and taking advantage of the union. Unions have a right to set terms of membership to avoid such traps.

do not trump the obligations and promises voluntarily and knowingly assumed."); see also Belgau, 2018 WL 4931602, at *5 (denying motion for preliminary injunction barring union from continuing to deduct dues from member wages where members knowingly entered into valid agreements and were not subject to duress); Smith v. Super. Court, Cty. Of Contra Costa, No. 18-cv-05472-VC, 2018 WL 6072806, at *2 (N.D. Cal. Nov. 16, 2018).

In Fisk, the Federal District Court for the Western District of Washington considered whether window periods in a union membership agreement were unconstitutional, given the Court's decision in Harris, 134 S. Ct. 2618, which had found agency fees unconstitutional in the quasi-public context.  See Fisk, 2019 WL 4619223.  The court held that "[a] signed Membership Card is a valid contract," and rejected the challenge.  See id., at *4.  The court explicitly refused to negate the window period provision under the pretext of a First Amendment claim, reasoning:

> The freedom of speech and the freedom of association do not trump the obligations and promises voluntarily and knowingly assumed.  The other party to that contract has every reason to depend on those promises for the purpose of planning and budgeting resources. *The Constitution says nothing affirmative about reneging legal and lawful responsibilities freely undertaken*.

Id., at *5 (emphasis added).

The 9th Circuit affirmed, holding that "[a]lthough Appellants resigned their membership in the union and objected to providing continued financial support, the First Amendment does not preclude the enforcement of 'legal obligations' that are bargained-for and 'self-imposed' under state contract law."  See Fisk, 2019 WL 141253, at *1.  See also, Smith, 2018 WL 6072806, at *1 (Janus "does not give [the plaintiff] license to evade his contract.").

32

V.  **PLAINTIFFS' CHALLENGE TO THE STATUTORY REQUIREMENT**
    **THAT PUBLIC EMPLOYERS SHARE EMPLOYEES' CONTACT**
    **INFORMATION WITH THE UNION ALSO FAILS TO STATE A CLAIM**

Plaintiffs' final challenge is to a recent amendment to the N.Y. Civ. Serv. Law

§208(4)(a), which fixes a specified period of time in which a public employer must share contact

information for a new bargaining unit member (a newly hired, promoted or returning employee)

with the certified or recognized exclusive bargaining representative.  This claim, too, fails to

meet basic justiciability requirements and fails to state a claim as a matter of law.

In addition to the standing requirements referred to in Point IV.A., *supra*, a plaintiff

seeking injunctive relief, "must show that he is under threat of suffering 'injury in fact' that is

concrete and particularized: the threat must be actual and imminent, not conjectural or

hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be

likely that a favorable judicial decision will prevent or redress the injury."  Summers v. Earth

Justice Inst., 555 U.S. 488, 493 (2009).

Plaintiffs' claims fail the "redressability" prong of the standing test.  Both of Plaintiffs'

bargaining representatives already know their contact information, including their home address,

and have so for years.  UTN has maintained Mr. Pellegrino's contact information for some 23

years.  See UTN Decl. ¶15.  Ms. VanOstrand's local union, ETA, has also had her information

for many years.  See ETA Decl. ¶19.  Because the respective unions already have Plaintiffs'

home addresses, this Court cannot offer them any relief from the compelled disclosure of that

information.  See John Doe No. 1 v. Reed, 697 F.3d 1235, 1237 (9th Cir. 2012) (finding

compelled-disclosure challenge moot where the allegedly chilling information was already

publicly available).[17]

Even if Plaintiffs had standing,[18] their claim would still fail because it misapprehends the

compelled disclosure cases it relies upon.  NAACP v. Alabama ex rel. Patterson, 357 U.S. 449,

462 (1958) (addressing compelled disclosure of membership in "groups engaged in advocacy"),

applies to forced disclosure of association, not to mailing addresses.  The constitutional

dimension hinges on whether disclosure of a person's identity would be clearly linked with a

particular expressive position, idea or candidate.  See, e.g., NAACP, 357 U.S. at 463 (NAACP

list disclosed otherwise private support for that organization); Buckley v. Valeo, 424 U.S. 1, 66

(1976) (disclosed transactions with candidate or party would "reveal much about a person's

activities, associations, and beliefs") (internal quotations omitted); John Doe No. 1, 561 U.S. at

194-98 (signature on petition would disclose views on statute about gay rights).

Here, non-public disclosure of home addresses to the union statutorily obligated to

represent all members of the bargaining unit (whether they join the union or not), discloses

nothing to the union (or anyone else) regarding Plaintiffs' association with a cause, organization

or political activity.  See Rumsfeld v. Forum of Academic and Institutional Rights, 547 U.S. 47

(2006) (holding that permitting military recruiters access to campus was not an expressive act in

First Amendment analysis).  Home addresses of new bargaining unit members are ideologically

neutral.  Since the union knows who its bargaining unit members are, Plaintiffs' membership

status cannot be secret.  The proper analogy to the NAACP case would be to keep from the

---

[17]  Moreover, home addresses (and a variety of other information) for most New York residents are available on the internet.

[18] As with Plaintiffs' other claims, it is irrelevant at this stage that Plaintiffs assert a purported class.  If Plaintiffs themselves do not possess a justiciable claim, they may not represent a class.  See discussion *supra* at 9 fn.1.

