UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | |
|---|---|
| **Scott Pellegrino**, et al., | Case No. 2:18-cv-03439-JMA-GRB |
| Plaintiffs, | |
| v. | **Plaintiffs' Response to the Union Defendants' Motion to Dismiss** |
| **New York State United Teachers**, et al., | |
| Defendants. | |

Paul Niehaus
Kirsch & Niehaus
150 East 58th Street
22nd Floor
New York, New York 10155
(212) 631-0223
paul.niehaus@kirschniehaus.com

Jonathan F. Mitchell*
Mitchell Law PLLC
106 East Sixth Street
Suite 900
Austin, Texas 78701
(512) 686-3940
jonathan@mitchell.law

* admitted *pro hac vice*

*Counsel for Plaintiffs and
the Proposed Classes*

# TABLE OF CONTENTS

Table of contents .................................................................................. 1

Table of authorities ............................................................................. 2

I. Wrongfully taken property must always be returned, even if it was taken in good faith ........................................................................ 1

II. *Wyatt v. Cole* precludes a "good faith" defense when the most analogous common-law tort rejects any consideration of the tortfeasor's state of mind ..................................................... 11

III. Even if the unions could assert a "good faith" defense, they must show that their agency shops complied with *Abood* and pre-*Janus* law ........................................................................................... 13

IV. Even if the union could assert a "good faith" defense, it cannot establish good faith unless it present evidence of its officers' subjective state of mind ....................................................... 14

V. The unions overstate the judicial support for a "good faith" defense ..... 15

VI. The union defendants' claim that the plaintiffs "failed to name necessary parties" is without merit ..................................... 16

VII. The plaintiffs' state-law claims are foreclosed by the recent amendments to the Taylor Law ........................................... 17

VIII. The plaintiffs have stated a claim for relief on behalf of current and former union members ............................................... 17

A. Any claim that Mr. Pellegrino might have brought against N.Y. Civ. Serv. Law § 208(1)(b)(i) became moot upon his resignation from union membership ........................... 17

B. Mr. Pellegrino has stated a compelled-subsidy-of-speech claim against the union defendants ............................. 18

C. The evidence that the union defendants already have the plaintiffs' personal contact information defeats their Article III standing to challenge N.Y. Civ. Serv. L. § 208(4)(a) .............. 20

IX. The Plaintiffs' claims for prospective injunctive relief against the continued collection of agency fees should be dismissed as moot .......... 20

X. The district-court rulings that have shielded unions from post-*Janus* refund lawsuits have not explained how good faith can allow a defendant to keep property that was taken innocently but in violation of another's rights ............................................. 21

Conclusion ........................................................................................ 22

Certificate of service ...................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Akers v. Maryland State Education Ass'n*,
 No. 1:18-cv-1797-RDB (D. Maryland), ECF No. 110 ................................... 21

*Anderson v. Creighton*, 483 U.S. 635 (1987) ........................................ 14

*Bermudez v. Service Employees Int'l Union, Local 521*,
 No. 3:18-cv-4312-VC (N.D. Cal.), ECF No. 82 ............................................. 21

*Carey v. Inslee*, No. 3:18-cv-05208-RBL (W.D. Wash.), ECF No. 62 ................. 21

*Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971) ...................................... 10

*Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008) ......................... 4, 6, 7

*Cook v. Brown*, No. 6:18-cv-01085-AA (D. Oregon), ECF No. 44 ..................... 21

*Crockett v. NEA-Alaska*,
 No. 3:18-cv-00179-JWS (D. Alaska), ECF No. 68 ....................................... 21

*DeCecco v. United States*, 485 F.2d 372 (1st Cir. 1973) ............................ 2, 8, 9

*Downs v. Sawtelle*, 574 F.2d 1 (1st Cir. 1978) ....................................... 15

*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993) ...................... 1, 4, 7, 10

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001) .................................. 15

*Hoffman v. Inslee*, No. 14-CV-200 (MJP), 2016 WL 6126016 (W.D.
 Wash. Oct. 20, 2016) ..................................................................... 9

*Hough v. SEIU Local 521*,
 No. 3:18-cv-4902-VC (N.D. Cal.), ECF No. 53 ........................................... 21

*Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983) ................................... 15

*Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*,
 138 S. Ct. 2448 (2018) ................................................................... 18

*Jarvis v. Cuomo*, 660 Fed. Appx. 72 (2d Cir. 2016) .................................. 8

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
 20 F.3d 1250 (3d Cir. 1994) .......................................................... 7, 14

*Lee v. Ohio Education Ass'n*,
 No. 1:18-cv-1420-JRA (N.D. Ohio), ECF No. 56 ......................................... 21

*Lemon v. Kurtzman*, 403 U.S. 602 (1971) .............................................. 9

*Lemon v. Kurtzman*, 411 U.S. 203 (1973) ............................................ 9, 10

*Lovell v. One Bancorp*, 878 F.2d 10 (1st Cir. 1989) ................................. 15

*Messerschmidt v. Millender*, 565 U.S. 535 (2012) .................................... 3

*Mooney v. Illinois Education Ass'n*,
 No. 1:18-cv-01439-JBM-JEH (C.D. Illinois), ECF No. 19 .......................... 21

*Moore v. Regents of the University of California*,
 793 P.2d 479 (Cal. 1990) ................................................................ 6

*Morissette v. United States*, 342 U.S. 246 (1952) ............................... 8, 12

*Neely v. United States*, 546 F.2d 1059 (3d Cir. 1976) ............................ 2, 8, 9

*Pasha v. United States*, 484 F.2d 630 (7th Cir. 1973) ............................ 2, 8, 9

*Richardson v. McKnight*, 521 U.S. 399 (1997) .................................................... 16

*Riffey v. Rauner*, 315 F.3d 314 (7th Cir. 2018) ................................................. 15

*Timbs v. Indiana*, 139 S. Ct. 682 (2019) ................................................................ 4

*United States v. Holmes*, 822 F.2d 481 (5th Cir. 1987) .................................. 3, 8, 9

*United States v. Lewis*, 342 F. Supp. 833 (E.D. La. 1972) ..................................... 3

