UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
SCOTT PELLEGRINO, on behalf of himself and all                     :
others similarly situated; and CHRISTINE                           :
VANOSTRAND, on behalf of herself and all others                    :
similarly situated,                                                :
                                                                   :
                        Plaintiffs,                                :
                                                                   :      Index No. 18-cv-03439
                                                                   :      (NGG)(RLM)
                -against-                                           :
                                                                   :
NEW YORK STATE UNITED TEACHERS; UNITED                             :
TEACHERS OF NORTHPORT, as representative of                        :
the class of all chapters and affiliates of New York               :
State United Teachers; NORTHPORT-EAST                              :
NORTHPORT UNION FREE SCHOOL DISTRICT,                              :
as representative of the class of all school districts in          :
the state of New York; ANDREW CUOMO, in his                        :
official capacity as Governor of New York;                         :
BARBARA UNDERWOOD, in her official capacity as                     :
Attorney General of New York; JOHN WIRENIUS, in                    :
his official capacity as chair of the New York Public              :
Employment Relations Board; ROBERT HITE, in his                    :
official capacity as member of the New York Public                 :
Employment Relations Board,                                        :
                                                                   :
                        Defendants.                                :
                                                                   :
------------------------------------------------------------------ X


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## UNION DEFENDANTS' MOTION TO DISMISS THE COMPLAINT


STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
(212) 806-5400

                        -and-

ROBERT T. REILLY, ESQ.
52 Broadway, 9th Floor
New York, New York
(212) 228-3382 10004

*Co-counsel for Union Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES..........................................................................................ii

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ................................................................................................................1

I.  THE GOOD FAITH DEFENSE BARS PLAINTIFFS' REMAINING CLAIMS............1

A.  It Is Plaintiffs Who *Understate* The Strength Of The Good Faith Defense..................2

B.  Application of Good Faith Reliance Does Not Require A Scienter Component..........4

C.  This Court Need Not Look Beyond the Pleadings To Grant The Motion...................5

D.  Plaintiffs Fail to State A Claim On Behalf Of Union Members.................................7

E.  Each Plaintiff Lacks Standing As Against Union Defendants.....................................8

II.  PLAINTIFFS DO NOT HAVE AN EQUITABLE CLAIM FOR REPAYMENT OF PRE-JANUS AGENCY FEES ..........................................................................................9

A.  Plaintiffs' Claims Are For Legal Damages..................................................................9

B.  The Good Faith Defense Is Not Limited to Collateral Damages..............................11

C.  Even If Plaintiffs Could Seek Equitable Relief, They Are Not Entitled To It...........13

CONCLUSION............................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Abood v. Detroit Bd. Of Educ.,
    431 U.S. 209 (1977)....................................................................................5, 6

Akers v. Md. State Educ. Ass'n,
    No. RDB-18-1797, __ F. Supp. 3d __, 2019 WL 1745980
    (D. Md. April 18, 2019)......................................................................................2

Ams. United for Separation of Church & State v. Prison Fellowship
    Ministries, Inc.,
    509 F.3d 406 (8th Cir. 2007) ...........................................................................13

Anderson v. Creighton,
    483 U.S. 635 (1987)............................................................................................6

Babb v. Cal. Teachers Ass'n,
    8:18-cv-00994-JLS-DFM, __ F. Supp. 3d __, 2019 WL 2022222
    (C.D. Cal. May 8, 2019) ........................................................................... passim

Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom
    Teachers Ass'n, Inc., Local 1889, AFT AFL-CIO,
    38 N.Y.2d 397 (1975) ........................................................................................5

Bermudez v. Serv. Emps. Int'l Union, Local 521,
    18-cv-04312-VC, 2019 WL 1615414 (N.D. Cal. April 16, 2019).......................2, 7

Carey v. Inslee,
    364 F. Supp. 3d 1220 (W.D. Wash. 2019)................................................. passim

Chicago Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson,
    475 U.S. 292 (1986)........................................................................................7, 8

Clement v. City of Glendale,
    518 F.3d 1090 (9th Cir. 2008) ...........................................................................3

Cook v. Brown,
    364 F. Supp. 3d 1184 (D. Or. 2019) ...........................................................2, 4, 5, 6

Crockett v. NEA-Alaska,
    367 F. Supp. 3d 996 (D. Alaska 2019) ...................................................... passim

Danielson v. Am. Fed'n of State, Cty., & Mun. Emps., Council 28, AFL-CIO,
    340 F. Supp. 3d 1083 (W.D. Wash. 2018) (Danielson II) ........................... passim

DeCecco v. United States,
        485 F.2d 372 (1st Cir. 1973)................................................................................12

Doughty v. State Emp.'s Ass'n of N.H., SEIU, Local 1984, CTW, CLC,
        19-cv-00053-PB (D. N.H. May 30, 2019), ECF No. 20 ...........................................2

Downs v. Sawtelle,
        574 F.2d 1 (1st Cir. 1978)................................................................................3, 4

Franklin v. Fox,
        No. C 97-2443 CRB, 2001 WL 114438 (N.D. Cal. Jan. 22, 2001) .........................7

Gilpin v. Am. Fed'n of State, Cty., and Mun. Emps., AFL-CIO,
        875 F.2d 1310 (7th Cir. 1989) ..........................................................................13

Great-West Life & Annuity Ins. Co. v. Knudson,
        534 U.S. 204 (2002)........................................................................................10

Harper v. Virginia Dep't of Taxation,
        509 U.S. 86 (1993)..........................................................................................12

Harris v. Quinn,
        573 U.S. 616 (2014).........................................................................................3

Hough v. SEIU Local 521,
        18-cv-04902-VC, 2019 WL 1785414 (N.D. Cal. April 16, 2019)............................2

Howerton v. Gabica,
        708 F.2d 380 (9th Cir. 1983) .............................................................................3

Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31, AFL-CIO,
        __ U.S. __, 138 S. Ct. 2448 (2018).............................................................. passim

Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31, AFL-CIO,
        15-cv-01235-RWG, 2019 WL 1239780 (N.D. Ill. Mar. 18. 2019) (Janus II) ................ passim

Jarvis v. Cuomo,
        660 F. App'x 72 (2d Cir. 2016), cert. denied, 137 S. Ct. 1204 (2017) ........................2, 3, 4, 6

Jordan v. Fox, Rothschild, O'Brien & Frankel,
        20 F.3d 1250 (3d Cir. 1994)...........................................................................6, 7

Kidwell v. Transp. Commc'ns Int'l Union,
        946 F.2d 283 (4th Cir. 1991) ............................................................................8

Lamb v. Cheney & Son,
        227 N.Y. 418 (1920) .......................................................................................5

Lee v. Ohio Educ. Ass'n,
   366 F. Supp. 3d 980 (N.D. Ohio 2019)....................................................................2

Lemon v. Kurtzman,
   411 U.S. 192 (1973) (Lemon II) .............................................................................13

Messerschmidt v. Millender,
   565 U.S. 535 (2012)................................................................................................12

Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan,
   __ U.S. __, 136 S. Ct. 651 (2016)..........................................................................11

Mooney v. Ill. Educ. Ass'n,
   1:18-cv-1439, __ F. Supp. 3d __, 2019 WL 1575186 (C.D. Ill. April 11, 2019) ............ *passim*

Neely v. United States,
   546 F.2d 1059 (3d Cir. 1976)..................................................................................12

O'Shea v. Littleton,
   414 U.S. 488 (1974)..................................................................................................8

Pani v. Empire Blue Cross Blue Shield,
   152 F.3d 67 (2d Cir. 1998)........................................................................................5

Pasha v. United States,
   484 F.2d 630 (7th Cir. 1973) ..................................................................................12

Pereira v. Farace,
   413 F.3d 330 (2d Cir. 2005)....................................................................................10

Riffey v. Rauner,
   873 F.3d 558 (7th Cir. 2017), cert. granted, judgment vacated, 138 S. Ct. 2708
   (2018)........................................................................................................................4

Riffey v. Rauner,
   910 F.3d 314 (7th Cir. 2018) (Riffey II).................................................................4

Smith v. Super. Ct. Cty. Of Contra Costa,
   No. 18-cv-05472-VC, 2018 WL 6072806 (N.D. Cal. Nov. 16, 2018) ......................8

Sung Cho v. City of New York,
   910 F.3d 639 (2d Cir. 2018).....................................................................................3

Timbs v. Ind.,
   __ U.S. __, 139 S. Ct. 682 (2019)..........................................................................12

United States v. Lewis,
   342 F. Supp. 833 (E.D. La. 1972)..........................................................................12

United States v. Lewis,
   478 F.2d 835 (5th Cir 1973) ...........................................................................................12

United States v. Rayburn House Office Bldg. Room 2113 Wash., D.C. 20515,
   497 F.3d 654 (D.C. Cir. 2007) ........................................................................................13

United States v. Summa,
   362 F. Supp. 1177 (D. Conn. 1972) .................................................................................12

United States v. Venneri,
   782 F. Supp. 1091 (D. Md. 1991) ....................................................................................12

Warth v. Seldin,
   422 U.S. 490 (1975) ...........................................................................................................8

Wholean v. CSEA SEIU Local 2001,
   3:18-cv-01008-WWE, 2019 WL 1873021 (D. Conn. April 26, 2019) ..............................2

Winner v. Rauner,
   No. 15-cv-7213, 2016 WL 7374258 (N.D. Ill. Dec. 20, 2016) ...........................4, 6, 13, 14

Wyatt v. Cole,
   504 U.S. 158 (1992) ...............................................................................................3, 4, 12

**Statutes**

42 U.S.C. §1983 ..................................................................................................... *passim*

N.Y. Civ. Serv. Law §208(3) .........................................................................................4

## PRELIMINARY STATEMENT

Since Defendants first moved it has only become more clear that Plaintiffs' remaining claims for retroactive agency fees and membership dues fail to state a claim and should be dismissed.  Each of the arguments Plaintiffs present here to salvage this last portion of their Complaint has been squarely rejected by other  courts in essentially identical circumstances.