NAACP information about who is and is not *a member of the NAACP*—that is not what was before the Court.  Pursuant to the Complaint, Mr. Pellegrino was, until recently, a member of his local union (thus, having voluntarily declared his own affiliation) and Ms. VanOstrand was an agency fee payer.  Plaintiffs therefore have both made their associational preference known to their respective unions separate from their mailing addresses.

Even if disclosure did raise a constitutional issue, the requirement is substantially related to the important government interest in the timely provision of information about terms of employment, benefits and the availability of union membership and benefits to new employees.  See John Doe, 561 U.S. at 196 (holding that compelled disclosure is permitted under exacting scrutiny test when there is a "substantial relationship" between the disclosure requirement and an important government interest strong enough to reflect the actual burden on First Amendment rights.")  The governmental interest in "harmonious and cooperative labor relations" is substantially related to the Taylor Law requirement to disclose new employee contact information to the employee's bargaining representative.  N.Y. Civ. Serv. Law § 200.  The timely provision of information (*e.g.*, new health benefits, parental leave regulations, etc.) allows employees to more quickly become oriented to their new workplace or role and is necessary for the union to fulfill its statutory role in the labor relations framework.

Any suggestion that a union's communication needs can be met by limitation to workplace mail or email, denies the reality of labor relations in practice.  Unions need to be able to communicate directly on both a unit-basis and, at times, individual-basis with those it represents.  Communication solely through employer-controlled means is not sufficient.  Employers monitor and control such media, often restricting the information that may be sent.

And, particularly for school staff, workplace distribution of hard copy would not suffice for they are not in school during extended periods of the year.

Contrary to Plaintiffs' implication, there is no constitutional right of bargaining unit members to not receive information from the union that represents them.  Janus did not disrupt exclusive representation or the duty of fair representation.  See Janus, 585 U.S., at __, 138 S.Ct. at 2469 ("That duty [of fair representation] is a necessary concomitant of the authority that a union seeks when it chooses to serve as the exclusive representative of all the employees in a unit.").  Implicit in that duty is the obligation to communicate with the bargaining unit.  See, e.g., Cummaro et al. and Westchester Cty. Dep't of Corr. Superior Off. Assoc., Inc., 26 PERB ¶ 3077 (1993).  Free exercise of the First Amendment is helped by having information on which to make associational decisions; it is not a barrier or a shield against receiving information which a union provides as part of its legal obligation to service and represent the employees.

Plaintiffs further claim that the provision is unconstitutional because it "imposes no restriction on what the unions may do with this personal information that they obtain."  (Comp. ¶25).  That is untrue.  The Taylor Law has long prohibited union coercion based upon an employee's membership status.  See N.Y. Civ. Serv. Law §209-a(2)(a).  Thus, unions are limited in their use of home addresses as they are in all their conduct by both prohibitions against coercion and the affirmative duty to fairly represent each member of the bargaining unit. Further, if a union were to take any coercive or other inappropriate actions, the exclusive vehicle for a challenge to that conduct would be an improper practice charge brought before PERB.  See discussion supra at Section III.D.

Finally, Comp. ¶45(p) goes a step further and seeks a permanent injunction against NYSUT and all of its affiliates from "seeking or obtaining the home addresses or other personal

information of any employee who has chosen [not to be a member]."  This is akin to prior restraint and, in any event, overly broad.  See, e.g., Metro. Opera Ass'n, Inc. v. Local 11, Hotel Emps. and Rest. Emps. Int'l Union, 239 F.3d 172, 178 (2d Cir. 2001) ("[T]he First Amendment strongly disfavors injunctions that impose a prior restraint on speech.").  The requested injunction is not limited to the enforcement of §208(4)(a).  Rather, it restricts private entities (NYSUT and all its affiliates) in the conduct of their organizational business so it is not appropriate.  The requested injunction violates the unions' free speech and equal protection under the law as it seeks to have a separate and more restrictive law apply solely to public sector unions and their affiliates.

Demands for relief ¶¶45(n), (o) and (p) of the Complaint should be dismissed.

## CONCLUSION

For the reasons set forth above and in the accompanying declarations, the Union

Defendants respectfully request that the motion be granted and the Complaint be dismissed in its

entirety.

Dated: January 21, 2019                      Respectfully submitted,


                                             _____/s/ CHARLES G. MOERDLER_____
                                             STROOCK & STROOCK & LAVAN LLP
                                             Charles G. Moerdler, Esq.
                                             Alan M. Klinger, Esq.
                                             Dina Kolker, Esq.
                                             180 Maiden Lane
                                             New York, New York 10038
                                             (212) 806-5400
                                             cmoerdler@stroock.com
                                             aklinger@stroock.com
                                             dkolker@stroock.com

Of Counsel:
       Arthur J. Herskowitz, Esq.

                                                          -and-

                                             ROBERT T. REILLY, ESQ.
                                             52 Broadway, 9th Floor
                                             New York, New York 10004
                                             (212) 228-3382
                                             mdelpian@nysutmail.org
                                             egreene@nysutmail.org
                                             awanner@nysutmail.org

Of Counsel:
       Michael J. Del Piano, Esq.
       Edward J. Greene Jr., Esq.
       Andrea A. Wanner, Esq.


                                             *Co-counsel for Union Defendants*