*United States v. Lewis*, 478 F.2d 835 (5th Cir. 1973) ...................................... 2, 8, 9

*United States v. Rayburn House Office Building Room 2113*
    *Washington DC 20515*, 497 F.3d 654 (D.C. Cir. 2007)............................ 3, 8, 9

*United States v. Summa*, 362 F. Supp. 1177 (D. Conn. 1972) ....................... 2, 8, 9

*United States v. Venneri*, 782 F. Supp. 1091 (D. Md. 1991) .......................... 2, 3, 9

*Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*,
    76 F.3d 692 (6th Cir. 1996) ........................................................................ 7

*Winner v. Rauner*, No. 15-CV-7213, 2016 WL 7374258 (N.D. Ill.
    Dec. 20, 2016)........................................................................................... 9

*Wood v. Strickland*, 420 U.S. 308 (1975).............................................................. 9

*Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993) ............................................. 2, 6, 7

**Statutes**

N.Y. Civ. Serv. L. § 208(1)(b)(i) ........................................................................ 17

N.Y. Civ. Serv. L. § 208(4)(a) ........................................................................... 20

**Other Authorities**

Richard A. Epstein, *Torts* (1999) ........................................................................ 5

**Rules**

Fed. R. Civ. P. 19(d) ........................................................................................ 17

Property that has been taken in violation of another's constitutional rights must always be returned—even if the defendant took the property in good-faith reliance on a statute that was reasonably believed to be constitutional at the time of the seizure. A defendant's "good faith" can confer immunity when a plaintiff is seeking damages for the collateral harms inflicted by the unconstitutional seizure of his property. But it will *never* permit a defendant to enrich himself by keeping property that he took in violation of another's constitutional rights, even if he took the property at a time when his actions were reasonably believed to be lawful and legitimate.

## I.   Wrongfully Taken Property Must Always Be Returned, Even If It Was Taken In Good Faith

Under what set of circumstances can someone innocently but wrongfully take another's property and get to keep it? "Good faith" can protect someone who takes something that turns out not to belong to them from punitive or additional damages, but the wrongfully taken property taken *must always be returned*, even if the defendant acted in "good faith." This principle is ubiquitous in American law, and it has been established and reaffirmed in numerous cases:

1.   When a state or municipality collects a tax that is later declared unconstitutional, it must refund the unconstitutionally collected taxes to anyone who sues within the relevant statute of limitations—even if the taxing authorities relied in good faith on a statute that authorized the collection of the tax. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 98–99 (1993). A "good faith" defense might shield the individual tax collectors from personal monetary liability for damages that were inflicted on the victims of this unconstitutional tax. But it will never allow government officials to *keep* the taxes that were unconstitutionally collected if a plaintiff sues for their return.

2.   When an individual seizes another person's property in good-faith reliance on a state replevin statute that is later declared unconstituitonal, he must return the

property that he took in violation of the owner's constitutional rights—even if he acted before the courts had declared the replevin statute unconstitutional. *Cf. Wyatt v. Cole*, 994 F.2d 1113, 1115 (5th Cir. 1993). A "good faith" defense might protect the defendant from paying damages for the collateral harms that resulted from his seizure of the plaintiffs' property. *See id.* at at 1121. But it would not allow the defendant to keep the property that he seized in violation of the Constitution, even if the seizure was authorized by a state law that was thought to be constitutional at the time.

3.  When the government collects fines pursuant to a statute that is later declared unconstitutional, it must return those fines—even if the government collected the fines in good faith and in reasonable reliance on a statute that was believed to be constitutional at the time. *See United States v. Lewis*, 478 F.2d 835, 846 (5th Cir. 1973) (fines collected pursuant to a statute that is subsequently determined to be unconstitutional must be repaid when suit is brought to recover them); *Neely v. United States*, 546 F.2d 1059, 1061 (3d Cir. 1976) (same); *DeCecco v. United States*, 485 F.2d 372, 372–73 (1st Cir. 1973) (same); *Pasha v. United States*, 484 F.2d 630, 632–33 (7th Cir. 1973) (same); *United States v. Summa*, 362 F. Supp. 1177, 1181 (D. Conn. 1972) (same). Indeed, even crime victims who receive restitution from a convict must return that money if the statute on which the conviction was based is later declared unconstitutional. *See United States v. Venneri*, 782 F. Supp. 1091, 1092 (D. Md. 1991) (ordering a putative crime victim to repay restitution that it had obtained nine years earlier, because the conviction had been "based upon an unconstitutional statute"). That the fines or restitution were imposed in "good faith" can provide a defense if the convict sues over the collateral harms imposed by his wrongful conviction. The prosecutor, for example, would have immunity if he were sued for harming the convict's reputation, and the jailer would have immunity if sued for depriving the convict of his liberty. But there is no "good faith" defense when the

victim of a wrongful conviction sues for a return of his money that was taken in good faith but in violation of his constitutional rights. *See United States v. Holmes*, 822 F.2d 481, 500 (5th Cir. 1987) ("[A criminal] defendant can recover a fine imposed under an unconstitutional statute."); *United States v. Lewis*, 342 F. Supp. 833, 836 (E.D. La. 1972), *aff'd*, 478 F.2d 835 (5th Cir. 1973) ("Fairness and equity compel [a return of fines collected under an unconstitutional statute], *notwithstanding the fact that the government and the court were proceeding in good faith* at the time of prosecution." (emphasis added)); *Venneri*, 782 F. Supp. at 1093 ("The interests of justice make it imperative that the petitioner receive a refund of his restitution.").