Indeed, dismissal has been directed by every court in some 13 decisions (17 cases) to consider claims for retroactive agency fees paid pre-<u>Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31, AFL-CIO,</u> __ U.S. __, 138 S. Ct. 2448 (2018).  <u>See</u>, *infra* at 2-4.  Several of those courts have also considered Plaintiffs' claims for recovery of previously paid membership dues and likewise rejected those claims.  The same result should obtain here.

## ARGUMENT

Based upon Union Defendants' and co-Defendants' moving briefs, Plaintiffs have, in their opposition papers ("Opp. Br."), agreed to dismiss all claims against all Defendants except 42 U.S.C. §1983 claims against Union Defendants pertaining to damages for the payment of (i) pre-<u>Janus</u> agency fees and (ii) union dues up to the amount of agency fees.[1]  However, even these remaining claims fail to state a claim and should be dismissed.

## I.  THE GOOD FAITH DEFENSE BARS PLAINTIFFS' REMAINING CLAIMS

Plaintiffs admit that the good faith defense applies to claims brought under 42 U.S.C. §1983 against private actors for constitutional violations.  <u>See</u> Opp. Br. at 6 ("[t]o be sure, the union's good faith could shield them from liability if the plaintiffs were suing to recover damages that extend beyond the mere recovery of their property").  In an effort to escape that reality, Plaintiffs  tack on a handful of additional requirements to the application of the good

---

[1] <u>See</u> Comp., ¶¶45 (a-b)(class certification); (g) (for repayment of agency fees); (h) (compensatory damages for union members); (s)( seeking costs and attorneys' fees); and (t) (seeking other relief deemed just and proper).

faith defense which have no foundation in law, have been rejected by other courts considering post-Janus claims, and should be rejected here.

### A.     It Is Plaintiffs Who *Understate* The Strength Of The Good Faith Defense

In an unbroken line of decisions, District Courts have applied a good-faith defense to §1983 claims brought in similar circumstances seeking refunds of agency fees collected pre-Janus.  See Doughty v. State Emp.'s Ass'n of N.H., SEIU, Local 1984, CTW, CLC, 19-cv-00053-PB (D. N.H. May 30, 2019), ECF No. 20, (judgment entered in accordance with Oral Order, transcript appended hereto); Babb v. Cal. Teachers Ass'n, 8:18-cv-00994-JLS-DFM, __ F. Supp. 3d __, 2019 WL 2022222, at *5-6 (C.D. Cal. May 8, 2019) (dismissing five cases consolidated for arguments and decision); Wholean v. CSEA SEIU Local 2001, 3:18-cv-01008-WWE, 2019 WL 1873021, at *3 (D. Conn. April 26, 2019); Akers v. Md. State Educ. Ass'n, No. RDB-18-1797, __ F. Supp. 3d __, 2019 WL 1745980, at *5 (D. Md. April 18, 2019); Bermudez v. Serv. Emps. Int'l Union, Local 521, 18-cv-04312-VC, 2019 WL 1615414 (N.D. Cal. April 16, 2019); Mooney v. Ill. Educ. Ass'n, 1:18-cv-1439, __ F. Supp. 3d __, 2019 WL 1575186, at *6 (C.D. Ill. April 11, 2019); Lee v. Ohio Educ. Ass'n, 366 F. Supp. 3d 980, 982-83 (N.D. Ohio 2019); Hough v. SEIU Local 521, 18-cv-04902-VC, 2019 WL 1785414, at *1 (N.D. Cal. April 16, 2019); Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31, AFL-CIO, 15-cv-01235-RWG, 2019 WL 1239780, at *3 (N.D. Ill. Mar. 18. 2019) ("Janus II"); Carey v. Inslee, 364 F. Supp. 3d 1220, 1229 (W.D. Wash. 2019); Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1006 (D. Alaska 2019); Cook v. Brown, 364 F. Supp. 3d 1184, 1192 (D. Or. 2019); Danielson v. Am. Fed'n of State, Cty., & Mun. Emps., Council 28, AFL-CIO, 340 F. Supp. 3d 1083, 1084-87 (W.D. Wash. 2018) ("Danielson II").

These rulings are in line with Jarvis v. Cuomo, 660 F. App'x 72 (2d Cir. 2016) (summary order), cert. denied, 137 S. Ct. 1204 (2017), the leading case on point in this Circuit.  Jarvis

applied the good faith defense to bar recovery of agency fees collected from homecare workers following the Supreme Court decision in Harris v. Quinn, 573 U.S. 616 (2014), which invalidated agency fees for quasi-governmental employees.  Plaintiffs fail to explain why Jarvis should not apply here.  Plaintiffs mention Jarvis once, admitting that it both "allowed" application of the good faith defense to a union under analogous facts and rejected a claim for repayment of fees.  Opp. Br., 8-9.  Plaintiffs' lone criticism is that Jarvis did not explain at length why Plaintiffs' newly created argument regarding equitable relief did not apply.  Id., 9.[2]  As set forth in Section II, *infra*, Plaintiffs' equitable arguments fail.  Therefore, the reasoning in Jarvis is directly applicable here.

Plaintiffs' attempt to undermine this vast weight of authority by citing a few cases that fail to address the good faith reliance defense is unavailing.  Howerton v. Gabica, 708 F.2d 380, 385 n.10 (9th Cir. 1983), does not undercut Clement v. City of Glendale, 518 F.3d 1090 (9th Cir. 2008) (applying the good faith defense to a search and seizure claim).  See Opp. Br., 15. Howerton, which preceded Wyatt v. Cole, 504 U.S. 158 (1992) by a decade, merely notes that good faith reliance on law is an affirmative defense, not an immunity to suit.  See Howerton, 708 F. 3d at n.10 (reversing dismissal of §1983 claim for failure to show conduct under color of state law and noting that there is no good faith "immunity" for private actors, but citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 942 n.23 (1982) for its suggestion that compliance with law is an affirmative defense).  Howerton is consistent with Clement as well as post-Janus cases distinguishing good faith reliance from immunity and applying it as a defense.  Downs v.

---

[2] Although Jarvis is a summary order, the Second Circuit recently stated that summary orders "merely apply established law to particular sets of facts.  But precisely because such orders illustrate routine applications of established law, the pattern of results… can provide an informative survey of the kinds of cases in which a doctrine has been found unproblematically to apply or not to apply."  Sung Cho v. City of New York, 910 F.3d 639, 646 n.7 (2d Cir. 2018).  Jarvis considered facts and arguments nearly identical to the instant matter.

Sawtelle, 574 F.2d 1, 12 (1st Cir. 1978), relied upon by Plaintiffs (Opp. Br., 15), likewise addressed the question of extending qualified immunity pre-Wyatt.

Further, Plaintiffs' citation to Riffey v. Rauner, 910 F.3d 314, 315 (7th Cir. 2018) ("Riffey II"), is inapposite and misleading.  On remand from the Supreme Court post-Janus, the Riffey II Court described its prior ruling in short hand, distinguishing what was before the court, class certification, from what was not before the court, liability.  The Seventh Circuit recognized that any claims for repayment would be to subject to defenses, including the good faith defense. See id., at 319 (union would be entitled to litigate defenses).  See also Riffey v. Rauner, 873 F.3d 558, 566 (7th Cir. 2017), cert. granted, judgment vacated, 138 S. Ct. 2708 (2018) (describing with approval the District Court's suggestion that a classwide issue might be stated "solely to adjudicate the affirmative defense of good faith" but noting that objectors did not request such a class).

### B.    Application of Good Faith Reliance Does Not Require A Scienter Component

In other post-Janus cases, District Courts have consistently rejected attempts by plaintiffs, based upon *dicta* in Wyatt, to limit the good faith defense to instances where the analogous tort contained a scienter requirement.  See Danielson II, 340 F. Supp. 3d at 1086; Cook, 364 F. Supp. 3d at 1191; Carey, 364 F. Supp. 3d at 1229-30; Crockett, 367 F. Supp. 3d at 1004-05; Janus II, 2019 WL 1239780, at *2; Babb, 2019 WL 2022222, at *6.  These rejections accord with Jarvis, which applied the good faith defense regardless of whether the analogous tort at common law required scienter.  660 F. App'x at 75; see also Winner v. Rauner, No. 15-cv-7213, 2016 WL 7374258, (N.D. Ill. Dec. 20, 2016).