4.   When law-enforcement officers seize property in good-faith reliance on a search warrant that is later declared unconstitutional, they cannot keep the unconstitutionally seized property if the owner sues for its return. In *United States v. Rayburn House Office Building Room 2113 Washington DC 20515*, 497 F.3d 654, 656, 665 (D.C. Cir. 2007), the FBI was compelled to return documents that it seized from Congressman William Jefferson's office pursuant to a search warrant that was later found to violate the Speech and Debate clause, even though the FBI had relied in good faith on a court-approved search warrant that it reasonably believed to be constitutional. *See id.* at 664 (acknowledging that "[t]here is no indication that the Executive did not act based on a good faith interpretation of the law, as reflected in the district court's prior approval and later defense of the special procedures set forth in the warrant affidavit."). The officers' good faith would shield them from lawsuits for damages that were caused by their unconstitutional seizure. *See, e.g., Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). But under no circumstance would the officers' "good faith" allow them to deprive Congressman Jefferson of the documents that they had seized in violation of his constitutional rights.

5.   If a state consficates property in violation of the Excessive Fines clause, it must return that property even if the seizure occurred before the Supreme Court

declared the Excessive Fines clause applicable to the States. *See Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (declaring, for the first time, that "[t]he Excessive Fines Clause is . . . incorporated by the Due Process Clause of the Fourteenth Amendment."). Defenses of qualified immunity or good faith would shield individual officers from personal monetary liability if they acted in accordance with Supreme Court doctrine existing at that time. But those defenses cannot be used to prevent a plaintiff from recovering his property that was confiscated in violation of the Excessive Fines clause—even if the seizure occurred before the Supreme Court's pronouncement of incorporation.

6.    If a tow-truck company tows and impounds a car in violation of the owner's constitutional rights but acts in good faith while doing so, it must return the unconstitutionally seized car to its owner—and that remains the case even if the company could assert a "good faith" defense when the owner sues over the collateral harms inflicted by the unconstitutional tow. *See Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008). Here, too, a "good faith" defense can shield a defendant from personal monetary liability when a plaintiff seeks recovery for the collateral harms that resulted from the unconstitutional seizure of her property. But it cannot allow a defendant to *keep* property that it seized in violation of the Constitution, even if the defendant acted in good faith when doing so.

The plaintiffs' claims are indistiguishable from each of these situations. They have sued to recover property that was taken from them in violation of their constitutional rights, at a time when the compelled payments were thought to be constitutional.[1]

---

1.  The union defendants do not deny that *Janus* is retroactive, and they cannot deny the retroactivity of *Janus* given the Supreme Court's ruling in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993). *See id.* at 96 ("[A] rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law."). The union defendants cite *Shah v. Pan American World Services, Inc.*, 148 F.3d 84 (2d Cir. 1998), to suggest that *Janus* might not apply retroactively, but *Shah* recognizes only that "*Harper*

The unions must return this unconstitutionally taken property, just as defendants must return unconstitutionally collected taxes, unconstitutional fines, and unconstitutionally seized property—regardless of whether they acted in good-faith reliance on statutes or court decisions that purported to authorize their conduct. Neither qualified immunity nor the "good faith" defense can *ever* allow a defendant to be enriched by his inadvertent constitutional violations, and they do not provide a defense when a plaintiff asserts claims for restitution of property that was seized in violation of his rights. To the extent that a "good faith" defense might exist for private actors under 42 U.S.C. § 1983, it can extend no further than the qualified-immunity defense available to government officers, and it will never allow an entity to enrich itself by taking *and keeping* another's property in violation of the Constitution.

The exact same principle applies under the common law: A person who takes another's property innocently and without fault remains liable to return that property or pay its replacement value in an action for conversion, even though the defendant's "good faith" would preclude liability for collateral damages (such as emotional distress or economic loss) that may have resulted from the inadvertent taking. *See* Richard A. Epstein, *Torts* § 1.12.1 at 32 (1999) ("Liability for conversion is strict, for it is still maintainable when D has an honest belief that he owns the thing in question and thus is entitled to its exclusive use. 'Therefore, neither good faith nor bad faith, neither care nor negligence, neither knowledge nor ignorance are the gist of the action.'"

---

. . . did not require retroactive application where the Supreme Court explicitly "'reserve[s] the question whether its holding should be applied to the parties before it.'" *Id*. at 91 (citations omitted); *see also* Harper, 509 U.S. at 97–98 ("When this Court does not 'reserve the question whether its holding should be applied to the parties before it,' however, an opinion announcing a rule of federal law 'is properly understood to have followed the normal rule of retroactive application' and must be 'read to hold . . . that its rule should apply retroactively to the litigants then before the Court.'" (citations omitted)). *Janus* did not reserve the question whether its holding should be applied to the litigants before the Court, so the caveat from *Harper* is inapplicable to this case.

(quoting *Moore v. Regents of the University of California*, 793 P.2d 479 (Cal. 1990)). Under no circumstance is a defendant allowed to *keep* property that it took in good faith but in violation of the plaintiff's rights—not at common law, not in criminal law, and not under 42 U.S.C. § 1983.

To be sure, the unions' good faith could shield them from liability if the plaintiffs were suing to recover damages that extend beyond the mere recovery of their property. In *Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993), for example, the defendants had seized the plaintiff's cattle and tractor in good-faith reliance on a state replevin statute that was later held to be unconstitutional. *See id*. at 1115. After the statute was declared unconstitutional, the plaintiff sued for damages. The Fifth Circuit held that the defendants' "good faith" shielded them from liability for damages that were inflicted by the seizure,[2] but the defendants *still had to return* the cattle and the tractor that they had unconstitutionally taken. *See id*. at 1115 (noting that the state courts had "ordered" the defendants to "return the property" that they had seized). In *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008), a towing company had towed the plaintiff's car in good faith but in violation of her constitutional rights. The "good faith" defense shielded the towing company from liability for damages inflicted by the towing, but it did *not* allow the towing company to keep the plaintiff's car. *See id*. at 1096–97. "Good faith" is *never* a defense to claims for restitution or restoration of unconstitutionally seized property—even though it may provide a defense when someone sues over collateral damage inflicted by the seizure.