Even if the good faith defense were predicated on a common law tort, it would not help for conversion is not the most closely analogous tort.  Plaintiffs' First Amendment claim is based on Defendants' use of governmental process, N.Y. Civ. Serv. Law §208(3), to violate their First

Amendment rights.  Thus, abuse of process is the most analogous tort and contains a scienter

requirement at common law.  See Cook, 364 F. Supp. 3d at 1191 (citing Wyatt, 504 U.S. at 164;

Danielson II, 340 F. Supp. 3d at 1086); Crockett, 367 F. Supp. 3d at 1005-06 (abuse of process

or tortious interference with contract are more closely analogous torts than conversion); Babb,

2019 WL 2022222, at *7 (post-Janus claims are similar to dignitary torts, like defamation or

abuse of process).  In New York, claims for abuse of process and tortious interference require

intent.  See Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom

Teachers Ass'n, Inc., Local 1889, AFT AFL-CIO, 38 N.Y.2d 397, 403 (1975); Lamb v. Cheney

& Son, 227 N.Y. 418, 421 (1920).  Therefore, "even under Plaintiffs' proposed rule, the good-

faith defense is available to the Union Defendants."  Babb, 2019 WL 2022222, at *6.

### C.      This Court Need Not Look Beyond the Pleadings To Grant The Motion

Plaintiffs assert that Defendants need prove with evidentiary submissions that they, in

fact, complied with Abood pre-Janus and that they subjectively believed that this compliance

was constitutional.  Abood v. Detroit Bd. Of Educ., 431 U.S. 209 (1977).  Opp. Br., 13-14.

Neither requirement is supported by law or policy and each has been rejected by courts

considering post-Janus claims.  See Danielson II, 340 F. Supp. 3d at 1086; Cook, 364 F. Supp.

3d at 1193; Carey, 364 F. Supp. 3d at 1231; Mooney, 2019 WL 1575186, at *10; Babb, 2019

WL 2022222, at *7-8; Crockett, 367 F. Supp. 3d at 1007; Carey, 364 F. Supp. 3d at 1232.

Nothing beyond the Complaint is necessary to grant this motion based on the good faith

defense.  That Defendants acted pursuant to statutory provisions "appears on the face of the

complaint," and, therefore, dismissal is appropriate without resort to summary judgment.  See

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998).

First, Plaintiffs challenge agency fees in toto, and do not allege in the Complaint that

Union Defendants received fees not permitted by Abood.  That would have been a different

claim, which Plaintiffs did not make.  Thus, any argument that discovery is needed in support of that claim, rather than the one alleged, does not "track."  See Crockett, 367 F. Supp. 3d at 1007 (rejecting same claim).

Second, it is undisputed that Abood permitted agency fees from public sector employees. Opp. Br. at 13.  Thus, even if some of Union Defendants' staff subjectively believed that Abood would be overruled by Janus, it would not establish a lack of good faith.  See, e.g., Carey, 364 F. Supp. 3d at 1229 ("[A] defendant's expectation about future unconstitutionality is irrelevant because a defendant's own beliefs about what the constitution says hold no weight if they clash with their knowledge of clear judicial precedent.  If anything, a defendant's belief that a prior holding will be overruled only serves to emphasize their awareness of a binding constitutional decree.").  See also Danielson II, 340 F. Supp. 3d at 1086; Cook, 364 F. Supp. 3d at 1193; Carey, 364 F. Supp. 3d at 1231; Mooney, 2019 WL 1575186, at *10; Babb, 2019 WL 2022222, at *7; Crockett, 367 F. Supp. 3d at 1007.

Indeed, the Jarvis Court affirmed the dismissal of the §1983 claim, based on the good faith defense, on a 12(b)(6) motion.  660 F. App'x at 72; see also Winner, 2016 WL 7374258, at *5.  Whether Defendants acted in good faith is a purely legal issue regarding application of the good faith defense and the state of the law pre- and post-Janus, requiring no factual development. See Danielson II, 340 F. Supp. 3d at 1086 ("Inviting discovery on the subjective anticipation of an unpredictable shift in the law undermines the importance of observing existing precedent and ignores the possibility that prevailing jurisprudential winds may shift. This is not a practical, sustainable or desirable model.  The good faith defense should apply here as a matter of law.").

Cases relied upon by Plaintiffs are not to the contrary.  Anderson v. Creighton, 483 U.S. 635, 660 (1987), addressed the immunity of state actors, not the good faith defense.  Jordan v.

Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1278 (3d Cir. 1994), an early good faith

defense case, noted a subjective belief component, but, contrary to Plaintiffs' assertions,

cautioned against "incorrectly plac[ing] the burden of proving the defendants' *mens rea* on the

defendants."  Finally, Dainelson II, declined to extend Franklin v. Fox, No. C 97-2443 CRB,

2001 WL 114438, at *6 (N.D. Cal. Jan. 22, 2001), explaining that a union's official's subjective

belief that the Supreme Court would overturn long-standing precedent, "would have amounted to

telepathy."  Danielson II, 340 F. Supp. 3d at 1086 (citing Winner, 2016 WL 7374258, at *5.)

### D.    Plaintiffs Fail To State A Claim On Behalf Of Union Members

To the extent Plaintiffs state a §1983 claim for pre-Janus membership dues, it would be

barred by the good faith defense for the same reasons as the agency fee claim.  But, of course,

Plaintiffs cannot state such claim because membership is a voluntary contractual relationship.

Contrary to Plaintiffs' convoluted assertions, dues are not simply that extra amount above the

agency fee that members pay.  There is no compelled and uncompelled portion of dues.

Plaintiffs' attempt to create a distinction between voluntary "membership" and allegedly

involuntary "payments" in exchange for that membership (Opp. Br., 11) runs contrary to basic

principles of contract law and has been rejected by each court that has considered it.  Crockett,

367 F. Supp. 3d at 1008 ("[t]he fact that plaintiffs would not have opted to pay union

membership fees if *Janus* had been the law at the time…does not mean their decision was

therefore coerced."); Babb, 2019 WL 2022222, at *9; Bermudez, 2019 WL 1615414, at *2.

Membership is offered in exchange for dues, not a part of dues.  Dues and agency fees

are distinct not merely as to amount, but also associated rights and protections.  The same

constitutional restrictions applied to the use of agency fees precisely because they were

compelled pre-Janus, did not apply to dues.  See, e.g., Chicago Teachers Union, Local No. 1,

AFT, AFL-CIO v. Hudson, 475 U.S. 292, 302–03 (1986) (requiring objection procedure for

nonmember agency fee payers).  At most, what Mr. Pellegrino pled is that he had limited

economic options.  However, Mr. Pellegrino's decision to join UTN, vote and attempt to

influence collective bargaining because he would not save enough money as a nonmember does

not obviate his contractual obligations or implicate the First Amendment.  See Kidwell v.

Transp. Commc'ns Int'l Union, 946 F.2d 283, 292-93 (4th Cir. 1991) ("Where the employee has

a choice of union membership and the employee chooses to join, the union membership money is

not coerced.  The employee is a union member voluntarily."); Smith v. Super. Ct. Cty. Of Contra

Costa, No. 18-cv-05472-VC, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018) (Janus "does

not give [the plaintiff] license to evade his contract.").  Like the plaintiff in Smith, Mr. Pellegrino

"cannot now invoke the First Amendment to wriggle out of his contractual duties."  Smith, 2018

WL 6072806, at *1.

### E.  Each Plaintiff Lacks Standing As Against Union Defendants

Plaintiffs misunderstand the argument regarding necessary parties.  Union Defendants do

not insist that Plaintiffs name all the potential defendants in the putative defendant class.

However, neither Fed. Rule of Civ. Proc. 19(d) nor 23 obviate the requirement that each named

plaintiff in a putative class action have standing and be able to state a claim *prior* to class

certification.  See Warth v. Seldin, 422 U.S. 490, 502 (1975) ("Unless these petitioners can thus

demonstrate the requisite case or controversy between themselves personally and respondents,

'none may seek relief on behalf of himself or any other member of the class.'" (internal citations

omitted)); see also O'Shea v. Littleton, 414 U.S. 488, 494 (1974) (if named plaintiffs cannot

"establish[] the requisite of a case or controversy with the defendants, none may seek relief on

behalf of himself or any other member of the class").  Here, neither Plaintiff has standing to

assert claims as an agency fee payer against any Defendant.  Mr. Pellegrino was never an agency

fee payer.  Comp. ¶13; Opp. Br., 17.  Ms. VanOstrand was an agency fee payer, but she failed to

name or obtain jurisdiction over her local union. As explained in Union Defendants' moving

brief (p. 17), NYSUT did not collect agency fees and is a distinct legal entity from ETA.