Indeed, in each of the five circuit-court rulings that has recognized a "good faith" defense for private parties in section 1983 litigation, the Court's holding protected the defendants from liability for *damages* that arose from their unconstitutional interference with another's property—and it would have been absurd to suggest that the

_____

2.  *See id*. at 1118–21.

defendants in those cases should have been allowed them to *keep* the property interests that they took in good faith but in violation of another's constitutional rights. The Second Circuit's ruling in *Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996), for example, shielded a defendant from liability for damages inflicted by his good-faith (but unconstitutional) attachment of the plaintiff's real estate. It did not, however, allow the defendant to retain the unconstitutional attachment that he had imposed on the plaintiff's property. *See id.* at 311–13. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994), protected a defendant from liability for damages inflicted by its good-faith (but unconstitutional) garnishment of the plaintiff's checking account, but the defendant *still* had to relinquish the unconstitutional garnishment that it had obtained. *See id.* at 1258 (noting that the state courts had "vacated the attachment of [the plaintiff's] checking account"). And *Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*, 76 F.3d 692 (6th Cir. 1996), allowed a defendant to escape damages for its good-faith (but unlawful) impoundment of the plaintiff's property, but it did not permit the defendant to *keep* the property that it had unlawfully seized from the plaintiff. *See id.* at 696 (noting that the defendant had "held the seized material in trust for eight days" until the district court took custody of the materials, which the courts were required to return to the plaintiff after the impoundment order had been vacated).

Do the unions believe that the defendants in *Wyatt* should have been allowed to keep the cattle and tractor that they seized in good-faith reliance on the state replevin statute that was later declared unconstitutional? *See Wyatt*, 994 F.2d at 1115. That the tow-truck company in *Clement* should have been allowed to keep the car that it towed in good-faith reliance on a police officer's instructions? *See Clement*, 518 F.3d at 1096–97. That government officials should be allowed to keep taxes, fines, and forfeited property that they collect in good-faith reliance on statutes that are later declared unconstitutional? *See Harper*, 509 U.S. at 98–99 (1993); *Lewis*, 478 F.2d at

846; *Neely*, 546 F.2d at 1061; *DeCecco*, 485 F.2d at 372–73; *Pasha*, 484 F.2d at 632–33; *Holmes*, 822 F.2d at 500; *Summa*, 362 F. Supp. at 1181. That the FBI should have been allowed to keep the property that it seized from Congressman Jefferson's office in good-faith reliance on a search warrant that was later declared unconstitutional? *See Rayburn House Office Building Room 2113 Washington DC 20515*, 497 F.3d at 656, 665. That putative crime victims should be allowed to keep victim-restitution awards that they receive in good faith but in reliance on a statute that is later held unconstitutional? *See Venneri*, 782 F. Supp. at 1093. Every one of these cases must be decided differently if a defendant's "good faith" entitles it to *keep* property that it took without fault but in violation of another's constitutional rights. The "good faith" defense can protect a defendant from liability for damages that arise from its innocent but unconstitutional conduct. But it can *never* shield a defendant from a restitutionary remedy when a plaintiff sues to recover the property or money that the defendant took in violation of the plaintiff's constitutional rights. This principle is universal in the law—and it is reflected not only in the cases that we have cited but also in the common law, where liability for conversion is strict and a defendant's "good faith" will never excuse his obligation to return property (or the fair market value of property) that he took innocently but in violation of the plaintiff's rights. *See Morissette v. United States*, 342 U.S. 246, 253–54 (1952) ("In the civil tort [of conversion], except for recovery of exemplary damages, the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant."); Epstein, *supra* at 32.

The cases that have allowed unions to invoke the "good faith" defense in agency-fee refund lawsuits make no effort to explain how their stance can be reconciled with the rulings that compel the return of property taken in good-faith reliance on statutes that are later declared unconstitutional. *Jarvis v. Cuomo*, 660 Fed. Appx. 72 (2d Cir. 2016), for example, simply stated that "it was objectively reasonable for [the union] to act on the basis of a statute not yet held invalid," and concluded that "defendants

are not liable for damages stemming from the pre-*Harris* collection of fair share fees." *Id*. at 76 (citation and internal quotation marks omitted).[3] That is a non-sequitur. An immunity from "damages" is not an immunity from restitution, and the plaintiffs in *Jarvis* were seeking a restitutionary remedy of agency fees that the union had taken from their paychecks without their consent and in violation of their constitutional rights. *See Wood v. Strickland,* 420 U.S. 308, 315 n.6 (1975), *overruled in part on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ("[I]mmunity from damages does not ordinarily bar equitable relief as well."). More importantly, *Jarvis* did not cite and made no effort to distinguish *Harper*, *Lewis*, *Neely*, *DeCecco*, *Pasha*, *Holmes*, *Summa*, or *Venneri*—all of which had required the return of money or property *despite* the fact that it had been taken in "objectively reasonable" reliance on a statute "not yet held invalid." And *Jarvis* did not address or acknowledge the staggering implications of its holding—which would have allowed the defendant in *Wyatt* to *keep* the cattle and the tractor that it had seized in good-faith reliance on a state's unconstitutional replevin statute.

 The unions also invoke the plurality opinion in *Lemon v. Kurtzman*, 411 U.S. 203 (1973) (*Lemon II*), but this case is no help to the union defendants. *Lemon II* refused to enjoin the State of Pennsylvania from reimbursing parochial schools for expenses that they had incurred before the Supreme Court had declared the reimbursement regime unconstitutional in *Lemon v. Kurtzman*, 403 U.S. 602 (1971)

---

3.  The other post-*Harris* refund cases deploy similar reasoning. *See Winner v. Rauner*, No. 15-CV-7213, 2016 WL 7374258, *5 (N.D. Ill. Dec. 20, 2016) ("[T]he Supreme Court had never invalidated a statute authorizing [agency fees] before *Harris*. . . . SEIU's reliance on relevant precedent was reasonable. . . . Therefore, the pleadings are a sufficient basis to conclude that the affirmative good-faith defense applies to SEIU as a matter of law."); *Hoffman v. Inslee*, No. 14-CV-200 (MJP), 2016 WL 6126016, *4 (W.D. Wash. Oct. 20, 2016) ("[A] private party sued under § 1983 is not liable for money damages if that party was acting in good faith reliance on a facially valid state law.").