## II.    PLAINTIFFS DO NOT HAVE AN EQUITABLE CLAIM FOR REPAYMENT OF PRE-JANUS AGENCY FEES

Plaintiffs contend they are entitled to equitable restitution of pre-Janus agency fees even

though such fees were taken in good faith reliance on then controlling Supreme Court precedent

and a presumptively valid statute.  Opp. Br. at 1-11.  Plaintiffs' contention is misplaced and

explicitly rejected in Babb, 2019 WL 2022222, at *8; Mooney, 2019 WL 1575186, at *4-5;

Crockett, 367 F. Supp. 3d at 1006; Carey, 364 F. Supp. 3d at 1232-33.  Initially, no court has

held that the good faith defense does not apply to equitable claims.[3]  In any event, the facts

alleged here would not support equitable relief.  Plaintiffs' claims, that their First Amendment

rights were violated because of compelled agency fees, sound in law not equity.  Plaintiffs do not

seek return of a seized cow or a tractor, but rather demand damages for constitutional violations.

Further, Plaintiffs would not be entitled to equitable relief even if they had equitable claims

under these circumstances.

### A.    Plaintiffs' Claims Are For Legal Damages

The gravamen of the Complaint is that Plaintiffs' employers and their unions acted in

concert to deny Plaintiffs their First Amendment rights (through compelled speech), not

deprivation of property.  The Complaint states that this action seeks "redress for the defendants'

---

[3] The Mooney court expressly declined to decide whether the good faith defense would apply to equitable claims because it determined that restitution claims of pre-Janus agency fees sounded in law, not equity.  2019 WL 1575186, at *6.  The courts in Babb, Crockett, and Carey determined claims for pre-Janus agency fees sounded in law, avoiding the question.  See Babb, 2019 WL 2022222, at *8; Crockett, 367 F. Supp. 3d at 1006; Carey, 364 F. Supp. at 1232-33.  Although Plaintiffs cited numerous cases regarding equitable restitution in distinguishable contexts, none addressed the applicability of the good faith defense to equitable claims.

past and ongoing violations of their constitutionally protected rights."  Comp., 1.[4]  As stated in Carey, "Plaintiffs do not just claim that [the union] unjustly took [their] money; they claim that [the union] utilized a state statute to violate their First Amendment rights by compelling them to support union activities."  364 F. Supp. 3d at 1230.  See supra, at 4-5 (discussion on why Conversion is not the most analogous tort).  Any relief for Plaintiffs' alleged constitutional harm would constitute legal damages.  See Carey, 364 F. Supp. 3d at 1230; see also Mooney, 2019 WL 1575186, at *5-6.  In Carey, the court further held that the good faith defense is available in restitution cases where the relief sought is legal in nature, and noted that a plaintiff may not circumvent the good faith defense by "simply by labeling a claim for legal damages as one for restitution."  364 F. Supp. at 1232 (citations omitted); see also Mooney, 2019 WL 1575186 at, *4-5 (accord).

Plaintiffs' self-serving characterization that they seek an equitable return of property is immaterial because the allegations in the Complaint do not support an equitable claim.  The Supreme Court made clear that claims for restitution sound in law, not equity, when the claim seeks payment out of a defendant's general assets instead of the return of specific, segregated funds that could be the object of a constructive trust or equitable lien, regardless of how the claim is labeled.  See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212 (2002); see also Pereira v. Farace, 413 F.3d 330, 340 (2d Cir. 2005).  Plaintiffs paid agency fees and dues, which they acknowledge were spent by their unions for collective bargaining and other representational activities, albeit not activities they would have chosen to support.  See Comp., ¶¶12-19.  Plaintiffs affirmatively assert that "money is fungible" and that agency fees were spent

---

[4]  Plaintiffs seek to "order the NYSUT and its affiliates to repay all 'agency fees' that they unconstitutionally extracted from Ms. VanOstrand and her fellow agency-fee class members" (Comp. ¶45(g)), and to "order the NYSUT and its affiliates to pay compensatory damages to every union member in the class represented by Mr. Pellegrino…."  Comp. ¶45(h) (emphasis added).

to subsidize collective bargaining activities, potentially freeing up other union resources to be spent elsewhere.  Comp., ¶20.  Plaintiffs do not and cannot point to any discrete and specific property Union Defendants are holding that belongs to them.  Instead, Plaintiffs solely seek money from Union Defendants' general assets.  Under these circumstances, "plaintiff then may have a personal claim against the defendant's general assets – but recovering out of those assets is a *legal* remedy, not an equitable one."  Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan, __ U.S. __, 136 S. Ct. 651, 658 (2016).  Since Plaintiffs' claims are for legal damages, there is no question that the good faith defense fully applies.

### B.      The Good Faith Defense Is Not Limited to Collateral Damages

Plaintiffs broadly assert that "wrongfully taken property taken [sic] must always be returned, even if it was taken in 'good faith.'"  Opp. Br., 1.  This argument was expressly rejected in Babb and Mooney.[5]  In Babb, the court rejected the argument that pre-Janus agency fee restitution is akin to the return of unconstitutionally seized property, specifically rejecting the contention that agency fees were similar to stolen property, for which the remedy may be replevin.  Babb, 2019 WL 2022222, at *8.  In Mooney, the court similarly rejected the contention that "cases concerning cows and cars, undissipated specific objects, seized in good faith but unconstitutionally" were similar to agency fees exchanged for a service.  Mooney, 2019 WL 1575186, at *5.

Moreover, no case cited by Plaintiffs stands for the proposition that wrongfully taken property must *always* be returned even if taken in good faith.  That, as a factual matter, property was returned in the cases cited by Plaintiffs does not establish a broad absolute rule, particularly where none of the cases considered the good faith defense and all were factually distinguishable.

---

[5]  Co-Counsel for Plaintiffs herein, Jonathan Mitchell, was also co-counsel in Babb and Mooney.

Harper v. Virginia Dep't of Taxation, 509 U.S. 86 (1993),  pertains to the general law of retroactive effect of Supreme Court decisions, has no discussion at all regarding the good faith defense, and draws no distinction between legal and equitable claims.  Likewise, Timbs v. Ind., __ U.S. __, 139 S. Ct. 682 (2019), holds the Eighth Amendment Excessive Fines Clause is incorporated to the States by the Due Process Clause of the Fourteenth Amendment; but does not discuss the good faith defense, and draws no distinction between legal and equitable claims.

The cases cited involving fines pursuant to a statute later declared unconstitutional are also inapplicable.  United States v. Lewis, 478 F.2d 835 (5th Cir 1973); Neely v. United States, 546 F.2d 1059 (3d Cir. 1976); DeCecco v. United States, 485 F.2d 372 (1st Cir. 1973); Pasha v. United States, 484 F.2d 630 (7th Cir. 1973); and United States v. Summa, 362 F. Supp. 1177 (D. Conn. 1972); United States v. Lewis, 342 F. Supp. 833 (E.D. La. 1972), all pre-date Wyatt and the Circuit Courts of Appeals good faith defense decisions, and none contain any discussion of the good faith defense.  Indeed, these cases were all against the government, and the qualified immunity doctrine, not the good faith defense, would apply.  See Messerschmidt v. Millender, 565 U.S. 535 (2012).  More significantly, each decision involved fines incidental to convictions; not an exchange of agency fees or dues for collective bargaining services and other representational activities rendered.  Cf. United States v. Venneri, 782 F. Supp. 1091 (D. Md. 1991) (holding criminal defendant entitled to restitution paid for criminal conviction based upon an unconstitutional statute).

None of the Circuit Courts of Appeals that considered the good faith defense limited its applicability solely to collateral damages resulting from a taking, or held the defense would not apply but-for the property having been returned.  The cases Plaintiffs cite where seized property

was returned all involved some identifiable chattel or other specific property.  See Opp. Br. at 6-

7.  (cattle and tractor, car, real estate, checking account, "materials").[6]

### C.      Even If Plaintiffs Could Seek Equitable Relief, They Are Not Entitled To It

Even if the allegations stated a claim in equity, this Court should fully apply the good

faith defense.  Plaintiffs' argument that a court in equity would have no choice but to order return

of their property is wrong and has been rejected by every court to consider it.  It would be

manifestly *inequitable* to order restitution of funds received and expended pursuant to a

presumptively valid statute subsequently declared unconstitutional by a change in longstanding

Supreme Court precedent.  "[R]eliance interests weigh heavily in the shaping of an appropriate

equitable remedy."  Lemon v. Kurtzman, 411 U.S. 192, 203 (1973) (Burger, C.J., plurality op.)

("Lemon II"); see also Ams. United for Separation of Church & State v. Prison Fellowship

Ministries, Inc., 509 F.3d 406, 427 (8th Cir. 2007) (holding it was an abuse of discretion to order

equitable repayment of funds held by private party received pursuant to presumptively valid state

statutes subsequently held unconstitutional).