(*Lemon I*). But the plurality explained that the *reason* for this allowance was that *Lemon I* was non-retroactive under the three-part test for retroactivity established in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971). *See Lemon II*, 411 U.S. at 206 ("We conclude, however, that our holding in *Lemon I* 'decid[ed] an issue of first impression whose resolution was not clearly foreshadowed.'" (quoting *Chevron Oil*, 404 U.S. at 106)); *Chevron Oil*, 404 U.S. at 106 ("[T]he decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed" (citations omitted)). The *Chevron Oil* test for non-retroactivity was explicitly repudiated in *Harper*, which holds that *all* Supreme Court pronouncements must apply retroactively if the case announcing the rule applied it to the litigants before the Court. *See Harper*, 509 U.S. at 98 ("The legal imperative to apply a rule of federal law retroactively after the case announcing the rule has already done so must prevai[l] over any claim based on a *Chevron Oil* analysis." (citation and internal quotation marks omitted)). And the unions have refused to contest the retroactivity of *Janus*, consistent with the Supreme Court's ruling in *Harper*. *See* Union Def.' Mot. to Dismiss at 12 n.5 ("[S]olely for the purposes of this motion, Union Defendants assume *Janus* applies retroactively."). *Lemon II* applied a pre-*Harper* non-retroactivity doctrine that the Supreme Court long ago disavowed—and that the unions do not even attempt to argue should apply to this case.

More importantly, *Lemon II* offers no support for the idea that a defendant who takes another's property in good-faith reliance on an unconstitutional statute can *keep* the property if the plaintiff sues for its return. The school districts in *Lemon II* had incurred expenses in reliance on a state statute that promised them reimbursement, and the plaintiffs in *Lemon II* were suing to prevent the State from paying the school districts with its own money. That does not in any way establish that a plaintiff who

sues for the return of money or property that was taken in good-faith reliance on an unconstitutional statute must be sent home empty-handed.

Finally, the unions suggest that Mr. Pellegrino cannot sue for the recovery of his property because his membership dues were "collected pursuant to valid member contracts, not under color of any compulsory law." Union Def.' Mot. to Dismiss at 16. The unions are mistaken. Although Mr. Pellegrino's *membership* in the union was voluntary, the *payments* that he made to the union were not. Mr. Pellegrino was compelled to pay the amount of the "agency fees" that every member of his bargaining unit had to pay regardless of whether he joined the union. This *portion* of Mr. Pellegrino's membership dues was compelled—in the same way it was compelled from the employees who declined union membership. And because Mr. Pellegrino alleges that he paid this portion of his membership dues unwillingly, and that he never would have paid money to the union in a right-to-work setting, he has stated a compelled-subsidy-of-speech claim. Mr. Pellegrino chose to join the union and pay the *difference* between full membership dues and the "agency fees" that he would have paid had he stayed out. But Mr. Pellegrino had no choice in whether to pay the mandatory payments that were imposed on every member of his bargaining unit.

## II. *Wyatt v. Cole* Precludes A "Good Faith" Defense When The Most Analogous Common-Law Tort Rejects Any Consideration Of The Tortfeasor's State Of Mind

The Supreme Court's opinion in *Wyatt v. Cole*, 504 U.S. 158 (1992) presents a separate and independent obstacle to the unions' "good faith" defense. Although *Wyatt* refused to resolve whether a "good faith" defense exists for private defendants under section 1983, it imposed clear limits on the judiciary's authority to create non-textual defenses of this sort. Whenever a section 1983 defendant asserts a non-textual defense such as immunity or "good faith," *Wyatt* compels courts to look to the most analogous common-law tort—and it allows courts to recognize the proposed defense

only if that most analogous tort would have conferred similar defenses at the time section 1983 was enacted:

> Section 1983 creates a species of tort liability that on its face admits of no immunities. Nonetheless, we have accorded certain government officials either absolute or qualified immunity from suit if the tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine. If parties seeking immunity were shielded from tort liability when Congress enacted the Civil Rights Act of 1871—§ 1 of which is codified at 42 U.S.C. § 1983—we infer from legislative silence that Congress did not intend to abrogate such immunities when it imposed liability for actions taken under color of state law. . . . In determining whether there was an immunity at common law that Congress intended to incorporate in the Civil Rights Act, we look to the most closely analogous torts.

*Wyatt*, 504 U.S. at 164 (citations and internal quotation marks omitted); *see also id*. at 170 (Kennedy, J., concurring) ("Our immunity doctrine is rooted in historical analogy, based on the existence of common-law rules in 1871, rather than in freewheeling policy choices." (citation and internal quotation marks omitted)); *id*. at 171–72 (Kennedy, J., concurring) ("[W]e may not transform what existed at common law based on our notions of policy or efficiency.").

The common-law tort most analogous to the union's unconstitutional confiscation of wages is conversion—and conversion is a strict-liability tort that is unconcerned with whether the defendant acted in good faith. *See Morissette v. United States*, 342 U.S. 246, 253–54 (1952) ("In the civil tort [of conversion], except for recovery of exemplary damages, the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant."); Epstein, *supra* at 32. Because a defendant's good faith cannot excuse the tort of conversion, it cannot excuse a defendant's unconstitutional seizure of property either. In both situations, the defendant must return the property that it has taken in good faith but in violation of the plaintiff's legal rights.

All of this is consistent with the basic principle that runs throughout American law: Property that is taken innocently but in violation of another's legal rights must be returned—even when the defendant's good faith can shield it from liability for damages that arise from his interference with the plaintiffs' property. "Good faith" is never an excuse to *keep* property that was innocently but wrongfully taken from another person.

## III.   Even If The Unions Could Assert A "Good Faith" Defense, They Must Show That Their Agency Shops Complied With *Abood* And Pre-*Janus* Law

Even if one assumes that the unions could assert a "good faith" defense to the plaintiffs' claims, the unions cannot establish "good faith" unless they show that they fully complied with the pre-*Janus* constitutional strictures on agency shops. *See Abood v. Detroit Board of Education*, 431 U.S. 209, 239–40 (1977). The unions appear to believe that *Abood* gave them carte blanche to operate agency shops, but *Abood* imposed significant constitutional limits a union's ability to use the money that it forcibly collected from non-union members. Under *Abood*, public-employee unions could use the money they collected from non-members to pay only for union activities that were non-ideological, and they were strictly forbidden to require an employee to "contribute to the support of an ideological cause he may oppose as a condition of holding a job." *Abood*, 431 U.S. at 235. So the unions must show that they complied with *Abood* before they can establish that they acted in "good faith" compliance with the law existing at the time. They cannot ask a court to assume compliance with *Abood* without presenting any evidence of this.