Plaintiffs had no expectation of receiving the collected agency fees, and they received the

benefits of collective bargaining paid for by those fees; benefits which cannot be returned.  As

stated in Gilpin v. Am. Fed'n of State, Cty., and Mun. Emps., AFL-CIO, 875 F.2d 1310, 1316

(7th Cir. 1989), repayment would not be equitable because "plaintiffs do not propose to give

back the benefits the union's efforts bestowed on them," which "benefits were rendered with a

reasonable expectation of compensation founded on the collective bargaining agreement and

[state] labor law"; see also Winner, 2016 WL 7374258, at *6 ("[I]f plaintiffs were to receive

---

[6]  While not a good faith defense decision, United States v. Rayburn House Office Bldg. Room 2113 Wash., D.C.
20515, 497 F.3d 654 (D.C. Cir. 2007), similarly sought return of discrete and specific documents seized from the
office of a member of the United States House of Representatives pursuant to an unconstitutional search warrant.
Notably, the court ordered that some, but not all, of the seized materials be returned.

those fees now, it would result *in a windfall to plaintiffs* and a punishment to [the union] for acting in accordance with state law, which would be contrary to the equitable norms that give rise to these types of claims…. [A] refund of fees would not be consistent with the equitable remedy." (emphasis added)).  More recently, the District Court in <u>Babb</u> stated:

> It cannot be overlooked that the pre-*Janus* regime consisted of an obligation by the Plaintiffs to pay fees to the Union Defendants, and a concomitant obligation by the Union Defendants to use those fees to bargain on Plaintiffs' behalf.  While the Supreme Court has determined that such arrangement violated Plaintiffs' First Amendment rights, it is not the case that the agency fees remain in a vault, to be returned like a seized automobile.  As the Union Defendants cannot retract their performance on this implied contract, it would be inequitable to force them to repay Plaintiffs' agency fees.

2019 WL 2022222, at *8.  Indeed, requiring "repayment" as an equitable remedy under these circumstances would "'stand[ ] that remedy on its head.'"  <u>Crockett</u>, 367 F. Supp. 3d at 1006.

## CONCLUSION

For the reasons set forth above and in Union Defendants' moving brief and accompanying declarations, the Union Defendants respectfully request that the motion be granted and the Complaint be dismissed in its entirety.


Dated: June 6, 2019                                        Respectfully submitted,


                                                                   /s/ CHARLES G. MOERDLER
                                                           STROOCK & STROOCK & LAVAN LLP
                                                           Charles G. Moerdler, Esq.
                                                           Alan M. Klinger, Esq.
                                                           Dina Kolker, Esq.
                                                           180 Maiden Lane
                                                           New York, New York 10038
                                                           (212) 806-5400
                                                           cmoerdler@stroock.com
                                                           aklinger@stroock.com
                                                           dkolker@stroock.com

Of Counsel:
    Arthur J. Herskowitz, Esq.

-and-

ROBERT T. REILLY, ESQ.
52 Broadway, 9th Floor
New York, New York 10004
(212) 228-3382
mdelpian@nysutmail.org
egreene@nysutmail.org
awanner@nysutmail.org

Of Counsel:
    Michael J. Del Piano, Esq.
    Edward J. Greene Jr., Esq.
    Andrea A. Wanner, Esq.

*Co-counsel for Union Defendants*

# APPENDIX

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * *
PATRICK DOUGHTY and          *
RANDY SEVERANCE,             *
                             *
          Plaintiffs,        *
                             *  1:19-cv-53-PB
          v.                 *  May 30, 2019
                             *  2:01 p.m.
STATE EMPLOYEES' ASSOCIATION *
OF NEW HAMPSHIRE, SEIU LOCAL *
1984, CTW, CLC,              *
                             *
          Defendants.        *
* * * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:


For the Plaintiff:      Frank D. Garrison, Esq.
                        Milton L. Chappell, Esq.
                        National Right to Work Legal
                        Defense Foundation

                        Cooley Ann Arroyo, Esq.
                        Cleveland, Waters & Bass, PA


For the Defendant:      Ramya Ravindran, Esq.
                        Leon Dayan, Esq.
                        Bredhoff & Kaiser PLLC

                        John S. Krupski, Esq.
                        Milner & Krupski, PLLC


Court Reporter:         Liza W. Dubois, RMR, CRR
                        Official Court Reporter
                        U.S. District Court
                        55 Pleasant Street
                        Concord, New Hampshire 03301
                        (603) 225-1442

```
 1                    P R O C E E D I N G S
 2             THE CLERK:  This Court is in session and has
 3    for consideration motion hearing in civil matter
 4    19-cv-53-PB, Patrick Doughty, et al., vs. State
 5    Employees' Association.
 6             THE COURT:  Does anybody want to draw any
 7    cases to my attention -- my attention that have been
 8    decided since the last supplemental authority that I've
 9    been provided with?
10             No?  Okay.  All right.
11             So I'd like the plaintiffs to explain to me
12    why I shouldn't grant the motion to dismiss from the
13    bench for the reasons set forth in the court's opinion
14    in Babb and the unanimous reasoning expressed in all of
15    the other district court cases that have addressed the
16    question.
17             MR. GARRISON:  Thank you, your Honor.
18             I would submit that those cases, they don't
19    take into consideration the proper analysis that the
20    supreme court has put forth to find new defenses and
21    immunities under 1983.  Those cases basically state that
22    you have to look to the common law.
23             THE COURT:  So let me -- let me be clear.
24             Your argument is not that this case is in any
25    way distinguishable; your case is based on the premise
```

1     that these opinions are all wrongly decided.

2                MR. GARRISON:  They -- yes, your Honor.

3                THE COURT:  Okay.

4                MR. GARRISON:  So the supreme court has always

5     said that Section 1983, if they find immunities or

6     defenses, you have to look to common law.  And if you

7     can find something, usually through an analogous tort or

8     there's a defense at common law, then you can adopt

9     that.  Otherwise, you are acting outside of basically

10    what Congress intended and any -- anything else is just

11    pure policymaking.  And --

12               THE COURT:  You mean like the government

13    contractor defense Justice Scalia created in the

14    helicopter case?

15               MR. GARRISON:  I'm not sure about that case,

16    your Honor.  I apologize.

17               THE COURT:  You don't know about that case?

18               MR. GARRISON:  No.

19               THE COURT:  That's a supreme court case where

20    Justice Scalia, the great critic of judicial activism,

21    created an affirmative defense essentially out of whole

22    cloth and called it federal common law government

23    contracting defense.

24               MR. GARRISON:  Yeah.  I submit that this Court

25    shouldn't do that.  Basically, you know, if they're

```
1    going to -- if a defense is going to be found, it should

2    be found through common law.

3              Like I said, Congress is --

4              THE COURT:  Can we step back for a second and

5    just tell me how in any version of the world would it be

6    right to require these defendants to pay damages for

7    acting consistent with the requirements of state law and

8    the -- and supreme court precedent?

9              MR. GARRISON:  Because if you look at cases

10   like Owen, the supreme court has said the point of 1983

11   is to make people whole for violations of constitutional

12   law.

13             THE COURT:  But without regard to fault?

14             MR. GARRISON:  That's what Congress enacted,

15   and there is no immunity or defense in Section 1983.

16             THE COURT:  No, you're missing the point.  I

17   mean, I'm asking you a broader theoretical question.  Of

18   course I'll ultimately decide the question in accordance

19   with what the requirements of law are, but how could you

20   possibly construct an argument that it's right and just

21   to make defendants pay damages for acting in a way that

22   the state law and the supreme court told them to act?

23             MR. GARRISON:  Well, I think the supreme court

24   had foreshadowed that what they were doing was likely

25   unconstitutional.
```

1        THE COURT:  So the -- the -- the defendants

2 should have disregarded state law, refused to follow

3 state law?

4        MR. GARRISON:  It -- Section 1983 is a

5 deterrent statute.  If they had any qualms about what --

6        THE COURT:  So really what you're saying,

7 though, is they should have defied state law.  They

8 should have said the Constitution -- even though the

9 supreme court has said this behavior is constitutional,

10 we are -- will refuse to comply with state law because

11 we think the supreme court in the future will change its

12 mind.

13        MR. GARRISON:  I think that's true.  If you

14 look at the supreme court's retroactivity jurisprudence,

15 in *Harper* they said that we can apply law retroactively.

16 The unions must have known that.  And there's a chance

17 you're violating somebody's First Amendment rights.

18 That's the whole point of Section 1983 --

19        THE COURT:  Is it --

20        MR. GARRISON:  -- is to vindicate people.

21        THE COURT:  Is it true that at the time these

22 defendants were engaging in the conduct that you are

23 challenging that state law authorized the collection of

24 the fees?