And it will be a tall order for the unions to show that they complied with *Abood*. As *Janus* recognized, "*Abood*'s line between chargeable and nonchargeable union expenditures has proved to be impossible to draw with precision." *Janus*, 138 S. Ct. at 2481. And because the unions are asserting good-faith as an affirmative defense, it is

they who must bear the burden of establishing compliance with the admittedly hazy line between the "chargeable" and "nonchargeable" expenditures. *Cf. Abood*, 431 U.S. at 239–40 ("Since the unions possess the facts and records from which the proportion of political to total union expenditures can reasonably be calculated, basic considerations of fairness compel that they, not the individual employees, bear the burden of proving such proportion."). In all events, this is a factual question that cannot be resolved until the defendants produce evidence and the plaintiffs have had an opportunity to take discovery.

## IV.   Even If The Union Could Assert A "Good Faith" Defense, It Cannot Establish Good Faith Unless It Present Evidence Of Its Officers' Subjective State Of Mind

There is a final reason why the unions cannot prevail on a good-faith defense at this stage of the proceedings: "Good faith" is a subjective defense that requires evidence of a defendant's state of mind.[4] The unions present no evidence whatsoever regarding the subjective beliefs of their officers, and even if they had, such evidence cannot be considered on Rule 12(b)(6). "Good faith" is an affirmative defense on which the unions bear the burden of proof, and defenses of that sort cannot be grounds for a motion to dismiss. Instead, the unions must plead this defense in their answer and move for summary judgment after producing evidence of their supposed good faith. *See Anderson v. Creighton*, 483 U.S. 635, 653 n.4 (1987) ("[D]efendant has the burden of pleading good faith as an affirmative defense"). The plaintiffs must also be given an opportunity to take discovery on the unions' good faith. *See Franklin v. Fox*, 2001 WL 114438, *5 (N.D. Cal.) ("A good faith defense . . . allows [plaintiffs] to conduct discovery of the subjective intent of the private defendant.").

---

4.  *See, e.g.*, *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir. 1994) ("'[G]ood faith' gives state actors a defense that depends on their subjective state of mind, rather than the more demanding objective standard of reasonable belief that governs qualified immunity.").

## V.     The Unions Overstate The Judicial Support For A "Good Faith" Defense

The unions claim that "every circuit court to analyze the good faith defense" after *Wyatt* has allowed private parties to assert a good-faith defense under 42 U.S.C. § 1983. *See* Union Def.' Mot. to Dismiss at 2. But they have neglected to inform the Court that the Ninth and First Circuits have categorically rejected the good-faith defense for private parties in section 1983 litigation. *See Howerton v. Gabica*, 708 F.2d 380, 385 n.10 (9th Cir. 1983) ("[T]here is no good faith immunity under section 1983 for private parties who act under color of state law to deprive an individual of his or her constitutional rights."); *Downs v. Sawtelle*, 574 F.2d 1, 15–16 (1st Cir. 1978) ("Whatever factors of policy and fairness militate in favor of extending some immunity to private parties acting in concert with state officials were resolved by Congress in favor of those who claim a deprivation of constitutional rights."); *see also Lovell v. One Bancorp*, 878 F.2d 10, 13 (1st Cir. 1989) (recognizing that *Downs* precludes defenses for private parties who violate section 1983). The Ninth Circuit's later opinion in *Clement* ignored *Howerton* while recognizing a "good faith" defense under section 1983, but Ninth Circuit panels have no authority to overrule or disregard prior panels. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).

The Seventh Circuit has also acknowledged that pre-*Harris* agency-fee payers are entitled to refunds. In *Riffey v. Rauner*, 315 F.3d 314 (7th Cir. 2018), the Seventh Circuit denied class certification in a refund lawsuit, but announced that it "agreed with the putative class that no one could be compelled to pay fair-share fees, pursuant to the Supreme Court's decision in *Harris v. Quinn*, —— U.S. —— (2014), *and that any such objector would be entitled to have his or her payments refunded.*" *Id.* at 315 (emphasis added). *Riffey* did not consider or discuss the good-faith issue, but its statement regarding the propriety of refunds cannot be reconciled with the unions' insistence on immunity for those who collected agency fees before the Supreme Court's rulings in *Harris* or *Janus*.

Finally, the unions mischaracterize the Supreme Court's ruling in *Wyatt* by suggesting that it lends support to the availability of a good-faith defense. *See* Union Def.' Mot. to Dismiss at 12. The *Wyatt* opinion made clear that it was refusing to resolve whether a "good faith" defense exists under section 1983:

> [W]e do not foreclose the possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith . . . . *Because those issues are not fairly before us, however, we leave them for another day.*

*Wyatt*, 504 U.S. at 169 (emphasis added); *see also Richardson v. McKnight*, 521 U.S. 399, 414 (1997) ("*Wyatt* . . . did not decide whether or not the private defendants before it might assert . . . a special 'good-faith' defense. . . . Like the Court in *Wyatt*, . . . we do not express a view on this . . . question."). That does not suggest that the good-faith defense is available under section 1983; it is a statement of calculated agnosticism.