25        MR. GARRISON:  Yes.

1           THE COURT:  Okay.  So you want them to defy
2    state law.
3           MR. GARRISON:  State law only authorizes these
4    contracts.  They don't have to put those in their
5    contracts.  These are negotiations between the state and
6    the union.  They could have, out of abundance of caution
7    for respecting people's First Amendment rights, not
8    included that in their contract.
9           THE COURT:  I have a lot of trouble seeing it.
10          So -- all right.  So let's go back to your
11    legal argument.  Your legal argument is that a good
12    faith defense can only be recognized where you can
13    identify an analog in state law, a state tort
14    affirmative defense of good faith.
15          MR. GARRISON:  I believe that's so, your
16    Honor, because what the supreme court has said is --
17          THE COURT:  Well, didn't the court in
18    *Babb* -- and following reasoning that other courts have
19    looked at -- said the injury that you're suing for is a
20    constitutional injury and the analog to conversion that
21    you're trying to draw just isn't is an appropriate one.
22          And so you're suggesting that there shouldn't
23    be any good faith defense for engaging in conduct that
24    you in good faith believe is constitutional.  You don't
25    dispute that these defendants in good faith, looking at

```
 1    supreme court precedent at the time they were acting,
 2    that they acted in good faith in believing that the --
 3    their actions were constitutional, right?
 4              MR. GARRISON:  I would dispute that, your
 5    Honor.  I --
 6              THE COURT:  Really?  What is the basis in your
 7    complaint or in any facts you want to draw to my
 8    attention to suggest that these defendants did not act
 9    in good faith?
10              MR. GARRISON:  Well, we think, your Honor,
11    that when Harris and Knox were decided, they were told
12    that Abood was on shaky ground.  And so if you can -- I
13    mean, this is a 12(b)(6) motion, so --
14              THE COURT:  Yeah, I'm just saying tell me what
15    you've pleaded that would support a conclusion that --
16              MR. GARRISON:  I don't --
17              THE COURT:  -- a plausible claim that these
18    defendants have acted in bad faith.
19              MR. GARRISON:  Well, I don't think we have to,
20    your Honor.  This --
21              THE COURT:  Because you don't think there's
22    a -- so I'm just saying -- yeah, I -- what I'm asking
23    you is essentially to say, Judge, we agree that if
24    there's a good faith defense, we lose, because we are
25    not going to try to prove that these defendants acted in
```

1  bad faith; our claim depends entirely upon our view that

2  the law does not authorize a good faith defense in this

3  circumstance.

4          I think that's what you're saying.  If you'll

5  say it, we can move on.

6          MR. GARRISON:  No, no.  I -- I would not say

7  that, your Honor, because if you look at cases like

8  *Wyatt*, if the Court finds the common law analog closer

9  to abuse of process, which we don't think it can because

10  that tort just doesn't fit, then we have to be able to

11  prove subjective bad faith.  And that's something we can

12  do through discovery in --

13          THE COURT:  How?

14          MR. GARRISON:  -- in summary judgment.

15          We can look at correspondence the union had,

16  what their internal thoughts were when it came to --

17          THE COURT:  But the law was the law.  Their

18  behavior was entirely constitutional at the time they

19  engaged in it.

20          MR. GARRISON:  And that would -- well, that's

21  questionable, your Honor.

22          THE COURT:  Why is it questionable?  The

23  supreme court precedent had said that their behavior is

24  constitutional.

25          MR. GARRISON:  The supreme court had said

1    that, but the law --

2            THE COURT:  But you're -- you are -- you want

3    to take the law back to pre-*Erie against Tompkins*.

4            You -- your theory of the Constitution is that

5    the Constitution and all law is a brooding omnipresence

6    that is -- in which it is found by the court.  It

7    predates humanity.  It predates the existence of human

8    beings.  There is a constitutional law that does not

9    require any human action and the court just finds it

10   somewhere.

11           Is that what you're saying?

12           MR. GARRISON:  That -- since the Constitution

13   was ratified, the supreme court -- they find law.  They

14   do not make law.  The -- the violations in this case

15   have always been --

16           THE COURT:  You've read *Erie against Tompkins*,

17   right?

18           MR. GARRISON:  I -- in law school, your Honor.

19           THE COURT:  Okay.  Well, go back to it.  Do

20   you know the phrase "brooding omnipresence"?  That --

21   that was a view of the law that has been rejected by the

22   supreme court for over a hundred years.

23           So I just don't -- I -- I personally don't

24   understand that kind of conception.  You're saying that

25   even though the supreme court at the time had declared

1   the actions to be constitutional, their actions were, in

2   fact, unconstitutional and they're just waiting for the

3   supreme court to correctly declare the law.

4          MR. GARRISON:  I -- I think that's right, your

5   Honor.  And the supreme court in *Harris* and *Knox*

6   foreshadowed that, which would reduce any reliance

7   interest anybody had.

8          Plus, cases -- the -- cases like *Harper* say

9   that the law applies retroactively.  If -- if that

10   wasn't the case, then if the supreme court just made

11   law, then there would be no retroactivity.

12          THE COURT:  Okay.  So do you want to finish

13   your argument about why a good faith defense requires

14   reference to a common law analog?  Is there more you

15   want to say on that?

16          MR. GARRISON:  Right.  So Congress in 1871

17   provided no immunities or defenses.  The supreme court

18   has said that if there was -- that basically Congress

19   wouldn't have intended to do away with all of the

20   previous immunities and defenses.

21          So --

22          THE COURT:  Well, 1983 doesn't provide for

23   qualified immunity.

24          MR. GARRISON:  No, it doesn't, and the court

25   has -- but the court has found exceptions of where

1    there --

2         THE COURT:  Right.

3         MR. GARRISON:  -- where those were present at

4    common law.

5         THE COURT:  And courts like *Babb* say that you

6    don't look to a common law analog; you look to the same

7    kind of reasoning that led the court to recognize

8    qualified immunity.

9         And you just think that's wrong, right?

10        MR. GARRISON:  Yeah.  I think the supreme

11   court has said that.  They have basically -- if you look

12   at Justice King's concurrence in *Wyatt*, he said, we look

13   to the common law because we can't just -- it's just not

14   freewheeling policymaking when we find these things.

15   And if there's a -- if there's no defense in common law,

16   then courts are just making it up; they're just saying,

17   we think --

18        THE COURT:  You think they just make up the

19   qualified immunity for 1983 claims against government

20   officials?  They just made it up; is that it?

21        MR. GARRISON:  No, I don't think so, your

22   Honor.

23        THE COURT:  Where'd it come from?

24        MR. GARRISON:  They look to common law.  In

25   fact, for absolute immunity, they found these things

1   were always there in common law, so they were going to

2   apply them.  They said Congress couldn't have intended

3   to get rid of these.

4           But if they're not there at common law, then

5   it's just making up -- Congress -- it just wasn't there.

6   You can't just defy Congress and say that we're just

7   going to create these things without congressional

8   intent.

9           THE COURT:  I'm not a fan of defying Congress.

10          MR. GARRISON:  No, I wasn't saying --

11          THE COURT:  That's not what I do.

12          MR. GARRISON:  -- you.  Sorry.

13          But it's statutory construction, right?

14   Congress is the one that makes the law.  They make the

15   defenses and immunities.

16          THE COURT:  Yeah.  They didn't make immunity.

17   Immunity was created by the court.

18          MR. GARRISON:  And the court said that the

19   only reason that we're going to do that is because that

20   common law -- Congress would not have abrogated these

21   immunities.  That's the whole basis for the immunities

22   and defenses.

23          THE COURT:  You think that the majority of the

24   supreme court, applying their approach to statutory

25   construction today, would say the same thing?

```
 1              MR. GARRISON:  Absolutely not, your Honor.
 2              THE COURT:  Yeah.
 3              MR. GARRISON:  I think they are looking at
 4     precedent.  But it -- the -- I mean, the rationale still
 5     holds, though, that without Congress providing these
 6     things, then it's just common law judging.
 7              THE COURT:  Okay.  So your view is it's most
 8     analogous to conversion.  Conversion didn't have a good
 9     faith defense; it's not analogous to other torts that do
10     have a good faith defense; you can't find good faith
11     defense unless you can find a state court analog;
12     because you can't, there isn't one; because there isn't
13     one, the plaintiffs' claim -- the defendant's motion to
14     dismiss should necessarily be denied.
15              MR. GARRISON:  Exactly, your Honor.
16              THE COURT:  All right.  Is there anything more
17     you want to add on that subject?
18              MR. GARRISON:  No.
19              THE COURT:  All right.  Thank you.
20              I'll hear your response.
21              MS. RAVINDRAN:  I'll be brief, your Honor.
22              So I think your Honor has already drilled down
23     to what the dispositive fact in this case is, which is
24     as the plaintiffs acknowledged in their brief, their
25     claim is directed solely at fees that were collected
```

1    prior to the *Janus* decision.  It is indisputably the

2    case that those fees were collected -- were authorized

3    by New Hampshire law and were upheld as constitutional

4    by the then-controlling law.

5           THE COURT:  If you accept the plaintiffs'

6    premise that it would be improper as a matter of

7    statutory construction to recognize an affirmative good

8    faith defense unless you can find an analog in state

9    common law, if you accept that premise -- and I know you

10   don't, but if you accept that premise as a starting

11   point, what would you say is the most analogous tort in

12   which a common law defense has been recognized?

13          MS. RAVINDRAN:  Right.  So the -- the analog

14   that I would use is abuse of process and it's for this

15   reason.