## VI.   The Union Defendants' Claim That The Plaintiffs "Failed To Name Necessary Parties" Is Without Merit

The union defendants claim that the plaintiffs should have included Ms. VanOstrand's employer and local union as defendants in this litigation. But the plaintiffs sued the United Teachers of Northport "as representative of the class of all chapters and affiliates of New York State United Teachers." *See* Complaint at ¶ 7 ("Defendant United Teachers of Northport is a local union chapter affiliated with the NYSUT. It is sued as representative of the class of all chapters and affiliates of the NYSUT."). They also sued the Northport-East Northport Union Free School District as "representative of the class of all school districts in the state of New York.") *See* Complaint at ¶ 8 ("Northport-East Northport Union Free School District is a school district in Suffolk County, New York. . . . It is sued as representative of the class of all school districts in the state of New York."). The union defendants admit that Ms. VanOstrand's local union is affiliated with NYSUT, so it falls within the class definition. Of

course, the defendant classes have not yet been certified, but the federal joinder rules make clear that they are "subject to Rule 23" and that class actions present an "exception" to the ordinary rules of joinder. *See* Fed. R. Civ. P. 19(d).

## VII. The Plaintiffs' State-Law Claims Are Foreclosed By The Recent Amendments To The Taylor Law

The union defendants' letter of April 18, 2019 (ECF No. 46) informed the court of recent legislation that prohibits litigants from suing under New York law for the return of agency fees collected before the Supreme Court announced its ruling in *Janus.* Because of this recent enactment, the plaintiffs can no longer pursue their state-law claims against any of the defendants in this lawsuit, and they respectfully ask the Court to dismiss those claims with prejudice.

## VIII. The Plaintiffs Have Stated A Claim For Relief On Behalf Of Current And Former Union Members

The union defendants challenge the validity of Mr. Pellegrino's claims on behalf of current and former union members. Some of the unions' arguments have merit; others do not. We will address the unions' arguments in the order presented in their brief.

### A. Any Claim That Mr. Pellegrino Might Have Brought Against N.Y. Civ. Serv. Law § 208(1)(b)(i) Became Moot Upon His Resignation From Union Membership

The unions correctly observe that Mr. Pellegrino's constitutional challenge to N.Y. Civ. Serv. L. § 208(1)(b)(i) became moot when he resigned from the union and his resignation was accepted without resistance. Mr. Pellegrino had standing to challenge section 208(1)(b)(i) at the time he filed the lawsuit, but there is no longer an Article III case or controversy because there is no prospect that this statutory provision could be enforced against Mr. Pellegrino as a former union member. The Court should dismiss this constitutional challenge for lack of subject-matter jurisdiction.

### B.  Mr. Pellegrino Has Stated A Compelled-Subsidy-Of-Speech Claim Against The Union Defendants

Mr. Pellegrino alleges that he was compelled to pay money to the unions as a condition of his employment. He admits that he was not compelled to pay the full amount of membership dues, but he *was* compelled to pay the amount of the "agency fees" that every member of his bargaining unit was required to pay whether they joined the union or not. The union defendants never deny that this *portion* of Mr. Pellegrino's membership dues was compelled—in the same way it was compelled from the employees who declined union membership. And because Mr. Pellegrino alleges that he paid this portion of his membership dues unwillingly, and he never would have paid money to the union in a right-to-work setting, he has stated a compelled-subsidy-of-speech claim.

Every employee who worked in an agency shop was compelled to pay money to the union as a condition of employment. Their only choice was whether to join the union and pay full membership dues, or stay out of the union and pay a reduced amount in "agency fees." Mr. Pellegrino chose to join the union and pay the *difference* between full membership dues and the "agency fees" that he would have paid had he stayed out. But he had no choice in whether to pay the mandatory portion that was imposed on every member of his bargaining unit.

*Janus* forbids public employers to require union payments as a condition of employment, so it cannot be denied that the defendants violated Mr. Pellegrino's First Amendment rights by enforcing this unconstitutional agency shop. *See Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2464 (2018) ("A significant impingement on First Amendment rights occurs when public employees are required to provide financial support for a union that takes many positions during collective bargaining that have powerful political and civic consequences." (citation and internal quotation marks omitted)); *id.* ("[T]o compel a man to furnish

contributions of money for the propagation of opinions which he disbelieves and ab-hor[s] is sinful and tyrannical." (quoting A Bill for Establishing Religious Freedom, in 2 Papers of Thomas Jefferson 545 (J. Boyd ed. 1950)).[5]

The unions never deny that Mr. Pellegrino was compelled to pay the mandatory *portion* of his membership dues as a condition of employment. But the unions think they can escape liability for these compelled payments because Mr. Pellegrino elected to join the union and pay the *difference* between full membership dues and agency fees in exchange for voting rights. *See* Union Defs.' Mot. to Dismiss at 25–30. This is a non-sequitur. Mr. Pellegrino's voluntary choice to pay the *difference* between full membership dues and agency fees does not change the fact that the mandatory *portion* of his membership dues was compulsory. Nor does it change the fact that Mr. Pellegrino paid that portion unwillingly; he would have quit the union and kept all of that money for himself had he not been working in an unconstitutional agency shop.

The unions' brief spends a great deal of time defending the sanctity of contractual obligations. *See* Union Defs.' Mot. to Dismiss at 27–28. But Mr. Pellegrino does not need to show that his union-membership contracts were invalid or signed under "du-ress" in order to show that he was compelled to subsidize the union as a condition of his employment. And Mr. Pellegrino's decision to voluntarily pay the *difference* be-tween full membership dues and agency fees in exchange for voting rights does not convert the mandatory portion of his membership dues into a voluntary contribution. Mr. Pellegrino had no choice in whether to pay the mandatory portion of his mem-bership dues; the union would have taken it as "agency fees" or as "membership dues"

---

5. This does *not* mean that every union member is entitled to a refund. The vast majority of union members paid their dues willingly and would have done so in a *Janus*-compliant right-to-work environment, and those employees are not entitled to relief.

regardless of what he had done. The unions never deny this, so they cannot defeat Mr. Pellegrino's claim that this was a compelled subsidy of speech.

### C.   The Evidence That the Union Defendants Already Have The Plaintiffs' Personal Contact Information Defeats Their Article III Standing To Challenge N.Y. Civ. Serv. L. § 208(4)(a)

The union defendants have introduced declarations stating that they already possess the home addresses of the plaintiffs. We agree with the unions that this defeats the plaintiffs' Article III standing to challenge N.Y. Civ. Serv. L. § 208(4)(a), at least until the plaintiffs have concrete plans to change their home address before an event that would trigger the compelled disclosure. The plaintiffs have no such plans at this time, so they respectfully ask the Court to dismiss their constitutional challenge to section 208(4)(a) for lack of subject-matter jurisdiction.