16          So the reason that we are here on this Section

17   1983 claim with -- as with the private party, as my

18   client is, goes back to *Lugar*.  It's the reason

19   that -- that the conduct here falls under the -- you

20   know, arguably falls under the rubric of under color of

21   state law is that the defendant, acting with

22   participation of state officials, had invoked a state

23   process by which fees were deducted by the state, by the

24   plaintiffs' employer, and then remitted to the union.

25   So and it's that use of the state process is the reason

1    that we are even here for a Section 1983 --

2         THE COURT:  Explain that to me in a little

3    more detail.

4         MS. RAVINDRAN:  Yes.  So the way fair share

5    fees, the fees that are at issue here, are collected

6    under the state procedure that's set up here in

7    New Hampshire is under the New Hampshire Public Employee

8    Labor Relations Act, unions are authorized to negotiate

9    and to collect a bargaining agreement, a fair share fee

10   requirement.  And the collective bargaining agreement

11   that is at issue here and the time period that's

12   relevant here authorized the deduction -- required the

13   payment of fair share fees by employees like the

14   plaintiffs who are in the bargaining unit that is

15   represented by the union, but who declined to become

16   members of the union.

17        THE COURT:  Right.  So it is that process that

18   you say authorizes the fees and to the extent there was

19   a wrong, it was a misuse of that process.  Since the

20   most analogous tort in your view would then be abuse of

21   process and a good faith defense was available to an

22   abuse of process tort, it should be -- also be

23   recognized here.

24        MS. RAVINDRAN:  Correct --

25        THE COURT:  Okay.

1      MS. RAVINDRAN:  -- that would be our position

2  under that analysis.

3      THE COURT:  All right.  Now, what do you say

4  to his -- I assume you take the same position as the

5  court did in *Babb* that it is not necessary to find a

6  state law analog to the good faith defense that you're

7  asking us to -- asking the Court to recognize here.

8      What do you say to the defendant's argument

9  that any defense to a 1983 claim can only be

10  recognized -- and he says including qualified and

11  absolute immunity are all derivative of state common law

12  claims and, therefore, to the extent that the court in

13  *Babb* or you contend that there isn't a need for state

14  law analog, it's inconsistent with supreme court

15  precedent?  What do you say to that?

16      MS. RAVINDRAN:  Well, what I would say is that

17  if we -- and we can go back to Justice Kennedy's

18  concurrence in *Wyatt*, as plaintiffs have cited, where --

19  which is where the roots of the good faith defense first

20  started.  And what Justice Kennedy says in that

21  concurrence is that there was support in the common law

22  for the proposition that it is reasonable as a matter of

23  law for a private citizen to rely on a state statute

24  prior to any judicial determination of

25  unconstitutionality.

1          So that -- that is already embedded in the

2     common law and that is the rationale that -- in the five

3     circuit courts that have had occasion to address the

4     good faith defense, who adopted that rationale of

5     that --

6          THE COURT:  This goes way beyond that.  This

7     is a case where they -- the defendant had not just state

8     law that authorized the specific action they engaged in,

9     but supreme court precedent --

10          MS. RAVINDRAN:  Correct.

11          THE COURT:  -- recognized that their actions

12     were entirely consistent with the Constitution.

13          MS. RAVINDRAN:  That's correct, your Honor.

14          So applying the good faith defense into the

15     circumstances of this case is actually a small subset of

16     the -- of what the other circuit courts who have had

17     reason to address the issue of the good faith defense

18     have recognized.  Because in those five circuit courts,

19     there was no on-point supreme court decision that had

20     evaluated the exact same conduct that was at issue in

21     the Section 1983 claim.

22          There was a state -- a state law that

23     authorized the conduct and under those circumstances,

24     those courts did recognize a good faith defense that

25     would be applicable in that situation.

1          Our case is much stronger, in my view, because

2     there is -- if you take the language in the Fifth

3     Circuit in *Wyatt*, which was the first circuit court to

4     recognize the good faith defense, the standard they use

5     is whether they knew -- whether the defendant knew or

6     should have known that the statute they're relying on is

7     constitutional.

8          At the time period in which the fees were

9     collected, there's no question that the statute on which

10    the union was relying on was constitutional because

11    *Abood* had -- was the controlling law of the land at that

12    time and it had addressed the exact same conduct that is

13    at issue here.

14          THE COURT:  Yeah, I -- as I said, stepping

15    away from the pure technical legal analysis, it is

16    incomprehensible to me the idea that under the unique

17    circumstances of this case, which is something that will

18    occur very rarely during the life of the country --

19          MS. RAVINDRAN:  Right.

20          THE COURT:  -- in which the supreme court

21    decides to flatly overturn its prior precedent -- we

22    want people to rely on our decisions.  One of the

23    reasons that judges express their views in written

24    opinions is so that people can rely on it.  And then to

25    suggest that when judges flip 180 degrees on the law

 1  that people who we want to rely on our decisions are

 2  then subjected to suits for damages because we changed

 3  our mind seems arrogant in the extreme.

 4          It -- it's incomprehensible to me that courts

 5  would allow for damage actions to be maintained under

 6  those unique circumstances.  I just -- I can't even

 7  begin to understand the idea that any court could

 8  award -- allow an action to proceed in a case like this.

 9  I -- I mean, it's just incomprehensible.

10          We want -- we issue decisions and we want

11  people to follow them.  We don't want people -- to tell

12  people, look, follow us, but if we decide to change

13  our mind later, you're going to have to pay damages.

14  That -- that's crazy.

15          MS. RAVINDRAN:  I agree with every word of

16  that, your Honor.

17          THE COURT:  All right.  So, in any event, what

18  else would you like to say?

19          MS. RAVINDRAN:  Unless the Court has

20  questions --

21          THE COURT:  No, I want to hear a response to

22  anything that's been said by the defendant's counsel.

23          MR. GARRISON:  Your Honor, I would just like

24  to respond to a couple points.

25          So the first one being about people not being

1    liable for damages.  Our clients had their

2    constitutional right violated; their First Amendment

3    rights --

4              THE COURT:  No, I doubt -- I don't even

5    understand that.  I thought their constitutional rights

6    were actually -- were not violated at all because the

7    supreme court at the time the actions occurred said that

8    their conduct was constitutional.

9              MR. GARRISON:  So basically in saying that --

10             THE COURT:  The supreme court changed the law.

11   You have -- you -- you have this idea that the law was

12   always there and it was always unconstitutional, but it

13   was just hidden because the supreme court was screwed up

14   when they said something.  And I just have a different

15   conception of the way the law works.

16             MR. GARRISON:  I understand, your Honor, but

17   as the supreme court said, the retroactivity

18   jurisprudence says these cases are retroactive to every

19   case that's open.

20             So our clients' First Amendment rights were

21   violated.  They had their money taken, spent on

22   idealogical things that they did not want.  They

23   objected the whole time.

24             If there's a -- if this is purely equities and

25   not a statutory interpretation case, then those equities

1  need to be balanced.  I don't think there's any opinion

2  that has ruled on this case that has looked to our

3  clients' or other people's First Amendment rights when

4  balancing the equities.  As the supreme court said in

5  *Owen*, 1983, the history and purpose of it was to give

6  people damages for --

7           THE COURT:  The State Employees' Association

8  is an association of current and former employees, is

9  that -- state employees?  Is that what the -- the State

10 Employees' Association is?

11          MR. GARRISON:  Yes.

12          THE COURT:  Yeah.

13          MR. GARRISON:  Yes.

14          THE COURT:  And so what you're saying now is

15 people who are -- who are paying fees to support the

16 State Employees' Association today should be required to

17 have their money diverted to pay employees for things

18 that happened in the past.  So we should take money from

19 them and give it to these employees whose -- whose

20 conduct --- who were injured, in your view, in the past.

21 So it's basically taking money from someone who's done

22 nothing wrong, through their association, and giving it

23 to your clients because they were wronged.

24          MR. GARRISON:  If you look at the supreme

25 court's jurisprudence in *Owen*, that's pretty much

 1    exactly what they were doing.  It was a municipality.

 2    This is a private association corporation.  And if we're

 3    going to decide who the equities go for, then it should

 4    be the people that got their First Amendment rights

 5    violated.  Most of --

 6                THE COURT:  Yeah, I don't agree with that.

 7    It's not -- I don't think it matters one way or the

 8    other to the analysis of the questions raised by your

 9    complaint.

10                MR. GARRISON:  Well, the -- what I'm saying is

11    if -- if we're just going off pure equities, not looking

12    at common law statutory construction, we'd just ask the

13    Court to balance the equities.  That's what they're

14    asking for.  They're asking for basically an affirmative

15    defense based in policy.

16                THE COURT:  Okay.  Why -- why is not abuse of

17    process the better analog than conversion?

18                MR. GARRISON:  Because abuse of process is an

19    historical tort, is using the court system to basically

20    try and get people's property through unconstitutional

21    means.

22                THE COURT:  All right.  Aren't they using

23    process authorized by state law?