### IX.   The Plaintiffs' Claims For Prospective Injunctive Relief Against The Continued Collection Of Agency Fees Should Be Dismissed As Moot

The plaintiffs also agree with the unions that the claims for prospective relief against the collection of agency fees should be dismissed as moot in light of the unions' demonstrated compliance with *Janus* and their promise to comply with *Janus* going forward.

In our letters to the Court of August 27, 2018 (ECF Nos. 33–35), we argued that the "voluntary cessation" doctrine should apply and that the plaintiffs' claims for prospective relief should remain live. Although we continue to believe that there is a plausible case to be made for the application of the "voluntary cessation" doctrine, the courts have not been receptive to these arguments. *See* Union Defs.' Mot. to Dismiss at 10. We therefore believe it appropriate to withdraw these claims for prospective relief, especially when an injunction appears unnecessary given the defendants' prompt compliance with *Janus*. We respectfully ask the Court to dismiss these claims for prospective relief for lack of subject-matter jurisdiction.

**X.      The District-Court Rulings That Have Shielded Unions From Post-*Janus* Refund Lawsuits Have Not Explained How Good Faith Can Allow A Defendant To Keep Property That Was Taken Innocently But In Violation Of Another's Rights**

Since the defendants filed their motions to dismiss in January 2019, at least nine district courts have rejected post-*Janus* refund lawsuits on the ground that the union defendants had acted in good-faith reliance on statutes that had authorized the collection of agency fees. *See Danielson v. AFSCME Council 28*, 340 F. Supp. 3d 1083 (W.D. Wash. 2018); *Cook v. Brown*, No. 6:18-cv-01085-AA (D. Oregon), ECF No. 44; *Carey v. Inslee*, No. 3:18-cv-05208-RBL (W.D. Wash.), ECF No. 62; *Crockett v. NEA-Alaska*, No. 3:18-cv-00179-JWS (D. Alaska), ECF No. 68; *Lee v. Ohio Education Ass'n*, No. 1:18-cv-1420-JRA (N.D. Ohio), ECF No. 56; *Mooney v. Illinois Education Ass'n*, 1:18-cv-01439-JBM-JEH (C.D. Illinois), ECF No. 19; *Akers v. Maryland State Education Ass'n*, No. 1:18-cv-1797-RDB (D. Maryland), ECF No. 110; *Hough v. SEIU Local 521*, No. 3:18-cv-4902-VC (N.D. Cal.), ECF No. 53; *Bermudez v. Service Employees Int'l Union, Local 521*, No. 3:18-cv-4312-VC (N.D. Cal.), ECF No. 82.

But none of these opinions have explained why an entity that takes another's property in good faith but in violation of the Constitution should *keep* the property when a plaintiff sues for its return—and none of these opinions can be squared with the judicial consensus requiring the return of taxes, fines, and seized or forfeited property that were taken in good-faith reliance on statutes that were later declared unconstitutional. *See supra* at 1–4. A "good faith" defense of the scope proposed by the union—and accepted by the courts in *Danielson*, *Cook*, *Carey*, *Crockett*, *Lee*, *Mooney*, *Akers*, *Hough*, and *Bermudez*—would allow the defendants in *Wyatt* to keep the cattle and tractor that they had unconstitutionally seized, and allow the towing company in *Clement* to keep the car that it had unconstitutionally towed. There is much to be said in support of a "good faith" defense that shields private defendants

from liability for *damages* that result from an innocent but unconstitutional seizure of another's property. But the notion that "good faith" can allow a defendant to *keep* the property that it innocently but unconstitutionally took is indefensible. No one gets a windfall for violating another person's constitutional rights, even if the violation occurred in the utmost good faith.

## CONCLUSION

The plaintiffs' state-law claims against the union defendants should be dismissed with prejudice. The plaintiffs' constitutional challenges to section 208(1)(b)(i) and 208(4)(a) should be dismissed for lack of subject-matter jurisdiction. The plaintiffs' claims for prospective relief against the enforcement of agency shops should be dismissed for lack of subject-matter jurisdiction. The remainder of the union defendants' motion to dismiss should be denied.

Respectfully submitted.

 /s/ Jonathan F. Mitchell

PAUL NIEHAUS                          JONATHAN F. MITCHELL*
Kirsch & Niehaus                      Mitchell Law PLLC
150 East 58th Street                  106 East Sixth Street
22nd Floor                            Suite 900
New York, New York 10155              Austin, Texas 78701
(212) 631-0223                        (512) 686-3940
paul.niehaus@kirschniehaus.com        jonathan@mitchell.law

                                      * admitted *pro hac vice*

                                      *Counsel for Plaintiffs and*
Dated: April 23, 2019                 *the Proposed Classes*

## CERTIFICATE OF SERVICE

I certify that on April 23, 2019, I served this document by e-mail upon:

CHARLES G. MOERDLER
ALAN M. KLINGER
DINA KOLKER
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038
(212) 806-5400
cmoerdler@stroock.com
aklinger@stroock.com
dkolker@stroock.com

ROBERT T. REILLY
MICHAEL J. DEL PIANO
EDWARD J. GREENE JR.
ANDREA A. WANNER
52 Broadway, 9th Floor
New York, New York 10004
(212) 228-3382
mdelpian@nysutmail.org
egreene@nysutmail.org
awanner@nysutmail.org

*Counsel for Union Defendants*

ROBERT E. MORELLI
Assistant Attorney General
300 Motor Parkway, Suite 230
Hauppauge, New York 11788
robert.morelli@ag.ny.gov

*Counsel for State Defendants*

JOHN H. GROSS
Ingerman Smith, L.L.P.
150 Motor Parkway, Suite 400
Hauppauge, New York 11788
(631) 261-8834
jgross@ingermansmith.com

*Counsel for School District Defendants*

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL*
*Counsel for Plaintiffs and
the Proposed Classes*