24                MR. GARRISON:  Your Honor, if you define

25    process at that level of generality, then everything is

1    an abuse of process tort.  We just don't believe that --

2    they're trying to shoehorn that in here and it just

3    doesn't fit.  The most analogous tort is conversion.

4    They took people's property against their will and spent

5    it on stuff that they did not want, on idealogical

6    activities that they did not want.  Their First

7    Amendment rights were violated and -- by taking their

8    money and spending it.

9            THE COURT:  Okay.  What else would you like to

10   say?

11           MR. GARRISON:  I would just like to say that

12   the Ninth Circuit cases, *Babb* included, are all

13   following *Clement*, which did not do a common law

14   analysis.  It just assumed that there was a good faith

15   defense, applied it to the facts of the case.  So the

16   Ninth Circuit cases, *Babb* included, are basically just

17   ruling on these free from any common law basis.  I mean,

18   some in passing have said, you know, this is more likely

19   the abuse of process, but haven't given it really any

20   analysis.  We just ask the Court --

21           THE COURT:  Well, *Babb* -- *Babb* does that

22   analysis.

23           MR. GARRISON:  Well, it -- not in any -- I

24   don't think it does it in any proper -- it doesn't give

25   it the proper, I don't know, analysis that it deserves.

```
 1                THE COURT:  All right.  Hang on a minute.
 2                MR. GARRISON:  It does give an analysis.  I
 3     apologize, your Honor.
 4                THE COURT:  I thought it did.  I just -- I --
 5     I just wanted to look through.
 6                And when I read it earlier, I understood it to
 7     present that analysis.  But you can disagree with it.
 8     I --
 9                MR. GARRISON:  Yeah, I do disagree with it.
10     And it's just -- we think it's a little -- you know,
11     it's in one paragraph.
12                THE COURT:  Yeah.
13                MR. GARRISON:  So ...
14                THE COURT:  That's fine.  I understand that.
15                Anything else that you'd like to say?
16                MR. GARRISON:  No, your Honor.
17                THE COURT:  Okay.
18                MR. GARRISON:  I just would like to close
19     with, you know, if we're going to be balancing equities,
20     we would like the Court to take into consideration that
21     our clients had their First Amendment rights violated
22     and we don't think that any of the previous cases have
23     done that.
24                THE COURT:  All right.  And I -- and, believe
25     me, I think it's very important for courts to pay
```

1   careful attention to First Amendment considerations.  I

2   don't think you'll find a judge who has a more

3   aggressive enforcement of First Amendment rights than

4   me.  The only two times I have found state statutes to

5   be unconstitutional are claims -- cases in which those

6   state statutes have been applied to violate the First

7   Amendment rights of the plaintiffs.  One was a pharmacy

8   information law that violated the rights of the

9   plaintiffs in that case.  I invalidated the law on First

10  Amendment grounds.  I was reversed by the First Circuit.

11  My position was ultimately endorsed by the supreme court

12  and my view prevailed.

13          A couple years -- a few years ago, I

14  invalidated a law that banned what are called ballot

15  selfies on First Amendment grounds.  My view on that

16  point was upheld by the First Circuit Court of Appeals.

17          I fully endorse vigorous enforcement of

18  people's First Amendment rights.  In my view, this issue

19  has nothing to do with that.  It -- the underlying claim

20  is a First Amendment claim, but the -- the fundamental

21  problem here is that this is a case that requires a good

22  faith defense, in my view.  It's a case in which without

23  regard to a state law analog, a good faith defense must

24  be available to protect defendants under these kinds of

25  circumstances and it can -- its existence can be

1    inferred from supreme court precedent recognizing the

2    qualified immunity doctrine in a related context.

3            To the extent that a state law analog is

4    required, I agree with the plaintiffs in this case

5    that abuse of process is a much stronger analog than

6    conversion.  A good faith defense has traditionally been

7    recognized for abuse of process torts and it's

8    appropriate to analogize to that.

9            I don't believe conversion is the appropriate

10   analogy here.  The injury to your clients, as the court

11   points out in *Babb*, is an -- a First Amendment injury.

12   It's an injury to their dignity and autonomy in being

13   forced to support speech that they don't agree with.

14   That tort is not really a conversion tort and I think

15   the abuse of process tort is a better analog.  To the

16   extent that a future court should decide that there must

17   be a state law analog, I agree with the court in *Babb*

18   that abuse of process provides the better analog.

19           I find the reasoning of the court in *Babb* to

20   be very carefully expressed.  I don't find there to be

21   any facts in this case as pleaded in the complaint that

22   distinguish the -- your clients' claims from the claims

23   that were at issue in *Babb*.  I recognize that *Babb* was

24   decided in the Ninth Circuit and is subject to Ninth

25   Circuit precedent.  It doesn't restrict me here.

1          But I find the reasoning that underlies that

2    precedent to be entirely persuasive.  I endorse it.  I

3    don't find any basis on which to distinguish your case

4    from the cases in which courts around the country have

5    unanimously agreed that your cause of action is subject

6    to a good faith defense.  I do not see any -- any

7    unusual circumstances in this case which would prevent

8    me from recognizing the existence of a good faith

9    defense and determining that it's appropriate to

10   consider it here on a Rule 12(b)(6) motion.

11          Of course, in ruling on a 12(b)(6) motion,

12   I -- I am required to follow the standard adopted by the

13   supreme court in *Iqbal* and *Twombly*.  I'm required to

14   examine the complaint, strike out any allegations in the

15   complaint that are conclusory, look at what remains and

16   ask whether it states a plausible claim for relief.

17          First Circuit precedent does allow me to grant

18   a motion to dismiss in certain circumstances based on

19   the availability of an affirmative defense.  As I've

20   explained, I believe for the reasons set forth by the

21   court in *Babb* and the other courts that have reached a

22   similar conclusion that a good faith defense is

23   available to the plaintiffs here and I agree -- I agree

24   with those courts that it is appropriate to recognize

25   that defense and apply it here in response to the

1    complaint that you have brought.

2            Doing that, and using the 12(b)(6) standard, I

3    have concluded that even construing the allegations in

4    the complaint in the light most favorable to you that

5    you have not stated a plausible claim for relief in

6    light of the affirmative defense that I find is

7    available to the plaintiff.

8            Accordingly, I grant the motion to dismiss.

9    And I don't see any reason to allow you leave to amend

10   because there doesn't appear to be any -- to be any

11   unusual circumstances that would require an amendment or

12   that an amendment could cure the defects that I've

13   identified in the complaint.

14           I think you'd be better off, frankly, just

15   devoting your resources to an appeal.  So you should try

16   to get the First Circuit to reach a different conclusion

17   from me, which I respect that it's always possible that

18   it could do.  And that's where you really need to be

19   expending your time and your energy.

20           I don't think I have anything to add to the

21   analysis that the other district courts that have taken

22   it on have addressed, but if you think there's more that

23   I need to do, questions that you think I need to respond

24   to, tell me now and I'm happy to provide further

25   analysis to support my conclusion.  But I think I've

```
1    made clear to you how I think about the case and as I
2    said, I -- I think you should go ahead and appeal and
3    see what the First Circuit says.
4             But do you want -- is there more you need me
5    to do by way of analysis so that the case can be ready
6    for appellate review by the First Circuit?
7             MR. GARRISON:  I don't think so, your Honor.
8             THE COURT:  All right.
9             Is there anything more that the plaintiff
10   wants me to do?
11            MS. RAVINDRAN:  No.
12            THE COURT:  I really don't see any point in
13   writing -- not because I think your argument is legally
14   frivolous.  I want to be clear about that.  First
15   Amendment issues are important.  People like you should
16   be able to come to the courts and express novel ideas
17   about how your clients should be entitled to relief.  I
18   respect that and I'm not saying your claims are
19   frivolous.
20            I'm saying I just can't conceive of how they
21   could ever be allowable under the law as I understand it
22   to be.  And to the extent you wish to break new ground,
23   the fact that all the other courts are ruling against
24   you shouldn't deny you an opportunity to seek review
25   from an appellate court that's very experienced at
```

1    addressing First Amendment claims and issues of this

2    sort.

3            And so I -- I'm not, in ruling from the bench,

4    intending to suggest that your claim is frivolous.  I'm

5    merely suggesting that I don't see how it can possibly

6    proceed.  And to the extent I would allow it to proceed,

7    I would need guidance from the First Circuit explaining

8    to me why the claim is potentially viable.  And that's

9    all I'm trying to say here today.  Okay?

10           All right.  Is there anything else we need to

11   do today?

12           All right.  The defendant's motion to dismiss

13   is granted.

14           Thank you.

15           MR. GARRISON:  Thank you.

16           (Proceedings concluded at 2:35 p.m.)

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


        I, Liza W. Dubois, do hereby certify that
the foregoing transcript is a true and accurate
transcription of the within proceedings, to the best of
my knowledge, skill, ability and belief.


Submitted: 6/6/19        /s/  Liza W. Dubois
                         LIZA W. DUBOIS, RMR, CRR