

**Office of General Counsel**
**ROBERT T. REILLY**
*General Counsel*

**Albany     Buffalo     New York**

**Jennifer N. Coffey**          **Lena M. Ackerman**
*Associate General Counsel*     *Assistant General Counsel*

**Michael S. Travinski**        **Jennifer A. Hogan**
*Associate General Counsel*     *Associate General Counsel*

December 17, 2019

*Via ECF*

Hon. Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     **Pellegrino, et al. v. New York State United Teachers, et al.**
**Civ. Case No. 2:18-cv-3439(NGG)(RLM)**
**Our Case No. 263067-F100**

Dear Judge Garaufis:

This office is co-counsel for New York State United Teachers and United Teachers of Northport ("Union Defendants").  Union Defendants submit this letter to bring to the Court's attention supplemental authority directly relevant to the Court's consideration of Defendants' pending motion to dismiss the complaint, including two recent decisions from the Seventh Circuit.

In Janus v. AFSCME Council 31, 942 F. 3d 352 (7th Cir. 2019) (annexed as Exhibit "A") and Mooney v. Ill. Educ. Ass'n, 942 F. 3d 368 (7th Cir. 2019) (annexed as Exhibit "B"), the Seventh Circuit confirmed the applicability of the good faith defense to public sector unions and affirmed the dismissal of materially indistinguishable claims for retroactive agency fees paid prior to the Supreme Court's decision in Janus v. AFSCME Council 31, 138 S. Ct. 2448 (2018).  Particularly relevant to the matter pending before Your Honor, Mooney was decided on a motion under FRCP 12(b)(6) and specifically addressed arguments about equitable relief similar to those presented here.

In addition, the following relevant District Court decisions are also annexed for the Court's review:

- Wenzig v. SEIU Local 668, 1:19-cv-01367 MEM, __ F. Supp. 3d __, 2019 WL 6715741 (M.D. Pa. Dec. 10, 2019) (Exhibit "C").
- Aliser v. SEIU California, 3:19-cv-00426 VC, __ F. Supp. 3d __, 2019 WL 6711470 (N.D. Ca. Dec. 10, 2019) (Exhibit "D").
- Smith v. N.J. Educ. Ass'n, 1:18-cv-10381 RMB KMW, __ F. Supp. 3d __, 2019 WL 6337991 (D.N.J. Nov. 27, 2019) (Exhibit "E").

- <u>Oliver v. SEIU Local 668</u>, 2:19-cv-00891 GAM, __ F. Supp. 3d __, 2019 WL 5964778 (E.D. Pa. Nov. 12, 2019) (Exhibit "F").
- <u>Hamidi v. Serv. Emps. Int'l Union</u>, 2:14-cv-00319 WBS KJN, 2019 WL 5536324 (E.D. Cal. Oct. 25, 2019) (Exhibit "G").
- <u>LaSpina v. SEIU Pa. State Council</u>, 3:18-cv-2018, 2019 WL 4750423 (M.D. Pa. Sept. 30, 2019) (Exhibit "H")
- <u>O'Callaghan v. Regents of the University of California</u>, 2:19-cv-02289 JVS-DFM (C.D. Ca. Sept. 30, 2019) (Exhibit "I").
- <u>Allen v. Santa Clara Cty. Corr. Peace Officers Ass'n</u>, 400 F. Supp. 3d 998 (E.D. Cal. 2019) (Exhibit "J").
- <u>Casanova v. Int'l Ass'n of Machinists, Local 701</u>, 1:19-cv-00428 SJC (N.D. Ill. Sept. 11, 2019) (Exhibit "K").

Respectfully submitted,

ROBERT T. REILLY

By:    /s/ Michael J. Del Piano
       Michael J. Del Piano
       Of Counsel

cc:    All counsel (by ECF and e-mail)

198092

# EXHIBIT "A"

Case 2:18-cv-03439-NGG-RLM Document 63 Filed 12/17/19 Page 4 of 100 PageID #: 1046
Janus v. American Federation of State, County and Municipal..., 942 F.3d 352 (2019)
2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

942 F.3d 352
United States Court of Appeals, Seventh Circuit.

Mark JANUS, Plaintiff-Appellant,

v.

AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, COUNCIL
31; AFL-CIO, et al., Defendants-Appellees,

and

Kwame Raoul, in his official capacity
as Attorney General of the State of
Illinois, Intervenor-Defendant-Appellee.

No. 19-1553
|
Argued September 20, 2019
|
Decided November 5, 2019

**Synopsis**

**Background:** Non-union state employee filed § 1983 action against union to recover fair-share fees he had paid to union. The United States District Court for the Northern District of Illinois, Robert W. Gettleman, Senior District Judge, 2019 WL 1239780, entered summary judgment in union's favor, and employee appealed.

**Holdings:** The Court of Appeals, Wood, Chief Judge, held that:

[1] union was acting under color of state law when it collected fair-share fees;

[2] employee's claim for return of fair-share fees was timely; and

[3] in a matter of first impression, union had good faith defense to employee's claim for monetary damages for past violations of his First Amendment rights.

Affirmed.

Manion, Senior Circuit Judge, concurred and filed opinion.

West Headnotes (12)

**[1]** **Federal Courts**
👉 Summary judgment

Court of Appeals reviews district court's grant of summary judgment de novo.

**[2]** **Civil Rights**
👉 Employment practices

Unions are "persons" for purposes of § 1983. 42 U.S.C.A. § 1983.

**[3]** **Civil Rights**
👉 State or territorial action, or individual or private action, in general

Procedural scheme created by statute is product of state action, and properly may be addressed in § 1983 action. 42 U.S.C.A. § 1983.

**[4]** **Civil Rights**
👉 Private Persons or Corporations, in General

When private parties make use of state procedures with overt, significant assistance of state officials, state action may be found for purposes of § 1983. 42 U.S.C.A. § 1983.

**[5]** **Civil Rights**
👉 Employment practices

Union was acting under color of state law when it collected fair-share fees from non-union state employees pursuant to state statute, and thus was proper defendant in non-union state employee's § 1983 action alleging that collection of fair-share fees violated his First Amendment rights. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

4 Cases that cite this headnote

**[6]** **Limitation of Actions**
👉 Civil rights

Case 2:18-cv-03439-NGG-RLM Document 63 Filed 12/17/19 Page 5 of 100 PageID #: 1047
Janus v. American Federation of State, County and Municipal..., 942 F.3d 352 (2019)
2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

Section 1983 claim accrues when plaintiff knows or should know that his or her constitutional rights have been violated. 42 U.S.C.A. § 1983.

**[7]    Limitation of Actions**
☞ Civil rights

Non-union state employee's claim for return of fair-share fees he had paid to union accrued, and statute of limitations for filing § 1983 action to recover fees commenced, when United States Supreme Court held that collection of fair-share fees violated non-union employees' First Amendment rights. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983; 735 Ill. Comp. Stat. Ann. 5/13-202.

2 Cases that cite this headnote

**[8]    Civil Rights**
☞ Privilege or Immunity; Good Faith and Probable Cause

Liability under § 1983 is subject to common-law immunities that apply to all manner of defendants. 42 U.S.C.A. § 1983.

**[9]    Civil Rights**
☞ Privilege or Immunity; Good Faith and Probable Cause

Under appropriate circumstances, private party that acts under color of law for purposes of § 1983 may defend on ground that it proceeded in good faith. 42 U.S.C.A. § 1983.

**[10]    Conversion and Civil Theft**
☞ Intent

**Conversion and Civil Theft**
☞ Assertion of ownership or control in general

Conversion requires intentional and serious interference with right of another to control chattel.

**[11]    Process**
☞ Nature and elements in general

Abuse of process occurs where party uses legal process, whether criminal or civil, against another primarily to accomplish purpose for which it is not designed.

**[12]    Civil Rights**
☞ Privilege or Immunity; Good Faith and Probable Cause

Civil service union had good faith defense to non-union state employee's § 1983 claim for monetary damages for past violations of his First Amendment rights through collection of mandatory fair-share fees, where union collected fees pursuant to presumptively valid state statute in reliance upon subsequently-overruled Supreme Court decision that held that unions could collect mandatory fair-share fees. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983; 5 Ill. Comp. Stat. Ann. 315/6.

4 Cases that cite this headnote

**\*353** Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 1:15-cv-01235—**Robert W. Gettleman**, *Judge.*

## Attorneys and Law Firms

William L. Messenger, Attorney, National Right To Work Legal Defense Foundation, Springfield, VA, Jeffrey M. Schwab, Attorney, Liberty Justice Center, Chicago, IL, for Plaintiff-Appellant.

John M. West, Attorney, Bredhoff & Kaiser, PLLC, Washington, DC, Melissa J. Auerbach, Attorney, Stephen Anthony Yokich, Attorney, Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich, Chicago, IL, for Defendant-Appellee American Federation of State, County and Municipal Employees, Council 31, AFL-CIO.

Frank Henry Bieszczat, Attorney, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendant-Appellee Janel L. Forde, In her official capacity as Director of Illinois Department of Central Management.

Case 2:18-cv-03439-NGG-RLM Document 63 Filed 12/17/19 Page 6 of 100 PageID #: 1048
Janus v. American Federation of State, County and Municipal..., 942 F.3d 352 (2019)
2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

Frank Henry Bieszczat, Attorney, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Intervenor-Appellee.

Carl R. Draper, Attorney, Feldman, Wasser, Draper & Cox, Springfield, IL, for Defendant.

Before Wood, Chief Judge, and Manion and Rovner, Circuit Judges.

**Opinion**

Wood, Chief Judge.

**\*1   \*354**  For 41 years, explicit Supreme Court precedent authorized state-government entities and unions to enter into agreements under which the unions could receive fair-share fees from nonmembers to cover the costs incurred when the union negotiated or acted on their behalf over terms of employment. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). To protect nonmembers' First Amendment rights, fair-share fees could not support any of the union's political or ideological activities. Relying on *Abood*, more than 20 states created statutory schemes that allowed the collection of fair-share fees, and public-sector employers and unions in those jurisdictions entered into collective bargaining agreements pursuant to these laws.

In 2018, the Supreme Court reversed its prior position and held that compulsory fair-share or agency fee arrangements impermissibly infringe on employees' First Amendment rights. *Janus v. AFSCME, Council 31*, ––– U.S. ––––, 138 S. Ct. 2448, 2461, 201 L.Ed.2d 924 (2018). The question before us now is whether Mark Janus, an employee who paid fair-share fees under protest, is entitled to a refund of some or all of that money. We hold that he is not, and so we affirm the judgment of the district court.

**I**

**A. History of Agency Fees**

Before turning to the specifics of the case before us, we think it useful to take a brief tour of the history behind agency fees. This provides useful context for our consideration of Mr. Janus's claim and the system he challenged.

The principle of exclusive union representation lies at the heart of our system of industrial relations; it is reflected in both the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–165 (first enacted in 1926), and the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–169 (first enacted in 1935). In its quest to provide for "industrial peace and stabilized labor-management relations," Congress authorized employers and labor organizations to enter into agreements under which employees could be required either to be union members or to contribute to the costs of representation—so-called "agency-shop" arrangements. See 29 U.S.C. §§ 157, 158(a) (3); 45 U.S.C. § 152 Eleventh. Unions designated as exclusive representatives were (and still are) obligated to represent all employees, **\*355** union members or not, "fairly, equitably, and in good faith." H.R. Rep. No. 2811, 81st Cong., 2d Sess., p. 4.

In *Railway Employment Dep't v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), a case involving the RLA, the Supreme Court held that "the requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work is within the power of Congress under the Commerce Clause and does not violate either the First or the Fifth Amendments." *Id.* at 231, 76 S.Ct. 714. In approving agency-shop arrangements, the Court said, "Congress endeavored to safeguard against [the possibility that compulsory union membership would impair freedom of expression] by making explicit that no conditions to membership may be imposed except as respects 'periodic dues, initiation fees, and assessments.' " *Id.* *Hanson* thus held that the compulsory payment of fair-share fees did not contravene the First Amendment.

**\*2**  Several years later, in *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), the Court discussed the careful balancing of interests reflected in the RLA, observing that "Congress did not completely abandon the policy of full freedom of choice embodied in the [RLA], but rather made inroads on it for the limited purposes of eliminating the problems created by the 'free rider.' " *Id.* at 767, 81 S.Ct. 1784. The Court reaffirmed the lawfulness of agency-shop arrangements while cautioning that unions could receive and spend nonmembers' fees only in accordance with the terms "advanced by the unions and accepted by Congress [to show] why authority to make union shop agreements was justified." *Id.* at 768, 81 S.Ct. 1784. Legitimate expenditures were limited to those designed to cover "the expenses of the negotiation or administration of collective agreements, or the expenses entailed in the adjustment of grievances and

Case 2:18-cv-03439-NGG-RLM Document 63 Filed 12/17/19 Page 7 of 100 PageID #: 1049
Janus v. American Federation of State, County and Municipal..., 942 F.3d 352 (2019)

2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

disputes." *Id.* The Court left the question whether state public agencies were similarly empowered under state law to enter into agency-shop arrangements for another day.

That day came on May 23, 1977, when the Supreme Court issued its opinion in *Abood.* 431 U.S. 209, 97 S.Ct. 1782. There, a group of public-school teachers challenged Michigan's labor relations laws, which were broadly modeled on federal law. *Id.* at 223, 97 S.Ct. 1782. Michigan law established an exclusive representation scheme and authorized agency-shop clauses in collective bargaining agreements between public-sector employers and unions. *Id.* at 224, 97 S.Ct. 1782. The Court upheld that system, stating that "[t]he desirability of labor peace is no less important in the public sector, nor is the risk of 'free riders' any smaller," *id.,* and that "[t]he same important government interests recognized in the *Hanson* and *Street* cases presumptively support the impingement upon associational freedom created by the agency shop here at issue." *Id.* at 225, 97 S.Ct. 1782. It recognized that "government may not require an individual to relinquish rights guaranteed him by the First Amendment as a condition of public employment." *Id.* at 233–34, 97 S.Ct. 1782. Nonetheless, it said that a public employee has no "weightier First Amendment interest than a private employee in not being compelled to contribute to the costs of exclusive union representation," *id.* at 229, 97 S.Ct. 1782, and thus concluded that "[t]he differences between public- and private-sector collective bargaining simply do not translate into differences in First Amendment rights." *Id.* at 232, 97 S.Ct. 1782.

The correct balance, according to *Abood,* was to "prevent[ ] compulsory subsidization of ideological activities by employees **\*356** who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities." *Id.* at 237, 97 S.Ct. 1782. And for four decades following *Abood,* courts, state public-sector employers, and unions followed this path. See, *e.g., Locke v. Karass,* 555 U.S. 207, 129 S.Ct. 798, 172 L.Ed.2d 552 (2009); *Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991); *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986); *Ellis v. Railway Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). Agency-shop arrangements, the Court repeatedly held, were consistent with the First Amendment and validly addressed the risk of free riding. See *Comm'cns Workers of America v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988) ("Congress enacted the two provisions for the same purpose, eliminating

'free riders,' and that purpose dictates our construction of § 8(a)(3) ...."); *Ellis,* 466 U.S. at 447, 452, 456, 104 S.Ct. 1883 (referring in three places to the free-rider concern); see also *Lehnert,* 500 U.S. at 556, 111 S.Ct. 1950 (Scalia, J., concurring).

In time, however, the consensus on the Court began to fracture. Beginning in *Knox v. Serv. Emps. Int'l Union,* 567 U.S. 298, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012), the rhetoric changed. *Abood* began to be characterized as an "anomaly," and the Court started paying more attention to the "significant impingement on First Amendment rights" *Abood* allowed and less to the balancing of employees' rights and unions' obligations. *Id.* at 310–11, 132 S.Ct. 2277. Building on *Knox, Harris v. Quinn* criticized the reasoning in *Hanson* and *Abood* as "thin," "questionable," and "troubling." 573 U.S. 616, 631–35, 134 S.Ct. 2618, 189 L.Ed.2d 620 (2014). *Harris* worried that *Abood* had "failed to appreciate the conceptual difficulty of distinguishing between union expenditures that are made for collective-bargaining purposes and those that are made to achieve political ends" and to anticipate "the practical administrative problems that would result." *Id.* at 637, 134 S.Ct. 2618. The *Harris* Court also suggested that "[a] union's status as exclusive bargaining agent and the right to collect an agency fee from non-members are not inextricably linked." *Id.* at 649, 134 S.Ct. 2618.

**\*\*3** Nonetheless, and critically for present purposes, these observations did not lead the Court in *Harris* to overrule *Abood.* Informed observers thought that *Abood* was on shaky ground, but it was unclear whether it would weather the storm, be restricted, or be overturned in its entirety. That uncertainty continued after the Court signaled its intention to revisit the issue in *Friedrichs v. California Teachers Ass'n,* ––– U.S. ––––, 135 S. Ct. 2933, 192 L.Ed.2d 975 (2015), which wound up being affirmed by an equally divided Court. ––– U.S. ––––, 136 S. Ct. 1083, 194 L.Ed.2d 255 (2016).

### B. Janus's Case

Plaintiff Mark Janus was formerly a child-support specialist employed by the Illinois Department of Healthcare and Family Services. Through a collective bargaining agreement between Illinois's Department of Central Management Services ("CMS") (which handles human resources tasks for Illinois's state agencies) and defendant American Federation of State, County and Municipal Employees ("AFSCME"), Council 31, AFSCME was designated as the exclusive

representative of Mr. Janus's employee unit. Mr. Janus exercised his right not to join the union. He also objected to CMS's withholding $44.58 from his paycheck each month to compensate AFSCME for representing the employee unit in collective bargaining, **\*357** grievance processing, and other employment-related functions.

Initially, however, Mr. Janus was not involved in this litigation. The case began instead when the then-governor of Illinois challenged the Illinois Public Labor Relations Act ("IPLRA"), which established an exclusive representation scheme and authorized public employers and unions to enter into collective bargaining agreements that include a fair-share fee provision. 5 ILCS § 315/6. Under that law, a union designated as the exclusive representative of an employee unit was "responsible for representing the interests of all public employees in the unit," whether union members or not, § 315/6(d). Fair-share fees were earmarked to compensate the union for costs incurred in "the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment." § 315/6(e).

The district court dismissed the governor for lack of standing, but at the same time it permitted Mr. Janus (and some others) to intervene as plaintiffs. Mr. Janus asserted that the state's compulsory fair-share scheme violated the First Amendment. He recognized that *Abood* stood in his way, but he argued that *Abood* was wrongly decided and should be overturned by the high court. Although the lower courts that first considered his case rejected his position on the ground that they were bound by *Abood*, see *Janus v. AFSCME, Council 31*, 851 F.3d 746, 747–48 (7th Cir. 2017) ("*Janus I*"), Janus preserved his arguments and then, as he had hoped, the Supreme Court took the case.

This time, the Court overruled *Abood*. *Janus*, 138 S. Ct. at 2486 ("*Janus II*"). It held that agency-shop arrangements that require nonmembers to pay fair-share fees and thereby "subsidize private speech on matters of substantial public concern," are inconsistent with the First Amendment rights of objectors, no matter what interest the state identifies in its authorizing legislation. 138 S. Ct. at 2460. This is so, the Court explained, because "the First Amendment does not permit the government to compel a person to pay for another party's speech just because the government thinks that the speech furthers the interests of the person who does not want to pay." *Id.* at 2467.

**\*\*4** Several aspects of the Court's opinion are relevant to Mr. Janus's current claim for damages. First, the Court characterized the harm inflicted by the agency-fee arrangement as "compelled subsidization of private speech," 138 S. Ct. at 2464, whereby "individuals are coerced into betraying their convictions," *id.* It was not concerned in the abstract with the deduction of money from employees' paychecks pursuant to an employment contract. Rather, the problem was the lack of *consent* (where it existed) to the use of that money—*i.e.* to support the union's representation work. In other words, the case presented a First Amendment speech issue, not one under the Fifth Amendment's Takings clause.

The Court found that any legitimate interest AFSCME had in those fees had to yield to the objecting employees' First Amendment rights. In so doing, it rejected the approach to free riding that earlier opinions had taken, holding to the contrary that "avoiding free riders is not a compelling interest" and thus Illinois's statute could not withstand "exacting scrutiny." 138 S. Ct. at 2466. Yet it came to that conclusion only after weighing the costs and benefits to a union of having exclusive representative status: on the one hand, the union incurs the financial burden attendant to the requirement to provide fair representation even for nonmembers who decline to contribute anything to the cost of **\*358** its services; on the other hand, even with payments of zero from objectors, the union still enjoys the power and attendant privileges of being the exclusive representative of an employee unit. The Court's analysis focused on the union rather than the nonmembers: the question was whether requiring a *union* to continue to represent those who do not pay even a fair-share fee would be sufficiently inequitable to establish a compelling interest, not whether requiring *nonmembers* to contribute to the unions would be inequitable.

Nor did the Court hold that Mr. Janus has an unqualified constitutional right to accept the benefits of union representation without paying. Its focus was instead on freedom of expression. That is why it said only that the state may not force a person to pay fees to a union with which she does not wish to associate. But if those unions were not designated as exclusive representatives (as they are under 5 ILCS §§ 315/6 and 315/9), there would be no obligation to act in the interests of nonmembers. The only right the *Janus II* decision recognized is that of an objector not to pay *any* union fees. This is not the same as a right to a free ride. Free-riding is simply a consequence of exclusivity; drop the duty

Case 2:18-cv-03439-NGG-RLM Document 63 Filed 12/17/19 Page 9 of 100 PageID #: 1051
Janus v. American Federation of State, County and Municipal..., 942 F.3d 352 (2019)
2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

of fair representation, and the union would be free to cut off all services to the nonmembers.

Finally, the Court did not specify whether its decision was to have retroactive effect. The language it used, to the extent that it points any way, suggests that it was thinking prospectively: "Those unconstitutional exactions cannot be allowed to continue indefinitely," 138 S. Ct. at 2486; "States and public-sector unions may no longer extract agency fees from nonconsenting employees," *id*; "This procedure violates the First Amendment and cannot continue," *id*. In the end, however, the Court remanded the case to the district court for further proceedings, in particular those related to remedy. *Id*. at 2486.

## C. District Court Proceedings

The most immediate effect of the Court's *Janus II* opinion was CMS's prompt cessation of its collection of fees from Mr. Janus and all other nonmembers of the union, and thus the end of AFSCME's receipt of those monies. That relief was undoubtedly welcome for those such as Mr. Janus who fundamentally disagree with the union's mission, but matters did not stop there. Still relying on 42 U.S.C. § 1983 for his right of action, Mr. Janus followed up on the Court's decision with a request for damages from AFSCME in the amount of all fair-share fees he had paid. The State of Illinois joined the litigation as an intervenor-defendant in support of AFSCME.

**\*\*5** The district court entered summary judgment for AFSCME and Illinois on March 18, 2019. *Janus v. AFSCME, Council 31*, No. 15 C 1235, 2019 WL 1239780 (N.D. Ill. Mar. 18, 2019) ("*Janus III*"). It began with the observation that in 1982, the Supreme Court held that private defendants could in some circumstances act "under color of state law" for purposes of section 1983 by participating in state-created procedural schemes. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 941–42, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Although such private defendants are not entitled to the identical immunity defenses that apply to public defendants, the Court later indicated, they may be entitled to an affirmative defense based on good faith or probable cause. *Wyatt v. Cole*, 504 U.S. 158, 169, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) ("*Wyatt I*"). Noting that "every federal appellate court that has considered the good-faith defense [to a damages action] has found that it exists for private parties," the court followed that **\*359** rule and found that the defense applies here. The key question, it said, is whether

the defendant's reliance on an existing law was in good faith. Given the fact that "the statute on which defendant relied had been considered constitutional for 41 years," it found good faith. In so doing, it rejected the idea that earlier intimations from the Court that *Abood* ought to be overruled undermined the necessary good faith. Accordingly, it held that Mr. Janus was not entitled to damages.

Mr. Janus timely filed a notice of appeal on March 27, 2019. We heard oral argument in both Mr. Janus's appeal and a related case, *Mooney v. Ill. Educ. Ass'n*, No. 19-1774, on September 20, 2019. The predicate for each case is the same —the Supreme Court's decision in *Janus II*—but whereas Mr. Janus seeks damages from the union, Mooney insists that her claim lies in equity and is one for restitution. As we explain in more detail in a separate opinion filed in *Mooney*, we find no substantive difference in the two theories of relief, and so much of what we have to say here also applies to Mooney's case.

## II

**[1]** This appeal presents only questions of law. Accordingly, we review the district court's grant of summary judgment in favor of AFSCME *de novo*. *Mazzei v. Rock-N-Around Trucking, Inc.*, 246 F.3d 956, 959 (7th Cir. 2001).

## A. Retroactivity

We begin with the question whether *Janus II* is retroactive. If it is not, that is the end of the line for Mr. Janus, because the union's collection of fair-share fees was expressly permitted by state law and Supreme Court precedent from the time he started his covered work until the Court's decision, which all agree marked the end of his payments. If it is, then we must reach additional questions that also bear on the proper resolution of the case. As we noted earlier, the Supreme Court's opinion did not address retroactivity in so many words.

Mr. Janus relies primarily on *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), for the proposition that "a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law." *Id*. at 97, 113 S.Ct. 2510; see also *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995)

Case 2:18-cv-03439-NGG-RLM Document 63 Filed 12/17/19 Page 10 of 100 PageID #: 1052
Janus v. American Federation of State, County and Municipal..., 942 F.3d 352 (2019)
2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

("*Harper...* held that, when (1) the Court decides a case and applies the (new) legal rule of that case to the parties before it, then (2) it and other courts must treat that same (new) legal rule as 'retroactive,' applying it, for example, to all pending cases, whether or not those cases involve predecision events."). Mr. Janus's assertion is that *all* Supreme Court cases, without exception, "must be applied retroactively." AFSCME responds that "[i]t is not at all clear, in the first place, that the Supreme Court's decision in this case is to be applied retroactively."

We agree with AFSCME that the rules of retroactivity are not as unbending as Mr. Janus postulates. Even in *Harper*, the Court stated only that its "consideration of remedial issues meant necessarily that we retroactively applied the rule we announced ... to the litigants before us." 509 U.S. at 99, 113 S.Ct. 2510. Right and remedy are two different things, and the Court has taken great pains to evaluate them separately. See, *e.g.*, *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 65–66, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) ("As we have often stated, the question of what remedies are available under a statute that provides a private right of action is 'analytically **\*360** distinct' from the issue of whether such a right exists in the first place.").

**\*\*6** Retroactivity poses some knotty problems. The Supreme Court disapproved of what it called "selective prospectivity" in *Harper* (that is, application of the new rule to the party before the court but not to all others whose cases were pending), but it did not close the door on "pure prospectivity"—*i.e.*, wholly prospective force, equally inapplicable to the parties in the case that announces the rule and all others—as used in *Lemon v. Kurtzman*, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) ("*Lemon II*"). In that case, after invalidating a Pennsylvania program permitting nonpublic sectarian schools to be reimbursed for secular educational services, see *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) ("*Lemon I*"), the Court affirmed a district court order permitting the state to reimburse the schools for all services performed up to the date of *Lemon I. Lemon II*, 411 U.S. at 194, 93 S.Ct. 1463. One could argue that similar reliance interests on the part of AFSCME and the state argue for pure prospectivity here.

On the other hand, in later decisions the Supreme Court has stated that the "general practice is to apply the rule of law we announce in a case to the parties before us ... even when we overrule a case." *Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). Only when

there is "grave disruption or inequity involved in awarding retrospective relief to the petitioner" does the option of pure prospectivity come into play. *Ryder v. United States*, 515 U.S. 177, 184–85, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995). See also *Suesz v. Med-1 Sols., LLC*, 757 F.3d 636, 650 (7th Cir. 2014) (*en banc*).

Rather than wrestle the retroactivity question to the ground, we think it prudent to assume for the sake of argument that the *right* recognized in *Janus II* should indeed be applied to the full sweep of people identified in *Harper* (that is, Mr. Janus himself and all others whose cases were in the pipeline at the time of the Court's decision). That appears also to be the approach the district court took. We thus turn to the broader question whether Mr. Janus is entitled to the remedy he seeks.

### B. Requirements under Section 1983

Section 1983 supports a civil claim against "every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

#### 1. AFSCME is a "person" that can be sued

**[2]** To be liable under section 1983 a defendant must be a "person" as Congress used that term. While "person" is a broad word, the Supreme Court has held that states do not fall within its compass. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). But it is hard to find other exclusions. The union, as an unincorporated organization, is a suable "person," and we are satisfied that it is sufficiently like other entities that have been sued under section 1983 to permit this action. Compare *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipalities and other local government units are "persons" for purposes of section 1983); *Walsh v. Louisiana High School Athletic Ass'n*, 616 F.2d 152, 156 (5th Cir. 1980) (voluntary association of schools); *Frohwerk v. Corr. Med. Servs.*, 2009 WL 2840961 (N.D. Ind. Sept. 1, 2009) (prison contractors). *Cf.* **\*361** *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).

#### 2. AFSCME acted "under color of" state law

The next question is whether AFSCME acted under color of state law. Unions generally are private organizations. See,

Case 2:18-cv-03439-NGG-RLM   Document 63   Filed 12/17/19   Page 11 of 100 PageID #: 1053
Janus v. American Federation of State, County and Municipal..., 942 F.3d 352 (2019)
2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

*e.g.*, *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). Nonetheless, private actors sometimes fall within the statute. See *Lugar*, 457 U.S. at 935, 102 S.Ct. 2744. Indeed, the "color of law" requirement in section 1983 is more expansive than, and wholly encompasses, the "state action" requirement under the Fourteenth Amendment. *Id.* For our purposes, the analysis is the same—if AFSCME's receipt from CMS of the fair-share fees is attributable to the state, then the "color of law" requirement is satisfied.

**\*\*7** [3] [4] [5] A "procedural scheme created by statute obviously is the product of state action" and "properly may be addressed in a section 1983 action." *Id.* at 941, 102 S.Ct. 2744. "[W]hen private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); see also *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir. 1992). Here, AFSCME was a joint participant with the state in the agency-fee arrangement. CMS deducted fair-share fees from the employees' paychecks and transferred that money to the union, which then spent it on authorized labor-management activities pursuant to the collective bargaining agreement. This is sufficient for the union's conduct to amount to state action. We therefore conclude that AFSCME is a proper defendant under section 1983.

### C. Statute of Limitations

[6] Mr. Janus's claim is also timely under the applicable statute of limitations. Section 1983 does not have its own organic statute of limitations but rather borrows the state statute of limitations for personal-injury actions. *Wilson v. Garcia*, 471 U.S. 261, 279, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In Illinois, this is two years. 735 ILCS § 5/13–202. "The claim accrues when the plaintiff knows or should know that his or her constitutional rights have been violated." *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011).

[7] In this case, the statute began running on the date of the Supreme Court's decision in *Janus II*: June 27, 2018. Mr. Janus neither knew nor should have known any earlier that his constitutional rights were violated, because before then it was the settled law of the land that the contrary was true. Thus, his suit is timely.

### III

#### A. Existence of Good-faith Defense

We now turn to the ultimate question in this case: to what remedy or remedies is Mr. Janus entitled? As the Supreme Court wrote in *Davis v. United States*, 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), retroactivity and remedy are distinct questions. "Retroactive application does not ... determine what 'appropriate remedy' (if any) the defendant should obtain." *Id.* at 243, 131 S.Ct. 2419; see also *American Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 189, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (plurality opinion) ("[T]he Court has never equated its retroactivity principles with remedial principles...."). It thus does not necessarily follow from retroactive application of a new rule that the defendant will gain the precise type of relief she seeks. See **\*362** *Powell v. Nevada*, 511 U.S. 79, 84, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994). To the contrary, the Supreme Court has acknowledged that the retroactive application of a new rule of law does not "deprive[ ] respondents of their opportunity to raise ... reliance interests entitled to consideration in determining the nature of the remedy that must be provided." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 544, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).

Sometimes the law recognizes a defense to certain types of relief. An example that comes readily to mind is the qualified immunity doctrine, which is available for a public employee if the asserted constitutional right that she violated was not clearly established. See, *e.g.*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). We must decide whether a union may raise any such defense against its liability for the fair-share fees it collected before *Janus II*.

This is a matter of first impression in our circuit. But, as the district court noted, every federal appellate court to have decided the question has held that, while a private party acting under color of state law does not enjoy qualified immunity from suit, it is entitled to raise a good-faith defense to liability under section 1983. See *Clement v. City of Glendale*, 518 F.3d 1090, 1096–97 (9th Cir. 2008); *Pinsky v. Duncan*, 79 F.3d 306, 311–12 (2d Cir. 1996); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698–99 (6th Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275–78 (3d Cir. 1994); *Wyatt v. Cole*, 994 F.2d 1113, 1118–21 (5th Cir. 1993) ("*Wyatt II*").

Case 2:18-cv-03439-NGG-RLM Document 63 Filed 12/17/19 Page 12 of 100 PageID #: 1054
Janus v. American Federation of State, County and Municipal..., 942 F.3d 352 (2019)
2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

**\*\*8**  **[8]**  Mr. Janus takes issue with this consensus position.
He points to the text of section 1983, which we grant says
nothing about immunities or defenses. That, he contends, is
the end of the matter. "Shall be liable to the party injured"
is mandatory language that, in his view, allows for no
exceptions. The problem with such an absolutist position,
however, is that the Supreme Court abandoned it long ago,
when it recognized that liability under section 1983 is subject
to common-law immunities that apply to all manner of
defendants.

The Court discussed that history in *Wyatt I*, where it noted
that despite the bare-bones text of section 1983, it had
"accorded certain government officials either absolute or
qualified immunity from suit if the tradition of immunity
was so firmly rooted in the common law and was supported
by such strong policy reasons that Congress would have
specifically so provided had it wished to abolish the doctrine."
504 U.S. at 163–64, 112 S.Ct. 1827 (quoting *Owen v. City of
Independence,* 445 U.S. 622, 637, 100 S.Ct. 1398, 63 L.Ed.2d
673 (1980)) (internal quotation marks omitted). In *Wyatt I*,
the Court had to decide how far its immunity jurisprudence
reached, and specifically, whether *private* parties acting
under color of state law would have been able, at the time
section 1983 was enacted (in 1871), to invoke the same
immunities that public officials had. (That is more than a
bit counterfactual, as the Court did not recognize this type
of private liability until 1982, but we put that to one side.)
Surveying its immunity jurisprudence, including *Mitchell v.
Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411
(1985), *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727,
73 L.Ed.2d 396 (1982), *Wood v. Strickland,* 420 U.S. 308,
95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and *Pierson v. Ray,*
386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the
Court "conclude[ed] that the rationales mandating qualified
immunity for public officials are not applicable to private
parties." 504 U.S. at 167, 112 S.Ct. 1827.

The Court recognized that this outcome risked leaving private
defendants in the **\*363** unenviable position of being just
as vulnerable to suit as public officials, per *Lugar,* but not
protected by the same immunity. *Id.* at 168, 112 S.Ct. 1827.
But, critically for AFSCME, the Court pointed toward the
solution to that problem. It distinguished between defenses
to suit and immunity from suit, the latter of which is more
robust, in that it bars recovery regardless of the merits. *Id.* at
166, 112 S.Ct. 1827. It then confirmed that its ruling rejecting
qualified immunity did "not foreclose the possibility that
private defendants faced with § 1983 liability under [*Lugar*]

could be entitled to an affirmative defense based on good faith
and/or probable cause or that § 1983 suits against private,
rather than governmental, parties could require plaintiffs to
carry additional burdens." *Wyatt I,* 504 U.S. at 169, 112 S.Ct.
1827.

Mr. Janus rejects the line that the Court drew between
qualified immunity and a defense to liability; he sees it as
nothing but a labeling game. But *Wyatt I* directly refutes this
criticism. Adding to the language above from the majority,
Justice Kennedy, in concurrence, explained why a defense
on the merits might be available for private parties even
if immunity is not. "By casting the rule as an immunity,
we imply the underlying conduct was unlawful, a most
debatable proposition in a case where a private citizen
may have acted in good-faith reliance upon a statute." 504
U.S. at 173, 112 S.Ct. 1827 (Kennedy, J., concurring). The
distinction between an immunity and a defense is one of
substance, not just nomenclature, and "is important because
there is support in the common law for the proposition that
a private individual's reliance on a statute, prior to a judicial
determination of unconstitutionality, is considered reasonable
as a matter of law." *Id.* at 174, 112 S.Ct. 1827; see also
*Lugar,* 457 U.S. at 942 n.23, 102 S.Ct. 2744 ("Justice Powell
is concerned that private individuals who innocently make
use of seemingly valid state laws would be responsible, if
the law is subsequently held to be unconstitutional, for the
consequences of their actions. In our view, however, this
problem should be dealt with not by changing the character
of the cause of action but by establishing an affirmative
defense.").

**\*\*9**  The *Wyatt I* Court remanded the case to the Fifth Circuit,
which decided that the "question left open by the majority"—
whether a good-faith defense is available in section 1983
actions—"was largely answered" in the affirmative by the
five concurring and dissenting justices. *Wyatt II,* 994 F.2d
at 1118. The court accordingly held "that private defendants
sued on the basis of *Lugar* may be held liable for damages
under § 1983 only if they failed to act in good faith in invoking
the unconstitutional state procedures, that is, if they either
knew or should have known that the statute upon which they
relied was unconstitutional." *Id.*

Other circuits followed suit. In *Jordan,* the Third Circuit noted
"the [Supreme Court's] statement [in *Wyatt I*] that persons
asserting section 1983 claims against private parties could
be required to carry additional burdens, and the statements
in *Lugar* which warn us [that] a too facile extension of

Case 2:18-cv-03439-NGG-RLM Document 63 Filed 12/17/19 Page 13 of 100 PageID #: 1055
Janus v. American Federation of State, County and Municipal..., 942 F.3d 352 (2019)
2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

section 1983 to private parties could obliterate the Fourteenth Amendment's limitation to state actions that deprive a person of constitutional rights and the statutory limitation of section 1983 actions to claims against persons acting under color of law." 20 F.3d at 1277 (cleaned up). Those considerations, the court said, lead to the conclusion that " 'good faith' gives state actors a defense that depends on their subjective state of mind, rather than the more demanding objective standard of reasonable belief that governs qualified immunity." *Id.* The Sixth Circuit **364** concurred in *Vector Research,* 76 F.3d at 699, as did the Ninth Circuit in *Clement,* 518 F.3d at 1096–97. Most recently, in a case decided after *Harris v. Quinn,* the Second Circuit allowed a good-faith defense to a section 1983 claim for reimbursement of agency fees paid prior to decision. *Jarvis v. Cuomo,* 660 F. App'x 72, 75–76 (2d Cir. 2016).

Mr. Janus pushes back against these decisions with the argument that there is no common-law history before 1871 of private parties enjoying a good-faith defense to constitutional claims. As we hinted earlier, however, the reason is simple: the liability of private parties under section 1983 was not clearly established until, at the earliest, the Court's decision in *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). For nearly 100 years, nothing would have prompted the question.

[9] We now join our sister circuits in recognizing that, under appropriate circumstances, a private party that acts under color of law for purposes of section 1983 may defend on the ground that it proceeded in good faith. The final question is whether that defense is available to AFSCME.

## B. Good-faith Defense for AFSCME

Although this is a new question for us, we note that every district court that has considered the precise question before us—whether there is a good-faith defense to liability for payments collected before *Janus II*—has answered it in the affirmative. [1] While those views are not binding on us, the unanimity of opinion is worth noting.

**10** The first task we have under *Wyatt I* is to identify the "most closely analogous tort" to which we should turn for guidance. 504 U.S. at 164, 112 S.Ct. 1827 (citations and internal quotation marks omitted). Arguing in some tension with his statute-of-limitations **365** position, Mr. Janus says that his claim lacks any common law analogue. His back-up position is that good faith is pertinent only if the underlying offense has a state-of-mind element, and he asserts that the most analogous tort in his case lacks such an element.

[10] Mr. Janus compares the First Amendment violation in his case to conversion. But that analogy does not work, at least with regard to the state's deduction of fair-share fees and its transfer of those fees to the union. Conversion requires an intentional and serious interference with "the right of another to control" a chattel. Restatement (Second) of Torts § 222A (1965). At the time AFSCME received Mr. Janus's fair-share fees, he had no "right to control" that money. Instead, under Illinois law and *Abood,* the union had a right to the fees under the collective bargaining agreement with CMS. This rules out conversion. As the Supreme Court said in *Chicot Cnty. Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), "the actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored." *Id.* at 374, 60 S.Ct. 317.

There are also at least two privileges that may be relevant to a conversion-style claim: authority based upon public interest, Restatement (Second) of Torts § 265 (1965), and privilege to act pursuant to court order, Restatement (Second) of Torts § 266 (1965). Section 265 provides that "one is privileged to commit an act which would otherwise be a trespass to a chattel or a conversion if he is acting in discharge of a duty or authority created by law to preserve the public safety, health, peace, or other public interest, and his act is reasonably necessary to the performance of his duty or the exercise of his authority." While the usual context for the assertion of this privilege is law enforcement, it is not too much of a stretch to apply it to the union's conduct here. CMS and AFSCME acted pursuant to state law. That sounds like action in discharge of a duty imposed by law. Section 266, which provides a privilege when one acts pursuant to a court order, is not directly applicable because there was no court order directing AFSCME to receive fair-share fees—*Abood* was permissive, not mandatory. Nevertheless, CMS and AFSCME did rely on the Supreme Court's opinion upholding the legality of exactly this proxy.

[11] AFSCME contends that the better analogy is to the tort of abuse of process. Abuse of process occurs where a party "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed." Restatement (Second) of Torts § 682 (1977). Alternatively, the most analogous tort might be interference with contract. See Restatement (Second) of Torts § 766A

Case 2:18-cv-03439-NGG-RLM   Document 63   Filed 12/17/19   Page 14 of 100 PageID #: 1056
Janus v. American Federation of State, County and Municipal..., 942 F.3d 352 (2019)
2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

(1979). Under the agency-fee arrangement, a certain portion of the salary CMS contracted to pay employees went instead to the union. This arguably made the contract less lucrative for objecting employees and violated their First Amendment rights.

None of these torts is a perfect fit, but they need not be. We are directed to find the *most analogous* tort, not the exact-match tort. This is inherently inexact. Although there are reasonable arguments for several different torts, we are inclined to agree with AFSCME that abuse of process comes closest. But perhaps the search for the best analogy is a fool's errand. As several district courts have commented, the Supreme Court in *Wyatt I* embarked on the search for the most analogous tort only for *immunity* purposes—the Court never said that the same methodology should be used for the good-faith defense. **\*366** See, *e.g.*, *Carey*, 364 F. Supp. 3d at 1229–30; *Babb*, 378 F. Supp. 3d at 872–73; *Diamond*, 399 F.Supp.3d 361, 396–99, 2019 WL 2929875 at *25–26. In the alternative, therefore, we leave common-law analogies behind and consider the appropriateness of allowing a good-faith defense on its own terms.

### C. Good-faith Defense under *Wyatt I*

 **\*\*11** Like our sister circuits, we read the Court's language in *Wyatt I* and *Lugar*, supplemented by Justice Kennedy's opinion concurring in *Wyatt I*, as a strong signal that the Court intended (when the time was right) to recognize a good-faith defense in section 1983 actions when the defendant reasonably relies on established law. This is not, we stress, a simple "mistake of law" defense. Neither CMS nor AFSCME made any mistake about the state of the law during the years between 1982 and June 27, 2018, when *Janus II* was handed down. *Abood* was the operative decision from the Supreme Court from 1977 onward, until the Court exercised its exclusive prerogative to overrule that case. Like its counterparts around the country, the State of Illinois relied on *Abood* when it adopted a labor relations scheme providing for exclusive representation of public-sector workers and the remit of fair-share fees to the recognized union. The union then relied on that state law in its interactions with other actors.

We realize that there were signals from some Justices during the years leading up to *Janus II* that indicated they were willing to reconsider *Abood*, but that is hardly unique to this area. Sometimes such reconsideration happens, and

sometimes, despite the most confident predictions, it does not. See, *e.g.*, *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (reaffirming the *Miranda* rule); see also *Agostini*, 521 U.S. at 237, 117 S.Ct. 1997 ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent." (cleaned up)). The Rule of Law requires that parties abide by, and be able to rely on, what the law *is*, rather than what the readers of tea-leaves predict that it might be in the future.

Notably, Mr. Janus does not allege that CMS and AFSCME, acting pursuant to state law, failed to comply with *Abood*. Mr. Janus says only that AFSCME did not act in good faith because it "spurned efforts to have agency fees placed in escrow while their constitutionality was determined." But AFSCME was under no legal obligation to escrow the fair-share fees for an indefinite period while the case was being litigated. Such an action, as AFSCME says, would (in the absence of a court order requiring security of some kind) "have been hard to square with the fiduciary duty the Union owes to its own members," as the unit's exclusive representative.

Until *Janus II* said otherwise, AFSCME had a legal right to receive and spend fair-share fees collected from nonmembers as long as it complied with state law and the *Abood* line of cases. It did not demonstrate bad faith when it followed these rules.

### D. Entitlement to Money Damages

 **[12]** No one doubts that Mr. Janus is entitled to declaratory and injunctive relief. The Supreme Court declared that the *status quo* violated his First Amendment rights and that "States and public-sector unions may no longer extract agency fees from nonconsenting employees." 138 S. Ct. at 2486. Mr. Janus is now protected from that practice. Any remaining relief was for the district court to consider. That court declined to grant monetary damages, on **\*367** the ground that AFSCME's good-faith defense shielded the union from such liability. We agree with that conclusion.

While this may not be all that Mr. Janus hoped for in this litigation, it is not unusual for remedies to be curtailed in light of broader legal doctrines. Moreover, though Mr. Janus contends that he did not want any of the benefits of AFSCME's collective bargaining and other representative

activities over the years, he received them. Putting the First Amendment issues that concerned the Supreme Court in *Janus II* to one side, there was no unjust "windfall" to the union, as Mr. Janus alleges, but rather an exchange of money for services. Our decision in *Gilpin v. AFSCME, 875 F.2d 1310 (7th Cir. 1989)* is on point:

> [T]he union negotiated on behalf of these employees as it was required by law to do, adjusted grievances for them as it was required by law to do, and incurred expenses in doing these things .... The plaintiffs do not propose to give back the benefits that the union's efforts bestowed on them. These benefits were rendered with a reasonable expectation of compensation founded on the collective bargaining agreement and federal labor law, and the conferral of the benefits on the plaintiffs would therefore give rise under conventional principles of restitution to a valid claim by the union for restitution if the union were forced to turn over the escrow account to the plaintiffs and others similarly situated to them.

**\*\*12** *Id.* at 1316.

We have followed similar principles in the ERISA context. "If restitution would be inequitable, as where the payor obtained a benefit that he intends to retain from the payment that he made and now seeks to take back, it is refused." *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 651 (7th Cir. 2001); see also *Constr. Indus. Ret. Fund of Rockford, Ill. v. Kasper Trucking, Inc.*, 10 F.3d 465, 467 (7th Cir. 1993) ("The welfare fund pooled the money to provide benefits for all persons on whose behalf contributions were made. Because the drivers received the health coverage for which they paid through the deductions Kasper sent to the fund, no one is entitled to restitution."); *UIU Severance Pay Tr. Fund v. Local Union No. 18-U, United Steelworkers of Am.*, 998 F.2d 509, 513 (7th Cir. 1993) ("[B]ecause the cause of action we are authorizing is equitable in nature, recovery will not follow automatically upon a showing that the Union contributed more than was

required but only if the equities favor it." (internal quotation marks omitted)). We conclude that Mr. Janus has received all that he is entitled to: declaratory and injunctive relief, and a future free of any association with a public union.

## IV

Before closing, we emphasize again that the good-faith defense to *section 1983* liability is narrow. It is not true, as Mr. Janus charges, that this defense will be available to "every defendant that deprives any person of any constitutional right." We predict that only rarely will a party successfully claim to have relied substantially and in good faith on both a state statute *and* unambiguous Supreme Court precedent validating that statute. But for those rare occasions, following the lead first of the Supreme Court in *Wyatt I* and second of our sister circuits, we recognize a good-faith defense for private parties who act under color of state law for purposes of *section 1983*.

We AFFIRM the judgment of the district court.

*Manion*, Circuit Judge, concurring.

**\*368** The court's opinion in this challenging case is thorough, and I concur with the court's ultimate conclusion. I have a couple additional thoughts. Some might observe that *Abood* had some benefit to the objectors because they no longer had to pay service fees equal to union dues as a condition of employment. But for 41 years, the nonunion employees had to pay their "fair share."

The unions received a huge windfall for 41 years. As the Supreme Court acknowledged in *Janus II*, *Abood* was wrong, so the unions got what the Court called a "considerable windfall." The Court in *Janus II* sums it up pretty well:

> We recognize that the loss of payments from nonmembers may cause unions to experience unpleasant transition costs in the short term, and may require unions to make adjustments in order to attract and retain members. But we must weigh these disadvantages against the considerable windfall that unions have received under *Abood* for the past 41 years. It is

Case 2:18-cv-03439-NGG-RLM Document 63 Filed 12/17/19 Page 16 of 100 PageID #: 1058

Janus v. American Federation of State, County and Municipal..., 942 F.3d 352 (2019)
2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

hard to estimate how many billions of dollars have been taken from nonmembers and transferred to public-sector unions in violation of the First Amendment. Those unconstitutional exactions cannot be allowed to continue indefinitely.

**13 *Janus v. AFSCME, Council 31*, ⸺ U.S. ⸺, 138 S. Ct. 2448, 2485–86, 201 L.Ed.2d 924 (2018).

Even though the Supreme Court reached the wrong result in *Abood* 41 years before *Janus II*, the unions justify their

acceptance of many millions of dollars because they accepted the money in "good faith." Probably a better way of looking at it would be to say rather than good faith, they had very "good luck" in receiving this windfall for so many years. Since the court is not holding that the unions must repay a portion of the windfall, they can remind themselves of their good luck for the years ahead.

**All Citations**

942 F.3d 352, 2019 WL 5704367, 2019 L.R.R.M. (BNA) 424,312

**Footnotes**

1     See *Hamidi v. SEIU Local 1000*, 2019 WL 5536324 (E.D. Cal. Oct. 25, 2019); *LaSpina v. SEIU Pennsylvania State Council*, 2019 WL 4750423 (M.D. Pa. Sept. 30, 2019); *Casanova v. International Ass'n of Machinists, Local 701*, No. 1:19-cv-00428, Dkt. #22 (N.D. Ill. Sept. 11, 2019); *Allen v. Santa Clara Cty. Correctional Peace Officers Ass'n*, 400 F.Supp.3d 998, 2019 WL 4302744 (E.D. Cal. Sept. 11, 2019); *Ogle v. Ohio Civil Serv. Emp. Ass'n*, 397 F.Supp.3d 1076 (S.D. Ohio 2019), appeal pending, No. 19-3701 (6th Cir.); *Diamond v. Pennsylvania State Educ. Ass'n*, 399 F.Supp.3d 361, 2019 WL 2929875 (W.D. Pa. July 8, 2019), appeal pending, No. 19-2812 (3d Cir.); *Hernandez v. AFSCME California*, 386 F. Supp. 3d 1300 (E.D. Cal. 2019); *Doughty v. State Employee's Ass'n*, No. 1:19-cv-00053-PB (D.N.H. May 30, 2019), appeal pending, No. 19-1636 (1st Cir.); *Babb v. California Teachers Ass'n*, 378 F. Supp. 3d 857 (C.D. Cal. 2019); *Wholean v. CSEA SEIU Local 2001*, 2019 WL 1873021 (D. Conn. Apr. 26, 2019), appeal pending, No. 19-1563 (2d Cir.); *Akers v. Maryland Educ. Ass'n*, 376 F. Supp. 3d 563 (D. Md. 2019), appeal pending, No. 19-1524 (4th Cir.); *Bermudez v. SEIU Local 521*, 2019 WL 1615414 (N.D. Cal. Apr. 16, 2019); *Lee v. Ohio Educ. Ass'n*, 366 F. Supp. 3d 980 (N.D. Ohio 2019), appeal pending, No. 19-3250 (6th Cir.); *Hough v. SEIU Local 521*, 2019 WL 1274528 (N.D. Cal. Mar. 20, 2019), amended, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019), appeal pending, No. 19-15792 (9th Cir.); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996 (D. Alaska 2019), appeal pending, No. 19-35299 (9th Cir.); *Carey v. Inslee*, 364 F. Supp. 3d 1220 (W.D. Wash. 2019), appeal pending, No. 19-35290 (9th Cir.); *Cook v. Brown*, 364 F. Supp. 3d 1184 (D. Or. 2019); *Danielson v. AFSCME, Council 28*, 340 F. Supp. 3d 1083 (W.D. Wash. 2018), appeal pending, No. 18-36087 (9th Cir.). See also *Winner v. Rauner*, 2016 WL 7374258 (N.D. Ill. Dec. 20, 2016) (post-*Harris* claim for fee reimbursement); *Hoffman v. Inslee*, 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016) (same). But see *Lamberty v. Connecticut State Police Union*, 2018 WL 5115559 (D. Conn. Oct. 19, 2018) (dismissing for lack of standing but implying plaintiffs were entitled to previously withheld fees, plus interest).

---

**End of Document**              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "B"

942 F.3d 368
United States Court of Appeals, Seventh Circuit.

Stacey MOONEY, Plaintiff-Appellant,

v.

ILLINOIS EDUCATION ASSOCIATION,
et al., Defendants-Appellees.

No. 19-1774
|
Argued September 20, 2019
|
Decided November 5, 2019

**Synopsis**
**Background:** Non-union teacher filed putative class action under § 1983 to recover fair-share fees paid to union. The United States District Court for the Central District of Illinois, No. 1:18-cv-1439-JBM, Joe Billy McDade, J., 372 F.Supp.3d 690, dismissed complaint, and teacher appealed.

**[Holding:]** The Court of Appeals, Wood, Chief Judge, held that teacher's claim was subject to good-faith defense.

Affirmed.

Manion, Senior Circuit Judge, concurred and filed opinion.

West Headnotes (3)

**[1]** **Civil Rights**
👉 Privilege or Immunity; Good Faith and Probable Cause

Non-union teacher's demand under § 1983 to recover fair-share fees paid to union was legal, rather than equitable, in nature, and thus was subject to good-faith defense, even though teacher characterized her demand as one for restitution, where teacher's claim was against union's treasury generally, not against identifiable fund or asset. 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

**[2]** **Civil Rights**
👉 Judgment and relief in general

District court has discretion under § 1983 to tailor appropriate remedy for constitutional violation. 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

**[3]** **Implied and Constructive Contracts**
👉 Restitution

**Liens**
👉 Equitable liens

**Trusts**
👉 Equity jurisdiction in general

**Trusts**
👉 Remedy at law

Where plaintiff seeks recovery from beneficiaries' assets generally because her specific property has dissipated or is otherwise no longer traceable, as precludes seeking restitution in equity involving enforcement of a constructive trust or an equitable lien, the plaintiff's claim is legal remedy, not equitable one.

1 Cases that cite this headnote

**\*369** Appeal from the United States District Court for the Central District of Illinois. No. 1:18-cv-1439-JBM—**Joe Billy McDade**, *Judge.*

**Attorneys and Law Firms**

Jonathan F. Mitchell, Attorney, Mitchell Law PLLC, Austin, TX, for Plaintiff-Appellant.

John M. West, Attorney, Bredhoff & Kaiser, PLLC, Washington, DC, for Defendants-Appellees.

Before Wood, Chief Judge, and Manion and Rovner, Circuit Judges.

**Opinion**

Wood, Chief Judge.

Case 2:18-cv-03439-NGG-RLM   Document 63   Filed 12/17/19   Page 19 of 100 PageID #: 1061
*Mooney v. Illinois Education Association*, 942 F.3d 368 (2019)

371 Ed. Law Rep. 39, 2019 IER Cases 424,391

Stacey Mooney is a public-school teacher in Eureka (Illinois) Community School District #140. She is not a member of respondent Illinois Education Association ("IEA"), the union that serves as the exclusive representative of her employee unit in collective bargaining with the school district. From the time she started as a public employee until June 2018, the District deducted from her paycheck and sent to the union a fair-share fee that contributed to the costs incurred by the union in its labor-management activities. Both the Illinois Public Relations Act, 5 ILCS § 315/6, and existing Supreme Court precedent, *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), authorized this fee arrangement.

That state of affairs came to an end when, in *Janus v. AFSCME, Council 31*, ––– U.S. ––––, 138 S. Ct. 2448, 201 L.Ed.2d 924 (2018), the Supreme Court overruled *Abood* and announced that compulsory fair-share fee arrangements violate the First Amendment rights of persons who would prefer not to associate with the union that represents their employee unit. 138 S. Ct. at 2460. Following *Janus*, state employers in Illinois immediately ceased deducting fair-share fees from the paychecks of nonmembers of public sector unions.

Mooney filed suit in the Central District of Illinois on behalf of herself and a putative class of similarly situated persons, seeking restitution pursuant to 42 U.S.C. § 1983 for the fees that had been deducted from her pay prior to *Janus*. The district court entered judgment for IEA on April 23, 2019, dismissing Mooney's claims with prejudice. In so doing, it joined the consensus across the country concluding that unions that collected fair-share fees prior to *Janus*, in accordance with state law and *Abood*, are entitled to assert a good-faith defense to section 1983 liability.

We heard oral argument on Mooney's case on September 20, 2019, in conjunction with *Janus v. AFSCME*, No. 19-1553, 942 F.3d 352, 2019 WL 5704367 (7th Cir. 2019). We now affirm the judgment of the district court, largely for the reasons set forth in **\*370** our opinion of today's date in *Janus v. AFSCME*, No. 19-1553.

**[1]** We write briefly here to address one difference between the claim brought by Mooney and that brought by Mark Janus. On remand from the Supreme Court, Mr. Janus sought damages pursuant to 42 U.S.C. § 1983 in the amount of the fair-share fees he had paid prior to *Janus*. Mooney, in contrast, insists that she is *not* seeking damages, but instead that she

is entitled to the equitable remedy of restitution under the same statute. From the point of view of the union, the two requests are identical: each one seeks a refund of the fees that the plaintiff paid under the *ancien régime*. Mooney, however, believes that there is something special about restitution that is outcome-determinative. Perhaps that is true in some situations, but as we now explain, in substance Mooney is also seeking damages, and so her claim must fail.

**[2]** Section 1983 allows for remedies either at law or in equity. 42 U.S.C. § 1983 ("... [covered persons] shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."). The district court has discretion to tailor an appropriate remedy for the constitutional violation. See *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ("[I]t is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."); *Lieberman v. Univ. of Chicago*, 660 F.2d 1185, 1193 (7th Cir. 1981) ("[F]ederal courts have the role of providing broad and flexible remedies for violations of federal statutory and constitutional rights.").

Mooney would like us to regard her requested relief as restitutionary in nature. She believes that even if she concedes that a good-faith defense protects the union against a damages award, an equitable demand for restitution cannot be defeated on good-faith grounds. She argues that there is nothing unfair about requiring the union to return monies that, according to *Janus*, should never have been deducted from her paychecks in the first place. In fact, she concludes, the union would receive a windfall based on its violations of her constitutional rights if no restitution were ordered.

IEA responds that Mooney is simply playing with labels, and that calling her claim equitable, or one for restitution, does not make it so. In substance, IEA says, Mooney's suit is exactly the same as Mr. Janus's: one for damages flowing from a First Amendment violation. The gravamen of Mooney's complaint is that her First Amendment rights were violated by the fair-share requirement because she was compelled to furnish financial support to union activities with which she disagreed.

As have all other district courts that have faced this question, the court here agreed with IEA's position. It concluded that "Plaintiff's claim lies in law rather than equity, and there is consequently no reason to consider whether the good-faith defense applies where the claim is for equitable

restitution." See also, *e.g.*, *Carey v. Inslee*, 364 F. Supp. 3d 1220 (W.D. Wash. 2019), appeal pending, No. 19-35290 (9th Cir.); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996 (D. Alaska 2019), appeal pending, No. 19-35299 (9th Cir.); *Babb v. California Teachers Ass'n*, 378 F. Supp. 3d 857 (C.D. Cal. 2019); *Allen v. Santa Clara Cnty. Correctional Peace Officers Ass'n*, 2019 WL 4302744 (E.D. Cal. Sept. 11, 2019).

The characterization of Mooney's claim presents a legal question on which our consideration is *de novo*. That said, we **\*371** agree with the district court's analysis, which finds ample support in the law. Indeed, many years ago we held that a claim for a refund of an agency-fee overcharge under the *Abood* regime was a legal rather than an equitable claim. *Gilpin v. Am. Fed'n of State, Cnty., & Mun. Employees, AFL-CIO*, 875 F.2d 1310, 1314 (7th Cir. 1989) (citing Dobbs, Handbook on the Law of Remedies 224 (1973) ("The damages recovery is to compensate the plaintiff, and it pays him, theoretically, for his losses. The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep.")). But see *Laramie v. Cnty. of Santa Clara*, 784 F. Supp. 1492, 1501–02 (N.D. Cal. 1992) (labeling a refund of non-chargeable fees under the *Abood* regime as restitution).

 **[3]** Furthermore, as the Supreme Court explained in *Montanile v. Bd. of Trustees of Nat. Elevator Indust. Health Benefit Plan*, —— U.S. ——, 136 S. Ct. 651, 193 L.Ed.2d 556 (2016), "restitution in equity typically involved enforcement of a 'constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.' " *Id.* at 657 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 217, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002)). Where a plaintiff seeks "recovery from the beneficiaries' assets generally" because

her specific property has dissipated or is otherwise no longer traceable, the claim "is a *legal* remedy, not an equitable one." *Id.* at 658 (emphasis in original) (internal quotation marks omitted).

Mooney is bringing just such a claim—that is, one against the union's treasury generally, not one against an identifiable fund or asset. She attempts to escape this conclusion with the argument that the entire treasury is an identifiable fund against which she can pursue an equitable lien, but that proves too much. Every defendant will always have a "fund" consisting of all of its assets, but that is not what the Supreme Court was talking about in *Great-West Life* and *Montanile*. It is not enough that Mooney's fees once contributed to IEA's overall assets. According to *Montanile*, she must point to an identifiable fund and show that her fees specifically are still in the union's possession. 136 S. Ct. at 657–59. This she has not done. Her claim is against the general assets of the union, held in its treasury, and can only be characterized as legal.

In substance, then, Mooney's claim is one for damages. For the reasons we set forth in more detail in *Janus v. AFSCME*, No. 19-1553, decided today, we AFFIRM the district court's judgment.

*Manion*, Circuit Judge, concurring.

I concur with the court's ultimate conclusion. I write separately here for the same reason I write separately in *Janus v. AFSCME, Council 31*, No. 19-1553, also decided today. *Janus II* recognized *Abood* gave unions a windfall for 41 years. But *Janus II* also implied unions need not disgorge this windfall.

**All Citations**

942 F.3d 368, 371 Ed. Law Rep. 39, 2019 IER Cases 424,391

---

# EXHIBIT "C"

2019 WL 6715741
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Janine WENZIG and Catherine Kioussis, Plaintiffs,

v.

SERVICE EMPLOYEES INTERNATIONAL
UNION LOCAL 668, Defendant

CIVIL ACTION NO. 1:19-1367
|
Signed 12/10/2019

**Attorneys and Law Firms**

Brian K. Kelsey, Pro Hac Vice, Reilly Stephens, Pro Hac
Vice, Jeffrey M. Schwab, Liberty Justice Center, Chicago, IL,
Charles O. Beckley, II, Beckley & Madden, Harrisburg, PA,
William L. Messenger, Pro Hac Vice, National Right to Work
Foundation, Springfield, VA, for Plaintiff.

Lauren M. Hoye, Willig, Williams & Davidson, Philadelphia,
PA, Scott A. Kronland, P. Casey Pitts, Altshuler Berzon LLP,
San Francisco, CA, for Defendant.

**MEMORANDUM**

MALACHY E. MANNION, United States District Judge

**\*1** Pending before the court is the motion to dismiss the first
amended complaint ("FAC"), (Doc. 19), of plaintiffs Janine
Wenzig and Catherine Kioussis filed by defendant Service
Employees International Union Local 668 ("SEIU"), (Doc.
25). Defendant's motion seeks dismissal of this case for failure
to state a claim upon which relief may be granted pursuant
to Fed.R.Civ.P. 12(b)(6). SEIU contends that plaintiffs' First
Amendment claims against it, in this putative class action, for
retrospective monetary relief under 42 U.S.C. § 1983 should
be dismissed since it relied in good faith on the formerly valid
Pennsylvania law and longstanding United States Supreme
Court precedent that allowed it to collect fair-share fees
from public-sector employees who were not members of the
union. For the reasons that follow, SEIU's motion to dismiss
under Rule 12(b)(6) will be **GRANTED** and, plaintiffs'
federal claims against SEIU will be **DISMISSED WITH
PREJUDICE**.

**I. BACKGROUND**

Plaintiffs bring this civil rights action pursuant to 42 U.S.C.
§ 1983.[1] Plaintiffs are both employed by the Commonwealth
of Pennsylvania. Wenzig is employed by the Department of
Human Services as a Licensing Supervisor and Kioussis is
an Income Maintenance Supervisor. SEIU is a labor union
with its headquarters in Harrisburg, Pennsylvania, and it is
the exclusive representative for several bargaining units in
the state, including plaintiffs' bargaining unit. As members of
the bargaining unit represented by SEIU, plaintiffs received
the benefits of the Collective Bargaining Agreement ("CBA")
between SEIU and Pennsylvania. However, even though
plaintiffs were not members of SEIU, they allege that the
union was legally allowed to collect fair share fees from
them under Pennsylvania's Public Employee Fair Share Fee
Law, "43 Pa.Stat.Ann. § 1102.3", since it represented them
in collective bargaining.[2] Under state law, SEIU negotiated
with the state for the collection of fair share fees from
nonmembers, including plaintiffs.

**\*2** In particular, Article 3, Section 3 of the CBA, which was
effective from July 1, 2016 through June 30, 2019, provided:

> The Employer further agrees to
> deduct a fair share fee from all
> compensation paid to all employees
> in the bargaining unit who are not
> members of the Union. Authorization
> from non-members to deduct fair share
> fees shall not be required. The amounts
> to be deducted shall be certified to
> the Employer by the Union and the
> aggregate deductions of all employees
> shall be remitted together with an
> itemized statement to the Union by the
> last day of the succeeding month after
> such deductions are made.

Thus, under the CBA, prior to June 27, 2018, all employees
in the collective bargaining units who were represented by
SEIU and who were not union members, such as plaintiffs,
were forced to pay "fair-share fees" to SEIU as a condition
of their public employment. Plaintiffs further allege that
before June 27, 2018, government employers covered by
the CBA "deducted fair share fees from Plaintiffs' and other
nonmembers' wages without their consent and,..., transferred
those funds to SEIU, which collected those funds." Plaintiffs

also allege that "[a]s of 2018, agency fees were assessed by SEIU at 0.85% of an employee's gross income; union member paid dues of 1.39% of gross income."

As such, plaintiffs aver that "SEIU should have known that its seizure of fair share fees from non-consenting employees likely violated the First Amendment."

Plaintiffs also seek to bring this case as a class action under Fed.R.Civ.P. 23(b)(3) for themselves and for all others similarly situated. They define the proposed class as "all current and former employees from whom SEIU collected fair share fees pursuant to its collective bargaining agreement with the Commonwealth of Pennsylvania."

Plaintiffs raise one claim in their FAC, namely, a First Amendment claim. Specifically, plaintiffs allege that "SEIU violated [their] and class members' First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, by requiring the payment of fair share fees as a condition of employment and by collecting such fees."

As relief, plaintiffs request declaratory judgment, pursuant to 28 U.S.C. § 2201(a), "declaring that SEIU violated Plaintiffs' and class members' constitutional rights by compelling them to pay fair share fees as a condition of their employment and by collecting fair-share fees from them without consent." Additionally, plaintiffs seek monetary damages "in the full amount of fair share fees and assessments seized from their wages", as well as costs and attorneys' fees under 42 U.S.C. § 1988.

Plaintiffs are proceeding on her FAC filed on October 28, 2019. (Doc. 19). On November 5, 2019, SEIU filed its motion to dismiss plaintiffs' FAC, (Doc. 25), and its brief in support, (Doc. 26). On November 19, 2019, plaintiffs filed their brief in opposition. (Doc. 31). SEIU filed its reply brief on December 3, 2019. (Doc. 32).

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a) because plaintiffs aver a violation of their rights under the U.S. Constitution. Venue is appropriate in this court since the parties are located in this district and the alleged constitutional violations occurred in this district. *See* 28 U.S.C. § 1391.

## II. DISCUSSION

**\*3** Plaintiffs instituted this case after the Supreme Court decided Janus. [3] Plaintiffs are state employees who, before Janus, were required to pay fair-share fees to SEIU for collective bargaining representation. [4] Specifically, the CBA contained a fair share fee provision which required plaintiffs to pay fair-fair share fees to SEIU. However, after the Janus decision SEIU stopped receiving fair-share fees from non-members, including plaintiffs. In this action, plaintiffs seek SEIU to repay themselves, as well as a putative class of all non-union state employees, all the fair-share fees that the union received prior to Janus.

As a backdrop, prior to Janus, unions representing government employees could use "agency shop" clauses in collective bargaining agreements "which required every employee represented by a union, even those who declined to become union members for political or religious reasons, to pay union dues." Diamond, 399 F.Supp.3d at 370-71. In Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), the Supreme Court "held that the charges were constitutional to the extent they were used to finance the union's collective-bargaining, contract-administration, and grievance activities." Id. at 370. "[T]he Court [in Abood] also concluded that the agency-shop clause and fees were unconstitutional insofar as the clause compelled non-member teachers to pay fees to the union that supported the union's political activities." Id.

In accordance with Abood, Pennsylvania enacted its own agency-shop statute for public employees in 1988, 71 Pa. Stat. § 575. According to Section 575, if mandated by the provisions of a collective-bargaining agreement, non-members of public-employee unions must pay fair-share fees to the unions. Id. § 575(b). These fees consist of the regular union-membership dues less "the cost for the previous fiscal year of [the unions'] activities or undertakings which were not reasonably employed to implement or effectuate the duties of the employee organization as exclusive representative." Id. § 575(a).

Id. at 371.

Thus, prior to Janus, Pennsylvania law expressly allowed a labor union which was the representative of a bargaining unit of public employees to collect fair share fees from the employees who were members of the bargaining unit but who did not join the union, as a condition of their employment. *See* 71 P.S.A. § 575; 43 P.S.A. § 1102.3. Further, based on Abood, "the general propriety of the fair-share fees permitted

under Section 575 withstood constitutional scrutiny for many years." Diamond, 399 F.Supp.3d at 370. Id. (string citations omitted).

In Janus, the Supreme Court overruled Abood, and held that "a state law requiring non-union-member public employees to pay fees to the union to compensate the union for costs incurred in the collective-bargaining process" was unconstitutional. Id. at 372. Thus, the Court in Janus, 138 S. Ct. at 2486, held that "States and public-sector unions may no longer extract agency fees from nonconsenting employees." Id. Further, the Court held that "[n]either an agency fee nor any other payment to the union may be deducted from a non[-]member's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." Id. See also Babb v. California Teachers Association, 378 F.Supp.3d 857, 867 (C.D.Ca. 2019) (In Janus, the Supreme Court "overruled Abood [ ] and its progeny, holding that no form of payment to a union, including agency fees, can be deducted or attempted to be collected from an employee without the employee's affirmative consent.") (citing Janus, 138 S.Ct. at 2486).

**\*4** Additionally, the Supreme Court in Janus, 138 S.Ct. at 2459, 2486, held that it was a violation of the First Amendment for public sector unions to require non-members to pay fair share fees as a condition of public employment. Following Janus, Pennsylvania's statute allowing the collection of "fair share" fees from non-members by unions is no longer enforceable. See Hartnett v. Pennsylvania State Education Association, 390 F.Supp.3d 592, 600 (M.D.Pa. 2019). In Diamond, 399 F.Supp.3d at 385, the court held that the issue of "whether Union Defendants could constitutionally collect fair-share fees from Plaintiffs pursuant to Section 575" "was mooted by the intervening Janus decision, which held that fair-share fees are unconstitutional."

Plaintiffs essentially argue that they suffered injury from the pre-Janus agency-shop arrangements because they were forced to pay SEIU fair-share fees as a condition of their employment with the state even though they declined union membership. They basically contend that their constitutional right to withhold money from the union was violated and that this inflicted an injury upon them that can be redressed under § 1983 by an award of money damages for the violation of their First Amendment rights to free speech and association by forcing them to pay SEIU fair-share fees as a condition of their employment.

Plaintiffs strenuously assert that the good faith defense should not apply to their claim for damages under § 1983 since they contend it is contrary to the statute and is incompatible with the statutory basis for qualified immunity.

SEIU contends that it is entitled to assert a good faith defense to plaintiffs' § 1983 claim seeking retrospective monetary relief for their payments of the fair-share fees based on "Pennsylvania statute and then-controlling and directly on-point United States Supreme Court precedent that expressly authorized fair-share fees." [5] There is no dispute that before Janus the collection of fair-share fees by SEIU was permitted by Pennsylvania law as well as by the Supreme Court which repeatedly held that fair-share fees were constitutional and that public employees who were non-union members could be compelled to pay such fees that financed the union's collective bargaining activities. Abood, 431 U.S. at 225, 97 S.Ct. 1782. Thus, requiring non-union member public employees to pay fair-share fees as a condition of their public employment was undoubtedly deemed constitutional in Abood, 431 U.S. at 232, 97 S.Ct. 1782. As such, SEIU contends that since it acted "in good-faith reliance on presumptively valid state laws [in collecting pre-Janus fair-share fees], [it] ha[s] a complete defense to § 1983 liability" and cannot be held retrospectively liable to plaintiffs in this case.

**\*5** SEIU points out that "[n]ineteen district courts, including this Court, and the Seventh Circuit have already rejected the same § 1983 claim Plaintiffs bring here" based on the good-faith defense. [6] Despite plaintiffs' arguments in their brief in opposition as to why the good faith defense should not bar their suit for damages under § 1983, the court finds the many cases to which SEIU cites persuasive and concurs with their conclusion that the good faith defense shields the union from liability with respect to plaintiffs' post-Janus claims for damages under § 1983.

In fact, this court noted in LaSpina, 2019 WL 4750423, at *6 n.7 [7] :

[A]lthough "statutory and contractual provisions authorizing fair-share requirements are no longer enforceable after Janus", see Diamond, [399 F.Supp.3d at 384] 2019 WL 2929875, at *14, the good-faith defense would apply to relieve SPL and [SEIU] from liability under § 1983 since they reasonably relied on the constitutionality of Pennsylvania's fair-share fee law, § 575, and the Supreme Court's decision in Abood which permitted such

fees. *See id.* at [396-402] *25-29 (citing, in part, Akers, 376 F.Supp.3d at 571-72 ("explaining that the plaintiffs could assert a good-faith defense because they complied with and relied on presumptively-valid state law and controlling Supreme Court precedent"; Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1006 (D. Alaska) ("discussing the inequity of holding the union defendants liable for pre-Janus fair-share fees when they collected the fees in accordance with state law and then-binding Supreme Court precedent"); Akers v. Maryland State Educ. Assoc., 376 F.Supp.3d 563 (D.Md. 2019).

As this court noted in LaSpina, and based on the numerous cases cited herein, the court finds that SEIU can raise the good-faith defense with respect to plaintiffs' First Amendment claim under § 1983 for the repayment of the fair-share fees that they paid the union. As SEIU states, "Plaintiffs' § 1983 claim seeks a retrospective refund of fair-share fees collected before Janus issued, at a time when Pennsylvania statutes and controlling U.S. Supreme Court precedent expressly allowed the collection of such fees." (Doc. 26 at 14-15) (citing Otto v. Pennsylvania State Educ. Association-NEA, 330 F.3d 125 (3d Cir. 2003) ("upholding statutory fair-share fee system and collective bargaining agreement incorporating fair share fee requirement")).

In Wyatt v. Cole, 504 U.S. 158, 159, 168, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), "[t]he Court determined that private individuals threatened with liability under § 1983 cannot take advantage of the qualified immunity that protects government officials", but "explained that 'principles of equality and fairness may suggest ...that private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid should have some protection from liability [under § 1983], as do their government counterparts.' " Diamond, 399 F.Supp.3d at 395. Subsequently, "the Third Circuit adopted the good-faith defense for private parties [facing § 1983 liability] in Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3d Cir. 1994)." *Id.* at 396. In Jordan, 20 F.3d at 1276, the Third Circuit held that "[p]rivate defendants should not be held liable under § 1983 absent a showing of malice and evidence that they either knew or should have known of the statute's constitutional infirmity." *Id.* (citation omitted). Thus, despite plaintiffs' contentions, the court finds that SEIU can assert a good-faith defense in this case in which plaintiffs seek to impose liability against it for violations of their First Amendment rights under § 1983.

*6 After examining the good-faith defense in detail, the court in Diamond then concluded that "it was objectively reasonable for Union Defendants to rely on Section 575 and Abood [when collecting fair-share fees from Plaintiffs] before the Supreme Court's decision in Janus", *id.* at 398, and, thus found that "the good-faith defense applies to Plaintiffs' claims [under § 1983] for repayment of previously paid fair-share fees as a matter of law." *Id.* at 398-99. [8]

More recently, in Oliver v. Service Employees International Union Local 668, —— F.Supp.3d ——, 2019 WL 5964778 (E.D.Pa. Nov. 12, 2019), the court considered a case similar to the present case. In Oliver, plaintiff was an employee of the Pennsylvania Department of Human Services working as an Income Maintenance Caseworker and she was represented in collective bargaining by SEIU Local 668. When plaintiff's was hired, there existed a CBA between Local 668 and the Commonwealth. Plaintiff was told that she could "either enroll in Local 668 as a member and have full membership dues deducted regularly from her pay, or decline membership and contribute a reduced amount in the form of agency fees." *Id.* at ——, 2019 WL 5964778 at *2. Given this choice, plaintiff joined as a member in Local 668 and dues were deducted from her pay. After Janus, plaintiff Oliver resigned from Local 668 and requested that deductions from her pay for union dues cease. The deductions were then stopped. Plaintiff then filed an action for damages against SEIU under § 1983 for the dues she paid to SEIU from the beginning of her employment through her resignation. Plaintiff also sought "a declaratory judgment that certain provisions of Pennsylvania's Public Employee Relations Act (PERA) are unconstitutional as applied to her." *Id.* at ——, 2019 WL 5964778 at *1.

*7 The court in Oliver, *id.* at ——, 2019 WL 5964778 at *4, found that "Local 668 is not a 'state actor' for the purposes of § 1983", and that "[e]ven if there were sufficient state action to permit a § 1983 suit against the Union to proceed, Local 668 would nonetheless prevail based upon its good-faith belief that it was complying with statutory and constitutional law prior to Janus." *Id.* at ——, 2019 WL 5964778 at *7. The court indicated that "[n]umerous federal courts have held that good-faith reliance on prior precedent defeats refund claims brought in the aftermath of Janus." *Id.* [9]

The court in Oliver, *id.* at ——, 2019 WL 5964778 at *7, then explained that "[t]he Third Circuit,..., has found that 'private defendants should not be held liable under § 1983 absent a showing of malice and evidence that they either

knew or should have known of the statute's constitutional infirmity.' " (citing Jordan, 20 F.3d at 1274 n. 29). Thus, the court in Oliver, *id.*, concluded that since "Plaintiff would need to prove that [SEIU] had a 'subjective' understanding that it was violating her rights or displayed 'gross negligence' in maintaining a belief that its conduct was lawful", "Plaintiff will not be able to do so" because "[t]he CBA's agency shop provisions were lawful under PERA, and..., were sanctioned by the Supreme Court in Abood." (internal citations omitted). The court also noted that since the CBA's agency shop provisions "had been considered and upheld by the Supreme Court multiple times after Abood, including most recently in Harris v. Quinn, 573 U.S. 616, 134 S.Ct. 2618, 189 L.Ed.2d 620 (2014)", and since "Janus was decided by a five-to-four majority, with a powerful dissent grounded in the doctrine of *stare decisis*", "it would be unreasonable to hold that [SEIU] should have known of the constitutional infirmity of agency shop provisions."

In the instant case, although plaintiffs allege in their FAC that "SEIU should have known that its seizure of fair share fees from non-consenting employees likely violated the First Amendment", (Doc. 19 at ¶13), pre-Janus, the law was clear that "[t]he CBA's agency shop provisions were lawful under PERA", and were authorized by Abood. Oliver, *id.* at ——, 2019 WL 5964778 at *7. As such, under the Third Circuit's standard, plaintiffs cannot defeat SEIU's good faith defense in this case.

**\*8**  In fact, plaintiffs recognize that very recently the Seventh Circuit in Janus v. AFSCME, 942 F.3d 352 (7th Cir. 2019) ("Janus III"), issued the first appellate opinion on point with their case, i.e., to decide "whether a union may raise [the good faith defense] against its liability for the fair-share fees it collected before Janus [ ]." In Janus III, plaintiff was an Illinois State employee who was not a member of the union and he filed a § 1983 action, after the Supreme Court decided his previous case in Janus, against the union seeking to recover the fair-share fees he was required to pay to the union. The Seventh Circuit found that the good faith defense precluded the state employee's claim for monetary damages for alleged past violations of his First Amendment rights. The Seventh Circuit stated that "every federal appellate court to have decided the question has held that, while a private party acting under color of state law does not enjoy qualified immunity from suit, it is entitled to raise a good-faith defense to liability under section 1983." Janus III, 942 F.3d at 362 (citations omitted). The Seventh Circuit included the Third Circuit's decision in Jordan, 20 F.3d at 1275-78, as a case that

supported the union's ability to assert a good-faith defense to § 1983 liability.

After the Seventh Circuit "recogniz[ed] that, under appropriate circumstances, a private party that acts under color of law for purposes of section 1983 may defend on the ground that it proceeded in good faith", the court then considered the question of whether the good faith defense was available to the union with respect to plaintiff's First Amendment claim seeking to hold it liable for the fair-share fees the union collected from him before Janus. The Seventh Circuit recognized "a good-faith defense in section 1983 actions when the defendant reasonably relies on established law." Janus III, 942 F.3d at 366. The Court then held that although "the good-faith defense to section 1983 liability is narrow", "[u]ntil [the Supreme Court in Janus] said otherwise, [the union] had a legal right to receive and spend fair-share fees collected from nonmembers as long as it complied with state law and the Abood line of cases." *Id.* The Court also found that "the union did not demonstrate bad faith when it followed these rules." *Id.*

This court finds the Seventh Circuit's decision in Janus III compelling and concurs with it. As such, since SEIU "relied substantially and in good faith on both a [PA] state statute *and* unambiguous Supreme Court precedent [Abood] validating that statute", *id.* at 367(emphasis original), SEIU can assert the good faith defense to plaintiffs' First Amendment claim seeking to hold it liable under § 1983.

Plaintiffs also argue that the Supreme Court's decision in Janus is retroactive under Harper v. Va. Dep't of Taxation, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), and Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 752, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995), and that the good faith defense is incompatible with the retroactivity principles under Reynoldsville Casket. Plaintiffs further contend that even if SEIU could raise the good faith defense to their claims under § 1983, SEIU knew or should have known, based on Harper, that a later Supreme Court decision holding the collection of agency fees to be unconstitutional would be retroactive and thus, SEIU had no reasonable basis for believing it could keep their money if the Supreme Court held those fees to be unconstitutional.

No doubt that "when the Supreme Court applies a new rule of federal law to the parties before it, other courts must apply that decision retroactively." Diamond 399 F.Supp. 3d at 395 (citing Harper v. Va. Dep't of Taxation, 509 U.S. 86, 90,

97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993)). In *Diamond, id.* at 396, the court found that "*Harper*'s retroactivity rule applies to *Janus*" since "*Janus* overruled 'clear past precedent' (*Abood*), announced a new rule regarding the unconstitutionality of fair-share fees, and applied that rule to the case by reversing the Seventh Circuit's dismissal of the plaintiffs' complaint." (citing *Janus*, 138 S.Ct. at 2460, 2462). The court in *Diamond, id.* at 396, then concluded that since "a court may find 'a previously existing, independent legal basis (having nothing to do with retroactivity) for denying [retroactive] relief'", "there is an independent legal basis in this case for otherwise denying retroactive relief: the good-faith defense available to private parties [i.e., the state teacher's union] who are sued under § 1983." (citing *Jordan*, 20 F.3d at 1276).

**\*9** In the instant case, the court concurs with the rationale and conclusion in *Diamond, id.* at 395-96, and finds that although "*Harper*'s retroactivity rule applies to *Janus*", "the good-faith defense to § 1983 liability for damages provides an independent legal basis" for precluding plaintiffs' claim for retroactive relief from SEIU.

Moreover, in *Janus III*, 942 F.3d at 359, the Seventh Circuit considered the retroactivity argument and pointed out that if *Janus* is not retroactive, "that is the end of the line for [plaintiff], because the union's collection of fair-share fees was expressly permitted by state law and Supreme Court precedent from the time he started his covered work until the Court's decision [in *Janus*]." In *Janus III, id.,* the Seventh Circuit also stated that "the Supreme Court's opinion [in *Janus*] did not address retroactivity in so many words." The Seventh Circuit further noted that in decisions after *Reynoldsville Casket* and *Harper*, the Supreme Court "has stated that the 'general practice is to apply the rule of law we announce in a case to the parties before us...even when we overrule a case.'" *Id.* at 360 (citing *Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). The Seventh Circuit, also recognized that "retroactivity and remedy are distinct questions" and, that "the Supreme Court has acknowledged that the retroactive application of a new rule of law does not 'deprive[ ] respondents of their opportunity to raise...reliance interests entitled to consideration in determining the nature of the remedy that must be provided.'" *Id.* at 362 (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 544, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991)).

In any event, since it is not clear if the Supreme Court's decision in *Janus* is to be applied retroactively, as in *Janus III*, the court finds that the retroactivity issue does not need to be decided in this case. Rather, similar to *Janus III*, the court has addressed the "broader question whether [plaintiffs] [are] entitled to the remedy [they] seek[ ]", and whether the union can assert the good-faith defense to § 1983 liability in this case. *Id.* at 360-61.

Another recent case also supports SEIU's assertion of the good-faith defense to plaintiffs' claims under § 1983. In *Hamidi v. Service Employees International Union Local 1000*, 2019 WL 5536324, \*2 (E.D.Cal. Oct. 25, 2019), the court stated that "[t]he Supreme Court in *Janus* 'itself did not specify whether the plaintiff was entitled to retrospective monetary relief for conduct the Supreme Court had authorized for the previous forty years.'" (citing *Cooley v. California Statewide Law Enf't Ass'n*, 385 F. Supp. 3d 1077, 1081 (E.D.Cal. 2019) (citing *Janus*, 138 S. Ct. at 2486)). However, the court in *Hamidi* noted that "the controlling law in the Ninth Circuit", similar to the controlling law in the Third Circuit, *see Jordan*, 20 F.3d at 1275-78, "recognizes a good faith defense in shielding private defendants from liability in § 1983 actions." *Id.* The court in *Hamidi, id.* at \*3, then concurred with "every district court to consider whether unions that collected agency fees prior to *Janus* have a good-faith defense to § 1983 liability [that] have answered in the affirmative", and stated the standard was, "in the agency fee context, a union's compliance with then-existing law indeed suffices to find good faith." Thus, the court held that since the union's "compliance with what was then the law is sufficient for a finding of good faith", the union could avail itself of the good faith defense to § 1983 liability for fair share fees collected before the Supreme Court's decision in *Janus. Id.* at \*4.

**\*10** In short, this court concurs with the numerous cases which have found that unions, such as SEIU, that collected fair-share fees from nonmembers prior to *Janus,* and pursuant to state law and *Abood*, can assert the good-faith defense to § 1983 liability for the First Amendment claims raised by plaintiffs.

Thus, the court will grant SEIU's motion and dismiss with prejudice plaintiffs' First Amendment claims seeking to hold the union retrospectively liable under § 1983. Based on the foregoing, the court finds futility in allowing plaintiffs leave to file a second amended complaint. *See Janus,* III, *supra; Diamond, supra; Babb,* 378 F.Supp. 3d at 872 ("[E]very

district court to consider whether unions that collected agency fees prior to *Janus* have a good-faith defense to § 1983 liability [has] answered in the affirmative.") (citations omitted).

Plaintiffs next contend that even if SEIU acted in good faith in receiving fair-share fees, it could not have a good faith belief that if *Abood* was overruled, it could keep the fair-share fees that it previously collected. Thus, plaintiffs assert that they have an equitable claim for the return of the fair-share fees SEIU collected from them before *Janus*. SEIU counters that plaintiffs have no equitable claim for the return of the fees they paid prior to *Janus*.

Last month, the Seventh Circuit in *Mooney v. Illinois Education Association*, 942 F.3d 368, 370-71 (7th Cir. 2019), considered a similar contention and stated:

> [Plaintiff] believes that even if she concedes that a good-faith defense protects the union against a damages award, an equitable demand for restitution cannot be defeated on good-faith grounds. She argues that there is nothing unfair about requiring the union to return monies that, according to *Janus*, should never have been deducted from her paychecks in the first place. In fact, she concludes, the union would receive a windfall based on its violations of her constitutional rights if no restitution were ordered.

In explaining that although § 1983 allows for remedies at law or in equity and that "the district court has discretion to tailor an appropriate remedy for the constitutional violation", the Seventh Circuit in *Mooney, id.* at 370, found that plaintiff's claim was a legal claim and not an equitable claim. In *Mooney, id.*, the union argued that plaintiff's suit was "one for damages flowing from a First Amendment violation", and that "[t]he gravamen of [plaintiff's] complaint is that her First Amendment rights were violated by the fair-share requirement because she was compelled to furnish financial support to union activities with which she disagreed." The Seventh Circuit in *Mooney* agreed with the analysis of the district court which found that "Plaintiff's claim lies in law rather than equity, and there is consequently no reason to

consider whether the good-faith defense applies where the claim is for equitable restitution." *Id.* The Seventh Circuit then stated that since plaintiff failed to "point to an identifiable fund and show that her fees specifically are still in the union's possession", '[h]er claim is against the general assets of the union, held in its treasury, and can only be characterized as legal." *Id.* at 371.

SEIU points out that in the present case, "plaintiffs do not have a viable claim for equitable relief because fair-share fees already paid for collective bargaining representation that Local 668 provided to the entire unit." (citing *Babb v. California Teachers Ass'n*, 378 F. Supp. 3d 857 (C.D.Cal. 2019). SEIU also states that plaintiffs have already received benefits from their collective bargaining representation which was paid for by the fair-share fees they paid and that "it would be inequitable for force [it] to repay plaintiffs' agency fees." (quoting *Babb*, 378 F.Supp.3d at 876).

**\*11** As in *Mooney*, 942 F.3d at 371, the plaintiffs' claim in this case is one for damages and is "against the general assets of the union, held in its treasury", and thus, "can only be characterized as legal." (citing *Montanile v. Bd. of Trustees of Nat. Elevator Indust. Health Benefit Plan*, ––– U.S. –––, 136 S. Ct. 651, 658, 193 L.Ed.2d 556 (2016) ("Where a plaintiff seeks 'recovery from the beneficiaries' assets generally' because her specific property has dissipated or is otherwise no longer traceable, the claim 'is a *legal* remedy, not an equitable one.' ") (emphasis in original) (internal quotation marks omitted)).

Finally, in *Diamond*, 399 F.Supp. 3d at 385, 389, the court also held that plaintiffs' claims for declarative and injunctive relief with respect to fair-share fees were moot based on the *Janus* decision and union defendants' compliance with it. (citing collection of cases). *See also* *Hartnett*, 390 F.Supp.3d at 600-02 (court found claims for declaratory and injunctive relief moot post-*Janus* since "[p]laintiffs face no realistic possibility that they will be subject to the unlawful collection of 'fair share' fees"). Declaratory judgment is not meant to adjudicate alleged past unlawful activity. There is no question that a plaintiff can request declaratory relief to remedy alleged ongoing violations of her constitutional rights. *See* *Blakeney v. Marsico*, 340 Fed.Appx. 778, 780 (3d Cir. 2009)(Third Circuit held that to satisfy the standing requirement of Article III, a party seeking declaratory relief must allege that there is a substantial likelihood that he will suffer harm in the future) (citations omitted).

The court concurs with the courts in Diamond and Hartnett, and holds that our plaintiffs' claim for declarative judgment is moot based on Janus and, based on the undisputed fact that SEIU stopped collecting fair-share fees from state non-union member employees, including plaintiffs, following the Janus decision. *See also* Oliver, — F.Supp.3d at ——, 2019 WL 5964778, *7 (holding "Plaintiff's claims for declaratory and injunctive relief regarding the application of 43 P.S. §§ 1101.301(18), 1101.401, and 1101.705 suffers from lack of standing and mootness.").

Also, as in Diamond, 399 F.Supp. 3d at 391-93, the court find that the voluntary-cessation exception to the mootness doctrine does not apply in this case since "[t]he circumstances of this case make it clear that the undisputedly wrongful behavior — the collection of fair-share fees — is not reasonably likely to recur [after Janus's changing of the law and the reason that SEIU stopped collecting fair-share fees from public employees in Pennsylvania]." Indeed, "[c]omplying with a Supreme Court decision cannot be considered 'voluntary cessation.' " *Id.* (citing Lamberty v. Conn. State Police Union, 2018 WL 5115559, at *9 (D.Conn. Oct. 19, 2018) ("explaining that there was 'nothing

voluntary' about the union's decision to comply with Janus, as Janus 'announced a broad rule invalidating every state law permitting agency fees to be withheld' "). As such, "compliance with an intervening Supreme Court decision does not implicate the voluntary-cessation exception to the mootness doctrine." *Id.,* at 392.

Thus, the court will grant SEIU's motion and dismiss with prejudice plaintiffs' request for declaratory judgment under 28 U.S.C. § 2201.

### III. CONCLUSION

Based on the foregoing reasons, the court will **GRANT** the Rule 12(b)(6) motion to dismiss plaintiffs' FAC, (Doc. 19), filed by SEIU, (Doc. 25), and plaintiffs' First Amendment claims and request for declaratory judgment shall be **DISMISSED WITH PREJUDICE**. Further, this case will be **CLOSED**. An appropriate order shall issue.

### All Citations

--- F.Supp.3d ----, 2019 WL 6715741

---

Footnotes

1    The facts alleged in plaintiffs' FAC must be accepted as true in considering defendant SEIU's motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).
    Also, since the legal standard to state a claim under § 1983 is correctly stated in the briefs of the parties, the court will not repeat it herein. *See also* Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (To state an actionable claim under § 1983, a plaintiff must prove that someone deprived her of a constitutional right while acting under the color of state law.).

2    SEIU notes that since plaintiffs were public employees employed by Pennsylvania, they were subject to its "agency-shop statute" [i.e., the fair share fee law], namely, 71 Pa.Stat.Ann. § 575. *See also* Diamond v. Pennsylvania State Education Association, 399 F.Supp.3d 361, 371 (W.D.Pa. 2019).
    The court also notes that the Public Employee Relations Act ("PERA"), 43 Pa.Stat.Ann. §§ 1101.101 *et seq.*, "delineates the [Pennsylvania Labor Relations Board's] authority with regard to public employers", such as the Commonwealth, but the PERA does not contain any provision that gives the PLRB authority to enforce 71 Pa.Stat.Ann. § 575. *Id.* at 382 (citation omitted).

3    Janus v. American Federation of State, County, and Municipal Employees, Council 31, — U.S. ——, 138 S. Ct. 2448, 201 L.Ed.2d 924 (2018).

4    Fair share fees are charges non-union member employees had to pay unions prior to Janus to finance the union's collective bargaining activities. *See* Diamond, 399 F.Supp.3d at 370.

5    In their FAC, plaintiffs allege that SEIU "acted under color of state law and in concert with [Pennsylvania] when it compelled [them] to pay fair share fees." Although SEIU does not argue in this case that it was not acting under "color of state law", since plaintiffs are proceeding under § 1983, SEIU must be considered a state actor. In Oliver v. Service Employees International Union Local 668, — F.Supp.3d ——, —— – ——, 2019 WL 5964778, *4-5 (E.D.Pa. Nov. 12, 2019), the court found that SEIU Local 668 is not a "state actor" for the purposes of § 1983 since it "is not an actor controlled by the state, is not performing a function delegated by the state, and is not entwined with government policies or management." However, in Janus v. AFSCME, 942 F.3d 352 (7th Cir. 2019), the Seventh Circuit found that union's conduct amounted to state action and union was a proper defendant under § 1983 since "[the union] was a joint participant with the state in

the agency-fee arrangement", and the state human resources department "deducted fair-share fees from the employees' paychecks and transferred that money to the union." Also, in LaSpina v. SEIU Pennsylvania State Counsel, 2019 WL 4750423 (M.D.Pa. Sept. 30, 2019), this court found that the plaintiff sufficiently alleged that SEIU was a state actor. (citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 942 n.23, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ("the Supreme Court held that private parties using a process established by state statute can be considered state actors for purposes of § 1983.")). As such, the court finds that for purposes of the instant motion SEIU is a state actor.

6    Since SEIU correctly cites to the cases in its brief, (Doc. 26 at 11 n. 4), which have held that the good-faith defense precluded recovery in § 1983 actions similar to the instant case, the court does not re-cite all of the applicable cases. *See also* note 9 below.

7    The plaintiff in LaSpina filed an appeal to the Third Circuit which is currently pending.

8    The court notes that plaintiffs also address the argument raised in some cases that, based on Wyatt, "the good-faith defense only applies if the most analogous common-law tort would have conferred similar immunities when § 1983 was enacted." Diamond, 399 F.Supp. 3d at 397-98. Plaintiffs contend that while the good faith defense has been held to "defeat the malice and probable cause elements of a constitutional claim arising from an abuse of judicial process", "[the] cases did not recognize an across-the-board good faith defense—i.e., that any defendant that relies on a statute is exempt from paying damages under Section 1983." Plaintiffs state that since malice and probable cause are not elements of or defenses to their claim, i.e., "a First Amendment compelled speech violation", "it is irrelevant which common law tort may be most analogous to such [a] claim[ ]." As such, plaintiffs contend that their First Amendment compelled-speech claim has no common law analogue", and that SEIU should not be allowed to assert the good faith defense to their claim.

Since this court, as did the court in Diamond, 399 F.Supp. 3d at 398, "agrees with the opinions of various district courts that have determined — when presented with indistinguishable facts — that the applicability of the good-faith defense does not require analyzing the most analogous common-law tort", it does not conduct such an analysis herein. (string citations omitted). In fact, "when the Third Circuit adopted the good-faith defense in Jordan, the Third Circuit did not indicate whether the application of the good-faith defense depends on an analogous common-law tort", "[a]nd district court cases applying Jordan have not relied on common-law-tort analogs." *Id.* (string citations omitted).

9    The court in Oliver, ―― F.Supp.3d at ―― n. 13, 2019 WL 5964778, *7 n. 13, cited to the following cases to support its finding that the good faith defense precluded plaintiff's § 1983 case against SEIU:

Janus v. AFSCME, 942 F.3d 352 (7th Cir. 2019); Danielson v. AFSCME Council 28, 340 F. Supp. 3d 1083, 1086 (W.D. Wash. 2018); Carey v. Inslee, 364 F. Supp. 3d 1220, 1232 (W.D. Wash. 2019); Cook v. Brown, 364 F. Supp. 3d 1184, 1193 (D. Or. 2019); Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1006 (D. Alaska 2019); Hough v. SEIU Local 521, 2019 WL 1274528 at *1 (N.D. Cal. Mar. 20, 2019), amended, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019); Lee v. Ohio Educ. Ass'n, 366 F. Supp. 3d 980, 981 (N.D. Ohio 2019); Mooney v. Illinois Educ. Ass'n, 372 F. Supp. 3d 690, 706 (C.D. Ill. 2019); Bermudez v. SEIU Local 521, 2019 WL 1615414 at *1 (N.D. Cal. Apr. 16, 2019); Akers v. Maryland Educ. Ass'n, 376 F. Supp. 3d 563, 572 (D. Md. 2019); Wholean v. CSEA SEIU Local 2001, 2019 WL 1873021 at *3 (D. Conn. Apr. 26, 2019); Babb, 378 F. Supp. 3d at 870; Hernandez v. AFSCME Cal., 386 F. Supp. 3d 1300, 1304 (E.D. Cal. 2019) (since unions had authorization from the Supreme Court and state statute, the unions that followed the previously valid law were "entitled to the good-faith defense as a matter of law."); Diamond v. Pa. State Educ. Ass'n, 399 F.Supp.3d 361, [401-02], 2019 WL 2929875 at *29 (W.D. Pa. 2019); Ogle v. Ohio Civil Svc. Employees Ass'n, AFSCME, Local 11, 397 F. Supp. 3d 1076, 1087-88 (S.D. Ohio 2019).

End of Document     © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "D"

2019 WL 6711470
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Ruth ALISER, et al., Plaintiffs,
v.
SEIU CALIFORNIA, et al., Defendants.

Case No. 19-cv-00426-VC
|
Signed 12/10/2019

**Attorneys and Law Firms**

Bradley A. Benbrook, Stephen Duvernay, Benbrook Law
Group, Sacramento, CA, Jonathan Franklin Mitchell,
Mitchell Law PLLC, Austin, TX, Talcott Jay Franklin, Talcott
Franklin P.C., Dallas, TX, for Plaintiffs.

Jeffrey B. Demain, Patrick Casey Pitts, Rebecca C. Lee,
Scott A. Kronland, Stacey M. Leyton, Zoe Louise Palitz,
Altshuler Berzon LLP, San Francisco, CA, Caren P. Sencer,
Kerianne Ruth Steele, Eric Jason Wiesner, Weinberg, Roger
& Rosenfeld A Professional Corporation, Alameda, CA,
William Ross Warne, Annie Smith Amaral, Downey Brand
LLP, Anthony Paul O'Brien, Office of the Attorney General
Government Law Section, Sacramento, CA, for Defendants.

**ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO DISMISS**

Re: Dkt. Nos. 107, 108, 109, 110, 111, 114, 118

VINCE CHHABRIA, United States District Judge

**\*1** This lawsuit is one of many that have been filed in the
wake of *Janus v. American Federation of State, County, &
Municipal Employees, Council 31*, ––– U.S. ––––, 138 S. Ct.
2448, 201 L.Ed.2d 924 (2018). It is brought by 20 named
plaintiffs who seek to represent multiple classes. It asserts
ten "counts," and names 16 defendants. But many of the ten
"counts" jumble together multiple disparate allegations or
legal arguments, specifying neither the claim being asserted
nor the particular defendant (or defendants) against whom
the claim is made. Several of the counts are written in
a largely incomprehensible fashion. It's obvious that many
of the plaintiffs have been improperly joined in the same
lawsuit, making it even more difficult to sift through the

allegations. And in many respects the complaint fails to put
the defendants on notice of the conduct for which they must
defend themselves.

Despite all this, the defendants have made their best efforts
to decipher the allegations in the complaint, and they have
filed motions to dismiss. The motions are granted in part and
denied in part.

1. Count 1 seeks a refund of payments made to public-
sector unions prior to the Supreme Court's decision in *Janus.*
Contrary to the characterization in the SEIU defendants'
motion to dismiss, this count seeks reimbursement of
payments by both plaintiffs who paid fair-share fees and
plaintiffs who joined unions and paid membership dues. As
to both groups of plaintiffs, these claims are dismissed with
prejudice as against all defendants. The section 1983 claims
by plaintiffs who paid fair-share fees are dismissed
because *Janus* does not entitle them to a refund of fair-
share fees for the reasons stated in the following cases: *Janus
v. American Federation of State, County, and Municipal
Employees, Council 31*, 942 F.3d 352, 367 (7th Cir. 2019);
*Carey v. Inslee*, 364 F. Supp. 3d 1220, 1233 (W.D. Wash.
2019); *Danielson v. American Federation of State, County,
and Municipal Employees, Council 28*, 340 F. Supp. 3d 1083,
1087 (W.D. Wash. 2018); *Cook v. Brown*, 364 F. Supp. 3d
1184, 1192-93 (D. Or. 2019); *Hough v. SEIU Local 521*, 2019
WL 1785414, at \*1 (N.D. Cal. Apr. 16, 2019) (Chhabria,
J.). [1] The claims by plaintiffs who paid membership dues and
seek reimbursement equal to the amount of fair-share fees are
dismissed for the reasons explained in the following cases:
*Bermudez v. SEIU Local 521*, 2019 WL 1615414 (N.D. Cal.
Apr. 16, 2019) (Chhabria, J.); *Crockett v. NEA-Alaska*, 367 F.
Supp. 3d 996, 1008 (D. Alaska 2019); *Babb*, 378 F. Supp. 3d
at 876-77. [2]

2. Count 2 alleges that certain union defendants did not
promptly accept certain plaintiffs' resignations from union
membership. The SEIU defendants do not move to dismiss
these claims, but the California State Employees Association
(CSEA) and California State Retirees ("CSR") do. The
complaint alleges that CSEA and CSR "violated Mariam
Noujaim's constitutional rights by failing to promptly accept
her resignations from membership, and by forcing her to take
the needlessly burdensome step of submitting her resignation
by mail or fax." ¶ 282. This claim fails because neither
*Janus* nor any other case creates a right to resign from union
membership in any manner that one pleases. *Cf. Babb*, 378 F.
Supp. 3d at 886 ("*Janus* does not hold that employees have

the right to resign from a union however they want, regardless of state laws that provide clear, common sense procedures for doing so."). This is so at the very least where the union's rules (or contract provisions) governing resignation are reasonable, and the alleged rules here – requiring resignations to be communicated by mail or fax – are reasonable. *Cf. id.* ("Submitting a writing to the Union Defendants to halt payroll deductions is not a burdensome requirement."). The claims against CSEA and CSR under Count 2 are dismissed with prejudice.

**\*2** 3. Count 3 raises a panoply of jumbled claims and legal theories. Several of the claims seem redundant with those raised elsewhere in the complaint. *Compare, e.g.,* Count 1 ¶ 260 ("The plaintiffs who chose to join the union did not 'consent' to the payment of full membership dues ....") *and* Count 6 ¶ 310 ("[N]one of the plaintiffs in this case has ever provided legally valid consent to union membership ....") *with* Count 3 ¶ 287 ("[A]ny public employee that signed a pre-*Janus* union-membership contract was unconstitutionally coerced and did not provide legally valid consent."); *compare, e.g.,* Count 2 ¶ 268 ("Public employees have a constitutional right to terminate their union membership at any time ....") *with* Count 3 ¶ 286 ("A public employee has the constitutional right to revoke his or her union membership ... at any time ...."). Count 3 is not comprehensible enough to adjudicate, as the confused briefing on these motions to dismiss amply demonstrates. It is therefore dismissed. Leave to amend is granted, but only to the extent that Count 3 truly raises legal claims that are distinct from those asserted in, for example, Counts 1, 2, and 6.

4. In Count 4, six plaintiffs assert claims against their public employers under section 1983 for continuing to deduct union dues from their paychecks after the plaintiffs had communicated to their employers their desire to resign from union membership. As the plaintiffs acknowledge, the employers were acting pursuant to California Government Code section 1157.12(b), which requires public employers to direct all employee requests for changes in dues deductions to the unions, and to rely on the unions for information regarding which employees should have dues deducted from their paychecks.

Regardless of whether it violates the Constitution for public employers to rely on unions for information regarding dues deductions, the plaintiffs have not adequately alleged that the three county defendants (Riverside, Monterey, and Alameda) are liable for this conduct under *Monell v. Department of*

*Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). For municipal liability to attach under *Monell,* the constitutional violation must be caused by an official policy of the municipality. *Sandoval v. County of Sonoma,* 912 F.3d 509, 517 (9th Cir. 2018). Here, however, the plaintiffs have not plausibly alleged any county policy of relying on unions for dues deduction information – rather, it appears that the counties were simply complying with state law. *See* California Government Code § 1157.12. The state statute uses mandatory language, and the plaintiffs have not suggested that the counties had discretion under state law to act contrary to the statute's instructions. *See id.* ("Public employers ... *shall* ... [d]irect employee requests to cancel or change deductions for employee organizations to the employee organization, rather than to the public employer. The public employer *shall* rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed ...." (emphasis added)). When a municipality exercises no discretion and merely complies with a mandatory state law, the constitutional violation was not caused by an official policy of the municipality. *See Vives v. City of New York,* 524 F.3d 346, 353 (2d Cir. 2008); *see also Evers v. County of Custer,* 745 F.2d 1196, 1203 (9th Cir. 1984); *Sandoval,* 912 F.3d at 518 (citing *Evers*). This requirement bars the plaintiffs' claims against the counties for both prospective and retrospective relief. *See Los Angeles v. Humphries,* 562 U.S. 29, 37, 131 S.Ct. 447, 178 L.Ed.2d 460 (2010).

The plaintiffs argue that *Monell* liability can be based on the counties' policies of "establish[ing] and enforc[ing] an agency shop," Dkt. 124 at 4. But that is wrong. The general decision to contract with unions using an agency shop arrangement did not "cause" the specific allegedly unconstitutional conduct that forms the basis of this claim. *See Villegas v. Gilroy Garlic Festival Association,* 541 F.3d 950, 957 (9th Cir. 2008) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.") (quoting *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Count 4 is therefore dismissed with prejudice as to the counties.

**\*3** Count 4 also alleges a claim against the California State University Board of Trustees. To the extent the plaintiffs seek prospective relief for this claim, it is moot for the reasons set forth in the next section regarding Count 5, and it is dismissed without leave to amend. To the extent it seeks retrospective relief, the California Attorney General states in

his motion to dismiss that the Board of Trustees serves only an "administrative function[ ] in the processing of payroll deductions" and therefore "do[es] not take any position on the merits of these claims" and "will abide by the Court's orders." Dkt. 107-1 at 10. This is not helpful, and it does not provide a basis for dismissing Count 4's claim for retrospective relief against the Board of Trustees. Accordingly, this aspect of Count 4 survives (for now).

5. Count 5 seeks declaratory and injunctive relief against enforcement of *California Government Code 1157.12(b)*, which requires public employers to direct employee requests for cancellations of union dues deductions to the employees' unions, and requires the employers to rely on information provided by the unions regarding these deductions. The plaintiffs' claim for prospective declaratory and injunctive relief is moot because none of the plaintiffs is still a union member, and none continues to have any deductions made from his or her paychecks. The plaintiffs therefore lack any "legally cognizable interest" in a determination of *section 1157.12(b)*'s constitutionality, and the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013).

The plaintiffs insist that this claim falls within the "voluntary cessation" exception to mootness. But for the allegedly wrongful conduct to recur with respect to the plaintiffs, they would need to become union members again, which is "a remote possibility." *Babb*, 378 F. Supp. 3d at 886. Nor is it reasonable to expect that the employers will resume making deductions (or that the unions will arbitrarily ask them to) in the absence of any consent by the plaintiffs. Count 5 is dismissed without leave to amend.

6. Like Count 3, Count 6 presents a confusing slew of legal theories, many of which appear redundant with other claims in the complaint. This count appears to assert claims against the unions for failing to inform the plaintiffs of their right to decline union membership under *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977); failing to inform them of their right to avoid both dues and fees under *Harris v. Quinn*, 573 U.S. 616, 134 S.Ct. 2618, 189 L.Ed.2d 620 (2014); failing to inform them about a union's duty of fair representation; failing to inform them that some union dues go to fund political causes; "failing to secure legally valid consent to union membership" from the plaintiffs or from "any other public employee in California" prior to *Janus* through "unconstitutional coerc[ion]"; and failing to

correct the alleged pre-*Janus* errors by seeking post-*Janus* consent. Because it is impossible to assess these allegations in their current form, this count is dismissed with leave to amend to the extent it raises claims that are both consistent with Rule 11 and truly distinct from the other counts of the complaint.

7. Count 7 alleges that SEIU Local 1000 violated plaintiff Peter Finn's First Amendment rights by requiring him to annually renew his status as a "non-germane objector" (an employee who pays reduced fair share fees to avoid funding a union's nonrepresentational activities). The Ninth Circuit upheld a requirement that employees opt in to such a status in *Mitchell v. Los Angeles Unified School District*, 963 F.2d 258, 263 (9th Cir. 1992). Notably, as the union defendants here point out, the complaint in *Mitchell* alleged more specifically that the requirements of annual renewal were unconstitutional. Dkt. 109-5 at 10.[3] Indeed, the Ninth Circuit in *Friedrichs v. California Teachers Association* affirmed, as clearly controlled by *Abood* and *Mitchell*, a judgment against plaintiffs who raised similar claims, including claims regarding an annual renewal requirement. 2014 WL 10076847 (9th Cir. 2014), *affirmed by an equally divided Court*, —— U.S. ——, 136 S.Ct. 1083, 194 L.Ed.2d 255 (2016); Dkt. 109-5 at 35. Furthermore, then-applicable state regulations seem to have contemplated that unions would require annual renewal. *See* 8 Cal. Code Reg. § 32992(a) (repealed 2019) ("The exclusive representative will provide annual written notice to each nonmember [including] ... procedures for (A) objecting to the agency fee ...."). Given that the Ninth Circuit repeatedly rejected challenges to procedures that appear nearly identical in relevant respects to the procedure SEIU Local 1000 used here, and given that procedure's consistency with state regulations, the union is entitled to a good-faith defense to section 1983 liability (assuming there was a constitutional violation at all). *See Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008).

**\*4** The union argues that Finn's state law claims are preempted by the Dills Act, and Finn doesn't dispute this argument. Finn also asserts that the California State Controller violated his constitutional rights, but he doesn't appear to seek any remedy against the Controller. Count 7 is dismissed with prejudice.

8. Count 8 is asserted against SEIU Local 2015, and the union does not move to dismiss this Count.

9. Under Count 9, plaintiffs Teresa Boyle and Erin Thompson allege that California's alleged practice of deducting union dues from paychecks of home healthcare workers violates the Medicaid Act. The plaintiffs seek various forms of relief, including an order holding unlawful and enjoining the enforcement of 42 C.F.R. § 447.10(g)(4), the now-withdrawn regulatory provision under the Medicaid Act that permitted such deductions; an injunction prohibiting the State Controller from diverting to unions any payments owed to providers; an order requiring the unions to refund to the state any payments received in alleged violation of 42 U.S.C. § 1396a(a)(32); an order requiring the state to restore this money to Medicaid providers; and an order requiring the Secretary of Health and Human Services to notify California and other states with similar practices that he will terminate all federal Medicaid funding to those states unless they change their practices.

To the extent the plaintiffs seek prospective relief, these claims are moot. As stated in the First Amended Complaint, both Boyle and Thompson resigned from their union, and since the filing of the Complaint the union has accepted their resignations. ¶¶ 212, 218, 236, 239. These plaintiffs are no longer union members, and dues are no longer being deducted from their paychecks. Thus these plaintiffs no longer have any cognizable legal interest in the outcome of claims regarding future deductions from the paychecks of union members. And for the reasons discussed above under Count 5, the allegedly wrongful behavior cannot reasonably be expected to recur with respect to the named plaintiffs. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013). Furthermore, these claims are moot on the facts here notwithstanding that the plaintiffs seek class-wide relief. The claims are no longer justiciable not because the defendants have sought to "pick off" the named plaintiffs' claims, but because the named plaintiffs themselves chose to resign from the union, and the union accepted their resignations. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011); *Slayman v. FedEx Ground Package System, Inc.*, 765 F.3d 1033, 1047-48 (9th Cir. 2014). *Campbell-Ewald Co. v. Gomez*, ––– U.S. ––––, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016), which held that an unaccepted settlement offer does not moot a case, and on which the plaintiffs rely, does not support a different conclusion. The plaintiffs' claims under *Ex parte Young*, California Code of Civil Procedure section 1085(a), and the Administrative Procedure Act are moot.

As for retrospective relief, the plaintiffs now disclaim seeking such relief against the State Controller. Dkt. 122 at 7-8. And

with respect to the union defendant, the relevant provision of the Medicaid Act doesn't give the plaintiffs a federal right to sue under section 1983. 42 U.S.C. § 1396a(a) lists contents that a state Medicaid plan must contain. The Secretary of Health and Human Services is authorized to determine whether states are complying with the requirements of section 1396a, and to withhold Medicaid funding from noncompliant states. § 1396c. One of the requirements imposed on state plans (section 32) is that a plan, subject to certain exceptions, must "provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or power of attorney or otherwise." § 1396a(a)(32). Section 32 does not create an individually enforceable right. *See Transitional Services of New York for Long Island, Inc. v. New York State Office of Mental Health*, 91 F. Supp.3d 438, 445 (E.D.N.Y. 2015). The provision is embedded in a list of requirements for what state plans must contain, and these requirements are enforceable by the Secretary. The provision, on its face, restricts the entities to whom a payment can be made under the plan; it does not create an entitlement to payment. *See Gonzaga v. Doe*, 536 U.S. 273, 290, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) ("[I]f Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms."). Unlike section 23, the subject of *Planned Parenthood Arizona Inc. v. Betlach*, section 32 does not contain language that "unambiguously confers ... a right." *See Betlach*, 727 F.3d 960, 966 (9th Cir. 2013) (" '[A]ny *individual* eligible for medical assistance ... may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required.' " (quoting § 1396a(a)(23)); *cf. Ball v. Rodgers*, 492 F.3d 1094, 1107 (9th Cir. 2007) ("[N]either provision uses the word 'individuals' simply in passing. Instead, both are constructed in such a way as to stress that these 'individuals' have two explicitly identified rights."). Lastly, the defendants point to significant evidence in the legislative history of section 32 that the provision was designed not to protect the individual rights of providers, but to prevent fraud against the government, and the plaintiffs don't appear to dispute this history. *See Danvers Pathology Associates v. Atkins*, 757 F.2d 427, 430 (1st Cir. 1985) (Breyer, J.); *see also Ball*, 492 F.3d at 1112-13 (looking to legislative history); *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) ("Congress must have intended that the provision in question benefit the plaintiff.").

**\*5**  Count 9 is dismissed without leave to amend as to prospective relief, and with prejudice as to retrospective relief as against all defendants.

10. In Count 10, plaintiff Noujaim alleges that CSEA and CSR deducted membership dues from her pension without her consent. CSEA and CSR argue that this claim is moot, but the allegations and record at this stage are too murky to determine whether this claim has been fully mooted, and whether any exception to the mootness doctrine applies. *See Campbell-Ewald Co.*, 136 S. Ct. at 671 n.5; *Pitts*, 653 F.3d at 1091. And on the merits, the claim can't be dismissed at this stage. The complaint recounts that Noujaim "protested that she had never agreed to join California State Retirees—and she had not authorized California State Retirees or any of its affiliates to tap her pension for membership dues." ¶ 248. Read in the light most favorable to Noujaim, this paragraph constitutes an allegation that Noujaim in fact never authorized such dues. CSEA and CSR have submitted evidence purporting to show that Noujaim authorized CSEA to deduct dues in 2003. Dkt. 114-2. This may suggest that Noujaim's allegations are not brought in good faith, but it's not appropriate to consider this evidence on a motion to dismiss. If Noujaim never consented to dues deductions at any point in time (which must be assumed at this stage), then she would likely have a claim

for conversion or a similar tort under California law. Thus, this claim can proceed, assuming there is a factual basis for continuing to assert it consistent with Rule 11.

The motion to dismiss Count 10 is denied. The request to dismiss this count as moot is without prejudice to renewing the request after the factual record has been developed.

11. As the plaintiffs appear to concede that they assert no claims against SEIU International and SEIU California, those defendants are dismissed.

12. Any amended complaint must be filed within 21 days of this ruling, with a response to the amended complaint due 21 days after that (or 21 days after expiration of the deadline to file an amended complaint). A further case management conference is scheduled for February 12, 2020 at 10:00 a.m. A joint case management statement is due seven days prior.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2019 WL 6711470

---

Footnotes

1   The plaintiffs disclaim seeking a refund of pre-*Janus* fair share fees under any state law cause of action, and admit in any case that such claims would be barred by Section 1159 of the California Government Code. *See* Dkt. 121 at 6-7; *Babb v. California Teachers Association*, 378 F. Supp. 3d 857, 879 (C.D. Cal. 2019) (Staton, J.).

2   These plaintiffs similarly disclaim a refund of any pre-*Janus* membership dues under any state law cause of action.

3   The SEIU defendants' request for judicial notice, Dkt. 109-6, is granted. All other requests for judicial notice are denied as moot.

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "E"

2019 WL 6337991
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

ANN SMITH, LEONARDO SANTIAGO, MICHAEL
C. SANDBERG, KARL HEDENBERG, MELISSA
H. POULSON, RACHEL CURCIO, Plaintiffs,

v.

NEW JERSEY EDUCATION ASSOCIATION,
NATIONAL EDUCATION ASSOCIATION,
CLEARVIEW EDUCATION ASSOCIATION,
HARRISON TOWNSHIP EDUCATION
ASSOCIATION, KINGSWAY EDUCATION
ASSOCIATION, CLEARVIEW REGIONAL HIGH
SCHOOL DISTRICT BOARD OF EDUCATION,
PHIL MURPHY, JOEL M. WEISBLATT,
PAUL BOUDREAU, PAULA B. VOOS, JOHN
BONANNI, DAVID JONES, Defendants.
SUSAN FISCHER AND JEANETTE
SPECK, on behalf of themselves and
those similarly situated, Plaintiffs,

v.

PHIL MURPHY, in his official capacity as Governor
of New Jersey; NEW JERSEY EDUCATION
ASSOCIATION; TOWNSHIP OF OCEAN
EDUCATION ASSOCIATION, Defendants.

Civil No. 18-10381 (RMB/KMW),
Civil No. 18-15628 (RMB/KMW)
|
Filed 11/27/2019

[18-10381: Dkt. Nos. 160, 166, 169, 171, 173]

[18-15628: Dkt. Nos. 38, 39, 40, 41]

**Attorneys and Law Firms**

APPEARANCES:

ZIMOLONG LLC, By: Walter S. Zimolong, Esq., P.O.
Box 552, Villanova, Pennsylvania 19085, MITCHELL LAW
PLLC, By: Jonathan F. Mitchell, Esq., 106 East Sixth Street,
Suite 900, Austin, Texas 78701, TALCOTT FRANKLIN
P.C., By: Talcott J. Franklin, Esq.; Shannon W. Conway, Esq.,
1920 McKinney Avenue, 7th Floor, Dallas, Texas 75201,
Counsel for Ann Smith, Leonardo Santiago, Michael C.

Sandberg, Karl Hedenberg, Melissa H. Poulson, and Rachel
Curcio

MESSINA LAW FIRM, P.C., By: Michael P. Laffey,
Esq., 961 Holmdel Road, Holmdel, New Jersey 07733,
NATIONAL RIGHT TO WORK LEGAL DEFENSE
FOUNDATION, By: William L. Messenger, Esq.; Aaron B.
Solem, Esq., 8001 Braddock Road, Suite 600, Springfield,
Virginia 22160, Counsel for Susan Fischer and Jeanette Speck

STATE OF NEW JERSEY, OFFICE OF THE ATTORNEY
GENERAL, By: Melissa Dutton Shaffer, Assistant Attorney
General; Jeremy M. Feigenbaum, Assistant Attorney
General; Lauren A. Jensen, Deputy Attorney General; Jana
R. DiCosmo, Deputy Attorney General R.J. Hughes Justice
Complex, 25 Market Street, P.O. Box 112, Trenton, New
Jersey 08625-0112, Counsel for Phil Murphy, in his official
capacity as Governor of New Jersey

STATE OF NEW JERSEY, PUBLIC EMPLOYMENT
RELATIONS COMMISSION, By: Don Horowitz, Senior
Deputy General Counsel, 495 West State Street, P.O. Box 429,
Trenton, New Jersey 08625, Counsel for Joel M. Weisblatt,
Paul Boudreau, Paula B. Voos, John Bonani, and David Jones,
in their official capacities as Chariman and members of the
New Jersey Public Employment Relations Commission

ZAZZALI, FAGELLA & NOWAK, KLEINBAUM &
FRIEDMAN, By: Raymond M. Baldino, Esq.; Robert A.
Fagella, Esq., 570 Broad Street, Suite 1402, Newark, New
Jersey 07102, BREDHOFF & KAISER, PLLC, By: Leon
Dayan, Esq.; Ramya Ravindran, Esq., 805 15th Street
NW, Suite 1000, Washington, DC 20005, NATIONAL
EDUCATION ASSOCIATION, By: Eric Harrington, Esq.,
1201 16th Street NW, Washington, DC 20036, Counsel
for National Education Association, New Jersey Education
Association, Clearview Education Association, Harrison
Township Education Association, Kingsway Education
Association, and Township of Ocean Education Association

PARKER McCAY, By: Frank P. Cavallo, Jr., Esq.; Andrew W.
Li, Esq., 900 Midlantic Drive, Suite 300, Mount Laurel, New
Jersey 08054, Counsel for Clearview Regional High School
District Board of Education

**OPINION**

RENÉE MARIE BUMB UNITED STATES DISTRICT
JUDGE

**\*1** These actions are brought in the wake of the United States Supreme Court's decision in Janus v. AFSCME, Council 31, et al., 138 S.Ct. 2448 (2018), which held that public sector unions could no longer deduct compulsory "fair share" agency fees from non-consenting employees. In both matters presently before this Court, Plaintiffs filed putative class action complaints against the Union Defendants and Governor Phil Murphy, in his official capacity (the "State Defendant"), seeking monetary and injunctive relief under 42 U.S.C. § 1983 for alleged First Amendment violations.

Plaintiffs in these cases, Susan Fischer, Jeanette Speck, Leonardo Santiago, Michael C. Sandberg, Melissa H. Poulson, and Rachel Curcio (the "Member Plaintiffs") are current or former New Jersey public school teachers who, following Janus, expressed objections to continued payment of membership dues to various local affiliates of the New Jersey Education Association ("NJEA") and the National Education Association ("NEA")(collectively, with the local affiliates, the "Union Defendants"). The Member Plaintiffs argue that their union dues authorization forms, which were signed before the Janus decision, are invalid, and were not "freely given," because employees were not afforded the option to abstain from paying any fees to the unions. Plaintiffs contend that, previously, employees were given an illusory choice between paying full union dues (with all privileges of union membership) or paying an 85-percent "fair share" representation fee (without the privileges of union membership).

The Member Plaintiffs also argue that the First Amendment gives member employees a right to withdraw from the union, and revoke union dues authorization at any given time, without restriction. On that point, the Member Plaintiffs argue that the revocation requirements set forth in § 52:14-15.9e of the New Jersey Employer-Employee Relations Act, N.J.S.A. § 34:13A-1, et seq. (the "EERA"), as recently amended by the Workplace Democracy Enhancement Act, P.L.2018, C.15, § 6, eff. May 18, 2018 (the "WDEA"), unconstitutionally restrict employees' First Amendment rights.

Meanwhile, Plaintiffs Ann Smith and Karl Hedenberg (the "Non-Member Plaintiffs") are teachers who never joined the union for ideological reasons and now seek a refund of agency fees paid prior to the Janus decision. The Smith Plaintiffs also asserted claims against the members of the New Jersey Public Employee Relations Commission (the "PERC Defendants") and the Clearview Regional High School District Board of Education (the "Clearview BOE").

These matters, which involve substantially similar issues, now come before the Court upon various motions and cross-motions. Ultimately, this Court finds that the union dues authorizations, signed by Plaintiffs, were valid and enforceable contracts. Additionally, because the Union Defendants' deduction of representation fees from non-member employees was conducted in good-faith reliance on the Supreme Court decision overruled by Janus, Abood v. Detroit Bd. Of Ed., 431 U.S. 209 (1977), the Court declines to order retrospective monetary relief.

**\*2** For the reasons outlined herein, the Motions for Summary Judgment, filed by the Smith Plaintiffs [Civ. No. 18-10381, Dkt. No. 160] and the Fischer Plaintiffs [Civ. No. 18-15628, Dkt. No. 38], will be **DENIED**, and the Cross-Motions for Summary Judgment, filed by the Union Defendants [Civ. No. 18-10381, Dkt. No. 171; Civ. No. 18-15628, Dkt. No. 40], the State Defendant [Civ. No. 18-10381, Dkt. No. 173; Civ. No. 18-15628, Dkt. No. 41], will be **GRANTED**. The Motion for Judgment on the Pleadings by the Clearview BOE [Civ. No. 18-10381, Dkt. No. 166] and the Motion to Dismiss by the PERC Defendants [Civ. No. 18-10381, Dkt. No. 169] will also be **GRANTED**. Additionally, the Fischer Plaintiffs' Motion for Class Certification [Civ. No. 18-15628, Dkt. No. 39] will be **DENIED**, as moot.

## I. FACTUAL BACKGROUND

Upon commencement of their employment in the New Jersey public school system, Plaintiffs in this case were offered two options: (1) elect to join the NJEA-NEA and pay full union dues, which afforded full rights and privileges of union membership (such as voting rights, life insurance, and other discounts), or (2) abstain from union membership, but pay a compulsory "agency fee" of approximately 85% of full union dues, without most of the rights and privileges of union membership. Given these choices, not surprisingly, the Member Plaintiffs each opted for union membership and signed a "NJEA-NEA Active Membership Application," which authorized the payment of full union dues through automatic payroll deductions (the "Union Dues Authorization Form"). In these Union Dues Authorization Forms, the Member Plaintiffs agreed as follows:

> This authorization may be terminated
> only by prior written notice from me

effective January 1 or July 1 of any
year.

See <u>Smith</u> Pls.' Union Dues Authorizations [Civ. No.
18-10381, Dkt. No. 140-5]; <u>Fischer</u> Pls.' Union Dues
Authorizations [Civ. No. 18-15628, Dkt. No. 38-3 at 5 and
Dkt. No. 38-3 at 6]. On the other hand, the Non-Member
Plaintiffs, Ms. Smith and Mr. Hedenberg, chose to forgo the
benefits of union membership, instead paying the compulsory
agency fee.

### A. *The Workplace Democracy Enhancement Act*

Prior to May 2018, the revocation language used in the
Union Dues Authorization Forms paralleled the language
in § 52:14-15.9e of the New Jersey Employer-Employee
Relations Act, N.J.S.A. § 34:13A-1, et seq., which provided
that:

> Any such written authorization may
> be withdrawn by such person holding
> employment at any time by the filing
> of notice of such withdrawal with the
> above-mentioned disbursing office.
> The filing of notice of withdrawal shall
> be effective to halt deductions as of the
> January 1 or July 1 next succeeding the
> date on which notice of withdrawal is
> filed.

<u>Id.</u> However, on May 18, 2018, New Jersey Governor
Phil Murphy signed into law the Workplace Democracy
Enhancement Act, P.L.2018, C.15, § 6, eff. May 18, 2018,
which amended N.J.S.A. § 52:14-15.9e by striking the prior
revocation language and replacing it with the following:

> Employees who have authorized
> the payroll deduction of fees to
> employee organizations may revoke
> such authorizations by providing
> written notice to the public employer
> during the 10 days following
> each anniversary date of their
> employment. Within five days of
> receipt of notice from an employee

> of revocation of authorization for
> the payroll deduction of fees, the
> public employer shall provide notice
> to the employee organization of
> an employee's revocation of such
> authorization. An employee's notice
> of revocation of authorization for
> the payroll deduction of employee
> organization fees shall be effective on
> the 30th day after the anniversary date
> of employment.

**\*3** N.J.S.A. § 52:14-15.9e (as amended by the WDEA). The
WDEA itself does not clarify what impact this new language
has on employees who signed Union Dues Authorization
Forms that contained the language with two opt-out dates.

### B. *The Janus Decision*

One June 27, 2018, the United States Supreme Court issued
its decision in <u>Janus</u>, holding that "States and public-sector
unions may no longer extract agency fees from nonconsenting
employees." Janus, 138 S.Ct. at 2486. In doing so, the Court
overturned forty-year-old precedent from <u>Abood</u>, which
permitted public sector unions to compel agency fees from
non-member employees for costs "germane" to collective
bargaining, so long as non-members were not forced to
contribute to political or ideological causes. See <u>Abood</u>, 431
U.S. 235-36. The Court explained that the framework set
forth in <u>Abood</u> failed to appreciate the inherently political
nature of public sector collective bargaining and "violate[d]
the free speech rights of nonmembers by compelling them
to subsidize private speech on matters of substantial public
concern." Janus, 138 S.Ct. at 2460. Moving forward, the
Court stated as follows:

> Neither an agency fee nor any other
> payment to the union may be deducted
> from a nonmember's wages, nor
> may any other attempt be made to
> collect such a payment, unless the
> employee affirmatively consents to
> pay. By agreeing to pay, nonmembers
> are waiving their First Amendment
> rights, and such a waiver cannot be
> presumed. Johnson v. Zerbst, 304 U.S.
> 458, 464, 58 S.Ct. 1019, 82 L.Ed.

ANN SMITH, LEONARDO SANTIAGO, MICHAEL C...., --- F.Supp.3d ---- (2019)

1461 (1938); see also Knox, 567 U.S., at 312–313, 132 S.Ct. 2277. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Curtis Publishing Co. v. Butts, 388 U.S. 130, 145, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (plurality opinion); see also College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 680–682, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

Janus, 138 S. Ct. at 2486.

### C. *Post-Janus Resignation and Refund Requests*

Following Janus, a number of the Member Plaintiffs informed the Union Defendants that they wished to resign their union membership and cease dues deductions, effective immediately.

On June 28, 2018, Plaintiff Michael C. Sandberg emailed his union representative and requested the immediate cessation of dues deductions. Although his Union Dues Authorization Form entitled him to opt-out effective July 1st, the union instead attempted to dissuade Mr. Sandberg from resigning his membership before inquiring about the anniversary of his date of hire. Mr. Sandberg's union dues continued to be deducted until the end of September 2018. The Union Defendants contend that the continued deduction of Mr. Sandberg's dues after his written notice was an oversight [1] and that all dues deducted from July 1st through October 2018 have been refunded, with interest.

**\*4** Plaintiff Melissa H. Poulson also expressed her desire to resign from the union on June 28, 2018, but did so through a telephone call to her union representative, rather than in writing. The Union states that it rejected this telephone resignation because it was not in writing, as required by the terms of the Union Dues Authorization Form. Ms. Poulson's union dues were deducted through the end of September 2018, which was approximately thirty days after the anniversary of her date of hire (September 1, 2003). The Union Defendants

state that they accepted Ms. Poulson's inclusion in the Second Amended Smith Complaint [Civ. No. 18-10381, Dkt. No. 43], which was filed on July 24, 2018, as written notice of her intent to resign, even though it was not submitted during the 10-day window following the anniversary of her date of hire.

In mid-July 2018, Plaintiffs Susan Fischer and Jeanette Speck notified the Union Defendants, in writing, of their desire to resign from the union and halt dues. However, because these notices were provided after the July 1st opt-out date, Ms. Fischer and Ms. Speck were informed that their next opportunity to resign would be thirty days after the anniversary of their dates of hire by submitting a new notice, in writing, during the 10 day period following the anniversary of their date of hire. Ms. Fischer and Ms. Speck followed the outlined procedures and dues deductions were halted in October 2018.

Plaintiff Leonardo Santiago notified his union representative, in writing, of his decision to resign from the union on August 8, 2018. Finding that Mr. Santiago's notice was too late for the July 1st revocation date, the union ceased dues deductions at the end of September 2018. By ceasing deductions thirty days after the anniversary of Mr. Santiago's date of hire, even though Mr. Santiago had not filed a new notice during the WDEA's 10-day revocation period, the Union Defendants state that Mr. Santiago benefited from an earlier opt-out date than he otherwise would have been entitled to under the terms of his Union Dues Authorization Form.

As stated in the Fifth Amended Smith Complaint [Civ. No. 18-10381, Dkt. No. 140], Plaintiff Rachel Curcio has never submitted written notice of her intent to resign from the union, despite her desire "to legally and legitimately quit paying dues to NJEA and NEA." To this Court's knowledge, Ms. Curcio continues to pay full union dues. Somewhat inconsistently, it does not seem that the Union Defendants have interpreted Ms. Curcio's inclusion in this case as written notice of her intent to resign from the union, as was done for Ms. Poulson. It appears that Ms. Curcio's position is that no opt-out is necessary, since the union should have sought her affirmative consent to continue collecting dues post-Janus.

Unlike the other Plaintiffs, who were full-fledged union members, Plaintiffs Ann Smith and Karl Hedenberg never joined the union. Instead, throughout their employment, Ms. Smith and Mr. Hedenberg paid the approximately 85% agency fee. Following the Janus decision, the union halted any further deduction of agency fees from non-member

employees, such as Ms. Smith and Mr. Hedenberg. Because the agency fees were deducted from the Non-Member Plaintiffs' salaries without their affirmative consent, they now seek a refund of all pre-Janus agency fees.

### D. *Application and Enforcement of Dues Deductions*

In addition to Plaintiffs' overarching constitutional challenges to the WDEA and the validity of pre-Janus consent, the Smith Plaintiffs assert a claim against the Clearview BOE for continuing to deduct union dues from employees who had signed pre-Janus Union Dues Authorization Forms, but had not provided new "affirmative consent" authorizations, post-Janus. The Smith Plaintiffs also bring claims against the PERC Defendants for instructing employers to comply with the WDEA and for issuing orders preventing employers from soliciting post-Janus union dues authorizations from employees.

## II. LEGAL STANDARD

**\*5** Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." Gonzalez v. Sec'y of Dept of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of the nonmoving party. Melrose, Inc. v. City of Pittsburgh, 613 F.3d 380, 387 (3d Cir. 2010). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Walsh v. Krantz, 386 F.App'x 334, 338 (3d Cir. 2010).

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed

to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id. In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord. Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)("[S]peculation and conjecture may not defeat summary judgment."). Moreover, "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial"; the evidence does not need to be in admissible form at the time of summary judgment. FOP v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

## III. ANALYSIS

In both matters presently before the Court, Plaintiffs argue that (1) Union Dues Authorization Forms signed before the Janus decision are invalid, (2) the First Amendment gives employees a right to resign union membership and cease paying dues without any temporal restrictions, and (3) the revocation language in the WDEA is unconstitutional. This Court disagrees with Plaintiff on the first two points. Although the Court agrees that the revocation language in the WDEA is unduly restrictive and, therefore, unconstitutional, the Court finds that Plaintiffs have failed to establish standing to challenge the WDEA, because it has never been enforced against them to their detriment.

### A. *Validity of Pre-Janus Authorizations*

**\*6** Although the Member Plaintiffs acknowledge that they signed Union Dues Authorization Forms at the commencement of their employment, Plaintiffs claim that these authorizations are invalid because they were obtained before Janus clarified their rights to abstain from paying any dues to the union. Unlike Mr. Janus, who was an agency fee paying non-member who never agreed to any dues deduction, the Member Plaintiffs all voluntarily agreed to union membership, with full deduction of dues. However, Plaintiffs argue that the Union Authorization Dues Forms must now be considered involuntary, because Plaintiffs could not have freely and knowingly waived a right that they did

not know they had (the right to avoid paying union fees as a non-member, as Janus now holds). This argument fails as a matter of law, because "changes in intervening law – even constitutional law – do not invalidate a contract." Smith v. Bieker, 2019 WL 2476679, at *2 (N.D. Cal. June 13, 2019)(citing Brady v. United States, 397 U.S. 742, 757 (1970)); see also Oliver v. Serv. Employees Int'l Union Local 668, 2019 WL 5964778, at *3 (E.D. Pa. Nov. 12, 2019)(a "subsequent change in the law does not permit a party to a contract who has enjoyed the benefit of the bargain to rescind it with the benefit of hindsight") (citing Coltec Industries, Inc. v. Hobgood, 280 F.3d 262, 274-75 (3d Cir. 2002)).

The Janus decision may have established a more appealing alternative for Plaintiffs than what existed under the Abood framework, but the existence of a better alternative does not invalidate prior signed contracts. Indeed, District Courts around the country have already rejected similar claims, finding that the fact that union members "voluntarily chose to pay membership dues in exchange for certain benefits, and '[t]he fact that plaintiffs would not have opted to pay union membership fees if Janus had been the law at the time of their decision does not mean their decision was therefore coerced.' " Babb v. California Teachers Ass'n, 378 F. Supp. 3d 857, 877 (C.D. Cal. 2019)(quoting Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1007–09 (D. Alaska 2019)); see also Belgau v. Inslee, 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018)("Plaintiffs' assertions that they didn't knowingly give up their First Amendment rights before Janus rings hollow. Janus says nothing about people [who] join a Union, agree to pay dues, and then later change their mind about paying union dues."); O'Callaghan v. Regents of the Univ. of Cal., 2019 WL 2635585, at *3 (C.D. Cal. June 10, 2019)("[N]othing in Janus's holding requires unions to cease deductions for individuals who have affirmatively chosen to become union members and accept the terms of a contract that may limit their ability to revoke authorized dues-deductions in exchange for union membership rights, such as voting, merely because they later decide to resign membership."). Plaintiffs have a right to resign from the union and cease paying union dues, but Janus does not serve to invalidate union members' previously signed Union Dues Authorization Forms.

### B. *Post-Janus Resignation Rights*

The Member Plaintiffs also argue that, in addition to invalidating pre-Janus dues authorizations, the Janus decision broadly gives union member employees a right to resign their

membership at any given time. This Court finds no support for this assertion.

As previously noted, Janus does not invalidate the existing contractual relationships between unions and their members. See, e.g., Smith v. Bieker, 2019 WL 2476679, at *2 ("Smith contends that Janus entitles him to elect to stop paying dues to the union at the drop of a hat. But Janus did not concern the relationship of unions and members; it concerned the relationship of unions and non-members. Besides, 'the First Amendment does not confer ... a constitutional right to disregard promises that would otherwise be enforced under state law' ")(quoting Cohen v. Cowles Media Co., 501 U.S. 663, 672 (1991)).

The Member Plaintiffs in these matters all agreed to be bound by authorization agreements that set forth an opt-out procedure (prior written notice) with two available resignation dates (January 1st and July 1st of each year). It is possible that unreasonably restrictive or burdensome opt-out procedures could be found to impinge upon First Amendment rights, but this is not the case here. The available resignation procedures give union members reasonable opportunities to exercise their First Amendment rights to resign from the union. In fact, after the passage of the WDEA, Plaintiffs were apparently afforded a third possible resignation date (effective thirty days after the employee's anniversary of employment). Plaintiffs, such as Ms. Curcio, may freely resign from the union, but they must do so under the terms of the Union Dues Authorization Forms. Because the Member Plaintiffs' resignations were all processed under the terms of their agreements, or under more advantageous terms, Plaintiffs are not entitled to the reimbursement of union dues deducted in the months before their union resignations took effect.

### C. *Workplace Democracy Enhancement Act*

**\*7** Next, Plaintiffs argue that the restrictive revocation procedure set forth in N.J.S.A. § 52:14-15.9e, as amended by the WDEA, violates their First Amendment rights to resign from the union. The plain language of the revocation language in N.J.S.A. § 52:14-15.9e restricts union members to one opt-out date per year, with a draconian requirement that employees can only do so by submitting written notice in a very specific 10-day window (which would be unique to each employee). If it were enforced as written, the Member Plaintiffs are correct that the WDEA's revocation procedure would, in the absence of a contract providing additional opt-out dates and a more reasonable notice requirement (as is present here), unconstitutionally restrict an employee's

First Amendment right to opt-out of a public-sector union. However, in these cases, with discovery now closed, the record indicates that the WDEA's revocation procedure was not enforced against Plaintiffs as written. Because Plaintiffs have not established that they suffered (or are likely to suffer) an "injury-in-fact," based on the manner in which the WDEA's revocation procedure was enforced against them, they lack standing to challenge its constitutionality.

The record demonstrates that neither the State Defendant nor the Union Defendants strictly enforced the WDEA's revocation procedure against restrictions against Plaintiffs. In these cases, the Union Defendants continued to honor the multiple opt-out dates set forth in the Union Dues Authorization Forms. In fact, rather than using the WDEA to limit Plaintiffs to a single opt-out opportunity, the Union Defendants' applied the WDEA in a way that afforded Plaintiffs a third opt-out opportunity, in addition to the two opportunities already available under the terms of the Union Dues Authorization Forms. This additional resignation date (which ended up being at the end of September 2018), permitted Ms. Poulson, Mr. Santiago, Ms. Fischer, and Ms. Speck to resign their union memberships earlier than they otherwise would have been entitled to under the previous EERA language or the terms of the Union Dues Authorization Forms (January 1, 2019). The Union Defendants also did not force Ms. Poulson and Mr. Santiago to comply with the strict terms of the WDEA's unreasonable 10-day notice period and, instead, consistent with the terms of the Union Dues Authorization Forms, only required Ms. Poulson and Mr. Santiago to submit prior written notice of their desire to opt-out.

Based on the record, the Member Plaintiffs cannot establish that they have suffered (or are likely to suffer) an "injury-in-fact" to their First Amendment rights. "To have Article III standing, [Plaintiffs] must first demonstrate that [they have] suffered an injury-in-fact. This injury must be concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical." Pitt News v. Fisher, 215 F.3d 354, 360 (3d Cir. 2000)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). If Plaintiffs demonstrated that State Defendant or the Union Defendants were using the WDEA's revocation language to override and narrow contractually agreed upon resignation rights, such enforcement would certainly have established an injury. [2] However, no such circumstances existed in these matters. Here, the Union Defendants used the WDEA's newly created opt-out date to supplement, rather than narrow, the two opt-

out dates that union members were already entitled to under the Union Dues Authorization Forms. As such, the Member Plaintiffs were never harmed and, in this instance, benefited from the manner in which the Union Defendants applied the WDEA. [3] Therefore, Plaintiffs lack Article III standing to challenge the constitutionality of the WDEA revocation language.

#### D. *Refund of Agency Fees*

**\*8** In light of Janus, the Non-Member Plaintiffs argue that they should be reimbursed for agency fees that were deducted from their pay for years, without their affirmative consent, to subsidize the unions in violation of the First Amendment. While Plaintiffs' arguments are well-taken, this Court finds that the Union Defendants would prevail based upon their good-faith belief that these agency fee deductions, which were sanctioned by the Supreme Court in Abood, complied with statutory and constitutional law. Indeed, numerous federal courts, including some within the Third Circuit, have already held that "good-faith reliance on prior precedent defeats refund claims in the aftermath of Janus." Oliver, 2019 WL 5964778, at *7 (E.D. Pa. Nov. 12, 2019); see also Babb, 378 F. Supp. 3d at 871-72. This Court also notes that in Janus, the Supreme Court stated as follows:

> We recognize that the loss of payments from nonmembers may cause unions to experience unpleasant transition costs in the short term, and may require unions to make adjustments in order to attract and retain members. But we must weigh these disadvantages against the considerable windfall that unions have received under Abood for the past 41 years. It is hard to estimate how many billions of dollars have been taken from nonmembers and transferred to public-sector unions in violation of the First Amendment. Those unconstitutional exactions cannot be allowed to continue indefinitely.

Janus, 138 S. Ct. at 2485–86. In noting that the "windfall" received by unions over the past forty years offsets the short-term adjustments and losses that unions would experience

by losing agency fee contributions, the Supreme Court seemingly acknowledged that unions would not be forced to return all money collected in reliance on <u>Abood</u>. Thus, the Supreme Court's language suggests that it only intended for <u>Janus</u> to apply prospectively, rather than retroactively.

### E. *Clearview BOE and the PERC Defendants*

Based on this Court's findings as to the overarching issues in this case, the claims against the Clearview BOE and the PERC Defendants must be dismissed. Indeed, because this Court finds that the pre-<u>Janus</u> Union Dues Authorization Forms remained valid and that Plaintiffs could not resign from the union without temporal restrictions, the Clearview BOE did not violate the Plaintiffs' constitutional rights by continuing to deduct dues and the PERC Defendants did not violate Plaintiffs' rights by ordering the school districts to continue honoring the existing authorization agreements.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' respective Motions for Summary Judgment [Civ. No. 18-10381, Dkt. No. 160; Civ. No. 18-15628, Dkt. No. 38], will be **DENIED**, and the Cross-Motions for Summary Judgment, filed by the Union Defendants [Civ. No. 18-10381, Dkt. No. 171; Civ. No. 18-15628, Dkt. No. 40], the State Defendant [Civ. No. 18-10381, Dkt. No. 173; Civ. No. 18-15628, Dkt. No. 41], will be **GRANTED**. Additionally, the Motion for Judgment on the Pleadings by the Clearview BOE [Civ. No. 18-10381, Dkt. No. 166] and the Motion to Dismiss by the PERC Defendants [Civ. No. 18-10381, Dkt. No. 169] will be **GRANTED**. Finally, the Fischer Plaintiffs' Motion for Class Certification [Civ. No. 18-15628, Dkt. No. 39] will be **DENIED**, as moot. Appropriate Orders shall issue on this date.

### All Citations

--- F.Supp.3d ----, 2019 WL 6337991

Footnotes

1     The Union Defendants state that Mr. Sandberg's revocation was mistakenly registered as being received on July 10, 2018, the date he sent a follow-up email to the union representative inquiring about the status of his opt-out request.

2     In this case, this Court need not determine the precise parameters of a constitutionally permissible opt-out procedure. This Court, however, would go so far as to say that, if Defendants were to enforce the statute in the absence of additional opt-out opportunities, the WDEA's revocation procedure – which allows only a single opt-out opportunity and can be taken advantage of only through a perfectly-timed written notice – would unconstitutionally infringe upon an employee's First Amendment rights. Moreover, even if the WDEA's revocation procedure was incorporated into a contract, such as the Union Dues Authorization Form, it would be unconstitutional if it were the public employee's sole method to resign membership.

3     Although Ms. Curcio has not yet resigned from the Union, she freely admits that she has not even tried to do so. Because the Union Defendants and the State Defendants have, thus far, not held union members to the strict resignation procedures outlined in the WDEA, Ms. Curcio's potential to suffer an "injury-in-fact" due to the WDEA is "conjectural or hypothetical."

---

**End of Document**          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT "F"

2019 WL 5964778
United States District Court, E.D. Pennsylvania.

Shalea OLIVER, Plaintiff,
v.
SERVICE EMPLOYEES INTERNATIONAL
UNION LOCAL 668 et al., Defendants.

CIVIL ACTION No. 19-891
|
Filed November 12, 2019

**Synopsis**

**Background:** Former union member brought § 1983 action against public employee union, seeking monetary damages for union dues paid to union from beginning of her employment until her resignation from union, and seeking declaratory judgment that certain provisions of Pennsylvania's Public Employe Relations Act (PERA) were unconstitutional as applied to her. The parties cross-moved for summary judgment.

**Holdings:** The District Court, Gerald A. McHugh, J., held that:

[1] member was not compelled to join public employee union, and thus, her voluntary choice to join union defeated her claim for monetary damages;

[2] union was not acting under color of state law in collecting union dues pursuant to agency-shop agreement with employer, as required for former union member to state claim under § 1983;

[3] union was acting in good faith in collecting dues; and

[4] member's claim for declaratory judgment was moot.

Plaintiff's motion denied and defendant's motion granted.

West Headnotes (10)

**[1]** **Constitutional Law**
    Dues and fees

**Labor and Employment**
    Dues, Fees, and Assessments

Former union member was not compelled to join public employee union, and thus, her voluntary choice to join union defeated her claim for monetary damages for union dues paid to union from beginning of her employment until her resignation from union, on her § 1983 claim that her union membership violated her First Amendment rights; Pennsylvania's Public Employe Relations Act (PERA) made clear that all public employees had choice to join or refrain from union activities, and economic advantage in declining membership and paying agency fees rather than full union dues would have been self-evident when member joined union. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983; 43 Pa. Stat. Ann. § 1101.401.

**[2]** **Contracts**
    Invalidity of contract

A subsequent change in the law does not permit a party to a contract who has enjoyed the benefit of the bargain to rescind it with the benefit of hindsight.

1 Cases that cite this headnote

**[3]** **Labor and Employment**
    Preemption

**States**
    Labor and Employment

Unless union rule or its enforcement impinges on some policy of federal labor law, regulation of relationship between union and employee is contractual matter governed by local law.

**[4]** **Civil Rights**
    Employment practices

Public employee union was not acting under color of state law in collecting union dues pursuant to agency-shop agreement with employer, as required for former union member to state claim under § 1983 for violation of her First Amendment rights; although union was only able to lawfully collect membership

Oliver v. Service Employees International Union Local 668, --- F.Supp.3d ---- (2019)

2019 L.R.R.M. (BNA) 435,123

dues from members through authorization conferred by Pennsylvania's Public Employe Relations Act (PERA), union was not actor controlled by state, was not performing function delegated by state, and was not entwined with government policies or management, PERA did not mandate inclusion of agency shop provisions in agreements negotiated between state and public sector unions, and state was merely transfer agent in deducting dues from wages. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983; 43 Pa. Stat. Ann. § 1101.401.

1 Cases that cite this headnote

[5] Civil Rights
👈 State or territorial action, or individual or private action, in general

In determining whether the conduct at issue was taken under the color of state law, as required to state claim under § 1983, courts determine whether the action may be fairly attributable to the State. 42 U.S.C.A. § 1983.

[6] Civil Rights
👈 State or territorial action, or individual or private action, in general

There are two prongs to the fair attribution test for determining whether conduct at issue was taken under the color of state law, as required to state claim under § 1983: (1) the conduct responsible for the alleged deprivation must have been caused by the exercise of some right or privilege created by the State, or by a rule of conduct imposed by the state or by a person for whom the State is responsible. and (2) the party charged with the deprivation must be a person who may fairly be said to be a state actor. 42 U.S.C.A. § 1983.

[7] Civil Rights
👈 Private Persons or Corporations, in General

In determining whether defendant is "state actor," as required to state claim under § 1983, primary question guiding the inquiry is whether there is such a close nexus between the state

and the challenged action that seemingly private behavior may be fairly treated as that of the state itself. 42 U.S.C.A. § 1983.

[8] Civil Rights
👈 Cooperation with state actor

In determining whether private defendant is "state actor," as required to state claim under § 1983, courts inquire: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state, (2) whether the private party has acted with the help of or in concert with state officials, or (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity. 42 U.S.C.A. § 1983.

[9] Civil Rights
👈 Privilege or Immunity; Good Faith and Probable Cause

Public employee union's collection of union dues from former union member prior to *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 201 L. Ed. 2d 924 (2018), which held that no payment to a union could be collected absent an employee's affirmative consent, was based upon union's good-faith belief that it was complying with statutory and constitutional law applicable at time, and thus, union was shielded from liability on member's claim, under § 1983 for violation of her First Amendment rights, where collective bargaining agreement's (CBA) agency shop provisions were lawful under Pennsylvania's Public Employe Relations Act (PERA), and sanctioned under prior precedent of United States Supreme Court. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983; 43 Pa. Stat. Ann. § 1101.401.

1 Cases that cite this headnote

[10] Constitutional Law
👈 Public employment in general

Former public employee union member had no cognizable interest in determining

constitutionality as applied to her of union security provisions in Pennsylvania's Public Employe Relations Act (PERA), which restricted window of time in which union members could withdraw their membership and cease paying full membership dues, where member resigned from union membership, member already obtained relied, and there was no reasonable basis for suggesting that violation might recur, since state had no institutional incentive to lend support to union. 43 Pa. Stat. Ann. §§ 1101.301(18), 1101.401, 1101.705.

**Attorneys and Law Firms**

Charles O. Beckley, II, Beckley & Madden, Harrisburg, PA, Daniel R. Suhr, Jeffrey Schwab, Chicago, IL, for Plaintiff.

## MEMORANDUM

Gerald Austin McHugh, United States District Judge

**\*1**  This is an action brought in the aftermath of *Janus v. AFSCME*, ––– U.S. ––––, 138 S. Ct. 2448, 201 L.Ed.2d 924 (2018), in which a sharply divided Supreme Court significantly altered the structure under which public employee unions operate when it overruled long-standing precedent, declaring the practice of collecting fees from non-member employees unlawful. Plaintiff here, a former union member who resigned from the union after *Janus* was decided, seeks monetary damages against Defendant, Service Employees International Union Local 668 (or the Union), for membership dues paid to the Union from the beginning of her employment in December 2014 through the date of her resignation in August 2018. Although nothing compelled Plaintiff to join the Union, she argues that she cannot have given her "affirmative consent" in her choice to become a member and is now entitled to a full refund of her membership dues. Plaintiff further seeks a declaratory judgment that certain provisions of Pennsylvania's Public Employe Relations Act (PERA) are unconstitutional as applied to her.

The parties have agreed to proceed through cross-motions for summary judgment on a stipulated record.

As to Plaintiff's damages claim, the Union promptly refunded all dues deducted from her pay once she resigned from membership, and there is no factual or legal basis for any refund while she was a member.[1] Furthermore, Plaintiff's damages claim is one for violation of constitutional rights brought under 42 U.S.C. § 1983, and she cannot meet the requirement of state action. Even if she could, the Union would be protected by its good-faith reliance on settled law until *Janus* was decided.

As to Plaintiff's claim for declaratory relief with respect to the operation of PERA, she lacks standing, because she was permitted to resign from membership and the current collective bargaining agreement between the Commonwealth and Local 668 does not include the "union security" clause to which she objects. For these reasons, the Union's motion for summary judgment and motion to dismiss will be granted, and Plaintiff's motion for summary judgment will be denied.

### I. Factual Background

Plaintiff Shalea Oliver is an employee of the Pennsylvania Department of Human Services working as an Income Maintenance Caseworker in the Philadelphia County Assistance Office. Employees at the Philadelphia County Assistance Office are represented in collective bargaining by Local 668, and at the time of Plaintiff's hiring, a Collective Bargaining Agreement (CBA) existed between Local 668 and the Commonwealth as authorized by PERA. The CBA at that time included union security provisions, authorized by 43 P.S. §§ 1101.301(18), 1101.401, and 1101.705, which restricted the window of time in which Local 668 members could withdraw their membership and cease paying full membership dues.

**\*2**  Upon being hired in December 2014, Plaintiff was presented with a choice as then-sanctioned by the Supreme Court's decision in *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), and PERA: either enroll in Local 668 as a member and have full membership dues deducted regularly from her pay, or decline membership and contribute a reduced amount in the form of agency fees.[2] Plaintiff elected to enroll as a member in the Union. On June 27, 2018, the Supreme Court issued its opinion in *Janus v. AFSCME*, ––– U.S. ––––, 138 S. Ct. 2448, 201 L.Ed.2d 924 (2018), overruling *Abood* and holding that charging agency fees to non-member employees in public sector unions was unconstitutional under the First Amendment. On August 10, 2018, Plaintiff sent a letter

Oliver v. Service Employees International Union Local 668, --- F.Supp.3d ---- (2019)

2019 L.R.R.M. (BNA) 435,123

to Local 668 announcing her resignation from the Union and requesting the cessation of dues deductions. The Union transmitted the letter to the Commonwealth on September 20, 2018, instructing it to cease deducting dues. When the Commonwealth did not immediately respond, the Union wrote again in November 2018 and January 2019, until the requested action was taken, and Local 668 refunded to Plaintiff the amount deducted in the interim, a total of $287.49. Stipulation ¶¶ 18-23, ECF 35. Plaintiff is no longer a member of Local 668 and does not pay any dues to the Union.

Following *Janus*, Local 668 and the Commonwealth entered into a Side Letter effective April 2, 2019, modifying the CBA and effectively nullifying the union security provisions it contained by allowing members to resign at any time from that date forward. The Side Letter has since been superseded by a new CBA which lacks any union security provisions.

### II. Standard of Review

Plaintiff and Local 668 have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). A grant of summary judgment is appropriate "if, drawing all inferences in favor of the nonmoving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). The parties have submitted stipulated facts and agree that there are no genuine issues of material fact present in this case.

Local 668 has also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(h)(3), on the basis that Plaintiff lacks standing to pursue its claims for declaratory relief as to the application of 43 P.S. §§ 1101.301(18), 1101.401, and 1101.705. Rule 12(h)(3) provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

### III. Discussion

#### A. Plaintiff's Voluntary Choice to Join Local 668 Defeats Her Claim for Damages

**[1]** When Plaintiff was hired, PERA made clear that she was not obligated to join the Union:

"It shall be lawful for public employes to organize, form, join or assist in employe organizations... and such employes shall also have the right to refrain from any or all such activities." [3] 43 P.S. § 1101.401. It is difficult to comprehend how Plaintiff can complain that she was compelled to join the Union in violation of her First Amendment right of free association. [4] There was no legal compulsion for her to join, and the economic advantage in declining membership and paying an agency fee would have been self-evident. [5] Plaintiff contends that if only she had known of a constitutional right to pay nothing for services rendered by the Union—despite knowledge of her right at the time to refuse membership and pay less— she would have declined union membership completely. I can discern no logic in such a position. Plaintiff has not alleged she was actively pressured to join, and the Supreme Court has held that that background social pressure employees may feel to join a union is "no different from the pressure to join a majority party that persons in the minority always feel" and "does not create an unconstitutional inhibition on associational freedom." *Minnesota Community College Faculty Association v. Knight*, 465 U.S. 271, 290, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984). Not surprisingly, other courts have held that "[w]here the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced. The employee is a union member voluntarily." *Kidwell v. Transportation Communications Int'l Union*, 946 F.2d 283, 292-93 (4th Cir. 1991). *Accord Farrell v. IAFF*, 781 F. Supp. 647, 649 (N.D. Cal. 1992).

**\*3** In codifying Plaintiff's right to refrain from joining the Union, PERA was following Supreme Court precedent established long before *Janus*. The "First Amendment right to opt out of union membership was clarified in 1977 [by *Abood*]," with the result that an employee's decision to join a union thereafter must be viewed as voluntary. *Smith v. Sup. Ct., Cty. of Contra Costa*, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018). Nothing in *Janus* suggests otherwise; in fact, the plaintiff there had invoked his right not to join the defendant union and was an agency-fee payer.

**[2]** **[3]** In further analyzing whether Plaintiff's decision to join the union was voluntary, it is important to bear in mind the relationship between Plaintiff and the Union was contractual in nature. [6] A subsequent change in the law does not permit a party to a contract who has enjoyed the benefit of the bargain to rescind it with the benefit of hindsight. *See Coltec Industries, Inc. v. Hobgood*, 280

F.3d 262, 274-75 (3d Cir. 2002) (declining to allow party to revisit settlement agreement because of a change in background law, holding that it chose to do so "exchange for valuable consideration" and "must bear the consequences of its informed, counseled and voluntary decision"); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Of particular concern in *Coltec* was the belief that the company was attempting to escape the consequences of a bargain it regretted in hindsight."). As the Union points out, even in the profoundly serious context of plea agreements in criminal cases, a later development in the law benefiting a defendant does not permit that defendant to revoke a plea. *Brady v. United States*, 397 U.S. 742, 756-57, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *United States v. Johnson*, 67 F.3d 200, 201-02 (9th Cir. 1995).

Given the strength of these principles and their applicability to this context, federal courts have been unanimous in rejecting claims brought by former union members seeking to rescind membership retroactively. *Bermudez v. SEIU Local 521*, 2019 WL 1615414, at *2 (N.D. Cal. Apr. 16, 2019); *Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1016 (W.D. Wash. 2019); *Cooley v. Cal. Statewide Law Enforcement Ass'n*, 2019 WL 331170, at *3 (E.D. Cal. Jan. 25, 2019); *Smith v. Sup. Ct., Cty. of Contra Costa*, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018); *Seager v. UTLA*, 2019 WL 3822001, at *2 (C.D. Cal. Aug. 14, 2019); *Babb v. California Teachers Assn.*, 378 F. Supp. 3d 857, 877 (C.D. Cal. 2019).

Plaintiff may now regret the bargain she struck with the Union by choosing to become a member, but such later regret does not suffice to show that her past choice was unlawfully coerced or compelled. The facts to which the parties have stipulated cannot support a claim that Plaintiff was compelled to associate with Local 668 in violation of her First Amendment rights. [7]

## B. 42 U.S.C. § 1983 and State Action

**\*4** **[4]** **[5]** **[6]** Even assuming for the sake of discussion that Plaintiff were able to show that her choice to join Local 668 was somehow unlawfully compelled, she would not be able to vindicate her rights against the Union through a § 1983 suit because the Union was not acting under "color of state law." In determining whether the conduct at issue was taken under the color of state law, courts determine whether the action may "be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct.

2744, 73 L.Ed.2d 482 (1982). There are two prongs to the "fair attribution" test: first, the conduct responsible for the alleged deprivation must have been "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.*; *see also American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quoting both prongs of *Lugar* test). Plaintiff satisfies the first part of the fair attribution test. The Commonwealth has established an intricate and thorough statutory scheme governing public sector collective bargaining through PERA. Although it is true that Plaintiff was not compelled under PERA to become a member of the Union, Local 668 was only able to lawfully collect membership dues from Plaintiff and other employees through authorization conferred by PERA.

**[7]** **[8]** Plaintiff's claim founders, however, at the second part of the test, as Local 668 is not a "state actor" for the purposes of § 1983. In determining whether a party is a state actor under § 1983, the Third Circuit applies Fourteenth Amendment state action doctrine. *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir 2005) ("We consider actions 'under color of law' as the equivalent of 'state action' under the Fourteenth Amendment."). [8] The primary question guiding the inquiry is whether "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* at 340 (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)). [9] *Leshko* further refined the inquiry by identifying two factual categories of cases that may constitute state action, those involving activities and those involving actors. Under *Leshko*, a private party that undertakes "an *activity* that is significantly encouraged by the state or in which the state acts as a joint participant" would be a state actor under § 1983. *Id.* at 340. "Determining state action in such cases requires tracing the activity to its source to see if that source fairly can be said to be the state." *Id.* Stated differently, "[t]he question is whether the fingerprints of the state are on the activity itself." *Id.* Alternatively, "an *actor* that is controlled by the state, performs a function delegated by the state, or is entwined with government policies or management" can implicate § 1983 state action doctrine. *Id.*

**\*5** It is simple to dispense with the second category of cases identified by *Leshko*. Local 668 is not an actor controlled

by the state, is not performing a function delegated by the state, and is not entwined with government policies or management. The leadership, bylaws, operations, and priorities of Local 668 are all determined by its membership, not by the Commonwealth. Local 668 has not been delegated any state functions, nor does it rely upon material resources from the state in carrying about its own activities. Additionally, although public sector collective bargaining is sanctioned by the Commonwealth, Local 668 does not play a managerial role in shaping government policies or management decisions; to the contrary, it negotiates with the Commonwealth in an adversarial posture on behalf of its membership. All these facts would indicate that Local 668 is not a state actor under *Leshko*.

In determining whether the *activity* of enrolling public sector employees as members pursuant to agency shop provisions constitutes state action, Local 668 emphasizes that public sector employees had and continue to have the option of joining or refraining from joining unions as members. Moreover, as Local 668 correctly observes, it is unlawful for the Commonwealth or public sector unions to coerce employees into becoming members, because PERA confers a statutory right on employees to abstain from taking part in union activity. These arguments reinforce the fact that the state cannot be said to putting its thumb on the scale in promoting union membership enrollment. Weighing against the Union's position is the broader structural context through which Local 668 and the Commonwealth interact in the collective bargaining process. Local 668 is only able to organize, enroll, and collect dues from members insofar as it has been authorized to do so by PERA, and the Commonwealth is authorized to deduct dues payments from employee paychecks.

None of these facts, however, rise to the level required to find that the Commonwealth is a "joint participant" for the purposes of state action under § 1983. The Third Circuit has analyzed this question with respect to the National Labor Relations Act (NLRA), a statute analogous to PERA in many respects, squarely holding that "state action is not present" in circumstances involving "actions taken by a union pursuant to an agency-shop provision in a collective bargaining agreement." *White v. Communications Workers of America, AFL-CIO, Local 1300*, 370 F.3d 346, 349-50 (3d Cir. 2004). In doing so, the *White* Court adopted the analysis of the District of Columbia Circuit in an earlier case, *Kolinske v. Lubbers*, 712 F.2d 471 (D.C. Cir. 1983), which had found that the NLRA's authorization of agency shop provisions

did not amount to state action because the "NLRA does not mandate the existence or content of, for example, seniority clauses, work rules, staffing requirements, or union security provisions like agency shop clauses or mandatory payroll deductions for union dues," and "the parties, like any two parties to a private contract, were still free to adopt or reject an agency shop clause" in their CBA. *Id.* at 478. [10] Both plaintiffs in those cases were unsuccessful in arguing that the NLRA's authorization of agency shop provisions in CBAs was enough to satisfy § 1983's state action requirements.

***6** Although *White* and *Kolinske* did not involve public employee unions, their shared rationale also has logical force in this context. Like its NLRA counterpart, PERA does not mandate the inclusion of agency shop provisions in agreements negotiated between the Commonwealth and public sector unions, but instead merely authorizes them. The fact that the parties availed themselves of the collective bargaining procedures established by PERA is not sufficient to establish state action. Finding otherwise would contradict the principles of *White*.

In searching for additional avenues to bolster its argument that state action is present, Plaintiff cites to several cases which hold that dues authorization constitutes a contract between the employee and the employer, not the Union. Pl.'s Resp. to Mot. for Summ. J. at 3-4, ECF 39; *see, e.g.*, *Int'l Ass'n of Machinists Dist. Ten v. Allen*, 904 F.3d 490, 492 (7th Cir. 2018) ("A dues-checkoff authorization is a contract between an employer and employee for payroll deductions....The union itself is not a party to the authorization."). [11] If dues deduction authorizations are properly considered as two-party contracts between the employee and the employer, Plaintiff reasons, then state action must necessarily be implicated.

I find this view of dues-deduction provisions unrealistic and artificial, because once the Commonwealth has issued a wage payment under the CBA to its employee it has no beneficial interest in any portion of those wages. In deducting dues from the employee's pay it is simply acting as a transfer agent carrying out the separate agreement between the union and its member. Such an arrangement is, as the National Labor Relations Board has found, accurately described as a third-party assignment of a right:

> A check-off authorization is that special form of contract defined in the Restatement 2d, *Contracts* Section

317 (1981), as an "assignment of a right." More specifically, a checkoff authorization is a partial assignment of a future right, that is, an employee (the assignor) assigns to his union (the assignee) a designated part of the wages he will have a right to receive from his employer (the obligor) in the future, so long as he continues his employment. The employer is thereby authorized to pay the specified amounts to the union when the employee's right to wage payments accrues.

*IBEW Local No.2088 (Lockheed Space Operations)*, 302 N.L.R.B 322, 327 (1991) (internal citations omitted).

The union's right to collect the dues is not created by the Commonwealth; it is created by the union's contract with its members. The Commonwealth's role as employer role is strictly ministerial, implementing the instructions of the employee. The union would ultimately collect its due regardless, but by some other means. It cannot credibly be said that by affording the convenience of a dues check-off a public employer is "significantly encouraging" the assignment or that the employer is its "source" under *Leshko*. As a result, the Union is not involved in state action by collecting dues pursuant to an agency-shop agreement with the employer. [12]

### C. Good-Faith Defense

**\*7** **[9]** Even if there were sufficient state action to permit a § 1983 suit against the Union to proceed, Local 668 would nonetheless prevail based upon its good-faith belief that it was complying with statutory and constitutional law prior to *Janus*. Numerous federal courts have held that good-faith reliance on prior precedent defeats refund claims brought in the aftermath of *Janus*. [13] The Third Circuit, following the Fifth Circuit's lead, has found that "private defendants should not be held liable under § 1983 absent a showing of malice and evidence that they either knew or should have known of the statute's constitutional infirmity." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1274 n.29 (3d Cir. 1994) (quoting *Wyatt v. Cole*, 994 F.2d 1113, 1120 (5th Cir. 1993)).

Under the Third Circuit's standard, Plaintiff would need to prove that the union had a "subjective" understanding that it was violating her rights or displayed "gross negligence" in maintaining a belief that its conduct was lawful. *Jordan*, 20 F.3d at 1277-78. [14]

Plaintiff will not be able to do so on the record here. The CBA's agency shop provisions were lawful under PERA, and more importantly, were sanctioned by the Supreme Court in *Abood*. Their constitutionality had been considered and upheld by the Supreme Court multiple times after *Abood*, including most recently in *Harris v. Quinn*, 573 U.S. 616, 134 S.Ct. 2618, 189 L.Ed.2d 620 (2014). As noted at the outset, *Janus* was decided by a five-to-four majority, with a powerful dissent grounded in the doctrine of *stare decisis*. Against that background it would be unreasonable to hold that the Union should have known of the constitutional infirmity of agency shop provisions.

### D. Plaintiff's Claims for Declaratory Relief Are Moot

**[10]** Finally, Plaintiff's claims for declaratory and injunctive relief regarding the application of 43 P.S. §§ 1101.301(18), 1101.401, and 1101.705 suffers from lack of standing and mootness. As Plaintiff is no longer a member of the Union, she has no cognizable interest in determining the constitutionality of the union security provisions, and an opinion rendered by me on the issue would be advisory. [15] *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). As to mootness, Plaintiff obtained relief even before the Side Letter was negotiated. Plaintiff cites Paragraph 5 of the the Side Letter to suggest that the Commonwealth is required to deduct dues regardless of the employee's wishes. But this is intellectually dishonest because it ignores Paragraphs 6 through 8, which make clear that the opposite is true. Side Letter, ECF 26-6. Moreover, the parties have stipulated that the CBA in effect at the time has been superseded by an amended CBA, which does not have a "maintenance of membership" provision. Stipulation ¶ 7. Finally, as noted in my memorandum dismissing claims against the Commonwealth, because the Commonwealth has no institutional incentive to lend support to the Union, there is no reasonable basis for suggesting that a violation might recur.

### IV. Conclusion

Oliver v. Service Employees International Union Local 668, --- F.Supp.3d ---- (2019)

2019 L.R.R.M. (BNA) 435,123

**\*8**  Plaintiff's claim for damages suffers from multiple defects, the most significant of which is that the record cannot support a conclusion that she was in any sense compelled to join the Union. Furthermore, Plaintiff is no longer a member of the Union and the current CBA does not contain any union security provisions, creating issues as to both standing and mootness. Accordingly, I grant both Local 668's Motion for

Summary Judgment and its Motion to Dismiss, and deny Plaintiff's Motion for Summary Judgment.

### All Citations

--- F.Supp.3d ----, 2019 WL 5964778, 2019 L.R.R.M. (BNA) 435,123

## Footnotes

1   In her complaint, Plaintiff requested damages in the form of (1) all dues paid to the Union before the June 27, 2018, *Janus* decision and (2) all dues paid after the *Janus* decision. The Union has already refunded all dues paid to Plaintiff from the August, 10, 2018 date of her resignation letter, and so Plaintiff effectively seeks a refund of all dues paid prior to that date. I deal with Plaintiff's request for declaratory and injunctive relief regarding exclusive representation in my opinion regarding Plaintiff's claims against the Commonwealth.

2   Agency fees, or "fair share" fees, were reduced payments that public sector unions could collect from non-member employees solely for the purposes of fulfilling their collective bargaining obligations. The levying of agency fees had been endorsed by *Abood* as a method for, *inter alia*, preventing non-members from "free riding" off of unions' efforts to obtain benefits for all represented employees, while also recognizing non-members' First Amendment rights to refrain from subsidizing ideological activity they were opposed to. *Abood*, 421 U.S. at 221-22, 97 S.Ct. 1782. Workplaces governed by CBAs that allow for the collection of agency fees are known as agency shops.

3   The irregular spelling "employe" appears in public sector labor law statutes of other states as well. The Wisconsin Court of Appeals examined this anomaly with respect to its own statute and determined that it resulted from a deliberate decision made by the statute's original drafter to prevent typographical errors: "Since 'e' and 'r' are right next to each other on the typewriter keyboard, there's a real risk that 'employer' might be typed 'employee,' and vice-versa." *Richland Sch. Dist. v. Dep't of Indus., Labor & Human Relations, Equal Rights Div.*, 166 Wis.2d 262, 479 N.W.2d 579, 583 n.1 (Wis. Ct. App. 1991).

4   At the Rule 16 Conference, Plaintiff's Counsel was unable to identify any values exemplified by the Union or any positions it has taken that were objectionable to Plaintiff.

5   The parties have stipulated that agency fees would have amounted to 56.1 percent of full union dues. Stipulated Facts ¶ 13.

6   "Unless the rule or its enforcement impinges on some policy of the federal labor law, the regulation of the relationship between union and employee is a contractual matter governed by local law." *Scofield v. NLRB*, 394 U.S. 423, 426 n.3, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969); *see also Int'l Ass'n of Machinists v. Gonzales*, 356 U.S. 617, 618, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958) (holding the "contractual conception of the relation between a member and his union widely prevails in this country"); *James v. Int'l Bhd. of Locomotive Engineers*, 302 F.3d 1139, 1146 (10th Cir. 2002) ("It is well settled that the relationship existing between a trade union and its members is contractual and that the constitution ... constitute[s] a binding contract.") (citations omitted).

7   Agency fees are not at issue in this case, because they would be subsumed by the union dues that Plaintiff voluntarily paid. Even if they were, no federal court has interpreted *Janus* as entitling non-members to a refund of agency fees. *See Cook v. Brown*, 364 F. Supp. 3d 1184, 1193 (D. Or. 2019) (noting that "there is no indication that *Janus* intended to open the floodgates to retroactive monetary relief"); *Hough v. SEIU Local 521*, 2019 WL 1785414, at \*1 (N.D. Cal. Apr. 16, 2019); *Babb v. California Teachers Association*, 378 F. Supp. 3d at 876 (C.D. Cal. 2019); *Wholean v. CSEA Local 2001*, 2019 WL 1873021, at \*3 (D. Conn. April 26, 2019); *Bermudez v. SEIU, Local 521*, 2019 WL 1615414, at \*1 (N.D. Cal. Apr. 16, 2019); *Mooney v. Illinois Educ. Ass'n*, 372 F. Supp. 3d 690, 707 (C.D. Ill. 2019); *Janus v. AFSCME*, ––– F.3d ––––, –––– – ––––, 2019 WL 5704367, at \*11-12 (7th Cir. Nov. 5, 2019).

8   The defendants in *Leshko* were former foster parents to the plaintiff, and the foster care program is governed by Pennsylvania state law and regulations. *See* 55 Pa. Code §§ 3700 et. seq.; 42 Pa. §§ 6301 et. seq. As such, the *Leshko* Court's understandably focused on the second prong of *Lugar's* fair attribution test, whether the parents were state actors for the purpose of § 1983 liability. Th e first prong of the *Lugar* test was easily satisfied.

9   It is worth echoing the Third Circuit's characterization of state action doctrine as "labyrinthine." *Leshko*, 423 F.3d at 338. Even while articulating the inquiry in terms of there existing a close nexus between the state and the challenged action,

the *Leshko* Court acknowledged there is "no 'simple line' between states and private persons." *Id.* at 339. In *Kach v. Hose*, 589 F.3d 626, 646 (3d. Cir. 2009), the Third Circuit reaffirmed *Leshko's* formulation of the inquiry but made additional reference to "three broad tests generated by Supreme Court jurisprudence" that it had outlined in an earlier case, *Mark v. Borough of Hatboro*, 51 F.3d 1137 (3d Cir. 1995). As formulated by *Mark* and *Kach*, these tests are: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.3d at 646 (quoting *Mark*). In my view, the *Leshko* Court's categorization of state action cases, along with the fair attribution test laid out by *Lugar*, are largely complementary with the criteria that comprise the "broad tests" previously identified by the Third Circuit in *Mark* and *Kach*. Furthermore, both *Leshko* and *Kach* emphasize that the state action inquiry is fact-specific, and thus resistant to fixed categorization. *Leshko*, 423 F.3d at 339; *Kach*, 589 F.3d at 646.

10    Plaintiff cites to *Abood*, *Beck v. Communications Workers of America*, 776 F.2d 1187 (4th Cir. 1985), and *Linscott v. Millers Falls Co.*, 440 F.2d 14 (1st Cir. 1971), for the proposition that a public-sector union acting pursuant to an agency shop agreement authorized by statute is "state action." But within this circuit, *White* controls, and the *White* Court explicitly noted a split among the circuits and chose *Kolinske*. *White*, 370 F.3d at 353. It is also important to note that the cases on which *Abood* relied, *Employes' Dept. v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956) and *Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), were concerned with the Railway Labor Act ("RLA"), which goes further than the NLRA or PERA by not merely permitting parties to bargain for agency shop agreements, but also preempting any state laws that might otherwise seek to prevent parties from agreeing to implement union shop provisions, which require union membership as a condition of employment. 45 U.S.C. § 152 subd. 11.

11    *See also NLRB v. Atlanta Printing Specialties & Paper Prods. Union*, 523 F.2d 783, 785 (5th Cir. 1975); *NLRB v. U.S. Postal Serv.*, 827 F.2d 548, 554 (9th Cir. 1987).

12    In *Janus v. AFSCME*, ―― F.3d ――, ――, 2019 WL 5704367 at *7 (7th Cir. Nov. 5, 2019), following remand, the Seventh Circuit recently reached a different conclusion as to state action even as it rejected the plaintiff's claim for a refund of his agency fee payments. But I am bound by *White*, and in any event do not find the Seventh Circuit's analysis persuasive for the reasons set forth above.

13    *See, e.g.*, *Janus v. AFSCME*, ―― F.3d ――, 2019 WL 5704367 (7th Cir. Nov. 5, 2019); *Danielson v. AFSCME Council 28*, 340 F. Supp. 3d 1083, 1086 (W.D. Wash. 2018); *Carey v. Inslee*, 364 F. Supp. 3d 1220, 1232 (W.D. Wash. 2019); *Cook v. Brown*, 364 F. Supp. 3d 1184, 1193 (D. Or. 2019); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1006 (D. Alaska 2019); *Hough v. SEIU Local 521*, 2019 WL 1274528 at *1 (N.D. Cal. Mar. 20, 2019), *amended*, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019); *Lee v. Ohio Educ. Ass'n*, 366 F. Supp. 3d 980, 981 (N.D. Ohio 2019); *Mooney v. Illinois Educ. Ass'n*, 372 F. Supp. 3d 690, 706 (C.D. Ill. 2019); *Bermudez v. SEIU Local 521*, 2019 WL 1615414 at *1 (N.D. Cal. Apr. 16, 2019); *Akers v. Maryland Educ. Ass'n*, 376 F. Supp. 3d 563, 572 (D. Md. 2019); *Wholean v. CSEA SEIU Local 2001*, 2019 WL 1873021 at *3 (D. Conn. Apr. 26, 2019); *Babb*, 378 F. Supp. 3d at 870; *Hernandez v. AFSCME Cal.*, 386 F. Supp. 3d 1300, 1304 (E.D. Cal. 2019); *Diamond v. Pa. State Educ. Ass'n*, 399 F.Supp.3d 361, ――, 2019 WL 2929875 at *29 (W.D. Pa. 2019); *Ogle v. Ohio Civil Svc. Employees Ass'n, AFSCME, Local 11*, 397 F. Supp. 3d 1076, 1087-88 (S.D. Ohio 2019).

14    Though some courts and commentators have looked to common law tort analogues to determine whether and how the good-faith defense should apply to private parties sued under § 1983, the Third Circuit has not required such an approach and it not my place to adopt one.

15    Plaintiff's citation to *Knox v. SEIU, Local 1000*, 567 U.S. 298, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012) is inapposite. In *Knox*, the union levied a special assessment on non-members. Some non-members sued the union to obtain a refund: the district court found in favor of the plaintiffs but the Ninth Circuit reversed. After the Supreme Court granted certiorari, SEIU voluntarily refunded plaintiffs the assessments in an effort to render their claims moot. Here, Plaintiff resigned her membership several months before bringing her suit, and thus lacks standing to have her claims heard before this court. Furthermore, the Union and the Commonwealth have since removed the union-security provisions at issue in the current CBA between them.

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "G"

KeyCite Blue Flag – Appeal Notification

Appeal Filed by KOUROSH KENNETH HAMIDI, ET AL v. SERVICE EMPLOYEES INTERNATIONAL, ET AL, 9th Cir., December 4, 2019

2019 WL 5536324
Only the Westlaw citation is currently available.
United States District Court, E.D. California.

Kourosh Kenneth HAMIDI, et al., and the
Class They Seek to Represent, Plaintiffs,
v.
SERVICE EMPLOYEES INTERNATIONAL
UNION LOCAL 1000, Defendant.

No. 2:14-cv-00319 WBS KJN
|
Signed 10/24/2019
|
Filed 10/25/2019

**Attorneys and Law Firms**

W. James Young, PHV, Pro Hac Vice, National Right to Work Legal Defense Foundation Inc, Springfield, VA, Steven R. Burlingham, Gary, Till, Burlingham & Lynch, Roseville, CA, for Plaintiffs.

Anne M. Giese, Service Employees International Union, Local 1000, Sacramento, CA, Eve H. Cervantez, Jeffrey B. Demain, Patrick Casey Pitts, Eric Prince Brown, Altschuler Berzon, LLP, San Francisco, CA, York Jiann Chang, Los Angeles, CA, for Defendant.

MEMORANDUM AND ORDER RE: CROSS-
MOTIONS FOR SUMMARY JUDGMENT, MOTION
TO DECERTIFY THE CLASS, AND MOTION
TO AMEND CLASS CERTIFICATION ORDER

WILLIAM B. SHUBB, UNITED STATES DISTRICT JUDGE

**\*1** Plaintiffs Kourosh Kenneth Hamidi et al., and the class they represent ("the Employees"), brought this class action against defendants Service Employees International Union Local 1000 ("Local 1000") and the California state controller,[1] alleging that Local 1000's 'opt-out' system for collecting optional union fees violates the Employees' First Amendment rights. In light of the Supreme Court's recent decision in Janus v. AFSCME, Council 31, 138 S. Ct. 2448

(2018), requiring employees' affirmative consent prior to any collection of union fees, the court is now presented with the parties' cross-motions for summary judgment, defendant's motion to decertify the class, and plaintiffs' motion to amend the class certification order.

I. Factual and Procedural Background
On June 27, 2018, the Supreme Court decided Janus and held that payment to a union may not be collected from an employee without the employee's affirmative consent. 138 S. Ct. at 2486. The decision overruled Abood v. Detroit Board of Education, 431 U.S. 209 (1977), and its progeny, which established that unions may require nonmembers to pay a fee to the union that would be used to fund expenditures germane to collective bargaining.

Plaintiffs are employees of the State of California. (Local 1000 Resp. to Statement of Undisputed Material Facts ("SUMF") at 7, ¶ 6 (Docket No. 152-1).) Local 1000 is the exclusive representative for collective bargaining purposes of plaintiffs and other state employees. (Id. at 8, ¶ 8).

Before Janus, employees represented by Local 1000 could either join the union as dues-paying members (id. at 11, ¶ 12) or remain nonmembers and pay Local 1000 a 'fair share' fee. (Id. at 11, ¶ 12). Nonmembers could choose to pay the "full" fair share fee, which Local 1000 used to fund expenditures both germane and not germane to collective bargaining, or a "reduced" fair share fee, which defendant used to fund only expenditures that were germane to collective bargaining. (See Decl. of Brian Calderia ("Caldeira Decl." ¶ 3 (Docket No. 37).) Non-germane expenditures, also known as non-chargeable expenditures, included, for example, contributions to "political or ideological causes only incidentally related to the terms and conditions of employment." (Local 1000 Resp. to SUMF at 12, ¶ 13 (Docket No. 152-1)).

Under that pre-Janus system, in deciding whether to charge a nonmember the full or reduced fair share fee, Local 1000 had, with the state's authorization and assistance, implemented an 'opt-out' system. (Id. at 3-4, ¶ 1). Prior to each annual fee cycle, Local 1000 sent nonmembers, a notice ("Hudson notice") informing them that they will be charged the full fair share fee for the upcoming cycle unless they opt out by sending back a written statement stating that they wish to be charged only the reduced fair share fee. (Local 1000 Resp. to SUMF at 11-12, ¶ 13.) Employees who did not object were charged the full fair share fee. (Pls.' Mot. in Sup. Summ. J. at 3-4 (Docket No. 149-1).) The day after Janus was decided, the

California State Controller's Office cancelled the deduction of agency fees from all nonconsenting public employees. (See June 18, 2019 Order at 5 (Docket No. 139).)

**\*2** On January 31, 2014, plaintiffs brought this action under 42 U.S.C. § 1983 alleging that Local 1000's fee collection system violated nonmembers' First and Fourteenth Amendment rights. (Compl. at 1-2, ¶ 1 (Docket No. 1).) This court first certified plaintiff's cause of action for class treatment to the extent it is brought as a facial challenge to the constitutionality of Local 1000's opt-out requirement and procedure. (See May 22, 2015 Order at 3 n.3, 20 (Docket No. 53).) Then, evaluating Local 1000's fee collection system under pre-Janus precedent, this court granted summary judgment in favor of defendants and denied plaintiffs' challenge to the constitutionality of Local 1000's opt-out requirement. (See Feb. 8, 2017 Order at 14, 18 (Docket No. 94).) After the Court decided Janus, this court dismissed as moot plaintiffs' claims for declaratory and injunctive relief. (See June 18, 2019 Order at 16 (Docket No. 139).) Plaintiff's "sole remaining claim" is "for retrospective monetary relief." (Joint Status Report at 1 (Docket No. 143).)

II. Defendant's Motion for Summary Judgment

Plaintiff seeks repayment of all fees –- both germane and non-germane to collective bargaining -- collected from nonmembers prior to the Court's decision in Janus. (Pls.' Mot. in Supp. Summ. J. at 46 (Docket No. 149-1).) Defendant does not contest that Local 1000's opt-out system to collect agency fees from nonmembers violates nonmembers' First Amendment rights under Janus. Defendant instead asserts a good faith defense to § 1983 liability because the law at the time of Local 1000's collection of agency fees permitted such a system. This court agrees that such a defense applies here.

A. Section 1983 Good-Faith Defense

In Wyatt v. Cole, the Supreme Court did not foreclose "the possibility that private defendants faced with § 1983 liability ... could be entitled to an affirmative defense based on good faith." Wyatt v. Cole, 504 U.S. 158, 169 (1992); see also Richardson v. McKnight, 521 U.S. 399, 413–14 (1997) ("Wyatt explicitly stated that it did not decide whether or not the private defendants before it might assert, not immunity, but a special 'good-faith' defense ... we do not express a view on this last-mentioned question.").

The Supreme Court in Janus "itself did not specify whether the plaintiff was entitled to retrospective monetary relief for

conduct the Supreme Court had authorized for the previous forty years." Cooley v. California Statewide Law Enf't Ass'n, 385 F. Supp. 3d 1077, 1081 (E.D. Cal. 2019) (citing Janus, 138 S. Ct. at 2486). The controlling law in the Ninth Circuit, however, recognizes a good faith defense in shielding private defendants from liability in § 1983 actions. In Clement v. City of Glendale, the Ninth Circuit granted summary judgment in favor of defendant –- a towing company -- as to the plaintiff's § 1983 claim because the defendant "did its best to follow the law" in that "the tow was authorized by the police department, conducted under close police supervision and appeared to be permissible under both local ordinance and state law." 518 F.3d 1090, 1097 (9th Cir. 2008). Since Clement, "[t]he threshold question of whether the good faith defense is available to private parties in § 1983 actions has been answered affirmatively by the Ninth Circuit." Cook v. Brown, 364 F. Supp. 3d 1184, 1190 (D. Or. 2019).

B. Application of Good-Faith Defense

1. Legal Standard

Plaintiffs construct a five-element good-faith test out of the Ninth Circuit's decision in Clement to argue that defendant's actions do not qualify for the defense. No court, however, has read Clement so rigidly. "[T]he [good faith] defense has been applied by the Ninth Circuit without a precise articulation of its contour." Cook v. Brown, 364 F. Supp. 3d 1184, 1192 (D. Or. 2019); see also Carey v. Inslee, 364 F. Supp. 3d 1220, 1228–29 (W.D. Wash. 2019) ("The Ninth Circuit has thus far expressed no position regarding the proper standard."). Courts instead apply "traditional principles of equity and fairness." Cook, 364 F. Supp. 3d at 1192. Because union defendants relied on 40-year precedent, and because unions cannot retract the bargaining they carried out on plaintiffs' behalf, district courts have concluded that requiring the unions to refund the collected fees would be inequitable. See, e.g., Babb, 378 F. Supp. 3d at 876; Cook, 364 F. Supp. 3d at 1192; Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1008 (D. Alaska 2019).

**\*3** In the fair share fee context, "every district court to consider whether unions that collected agency fees prior to Janus have a good-faith defense to § 1983 liability have answered in the affirmative." Babb v. California Teachers Ass'n, 378 F. Supp. 3d 857, 872 (C.D. Cal. 2019) (collecting cases). Most recently, this court found that, because unions enjoyed Supreme Court and statutory authorization, the

unions that followed then-valid law were "entitled to the good-faith defense as a matter of law." Hernandez v. AFSCME California, 2019 WL 2546195, at *2 (E.D. Cal. June 20, 2019).

Although courts have not articulated a standard to evaluate good faith after Janus, the district courts that have considered the issue have found good faith where the union complied with then-existing Supreme Court precedent and state law. See, e.g., Babb, 378 F. Supp. 3d at 876 (finding good faith where union defendant relied "on a presumptively valid state statute" and "the 40-year-precedent of Abood"); Danielson v. Am. Fed'n of State, Cty., & Mun. Employees, Council 28, AFL-CIO, 340 F. Supp. 3d 1083, 1086 (finding good faith where "the Union Defendant followed the then-applicable laws"); Cook, 364 F. Supp. 3d at 1192 (finding that "[i]t would be highly inequitable to hold [the union defendant] retroactively liable" where the union collected fees in accordance with state law and Supreme Court precedent); Crockett, 367 F. Supp. 996, 1006 (same).

Moreover, the limited circuit-level guidance available concludes that a union's compliance with previously valid law suffices to grant a good faith defense to § 1983 liability. In Jarvis v. Cuomo, 660 F. App'x 72, (2d Cir. 2016), the Second Circuit considered a union's § 1983 liability for fair share fees collected before the Supreme Court ruled in Harris v. Quinn, 573 U.S. 616 (2014), that unions may not compel personal care providers to pay fair share fees. The Jarvis court found that the union was "not liable for damages stemming from the pre-Harris collection of fair share fees," because the union "relied on a validly enacted state law and the controlling weight of Supreme Court precedent," such that "it was objectively reasonable for [the union] 'to act on the basis of a statute not yet held invalid.' " Jarvis v. Cuomo, 660 F. App'x 72, 76 (2d Cir. 2016) (citing Pinksy v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996)).

This court previously "express[ed] skepticism that the good faith defense depends on more than the union's actual compliance with then-existing law." Hamidi v. Serv. Employees Int'l Union Local 1000, 386 F. Supp. 3d 1289, 1300 (E.D. Cal. 2019). Today, in reliance on the guidance above, this court makes the standard clear: in the agency fee context, a union's compliance with then-existing law indeed suffices to find good faith.

### 2. Application to Local 1000's Opt-Out System

Local 1000 is entitled to the good-faith defense because its opt-out system complied with then-valid Supreme Court precedent. Prior to Janus, this court specifically found that Local 1000's opt-out procedure was consistent with both Ninth Circuit and Supreme Court decisions on agency fee collection. (Feb. 8, 2017 Order at 14, 18 (Docket No. 94).) When plaintiffs filed suit, it was well established that unions may require nonmembers to pay the portion of the fair share fees that are used to fund expenditures germane to collective bargaining. Abood, 431 U.S. at 235. Further, this court found that the Ninth Circuit's finding in Mitchell v. Los Angeles Unified Sch. Dist., namely "that the Constitution does not mandate a system under which nonmembers ... 'opt in,' " 963 F.2d 258, 260 (9th Cir. 1992), was consistent with Supreme Court jurisprudence and was therefore the controlling law in the circuit. (See Feb. 8, 2017 Order at 12-13 (Docket No. 94).) Defendants "are entitled to rely" upon the Supreme Court's binding precedent and Local 1000 did so here. See Lee v. Ohio Educ. Ass'n, 366 F. Supp. 3d 980, 983 (N.D. Ohio 2019).

**\*4** Local 1000 also complied with then-valid state law. The Dills Act ("the Act") expressly permitted the collection of fair share fees. See Cal. Gov't Code § 3513(k). Specifically, the Act permitted Local 1000 to establish procedures for a nonmember employee to object to paying the full fair share fee. Cal. Gov't Code § 3515.8. Moreover, the Public Employment Relations Board issued a regulation requiring exclusive representatives like Local 1000 to "provide an annual written notice to each nonmember who will be required to pay an agency fee" that includes "procedures for ... objecting to the payment of an agency fee amount that includes nonchargeable expenditures." 8 C.C.R. § 32992. Both Supreme Court precedent and then-valid state law authorized Local 1000 to require nonmembers to opt out of payment of non-chargeable fees. Local 1000's compliance with then-valid law therefore entitles defendant to a good-faith defense as a matter of law.

### 3. Local 1000's Subjective Belief

Plaintiffs contend that defendant did not in fact act in good faith because they should have known that the Court would overturn Abood. Plaintiffs are correct that "unions have been on notice for years regarding [the] Court's misgivings about Abood." Janus, 138 S. Ct. at 2484. But "reading the tea leaves

Case 2:18-cv-03439-NGG-RLM   Document 63   Filed 12/17/19   Page 60 of 100 PageID #: 1102
Hamidi v. Service Employees International Union Local 1000, Slip Copy (2019)

2019 WL 5536324

of Supreme Court dicta has never been a precondition to good faith reliance on governing law." Cook, 364 F. Supp. 3d at 1192. To find otherwise would force defendants to engage in "constitutional gambling" and "decid[e] if they truly agree with the Supreme Court's reasoning to avoid future liability." Carey, 364 F. Supp. 3d at 1231.

More importantly, evaluating defendant's October Term predictions in a good-faith determination would "imperil the rule of law." Cook, 364 F. Supp. 3d at 1193. Unions that followed what was then the law –– and Abood -- would not be entitled to the defense, while those that questioned the Supreme Court's binding interpretation of the Constitution would walk away unscathed. See also Danielson, 340 F. Supp. 3d at 1086 (concluding that consideration of a union's

"subjective anticipation of an unpredictable shift in the law undermines the importance of observing existing precedent"). Defendant need not engage in telepathy to avail itself of the good faith defense to § 1983 liability. See Winner v. Rauner, No. 15-cv-7213, 2016 WL 7374258, at *5 (N.D. Ill. 2016). Instead, as stated above, Local 1000's compliance with what was then the law is sufficient for a finding of good faith.

IT IS THEREFORE ORDERED that defendant's Motion for Summary Judgment (Docket No. 148) be, and the same hereby is, GRANTED. [2]

**All Citations**

Slip Copy, 2019 WL 5536324

---

Footnotes

1   After this court dismissed plaintiffs' claims for declaratory and injunctive relief, plaintiffs had no claims remaining against the state controller. The court thus dismissed the party from this lawsuit. (See June 18, 2019 Order at 16 (Docket No. 139).)

2   The court's ruling here resolves plaintiffs' "sole remaining claim." (Joint Status Report at 1 (Docket No. 143).) Defendant's motion to decertify the class and plaintiffs' motion to amend the class certification order are therefore moot.

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "H"

2019 WL 4750423
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Bethany LASPINA, on behalf of herself
and others similarly situated, Plaintiffs,

v.

SEIU PENNSYLVANIA STATE
COUNCIL, et al., Defendants

CIVIL ACTION NO. 3:18-2018
|
Signed 09/30/2019

**Attorneys and Law Firms**

Edmond R. Shinn, Law Offices of Edmond R. Shinn, Esq., Ltd., Fort Washington, PA, Jonathan F. Mitchell, Mitchell Law PLLC, Austin, TX, Shannon W. Conway, Talcott J. Franklin, Talcott Franklin P.C., Dallas, TX, Walter S. Zimolong, Zimolong LLC, Villanova, PA, for Plaintiffs.

Lauren M. Hoye, Willig, Williams & Davidson, Philadelphia, PA, P. Casey Pitts, Scott A. Kronland, Altshuler Berzon LLP, San Francisco, CA, for Defendant SEIU Local 668.

J. Timothy Hinton, Haggerty Hinton & Cosgrove LLP, Scranton, PA, for Defendant Scranton Public Library.

**MEMORANDUM**

MALACHY E. MANNION, United States District Judge

**\*1** Pending before the court are the motions to dismiss the second amended complaint ("SAC"), (Doc. 66), of plaintiff Bethany LaSpina filed by defendants SEIU Local 668 ("Local 668"), (Doc. 70), and Scranton Public Library ("SPL"), (Doc. 88). Defendants' motion are filed pursuant to Fed.Civ.P. 12(b)(1) for lack of jurisdiction and lack of standing, and for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). Local 668 and SPL contend that plaintiff lacks standing with respect to her claim in Count 1since she did not pay fair-share fees, she did not pay union dues and, that she lacks standing to pursue class action claims on behalf of former fair-share fee payers and union members who allegedly joined the union because of the fair-share fee requirement. Local 668 and SPL also contend that since plaintiff already received all available relief for

her claims in Count 2, regarding post-resignation dues, and since deduction for dues cannot re-start without her written authorization, these claims should be dismissed as moot. Further, Local 668 and SPL argue that plaintiff lacks standing to pursue her claim in Count 3, in which she seeks an order requiring the union to obtain post-Janus authorizations from its members before receiving future due since plaintiff no longer has an actual controversy before the court regarding this claim. For the reasons that follow, Local 668's and SPL's motions to dismiss under Rule 12(b)(1) will be **GRANTED** and, plaintiff's federal claims against these defendants will be **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND** [1]
Plaintiff is an employee of SPL, which is a Pennsylvania non-profit corporation and represented in collective bargaining by Local 668. Plaintiff joined Local 668 in October 2015 and was a dues-paying member of this union until she resigned her membership in August 2018. In her resignation letter, plaintiff also revoked her prior authorization for SPL to deduct from her pay dues for Local 668. In her SAC, plaintiff alleges that she became a member of Local 668 because "she was instructed [by SPL] to fill out a union-membership form at her job orientation," and that SPL's human resources officer "incorrectly told [her] that ... 'union dues are mandatory by law.' " Plaintiff states that she would have chosen to be a fair-share fee payer as opposed to a union member, if SPL had made her aware of that option.

After the Supreme Court decided Janus [2], Local 668 notified SPL and its other public employers and directed them to immediately stop requesting or deducting fair-share fees from employees who were not members of Local 668. (See Declaration of Claudia Lukert, Local 668's Chief of Staff, Doc. 72, ¶'s16-17). Following Local 668's instruction, SPL stopped deducting fair-share fees from employees who were not members of Local 668 and SPL has not deducted any such fees since that time. As such, public employees represented by Local 668 may now either join the union and pay dues or decline union membership and pay nothing. (Doc. 72, ¶17).

**\*2** After plaintiff sent her letter to Local 668 on August 21, 2018 resigning her membership in the union, Local 668 sent a letter to SPL dated October 26, 2018, advising SPL that plaintiff submitted a request to withdraw from the union and requested SPL to discontinue payroll dues deductions for her effective immediately. (Doc. 90-1). Local 668 processed plaintiff's resignation and sent SPL the letter before it was

aware of plaintiff's instant lawsuit. (Doc. 72, ¶'s 8, 12). Local 668 then directed SPL to refund plaintiff the membership dues that were deducted from her pay after her resignation, and she was issued a refund of $55.18 which was included in her November 2018 paycheck. (Doc. 72, ¶9). Local 668 then advised plaintiff on December 3, 2018 that her resignation from the union was processed and her status changed to non-member as of August 21, 2018. Plaintiff was also advised that she would receive a refund of any dues deducted after her resignation. (Doc. 72, ¶'s 8, 10-11). On December 13, 2018, Local 668 sent plaintiff a check in the amount of $11.81 for dues deducted for the period from August 21 through August 31, 2018. After SPL received the October 2018 letter from Local 668, it did not deduct any more dues from plaintiff's pay. (Id.).

In this case, plaintiff essentially claims that she was unconstitutionally required to pay union dues. She raises three federal claims in her SAC pursuant to 42 U.S.C. § 1983. [3] In Count 1, a putative class action claim, plaintiff alleges that she and other public employees were employed in "unconstitutional agency shops" before the Court decided Janus because non-union members were required to pay fair-share fees for union representation. She alleges that "the union defendants violated the constitutional rights of the plaintiff class members by tapping their paychecks against their will." Plaintiff seeks a refund of the money she and the putative class members were "compelled to pay the union" based on the pre-Janus fair-share fee requirement.

In Count 2, plaintiff alleges that Local 668 and SPL violated her constitutional rights and state law by failing to stop deductions for dues from her pay after she resigned from the union. Specifically, plaintiff alleges that her First Amendment rights were violated when Local 668 continued to take dues from her paycheck after she resigned her membership in the union, based on the Janus decision, and after she told SPL to "halt the payroll deduction of union-related fees." Count 2 is brought solely on plaintiff's behalf.

In Count 3, plaintiff alleges that the receipt of membership dues by all of the union defendants is unconstitutional until the unions obtain affirmative consents from employees authorizing them to deduct dues pursuant to Janus, and obtain new agreements to allow them to deduct dues from the pay of their members. Count 3 is brought on behalf of current and future union members and plaintiff seeks injunctive relief prohibiting union defendants from receiving any dues without post-Janus agreements and, she seeks the court to

require union defendants to include specific language in the agreements.

**\*3** As relief, plaintiff seeks a refund of all of the dues she paid to Local 668. Plaintiff also seeks to require the defendant unions to refund all dues and fees they received from her. Additionally, plaintiff seeks punitive damages for herself and for members of all defendant unions who resigned from the unions or requested that the unions stop taking dues or fees after the Janus decision and who continued to have dues or fees withdrawn from their pay.

Further, plaintiff seeks relief under the Declaratory Judgment Act, 22 U.S.C. § 2201, requesting a permanent injunction enjoining defendants from accepting dues or fees unless the employees have given their consent to join the unions. In particular, plaintiff seeks injunctive relief on behalf of a putative class of current and future union members prohibiting the union defendants from receiving any membership dues without the new post-Janus agreements and requiring the union defendants to include specific language in the new agreements.

Plaintiff also raises state law claims against all defendants for conversion, trespass to chattels, replevin, restitution, and unjust enrichment.

In addition to Local 668 and SPL, the only remaining defendant in this case was Lackawanna County Library System. [4]

Plaintiff is proceeding on her SAC filed January 28, 2019. (Doc. 66). On February 11, 2019, Local 668 filed its motion to dismiss plaintiff's SAC in its entirety. (Doc. 70). On May 3, 2019, SPL filed its motion to dismiss plaintiff's SAC in its entirety. (Doc. 88). Both defendants argue, in part, that there is no live controversy between them and plaintiff regarding any of her federal claims against them and that she lacks standing to assert her claims. The motions to dismiss of Local 668 and SPL have been briefed. (Docs. 71, 79 & 81; Docs. 90, 93 & 94).

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a) because plaintiff avers violations of her rights under the U.S. Constitution. The court can exercise supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1337. Venue is appropriate in this court since the alleged constitutional violations occurred in this district. See 28 U.S.C. § 1391.

## II. DISCUSSION

In Count 1, plaintiff raises claims based on the pre-Janus requirement that non-union members had to pay fair-share fees to Local 668. Plaintiff seeks a refund of fair-share fees paid by non-union members prior to Janus and injunctive relief prohibiting the future collection of fair-share fees. She also seeks a refund of money paid by union members, including herself, who allegedly chose to join Local 668 because of the pre-Janus fair-share fee requirement. Further, plaintiff seeks a refund of the dues she and other union members paid based on alleged misrepresentations that they were required to join the unions. Thus, plaintiff alleges that since she was forced to join the union and pay dues, she has standing to seek recovery of the dues she and other union members paid Local 668 prior to Janus.

 **\*4** In her SAC, plaintiff alleges that she was opposed to making any payments to Local 668 and that she only joined the union and paid due because she worked in an agency shop and SPL misrepresented to her that union membership was mandatory. (Doc. 66 at ¶'s 12-16). She also alleges that she was compelled to pay either union membership dues or fair-share fees, and that this was why she joined the union and paid dues. Plaintiff argues that she "suffered injury in fact from the pre-Janus agency-shop arrangements because she was forced to pay the union [dues] as a condition of her employment — either by joining the union and paying dues or by declining union membership and paying 'fair-share fees.' " (Doc. 93 at 4). She contends that her constitutional right to withhold money from the union, which she did not support, was denied, and that this inflicted an "injury in fact" upon her that can be redressed by a refund of the money that she was allegedly forced to pay Local 668 against her will.

Further, plaintiff argues that the issue of whether she should be allowed to represent agency-fee employees and employees who joined the union but were aware of their right to decline union membership goes to whether one of her proposed classes should be certified under Rule 23 and is not a standing issue.

Local 668 and SPL argue that Count 1 of the SAC, which is based upon the pre-Janus fair-share fee requirement, [5] should be dismissed since plaintiff lacks standing to assert a claim on behalf of fair-share fee payers because she never paid fair-share fees, i.e., she did not suffer any harm regarding such fees. Defendants also argue that plaintiff lacks standing to

assert a claim on behalf of union members who allegedly joined the union because of a fair-share fee requirement since she did not allege that this is why she joined the union, and "she was never even aware that such a requirement existed." (Doc. 94 at 5).

Initially, as the court explained in its August 29, 2019 Memorandum, 2019 WL 4081900, issues of standing are antecedent to issues of class certification. Thus, the court will consider defendants' contentions that plaintiff lacks standing to pursue relief on behalf of other SPL employees and members of her proposed classes in regards to their instant motions to dismiss.

In deciding whether plaintiff has standing to assert her claims in Count 1 seeking a refund of dues and fees plaintiff and putative class members were compelled to pay Local 668, she must allege that she was harmed by the pre-Janus fair-share fee requirement. "[Rule] 12(b)(1) governs a motion to dismiss for lack of standing, since 'standing is a jurisdictional matter.' " Polanco v. Omnicell, Inc., 988 F.Supp.2d 451, 459 (D.N.J. 2013) (citation omitted). "Standing 'is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution.' " Id. (citation omitted). "A plaintiff must establish his or her standing to bring a case in order for the court to possess jurisdiction over his or her claim." Id. (citation omitted).

 **\*5** "Article III governs constitutional standing and limits [the court's] jurisdiction to actual "cases or controversies." " Neale v. Volvo Cars of North America, LLC, 794 F.3d 353, 358-59 (3d Cir. 2015). "Article III requires a plaintiff to demonstrate '(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.' ' " Id. (citations omitted). See also Anjelino v. N.Y. Times Co., 200 F.3d 73, 88 (3d Cir. 2000) ("Standing is established at the pleading stage by setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent, that the challenged action is causally connected to the actual or imminent injury, and that the injury may be redressed by the cause of action."). "Standing requires that the party seeking to invoke federal jurisdiction 'demonstrate standing for each claim he seeks to press.' " Neale, 794 F.3d at 359 (citation omitted). "Th[e] 'case or controversy' requirement encompasses, inter alia, two doctrines that are relevant to the present dispute: mootness and standing." Diamond, 2019

WL 2929875, at *13 (citations omitted). "The parties must maintain a personal stake in the resolution of the dispute throughout the litigation", and "[t]herefore, 'if developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot.' " Molina, 2019 WL 3240170, *5, 392 F.Supp.3d 469 (internal citations omitted).

Defendants argue that plaintiff lacks standing with respect to her pre-Janus fair-share fee requirement claim against them in Count 1 since "[she] has failed to allege she was injured by Local 668's receipt of fair-share fees", and since she has only alleged that she was a union member and "[she] paid membership dues, not fair-share fees." Defendants also state that "[plaintiff] has not alleged she ever paid fair-share fees or was even aware of that option." (Doc. 94 at 6) (citing SAC, Doc. 66, ¶'s 13-15). Thus, defendants contend that plaintiff cannot pursue "any claim to redress the alleged injury suffered by non-members who paid fair-share fees" since she herself was a union member and not subjected to such fees. (Doc. 90 at 10-11) (citing Blum v. Yaretsky, 457 U.S. 991, 999 (1982)) ("[A] plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.").

The court finds that since plaintiff was a dues-paying member of Local 668 during all relevant times, and not a fair-share fee payer, she lacks standing to seek a refund of fees paid by non-union members or fair-share fee payers. See Neale, 794 F.3d at 359 (plaintiff must demonstrate that she has standing for each claim she asserts) (citation omitted). See also Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ("[P]laintiff must demonstrate standing separately for each form of relief sought."). There is simply no causal connection between the pre-Janus fair-share fee requirement which non-union members were compelled to pay Local 668 and the union membership dues that plaintiff paid to Local 668, and any injury plaintiff allegedly suffered by her payment of dues was clearly not caused by the pre-Janus fair-share fee requirement. As such, plaintiff lacks standing to seek retrospective relief based on this fee requirement.

Insofar as plaintiff argues that part of her membership dues should be refunded because if she had not joined Local 668 she would have been made to pay fair-share fees, the court has no standing to redress this speculative claim since plaintiff suffered no injury due to the fair-share fee requirement as she was a dues paying union member and she did not pay fair-share fees. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, 528 U.S. at 180-81, 120 S.Ct. 693 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). See Finkelman v. NFL, 810 F.3d 187, 193 (3d Cir. 2016) (With respect to the first element, injury in fact, it must be "particularized," i.e, "an injury must 'affect the plaintiff in a personal and individual way.' ") (citation omitted).

*6 Further, there is no merit to plaintiff's contention that since she alleged she was compelled to pay dues to Local 668 because SPL told her that she had to join the union, she has standing to challenge all compulsory payments to Local 668. As the Third Circuit explained in Finkelman, 810 F.3d at 198, "[t]he causation element of standing requires a plaintiff to allege facts sufficient to show that his or her injury is 'fairly traceable' to the alleged wrongdoing of the defendant", and "at a minimum", the alleged wrongdoing of the defendant must be a " 'but for' cause of the plaintiff's injury." (internal citations omitted). As defendants explain, (Doc. 94 at 8), "[b]y [plaintiff's] own admission, the wrongful conduct alleged in Count 1 — Local 668's receipt of fair-share fees—did not cause her to pay membership dues [to the union]."

Additionally, as SPL states, plaintiff has no standing to assert a claim in Count 1 on behalf of union members who allegedly joined the union because of the fair-share fee requirement since she has not alleged that she was such a union member and she was not injured by this requirement. Rather, plaintiff alleges that SPL misrepresented to her that she had to join the union and she alleges that if she had "been informed of her right to ... pay 'fair share fees,' " she would not have joined the union or remained a union member. (Doc. 66, ¶'s 14, 16). Thus, as defendants state, "[b]y her account, [plaintiff] was never even aware fair-share fees existed." Also, as this court held in its August 29, 2019 Memorandum, "standing cannot be predicated on an injury which the plaintiff has not suffered, nor can it 'be acquired through the back door of a class action.' " (Doc. 98, at 14) (quoting In re Franklin Mut. Funds Fee Litigation, 388 F.Supp.2d at 461).

Additionally, as SPL points out, its alleged past misrepresentations to plaintiff about her rights to join or not join the union are not sufficient to create a live controversy. SPL relies upon McNair v. Synapse Group Inc., 672 F.3d 213 (3d Cir. 2012). In McNair, id. at 223-25,, the Third Circuit held since plaintiffs were not customers of defendant and not currently subject to its alleged deceptive practices, and since plaintiffs were now aware of defendant's alleged deceptive techniques, the court lacked jurisdiction to grant injunctive relief to plaintiffs as "there is no reasonable likelihood that they will be injured by those techniques in the future." [6]

There is no controversy that needs adjudication with respect to plaintiff's claim in Count 1 regarding the pre-Janus fair-share fee requirement. Thus, Local 668's and SPL's Rule 12(b)(1) motions to dismiss plaintiff's claims in Count 1 seeking retrospective relief based on the pre-Janus fair-share fee requirement will be granted for lack of jurisdiction. As such, Count 1 against Local 668 and SPL will be dismissed with prejudice pursuant to Rule 12(b)(1). [7]

**\*7** Next, defendants argue that plaintiff cannot assert a constitutional claim against them under § 1983 since she fails to establish that they were state actors acting under color of state law. As stated, SPL is a Pennsylvania non-profit corporation, and not a municipal entity. Local 668 is a private, non-governmental entity. As such, defendants move to dismiss the § 1983 claims against them under Rule 12(b)(6) because plaintiff failed to plausibly plead that they are state actors.

To state a claim under § 1983, a plaintiff must meet two threshold requirements. She must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). See also Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (To state an actionable claim under § 1983, plaintiff must prove that someone deprived her of a constitutional right while acting under the color of state law.) "[M]erely private conduct, no matter how discriminatory or wrongful" does not subject a defendant to liability under § 1983. Am. Mfrs. Mut. Ins. Co.

v. Sullivan, 526 U.S. 40, 49, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).

However, "[a] private actor [such as SPL] can be considered a state actor in one of two ways." Boyer v. Mohring, 994 F.Supp.2d 649, 657 (E.D. Pa. 2014). As the court in Boyer, id., explained:

"The first category involves an activity that is significantly encouraged by the state or in which the state acts as a joint participant." Dickerson v. DeSimone, Inc., 2011 WL 3273228, at \*2 (E.D. Pa. Aug. 1, 2011) (quoting Leshko v. Servis, 423 F.3d 337, 340 (3d Cir. 2005)). "The second category of cases involves an actor that is controlled by the state, performs a function delegated by the state, or is entwined with government policies or management." Id. In order to establish the requisite level of joint participation and collaboration, a plaintiff must aver the existence of a "pre-arranged plan [between the [state actor] and a private entity] by which the [state actor] substituted the judgment of [a] private part[y] for their own official authority." Cruz v. Donnelly, 727 F.2d 79, 80 (3d Cir. 1984). The Third Circuit has noted that "the critical issue ... is whether the state, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state." Cruz, 727 F.2d at 82.

See also Borrell v. Bloomsburg Univ., 870 F.3d 154, 160 (3d Cir. 2017) (to determine if the defendant is a state actor, the issue is whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.").

Defendants contend that they cannot be considered state actors under either category. First, they state that their alleged conduct cannot be considered activity "significantly encouraged by the state" or in which the state acted as a joint participant since "at all relevant times union membership was optional under Pennsylvania law and it was unlawful for either [SPL] or Local 668 to coerce [plaintiff] into becoming a union member." (Doc. 90 at 12-13) (citing 43 Pa.C.S.A. § 1101.401). They also state that plaintiff does not allege that Pennsylvania forced or encouraged, or jointly participated in, their alleged conduct. Thus, defendants state that since the alleged conduct is "contrary to the relevant policy articulated by the state", plaintiff fails to state a cause of action against them under § 1983. (Id.) (quoting Lugar, 457 U.S. at 940, 102 S.Ct. 2744).

**\*8** Secondly, defendants contend that plaintiff has not alleged that they "acted on behalf of the state" regarding her membership in Local 668, and that their "management practices cannot be characterized as any kind of state function." (Id. at 13). Further, SPL states that since plaintiff's allegations that it forced her to join Local 668 by misrepresenting that union membership was mandatory or failed to advise her that she did not have to join the union was conduct that violated state law, she cannot show that SPL is "entwined with government policies or management."

In her SAC, plaintiff has alleged that SPL acted under color of state law by enforcing the unconstitutional agency shops permitted by Pennsylvania law and that SPL is liable under § 1983 on the same basis as Local 668 is. In Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 942 n.23, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), "the Supreme Court held that private parties using a process established by state statute can be considered state actors for purposes of § 1983." Crockett, 367 F.Supp.3d at 1005. See also Manhattan Cmty. Access Corp. v. Halleck, —— U.S. ——, 139 S. Ct. 1921, 1928, 204 L.Ed.2d 405 (2019) (Supreme Court held that one of the "few limited circumstances" where a private entity qualifies as a state actor under § 1983 is "when the government acts jointly with the private entity"). Plaintiff has alleged that although Local 668 and SPL were private defendants, they were acting under color of state law, namely, Pennsylvania's law authorizing the agency-shop arrangements and the payment by non-union members of fair-share fees, 71 Pa.C.S.A. § 575. Plaintiff states that SPL forced her to pay money to Local 668 based on the stated policy that was "imposed under color of state law because it was explicitly authorized by Pennsylvania's statues."

Therefore, plaintiff has sufficiently alleged that Local 668 and SPL were state actors and her claims against them under § 1983 will not be dismissed on this basis pursuant to Rule 12(b)(6). See Leshko, 423 F.3d at 340 ("Determining state action in th[e] [second] category of cases consists of asking whether the actor is so integrally related to the state that it is fair to impute to the state responsibility for the action.").

In Count 2, plaintiff alleges that membership dues continued to be deducted from her pay after she "mailed a letter to SEIU Local 668 and to [SPL's] human resources department" resigning her membership in Local 668 and revoking her prior authorization to deduct dues from her pay. (Doc. 66, ¶'s 17-18). Plaintiff seeks retrospective monetary relief on her

own behalf for the dues that were deducted from her paycheck after she resigned from Local 668.

Specifically, in Count 2, plaintiff seeks declaratory and injunctive relief. She requests the court to "declare that [SPL] violated [her] constitutional rights" by taking union membership dues from her paycheck after she had resigned her membership [from Local 668]." (Doc. 66, ¶53(h) and (I)). Plaintiff also requests the court to "order the defendants to immediately honor and enforce a public employee's decision to resign from the union and withdraw financial support." (Id., ¶ 53(k)). She seeks prospective relief enjoining Local 668 from deducting dues in the future from her and other employees who resigned from the union.

Defendants argue that the court lacks subject matter jurisdiction over Count 2 since plaintiff already received all of the relief potentially available regarding her claim for retrospective monetary relief. They state that "[b]efore receiving notice of this lawsuit, Local 668 instructed [SPL] to cease deducting membership dues from [plaintiff's] wages, and [SPL] has already stopped deductions and refunded all dues deducted subsequent to [plaintiff's] resignation date." (Doc. 90 at 15; Doc. 90-1; Doc. 72, ¶'s 9-11). Defendants state that since all of the plaintiff's money for dues has been refunded after her resignation, she can not obtain any further retrospective relief and she does not have a live controversy.

**\*9** Thus, defendants contend that the retrospective relief plaintiff seeks in Count 2 is moot and that there is no live controversy regarding her claim since they have shown that "Local 668 accepted [plaintiff's] resignation, terminated dues deductions, and refunded the dues received from [plaintiff] following her resignation." (Doc. 90 at 16-17; Doc. 72, ¶'s 9-11). As such, defendants state that plaintiff no longer has anything to gain from the court's declaration that the past deductions for dues from her pay violated her constitutional rights.

Further, defendants state that plaintiff's request for prospective relief seeking the court to order Local 668 and SPL to honor her decision to resign from the union and to stop deducting dues from her paycheck is moot since Local 668 already accepted plaintiff's request to resign in August 2018, and then in October 2018, before learning of plaintiff's lawsuit, Local 668 directed SPL to discontinue the payroll deductions for union dues for plaintiff "effective immediately." (Doc. 90-1; Doc. 72). SPL then indicates that

it complied with Local 668's directive and ceased deducting dues from plaintiff's pay.

Thus, Local 668 and SPL argue that plaintiff's claims for prospective and retrospective relief against them in Count 2 are moot and should be dismissed under Rule 12(b)(1).

Plaintiff counters by stating that she resigned her membership in Local 668 on August 21, 2018 but Local 668 continued to have SPL deduct dues from her paycheck for two more months until October 26, 2018, which was after she filed her original complaint in this action on October 18, 2018. (Doc. 72, ¶8, Doc. 72-2). As such, plaintiff contends that she has standing to sue to recover the dues deducted from her paycheck and from the paychecks of other employees after they resigned their membership from the union. Plaintiff points out that she is also seeking an injunction to compel SPL to "immediately honor and enforce a public employee's decision to resign from the union and withdraw financial support." (Doc. 66 at ¶53(k)). Plaintiff argues that her claims for prospective and retrospective relief are not moot even though Local 668 refunded her money deducted after her resignation and, that she has not received all of the relief she has claimed on behalf of herself and other employees who had dues taken from their pays after they resigned from the union, including pre and post-judgment interest as well as costs and attorneys' fees.

Plaintiff also states that SPL and Local 668 cannot moot her claims by unilaterally offering her the relief she demands. She cites to Campbell-Ewald v. Gomez, —— U.S. ——, 136 S.Ct. 663, 672, 193 L.Ed.2d 571 (2016), in which she states the Supreme Court held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." Plaintiff states that she has not accepted Local 668's offer and, that even though her post-resignation dues were refunded in the amount of $55.18 and put in her bank account via direct deposit, she has not cashed the $11.81 refund check that the union later mailed to her. (See Doc. 72, ¶11). She further states that since the full amount of her refund has not been accepted by her and deposited in her account and since this court has not yet entered judgment in her favor in the amount of the union's refund, SPL is precluded from asserting that her claim for retrospective relief is moot. (Doc. 93, at 12).

Judicial power under Article III "extends only to cases and controversies." Acosta v. Democratic City Committee, 288 F.Supp.3d 597, 623 (E.D. Pa. 2018) (citation omitted). "A case becomes moot when (1) 'the issues presented are no

longer 'live,' ' or (2) 'the parties lack a legally cognizable interest in the outcome.' " *Id.* (citations omitted). "[A] case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.' " *Id.* (citations omitted). Further, "[a]n actual controversy does not exist, rendering a case moot, 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.' " Diamond, 2019 WL 2929875, at *15 (citations omitted). "A live controversy exists '[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation.' " *Id.* (citations omitted). Thus, "a court's subject matter jurisdiction depends on the existence of an actual case or controversy." Akers, 376 F.Supp. at 569 (citation omitted).

**\*10** Declaratory judgment is not meant to adjudicate alleged past unlawful activity. There is no question that plaintiff can request declaratory relief to remedy alleged ongoing violations of her constitutional rights. See Blakeney v. Marsico, 340 Fed.Appx. 778, 780 (3d Cir. 2009)(Third Circuit held that to satisfy the standing requirement of Article III, a party seeking declaratory relief must allege that there is a substantial likelihood that he will suffer harm in the future)(citations omitted). However, plaintiff is not entitled to declaratory relief that any defendant violated her rights in the past as she alleges. See Brown v. Fauver, 819 F.2d 395, 399-400 (3d Cir. 1987)(Third Circuit directed district court to dismiss plaintiff's § 1983 claim for prospective relief where he "has done nothing more than allege past exposure to unconstitutional state action").

In this case, plaintiff fails to allege any ongoing violations of her constitutional rights and SPL has demonstrated that plaintiff's resignation was accepted by Local 668, deductions for union dues from her paycheck were terminated, and she was given a full refund for the dues that were deducted after her resignation. See Diamond, 2019 WL 2929875, at *14 (Court held that plaintiffs' claims for declaratory and injunctive relief with respect to the constitutionality of fair-share fees were moot due to the Janus decision and since the union defendants showed that they complied with Janus by asking the school district employers to immediately stop fair-share-fee payroll deductions and to refund any fees paid by employees after Janus.); see also Akers, 376 F.Supp. 3d at 571-72 (citations omitted). In Diamond, 2019 WL 2929875, at *15, the court held that "[b]ased on Janus and Union Defendants' conduct, there is simply no live controversy regarding the constitutionality of collecting fair-share fees", and that "there is no continuing conduct for this Court to

enjoin or declare unconstitutional." (citing Hartnett v. Pa. State Educ. Ass'n, 390 F.Supp.3d 592, 2019 WL 2160404, at *6-7 (M.D. Pa. May 17, 2019)) ("finding comparable claims for declaratory and injunctive relief moot post-Janus because the '[p]laintiffs face no realistic possibility that they will be subject to the unlawful collection of 'fair share' fees' "); (collection of other cases omitted); see also Molina, 2019 WL 3240170, *9, 392 F.Supp.3d 469 (court dismissed plaintiff's claim for retrospective monetary relief seeking post-resignation dues since this claim was rendered moot by the refund provided by defendants despite the fact that plaintiff stated he did not yet deposit the refund payment).

Additionally, defendants argue that plaintiff lacks standing to obtain prospective relief for herself and for other union members regarding the future deduction from her paycheck for union dues since she fails to show that she is likely to suffer future injury from their conduct. As stated, plaintiff has resigned her membership from Local 668 and she is no longer paying any dues to this union. Defendants have shown that they fully complied with plaintiff's wishes to no longer be a union member. The SAC does not allege ongoing violations of plaintiff's constitutional rights by either SPL or Local 668. It contains only allegations of past violations of her rights by these defendants. Nor does plaintiff allege that she has any intention to rejoin Local 668 in the future. Plaintiff also fails to allege that there is a substantial likelihood that she will suffer injury in the future if the court does not issue declaratory judgment. Rather, all of the unlawful conduct she attributes to SPL and Local 668 occurred in the past.

Further, SPL and Local 668 have shown that they have change their conduct towards agency shop employees based on Janus (see Doc. 72), and, "[i]t is therefore 'absolutely clear' that [these defendants'] wrongful behavior 'could not reasonably be expected to recur.' " Diamond, 2019 WL 2929875 at *19 (citation omitted).

 *11  Insofar as plaintiff seeks prospective relief enjoying SPL and Local 668 from collecting any fees or from taking pay deductions for dues post-Janus, this claim is moot. See Babb, 378 F.Supp.3d at 870-71 ("This Court has twice held that claims for prospective relief to prevent the collection of agency fees post-Janus are moot [since defendants indicated they would no longer enforce state law that permitted such fees and showed their compliance with Janus].") (citing Yohn v. California Teachers Ass'n, 2018 WL 5264076 (C.D. Cal. Sept. 28, 2018); Babb v. California Teachers Ass'n, 2018 WL 7501267 (C.D. Cal. Dec. 7, 2018)). In Babb, id. at 871,, the

court also indicated that "every other district court to consider this issue has found claims for prospective relief moot after Janus." (citing Cook v. Brown, 364 F.Supp.3d 1184, 1188 (D. Or. 2019); Carey v. Inslee, 364 F.Supp.3d 1220, 1225–27 (W.D. Wash. 2019); Danielson v. Inslee, 345 F.Supp.3d 1336, 1339–40 (W.D. Wash. 2018)). This court finds the decision in Babb, 378 F.Supp.3d at 870-71, to be persuasive as well as the cases cited in Babb which found claims similar to plaintiff LaSpina's claim for prospective relief to be moot after Janus. See also Diamond, supra; Akers, supra; Molina, 2019 WL 3240170, *8, 392 F.Supp.3d 469 (court found that it did not have subject matter jurisdiction over plaintiff's claims for prospective declaratory and injunctive relief because plaintiff lacked standing regarding these claims since his dues were already refunded, he was no longer a member of defendant union and, he was no longer employed with the County); Wholean v. CSEA SEIU Local 2001, 2019 WL 1873021169 (D. Conn. April 26, 2019); Seager v. United Teachers Los Angeles, 2019 WL 3822001 (C.D. Ca. Aug. 14, 2019).

The court also finds plaintiff's reliance on Campbell–Ewald Co. v. Gomez, —— U.S. ——, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016), to be misplaced. As the court in Bais Yaakov of Spring Valley v. Educational Testing Service, 251 F.Supp.3d 724, 730 (S.D.N.Y. 2017), explained:

> In Campbell–Ewald, a plaintiff had brought a class action suit alleging that the defendant had violated the TCPA by sending Navy-recruiting text messages to individuals who had not consented to receipt of such messages. 136 S.Ct. at 667. Prior to the deadline for the plaintiff to file a motion for class certification, the defendant filed an offer of judgment pursuant to Rule 68, offering to pay the plaintiff the full statutory damages to which he was individually entitled. Id. at 667–68. The plaintiff rejected the offer, and the defendant thereafter moved to dismiss the case for lack of subject matter jurisdiction, arguing that the offer of complete relief mooted the plaintiff's individual claim and therefore the entire case. See id. at 668.

"The Supreme Court [in Campbell-Ewald] held that the plaintiff's complaint 'was not effaced by [the defendant's] unaccepted offer to satisfy his individual claim' ", and "reasoned that a plaintiff who rejects an offer of judgment retains an interest in the lawsuit, because '[a]n unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect.' " *Id.* (internal citations omitted). Thus, the Supreme Court held that " '[u]nder basic principles of contract law, [the defendant's] settlement bid and Rule 68 offer of judgment, once rejected, had no continuing efficacy.' " *Id.* (citation omitted). The Court "[did] not, ... decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.* (citation omitted).

Thus, in Campbell-Ewald, the Supreme Court found that since the unaccepted settlement offer was essentially withdrawn when it expired and plaintiff did not obtain his requested relief, a live controversy was still present in the case and the court retained jurisdiction over it. Campbell-Ewald, 136 S.Ct. at 670-72.

Defendants distinguish Campbell-Ewald from the instant case since it involved a case with an unaccepted settlement offer. They state that "Local 668 has not acted under Rule 68 or made a mere offer of settlement but has instead actually paid to [plaintiff] the entire amount she claims was wrongfully deducted from her paycheck", and that "[u]nlike a Rule 68 offer of settlement, this refund [was not withdrawn] did not require [plaintiff's] acceptance or ask [her] to make any reciprocal commitments." (Doc. 94 at 11).

**\*12** The court finds that in our case there was no unaccepted Rule 68 offer by defendants and plaintiff LaSpina has received a full recovery of all of the dues deducted from her pay after her resignation from Local 668. Thus, the facts of plaintiff LaSpina's case are different from the facts of the Campbell-Ewald case and our plaintiff was not left "emptyhanded". [8] *See* Sands v. NLRB, 825 F.3d 778, 782 (D.C. Cir. 2016) (court found that a former union member "[w]ith a refund of her dues in hand ... can no longer claim her payment of dues as the basis for her interest in this matter.").

Further it is not sufficient that plaintiff still has a request for attorneys' fees in Count 2 for purposes of having a live controversy with respect to her claim since an "interest in attorneys' fees does not save a matter from mootness." Ivy

Club v. Edwards, 943 F.2d 270, 276 (3d Cir. 1991) (citation omitted). In Lewis v. Continental Bank Corp., 494 U.S. 472, 480, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990), the Supreme Court held that plaintiff's interest in attorneys' fees, is "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." (citation omitted).

Moreover, the court finds that none of the exceptions to the mootness doctrine apply in this case, including the exception were the conduct is capable of repetition yet evades review, since plaintiff has not established that "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *See* Acosta, 288 F.Supp.3d at 623 (citations omitted). The cessation of dues from plaintiff's pay has been in effect since Local 668 advised SPL that plaintiff resigned and it directed the deductions to stop. There is no claim that the deductions were re-started at any time or that they will likely resume sometime in the future. In fact, SPL will not make any further deductions for union dues without written authorization from plaintiff. (*See* Doc. 72, ¶'s 5 & 8, 13; Doc. 72-1, CBA).

Defendants also contend that the voluntary cessation exception to the mootness doctrine is not applicable. Defendants maintain that for voluntary cessation doctrine to apply, a defendant's voluntary cessation must be due to plaintiff's lawsuit, and that since they have shown Local 668 directed SPL to stop deducting dues from plaintiff's pay before the union was aware of plaintiff's lawsuit, they did not act because of her suit. (*See* Doc. 72, ¶'s 8, 9 & 12, Local 668 became aware of plaintiff's lawsuit November 19, 2018).

"The voluntary cessation doctrine refers to situations that do not deprive a federal court of its power to hear and determine a case, even when a defendant has voluntarily ceased the challenged practice, because the allegedly wrongful behavior could reasonably be expected to recur." Akers, 376 F.Supp. 3d at 571 n. 6 (citation omitted).

As the court in Molina, 2019 WL 3240170, \*6, 392 F.Supp.3d 469, explained:

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). This is

so because "if it did, the courts would be compelled to leave '[t]he defendant ... free to return to his old ways.' " *Id.* at 289 & n.10, 102 S.Ct. 1070 (citations omitted). The Supreme Court has announced a "stringent" standard for "determining whether a case has been mooted by the defendant's voluntary conduct." See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Specifically, the Supreme Court has stated that "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal quotation omitted).

**\*13** Already, LLC v. Nike, Inc., 568 U.S. 85, 133 S.Ct. 721, 727, 184 L.Ed.2d 553 (2013) (A defendant "cannot automatically moot a case simply by ending its unlawful conduct **once sued**.") (emphasis added).

In this case, as discussed, defendants have shown that their allegedly unlawful conduct "could not reasonably be expected to recur," *id.,* and there is absolutely no risk that plaintiff will be subjected to any deduction for dues in the future without her express consent. As Local 668 states, (Doc. 71 at 21), in its brief "[it] cannot make any further deductions unilaterally" because:

> The collective bargaining agreement between Local 668 and [SPL] provides that the Library's "obligation to make deductions shall terminate automatically upon timely receipt of revocations." Lukert Decl. Exh. A. Local 668 has notified [SPL] of [plaintiff's] revocation of her dues deduction authorization, and [SPL] will only renew deductions upon receiving a "written authorization voluntarily executed by [plaintiff]." [Doc. 72] paras. 5, 8 & Exh. A.

Defendants have also shown that Local 668 directed SPL to stop deducting dues from plaintiff's pay before it learned of her lawsuit, and that SPL has not received any further dues from plaintiff since the October 26, 2018 payroll period. (Doc. 72, ¶ 8). See ACLU of Mass. v. U.S. Conf. of Catholic Bishops, 705 F.3d 44, 55 (1st Cir. 2013) ("The voluntary cessation doctrine does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation.") (citations omitted).

Nor is it relevant, as plaintiff contends, that she did not receive her refund until after she filed her original complaint since she did not have standing regarding this claim for prospective relief and it was moot before she filed her action

when Local 668 processed plaintiff's resignation, ended her dues deduction, and directed SPL to stop the dues deduction from her pay. "Standing requires that the party seeking to invoke federal jurisdiction 'demonstrate standing for each claim he seeks to press.' " Neale, 794 F.3d at 359 (citation omitted). Thus, the relevant time is when defendants stopped the deductions of dues from plaintiff's pay and not when she received her refund since defendants ceased their alleged unlawful conduct before plaintiff's lawsuit was initiated and not to evade her lawsuit. (Id.). See Rendell v. Rumsfeld, 484 F.3d 236, 243 (3d Cir. 2007) ("The purpose of [the "capable of repetition"] exception [to the mootness doctrine] is to prevent defendants from 'forever ... avoid[ing] judicial review simply by ceasing the challenged practice, only to resume it after the case [is] dismissed.' ").

Moreover, plaintiff cannot proceed with her claim in Count 2 seeking to enjoin the payment of post-resignation dues on behalf of other putative class members who have resigned the union, as she suggests if her claim is found to be moot, since her claim in Count 2 is for individual relief. In any event, since plaintiff's individual claim is moot, any such claim on behalf of a proposed class would similarly be moot. See Campbell–Ewald, 136 S.Ct. at 672 ("While a class lacks independent status until certified, a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted."). Here, plaintiff, a would-be class representative, does not have a live claim of her own and thus there is no claim for a proposed class.

**\*14** Thus, all of plaintiff's requests for declaratory judgment and injunctive relief in Count 2 of her SAC against Local 668 and SPL are moot and, they will be dismissed with prejudice.

Finally, plaintiff lacks standing to proceed with her claim in Count 3 against Local 668 and SPL. In Count 3, plaintiff seeks the court to require defendants to obtain post-Janus authorizations to deduct union dues from the paychecks of existing union members or to provide them with additional information before their authorizations can be obtained. Plaintiff requests the court to declare Local 668's ongoing receipt of voluntary membership dues by current union members unconstitutional unless Local 668 receives post-Janus dues deduction authorizations from each union member, and to enjoin Local 668 from collecting any dues until each union member sign a new authorization form that contains specific language proposed by plaintiff. (Doc. 66, ¶ 53(l), (m)).

The court finds that Count 3 must be dismissed since plaintiff is not suffering and will not suffer in the future any injury due to defendants' alleged conduct. Plaintiff is no longer a member of Local 668. Plaintiff no longer has standing to request that SPL and Local 668 obtain post-Janus authorizations from other employees and members of the union and, to request that the other employees be advised of their right to resign from the union and withhold the payments of dues to the union, since she resigned her membership in August 2018 and has no intention of rejoining the union. Further, as indicated, the CBA between Local 668 and SPL does not allow SPL to deduct any future dues from plaintiff's pay without her written authorization, and plaintiff does not allege that she has any intention of giving such authorization. (Doc. 72, ¶'s 5, 8 & Doc. 72-1; Doc. 66, ¶ 13). Thus, she has no injury that she is suffering from or will suffer from if SPL and Local 668 do not obtain the authorizations or waivers from current union members or future members. The law is clear that plaintiff must have standing regarding each of her claims throughout the case, and that "if developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot." Molina, 2019 WL 3240170, *5, 392 F.Supp.3d 469 (quoting Gayle v. Warden Monmouth Cty. Corr. Inst., 838 F.3d 297, 303 (3d Cir. 2016)).

Further, even though plaintiff alleges that she was previously not aware of her right not to join the union when she began working for SPL and that SPL failed to inform her of this right, plaintiff was subsequently well aware of her right not to join Local 668, before she filed her action on October 18, 2018, since she sent the union her resignation on August 21, 2018. This demonstrates that plaintiff's request for relief in Count 3 does not redress any injury from which she is currently suffering or will likely suffer from in the future. See McNair, 672 F.3d at 223-25.

Additionally, as explained above with respect to Count 2, the voluntary cessation exception to mootness does not apply to Count 3 since defendants have shown that they did not temporarily cease their challenged conduct only to avoid judicial review. See Rendell, 484 F.3d at 243.

 **\*15** Thus, plaintiff lacks standing with respect to the relief she seeks in Count 3 and it will be dismissed against Local 668 and SPL under Rule 12(b)(1). See Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

As such, the motions to dismiss of Local 668 and SPL under Rule 12(b)(1) will be granted as to Counts 1-3. Plaintiff's federal claims against Local 668 and SPL in her SAC will be dismissed with prejudice since plaintiff has already filed three complaints in this case and, it would be futile, as discussed above, to allow her to file another complaint against Local 668 and SPL.

Finally, considering judicial economy, convenience and fairness to the litigants, the district court in its discretion is permitted to decline the exercise of supplemental jurisdiction over state law claims if the court has dismissed all of the claims over which it had original jurisdiction. Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009) (citations omitted). See Patel v. Meridian Health System, Inc., 666 Fed.Appx. 133, 136 (3d Cir. 2016) ("A district court 'may decline to exercise supplemental jurisdiction' over state law claims if it 'has dismissed all claims over which it has original jurisdiction[,]' unless considerations of judicial economy, convenience, or fairness to the parties provide an affirmative justification for exercising supplemental jurisdiction.") (citing Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)). The court has made the appropriate considerations and finds no extraordinary circumstances exist in this case to exercise supplemental jurisdiction over plaintiff's remaining Pennsylvania state law claims against Local 668 and SPL. Since plaintiff's federal claims over which this court had original jurisdiction shall not be permitted to proceed to trial against Local 668 and SPL, the court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims against union defendants. Id.; see also 28 U.S.C. § 1367(c)(3); Verdecchia v. Prozan, 274 F.Supp.2d 712, 728 (W.D. Pa. 2003); Akers, 376 F.Supp. 3d at 574.

Additionally, since plaintiff lacks standing to assert federal claims against Local 668 and SPL, the absence of federal jurisdiction over her federal claims deprives the court from exercising supplemental jurisdiction over her state law claims against these defendants. Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 299-300 (3d Cir. 2003) (citations omitted).

As such, plaintiff's state law claims against Local 668 and SPL shall be dismissed without prejudice. [9] Kach, 589 F.3d at 650 ("If a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits.") (citation omitted).

## III. CONCLUSION

**\*16** Based on the foregoing reasons, the court will **GRANT** the Rule 12(b)(1) motions to dismiss plaintiff's SAC, (Doc. 66), filed by Local 668, (Doc. 70), and by SPL, (Doc. 88), with respect to her federal claims against them, and plaintiff's federal claims against Local 668 and SPL shall be **DISMISSED WITH PREJUDICE**. Plaintiff's state laws claims against Local 668 and SPL shall be **DISMISSED WITHOUT PREJUDICE**. The claims against defendant Lackawanna County Library System contained in the plaintiff's SAC, **(Doc. 66)**, are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed.R.Civ.P. 41(a)(1)(A)(I). Further, since all of the defendants named in the plaintiff's SAC have been dismissed, this case will be **CLOSED**. An appropriate order shall issue.

### All Citations

Slip Copy, 2019 WL 4750423

---

Footnotes

1      Since the court stated the background of this case in its August 29, 2019 Memorandum granting the motions to dismiss plaintiff's SAC, (Doc. 66), of union defendants, SEIU Local 32BJ, (Doc. 46), the Pennsylvania Joint Board of Workers United, (Doc. 52), and SEIU Healthcare PA, (Doc. 59), and in its September 11, 2019 Memorandum granting the motion to dismiss of State Council, it will not be fully repeated herein. (Docs. 98 & 100).

       The court also notes that at times it will refer to Local 668 and SPL, collectively, as "defendants."

2      Janus v. American Federation of State, County, and Municipal Employees, Council 31, ––– U.S. ––––, 138 S. Ct. 2448, 201 L.Ed.2d 924 (2018).

       As a backdrop, prior to Janus, unions representing government employees could use "agency shop" clauses in collective bargaining agreements "which required every employee represented by a union, even those who declined to become union members for political or religious reasons, to pay union dues." Diamond v. Pennsylvania State Education Association, ––– F.Supp.3d ––––, 2019 WL 2929875, \*1-2 (W.D. Pa. July 8, 2019). In Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), the Supreme Court "held that the charges were constitutional to the extent they were used to finance the union's collective-bargaining, contract-administration, and grievance activities." Id. at \*2. "[T]he Court also concluded that the agency-shop clause and fees were unconstitutional insofar as the clause compelled non-member teachers to pay fees to the union that supported the union's political activities." Id. Subsequently, in Janus, the Supreme Court overruled Abood, and held that "a state law requiring non-union-member public employees to pay fees to the union to compensate the union for costs incurred in the collective-bargaining process" was unconstitutional. Id. at \*3. Thus, the Court in Janus, 138 S. Ct. at 2486, held that "States and public-sector unions may no longer extract agency fees from nonconsenting employees." Further, the Court held that "[n]either an agency fee nor any other payment to the union may be deducted from a non[-]member's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." Id. See also Babb v. California Teachers Association, 378 F.Supp.3d 857, 867 (C.D. Ca. 2019) (In Janus, the Supreme Court "overruled Abood [ ] and its progeny, holding that no form of payment to a union, including agency fees, can be deducted or attempted to be collected from an employee without the employee's affirmative consent.") (citing Janus, 138 S.Ct. at 2486).

3      The facts alleged in plaintiff's SAC must be accepted as true in considering defendant SPL's motion to dismiss. See Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

       A Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." Diamond, --- F.Supp.3d ––––, 2019 WL 2929875, \*6 (citation omitted). "This challenge 'allows the defendant to present competing facts,' and the court does not assume that the plaintiff's allegations [in the complaint] are true." Id. (Internal citations omitted). Plaintiff has the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. Id. "However, the party alleging that a claim has become moot due to a change in a defendant's conduct bears the burden to demonstrate mootness." Molina v. Pennsylvania Social Service Union, 392 F.Supp.3d 469, 2019 WL 3240170, \*5 (M.D. Pa. July 18, 2019) (citation omitted).

       Local 668 and SPL have presented competing facts and their motions to dismiss, (see Doc. 72 and Exhibits, Doc. 72-1 to 72-5), insofar as they are based on Rule 12(b)(1), must be treated as a factual attack on the court's subject-matter jurisdiction. See Diamond, 2019 WL 2929875, \*6. Thus, "when evaluating [Local 668's and SPL's] 12(b)(1) grounds for

dismissal, the Court may consider [SPL's and Local 668's] [evidence]." *Id. See also* Gould Elecs. v. United States, 220 F.3d 169, 176-77 (3d Cir. 2000).

4    The court notes that since the plaintiff failed to serve defendant Lackawanna County Library System with her SAC, she was directed to serve this defendant within 14 days of the date of the court's September 11, 2019 Order. Otherwise this defendant would be dismissed from this case pursuant to Fed.R.Civ.P. 4(m). On September 25, 2019, the plaintiff filed a notice of voluntary dismissal of Lackawanna County Library System, (Doc. 102), pursuant to Fed.R.Civ.P. 41(a)(1)(A)(I).

5    As the court noted in its August 29, 2019 Memorandum, fair share fees are charges non-union member employees had to pay unions prior to *Janus* to finance the union's collective bargaining activities. *See* Diamond, --- F.Supp.3d ——, 2019 WL 2929875, *2 ("In accordance with Abood, Pennsylvania enacted its own agency-shop statute for public employees in 1988, 71 Pa. Stat. § 575."). In Janus, 138 S.Ct. at 2459, 2486, the Supreme Court held that it was a violation of the First Amendment for public sector unions to require non-members to pay fair share fees as a condition of public employment. Following *Janus*, Pennsylvania's statute allowing the collection of "fair share" fees from non-members by unions is no longer enforceable. *See* Hartnett v. Pennsylvania State Education Association, 390 F.Supp.3d 592, 2019 WL 2160404 (M.D. Pa. May 17, 2019). In Diamond, 2019 WL 2929875, at *15, the court held that the issue of "whether Union Defendants could constitutionally collect fair-share fees from Plaintiffs pursuant to Section 575" "was mooted by the intervening Janus decision, which held that fair-share fees are unconstitutional.").

6    The court notes that plaintiff cannot hold Local 668 liable for the alleged misrepresentation of SPL, contained in Count 1, that she was required to join the union and pay dues since it is not alleged to have been personally involved with this conduct. It is well-settled that liability under section 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. *See* Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (overturned on other grounds) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Plaintiff does not allege that Local 668 told her union membership was mandatory and Local 668 was not alleged to have been involved when plaintiff was instructed at her orientation with SPL to fill out a union membership form. (Doc. 66 ¶'s 13-15). Nor does plaintiff allege that Local 668 directed SPL to make the alleged misrepresentation to her about union membership. Further, plaintiff does not allege that Local 668 was even aware of the alleged misrepresentation made by SPL.

7    As Local 668 also recognizes, the court notes that although "statutory and contractual provisions authorizing fair-share requirements are no longer enforceable after Janus", *see* Diamond, 2019 WL 2929875, at *14, the good-faith defense would apply to relieve SPL and Local 668 from liability under § 1983 since they reasonably relied on the constitutionality of Pennsylvania's fair-share fee law, § 575, and the Supreme Court's decision in Abood which permitted such fees. *See id.* at *25-29 (citing, in part, Akers, 376 F.Supp.3d at 571-72) ("explaining that the plaintiffs could assert a good-faith defense because they complied with and relied on presumptively-valid state law and controlling Supreme Court precedent"); Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1006 (D. Alaska) ("discussing the inequity of holding the union defendants liable for pre-Janus fair-share fees when they collected the fees in accordance with state law and then-binding Supreme Court precedent"); Akers v. Maryland State Educ. Assoc., 376 F.Supp. 3d 563 (D. Md. 2019). In Diamond, 2019 WL 2929875, at *21, the court also held that plaintiffs' claims for declarative and injunctive relief with respect to fair-share fees were moot based on the Janus decision and union defendants' compliance with it. (citing collection of cases). *See also* Hartnett, 390 F.Supp.3d 592, 2019 WL 2160404, *6-7.

8    It is of no moment that plaintiff has not yet cashed the dues refund check Local 668 sent her in the amount of $11.81 since under Pennsylvania law "a check is a negotiable instrument ... akin to a cash payment." Sarver v. Capital Recovery Assoc., Inc., 951 F.Supp. 550, 553 (E.D. Pa. 1996). *See also* Molina, *supra*; Krevsky v. Equifax Check Services, Inc., 85 F.Supp.2d 479, 481 (M.D. Pa. 2000) ("payment by check is equivalent to paying with cash").

9    Local 668 and SPL also argue that plaintiff's state law claims are preempted by the exclusive jurisdiction of the Pennsylvania Labor Relations Board ("PLRB"), and since her allegations that they interfered with her right to refrain from joining the union constitute unfair labor practices under Pennsylvania law. (Citing 43 Pa.C.S.A. §§ 1101.401, 1101.1201, 1101.1301). However, since the court declines to exercise supplemental jurisdiction over plaintiff's state law claims against Local 668 and SPL, it does not address the preemption issue.

---

**End of Document**               © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "I"

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |

| | |
|---|---|
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **[IN CHAMBERS] <u>Order Regarding Motions to Dismiss</u>**

**The Court, having been informed by the parties in this action that they submit on the Court's tentative ruling previously issued, hereby rules in accordance with the tentative ruling as follows:**

Defendants Janet Napolitano, in her official capacity as President of the University of California ("Napolitano"), Teamsters Local 2010 (the "Union") and Xavier Becerra, in his official capacity as Attorney General of California (the "Attorney General") (together—"Defendants") moved to dismiss Plaintiffs Cara O'Callaghan's ("O'Callaghan") and Jenée Misraje's ("Misraje") (together—"Plaintiffs") First Amended Complaint (FAC). Mots., Dkt. Nos. 53-55.[1] Plaintiffs opposed. Opp'n, Dkt. Nos. 57-59. Defendants replied. Dkt. Nos. 60-62.

For the following reasons the Court **GRANTS** Defendants' motions.

## I. BACKGROUND

O'Callaghan is the finance manager of the Sport Club program, employed by the University of California, Santa Barbara ("UCSB"). (FAC, Dkt. No. 52 ¶ 7.)

---

[1] Following motions to dismiss by Becerra, the Union, and the Regents of the University of California, Plaintiffs filed the FAC in lieu of an opposition to the motions. The FAC substituted Janet Napolitano, in her official capacity as President of the University of California system, in place of the Regents. (FAC ¶¶ 9, 44.) Defendants' earlier motions to dismiss Plaintiffs' Complaint are moot in light of the FAC. <u>See</u> Dkt. Nos. 43-45.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
|---|---|---|---|

| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |
|---|---|

O'Callaghan was employed by UCSB from 2000 to 2004 and has been continuously employed by UCSB since August 2009. (Id. ¶ 14.) When O'Callaghan began her employment again with UCSB in 2009, she did not join the Union, but did pay agency fees to the Union. (Id. ¶ 15.)

On May 31, 2018, O'Callaghan signed an application joining the Union and authorizing it to deduct union dues from her paycheck after a Union representative came to her workplace. (Id. ¶ 16.) The Union representative did not inform her that a decision was pending in the Supreme Court in Janus v. American Federation of State, County, & Municipal Employees, Council 31, 138 S. Ct. 2448 (2018). (Id.)

On June 27, 2018, the Supreme Court held that agency fees violated "the free speech rights of [non-union] members by compelling them to subsidize private speech on matters of substantial public concern." Id. at 2460.

On July 25, 2018, after learning of the Janus decision, O'Callaghan sent a resignation letter to the Union. (FAC, Dkt. No. 1 ¶ 17.) The same day, she also sent a letter to UCSB requesting that it stop deducting union dues from her paycheck. (Id.) The Union responded that she was free to resign her membership, but that the payroll deductions would continue until she gave notice pursuant to the terms of the Union's collective bargaining agreement with UCSB. (Id. ¶ 18.) The terms provide that she could not provide such notice until March 31, 2022. (Id. ¶ 19.)

On October 16, 2018, Liberty Justice Center sent a letter to UCSB demanding that it immediately stop deducting union dues from O'Callaghan's paycheck. (Id. ¶ 20.) On October 24, 2018, UCSB referred the Liberty Justice Center letter to the Union via e-mail. (Id. ¶ 21.) On November 9, 2018, the Union confirmed to UCSB via e-mail that it should continue to deduct union dues from O'Callaghan's paycheck. (Id. ¶ 22.) On November 29, 2018, UCSB sent a letter to Liberty Justice Center stating that it would continue to deduct union dues from O'Callaghan's paycheck. (Id. ¶ 23.) Defendants continue to deduct the dues of approximately $41.00 per month. (Id. ¶ 24.)

Misraje is an administrative assistant in the Geography Department at the University of California, Los Angeles ("UCLA"), where she has been employed since May 2015. (Id. ¶¶ 8, 25.) On July 27, 2015, Misraje signed an application joining the

Case 2:19-cv-02289-JVS-DFM Document 69 Filed 09/30/19 Page 73 of 14 Page ID #:656

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
|---|---|---|---|

| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |
|---|---|

Union and authorizing it to deduct dues from her paycheck. (<u>Id.</u> ¶ 26.)

On August 8, 2018, Misraje sent a letter to the Union requesting to withdraw her union membership. (<u>Id.</u> ¶ 27.) On August 9, 2018, the Union responded to Misraje via e-mail that she would be dropped as a full member of the Union, but that she could only end the deduction of union dues from her paycheck during a particular time window. (<u>Id.</u> ¶ 28.)

On August 27, 2018, Misraje sent an e-mail to the Union, requesting that it immediately terminate her union membership and stop deducting union dues from her paycheck. (<u>Id.</u> ¶ 29.) She likewise sent an email to UCLA requesting that it stop deducting union dues from her paycheck. (<u>Id.</u>) UCLA responded the same day saying that it could not grant her request because all such requests must come through the Union under California law. (<u>Id.</u> ¶ 30.) The Union repeated its response that Misraje was no longer a Union member but could not end deduction of her union dues at that time. (<u>Id.</u> ¶ 31.) Misraje again made similar requests to both the Union and UCLA and received similar responses between October 11, 2018 and December 7, 2018. (<u>Id.</u> ¶¶ 32-3.) According to the terms of the union application that Misraje signed, notice must be sent to both the Union and UCLA at least sixty days but not more than seventy-five days before the anniversary date of the signed agreement. (<u>Id.</u> ¶ 40.) Napolitano continues to deduct approximately $53.00 per month of Misraje's paychecks for union dues. (<u>Id.</u> ¶ 41.)

Plaintiffs brought suit against Defendants under 42 U.S.C. § 1983 and 28 U.S.C. § 2201(a) seeking declaratory relief, injunctive relief, and damages for dues previously deducted from their paychecks. (<u>Id.</u> ¶ 6.)

The Court denied Plaintiffs' motion for a preliminary injunction (Dkt. No. 26) on June 10, 2019. Order, Dkt. No. 51.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |

| | |
|---|---|
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |

(2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

### III. DISCUSSION

### A.    Napolitano's Motion to Dismiss

### 1.    FRCP 12(b)(1) Subject Matter Jurisdiction

Napolitano first argues that Plaintiffs' suit arises out of a dispute with their union over issues within the exclusive jurisdiction of the California Public Employment Relations Board ("PERB") and thus must be dismissed as against her under FRCP 12(b)(1). Dkt. No. 55-1, Mot. at 2-5.

Dismissal is proper when a plaintiff fails to properly plead subject matter jurisdiction in the complaint. Fed. R. Civ. P. 12(b)(1). A "jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the challenge is based solely upon the allegations in the complaint (a "facial attack"), the court generally presumes the allegations in the complaint are true. Id.; Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). If instead the challenge disputes the truth of the allegations that would otherwise invoke federal jurisdiction, the challenger has raised a "factual attack," and the court may review evidence beyond the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
|---|---|---|---|

| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |
|---|---|

confines of the complaint without assuming the truth of the plaintiff's allegations.  <u>Safe Air</u>, 373 F.3d at 1039.  The plaintiff bears the burden of establishing subject matter jurisdiction.  <u>Kokkonen</u> v. <u>Guardian</u> <u>Life</u> <u>Ins.</u> <u>Co.</u> <u>of</u> <u>Am.</u>, 511 U.S. 375, 377 (1994).

California's Higher Education Employment Relations Act ("HEERA") provides for a system of exclusive representative collective bargaining in which the majority of employees in a bargaining unit may select a union representative to negotiate and administer a single collective bargaining agreement to cover the entire unit.  <u>See</u> Cal. Gov. Code §§ 3560 et seq.  Napolitano argues that because Plaintiffs' allegations of improper dues and the scope of the Union's representation arise out of unfair practice allegations against the Union under HEERA, this Court does not have jurisdiction over the claims asserted against her.  Mot. at 2.  PERB is the administrative agency charged with administering the provisions of HEERA. Cal. Gov. Code § 3563.  As Napolitano points out, PERB has the power to implement HEERA, and so PERB "has jurisdiction over allegations about improper or excessive fees charged by unions relating to union membership, as well as allegations regarding the scope of union representation."  <u>Id.</u> at 4; <u>see</u> Cal. Gov. Code §§ 3560, 3563, 3578.

Napolitano further asserts that the fact that Plaintiffs' case asserts constitutional rights "does not divest [PERB] of its jurisdiction" and that PERB's jurisdiction "may be at issue even if the claims are not alleged as unfair practice charges."  Mot. at 4. Napolitano suggests that, "[a]t its essence," Plaintiffs' suit sounds in alleged unfair practice charges against the Union under HEERA.  Mot. at 5.

The Court agrees with Plaintiffs that PERB's jurisdiction is not implicated here because their claim is not that the Union or Napolitano are committing an unfair labor practice, but that in following California labor law, Defendants violated their First Amendment rights.  Opp'n, Dkt. No. 58 at 2-3.  As Plaintiffs put it, their "claim is not that the union has charged dues that would be excessive or unfair under HEERA; Plaintiffs' claim is that being charged dues at all violates the First Amendment."  <u>Id.</u> at 3.

Accordingly, the Court declines to dismiss Plaintiffs' suit against Napolitano on the basis that it lacks subject matter jurisdiction.

**2.    <u>Janus</u>' Application to Plaintiffs**

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
|---|---|---|---|

| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |
|---|---|

Napolitano argues that Plaintiffs' FAC should be dismissed under FRCP 12(b)(6) because <u>Janus</u> does not apply to union members who authorized payroll deductions.  <u>Id</u>. at 5.

Plaintiffs argue that the continued deduction of union dues violates their First Amendment rights in light of <u>Janus</u>, which held that States and public-sector unions may no longer extract agency fees from nonconsenting employees.  <u>Janus</u>, 138 S. Ct. at 2486. Plaintiffs assert that <u>Janus</u> "establishes a duty not to take money without affirmative consent."  Opp'n at 4.  But, they argue, they did not waive their First Amendment right not to join or pay a union because Defendants did not inform them they had a right not to join.  <u>Id.</u>  Further, they argue, "at the time [they] signed their union membership applications, they did not know about their rights not to pay a union" because the <u>Janus</u> decision had not yet come down.  <u>Id</u>.

_____The Court agrees with Napolitano that <u>Janus</u> "does not require state employers to cease deductions for employees who had voluntarily entered into contracts to become dues-paying union members."  Mot. at 6.  <u>Janus</u> limits its holding to situations in which employees have *not* consented to deductions:

> Neither an agency fee nor any other payment to the union may be deducted from a <u>nonmember's</u> wages, nor may any other attempt be made to collect such a payment, <u>unless</u> <u>the</u> <u>employee</u> <u>affirmatively</u> <u>consents</u> <u>to</u> <u>pay</u>.  <u>By</u> <u>agreeing</u> <u>to</u> <u>pay, nonmembers</u> <u>are</u> <u>waiving</u> <u>their</u> <u>First</u> <u>Amendment</u> <u>rights</u>, and such a waiver cannot be presumed.  Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

<u>Id</u>. (citations omitted) (emphasis added).

Here, Plaintiffs affirmatively agreed to the terms of union membership, including the terms regarding dues deductions.  Thus, they cannot state a claim that continued deductions violate their First Amendment rights.  Plaintiffs argue that their consent to dues deductions was not "voluntarily, knowingly, and intelligently" given because neither

**CIVIL MINUTES - GENERAL**

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-2289 JVS (DFMx) | | Date | September 30, 2019 |
|---|---|---|---|---|

| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |
|---|---|

the Union nor Napolitano "informed them they had a right not to join the union." Opp'n at 4. But, as Napolitano points out, nothing in Janus's holding requires unions to cease deductions for individuals who have affirmatively chosen to become union members and accept the terms of a contract that may limit their ability to revoke authorized dues-deductions in exchange for union membership rights, such as voting, merely because they later decide to resign membership. Mot. at 6. See Belgau v. Inslee, No. 18-5620 RJB, 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018) ("Plaintiffs' assertions that they didn't knowingly give up their First Amendment rights before Janus rings hollow. Janus says nothing about people [who] join a Union, agree to pay dues, and then later change their mind about paying union dues.")

Courts have rejected Plaintiffs' reasoning, explaining that union members voluntarily chose to pay dues in exchange for certain benefits, and "the fact that plaintiffs would not have opted to pay union membership fees if Janus had been the law at the time of their decision does not mean their decision was therefore coerced." See, e.g., Seager v. United Teachers Los Angeles, 2019 WL 3822001, at *2 (C.D. Cal. Aug. 14, 2019) (internal quotations and citations omitted).

Accordingly, the Court GRANTS Napolitano's motion to dismiss Plaintiffs' FAC as against her, with prejudice.

## B. Becerra's Motion to Dismiss

### 1. State Action

Plaintiffs request an order enjoining Becerra from defending state laws requiring Plaintiffs to wait until a specified window of time to stop the payroll deductions (the "dues maintenance statutes"). See FAC, Prayer for Relief. In response, Becerra argues that "Plaintiffs' constitutional challenges to the dues-maintenance statutes fail as a matter of law because their claimed injuries arise not from the statues, but from their voluntary decisions to join the union and the terms of their union membership agreements." Dkt. No. 54, Mot. at 7.

The state action requirement serves to "avoid[ ] imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." Lugar v.

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
|---|---|---|---|

| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |
|---|---|

<u>Edmonson Oil Co., Inc.</u>, 457 U.S. 922, 936 (1982). Consistent with this approach, "constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." <u>Blum</u> v. <u>Yaretsky</u>, 457 U.S. 991, 1004 (1982).

Courts apply a two-part test to determine whether governmental involvement in private action had sufficient impact to make the government responsible for the alleged harm. "[T]he first question is whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority," and "[t]he second question is whether, under the facts of this case, respondents, who are private parties, may be appropriately characterized as 'state actors.'" <u>Lugar</u>, 457 U.S. at 937.

The Supreme Court has laid out four tests for determining whether a non-governmental person's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." <u>Naoko Ohno</u> v. <u>Yuko Yasuma</u>, 723 F.3d 984, 995 (9th Cir. 2013) (internal quotation marks and citations omitted ).

The "joint action" test, which is the one Plaintiffs argue applies here, (Dkt. No. 59, Mot. at 6) "focuses on whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." <u>Id.</u> at 996. "Joint action exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party." <u>Id.</u>

Becerra argues that the injuries Plaintiffs allege "arise exclusively from the union's decision to continue to deduct dues from their paychecks," but that this injury "is not fairly attributable to the dues-maintenance statutes, which merely require that public employers direct requests to change payroll deductions to the union, and to rely on information provided by the union regarding whether deductions were properly canceled or changed." Mot. at 8-9. Becerra argues that Plaintiffs "voluntarily authorized the deduction of union dues from their paychecks," and that the state's "role in facilitating the deductions" does not meet the joint action test. Mot. at 11-12.

The Court disagrees. As Plaintiffs argue, "the time window limitations that the Teamsters are enforcing are asserted pursuant to state statutes that expressly grant the

Case 2:19-cv-02289-JVS-DFM Document 69 Filed 09/30/19 Page 84 of 100 Page ID #:1426
Case 2:19-cv-02289-JVS-DFM Document 69 Filed 09/30/19 Page 9 of 14 Page ID #:662

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
|---|---|---|---|

| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |
|---|---|

Teamsters this special privilege." Dkt. No. 59, Opp'n at 5. Here, the Union has "invoked the aid of state officials to take advantage of a state labor statutory scheme to withdraw these dues." Id. at 6. The state enforces California Government Code §§ 3513(i) and 3583, which permit the Union to set a time limitation for when notice must be given pursuant to the terms of the Union's collective bargaining agreement. The Court finds that this qualifies as "joint action," because the state is facilitating the allegedly unconstitutional conduct Plaintiffs complain of "through [the state's] involvement with a private party." Ohno, 723 F.3d at 996.

Accordingly, the Court denies Becerra's motion to dismiss based on its state action argument.

### 2.      Exclusive Representation

Becerra argues that Plaintiffs' free association challenge is foreclosed by Minnesota State Bd. for Cmty. Colleges v. Knight, 465 U.S. 271 (1984) ("Knight") and Mentele v. Inslee, 916 F.3d 783 (9th Cir. 2019) ("Mentele"). Mot. at 14-16. Becerra also argues that Plaintiffs misapply Janus. Id. at 16.

Plaintiffs contend that Becerra's reliance on Knight and Mentele is misplaced, and that the logic of Janus supports their argument that California's statutory scheme compels them to petition the government with a viewpoint that is inconsistent with their view. Opp'n at 9-13.

The Supreme Court in Janus stated:

> We readily acknowledge, as Pickering did, that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." . . . It is also not disputed that the State may require that a union serve as exclusive bargaining agent for its employees—itself a significant impingement on associational freedoms that would not be tolerated in other contexts. We simply draw the line at allowing the government to go further still and require all employees to support the union irrespective of whether they share its views.

Case 2:18-cv-03428-NGG-BFM   Document 63   Filed 09/30/19   Page 85 of 100 Page ID #:637
Case 2:19-cv-02289-JVS-DFM   Document 69   Filed 09/30/19   Page 85 of 100 Page ID #:663

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |

| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |

138 S. Ct. at 2477–78 (citations omitted).  Janus explains that a state interest in "labor peace" does not require *both* that a union be an exclusive representative of all employees *and* the payment of agency fees by nonmembers.  Id. at 2480.  Rather, Janus's statement that "designation of a union as exclusive representative and the imposition of agency fees are not inextricably linked" suggests that a state interest can still justify a union acting as an exclusive representative for members and nonmembers alike.  Id.  See Knight, 465 U.S. at 28 ("Appellees' speech and associational rights, however, have not been infringed by Minnesota's restriction of participation in 'meet and confer' sessions to the faculty's exclusive representative.  The state has in no way restrained appellees' freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative."); Mentele, 916 F.3d at 789 ("Janus's reference to infringement caused by exclusive union representation, even in the context of its broader discussion of Abood and the Court's long history of relying on labor peace to justify certain provisions in collective bargaining agreements, is not an indication that the Court intended to revise the analytical underpinnings of Knight or otherwise reset the longstanding rules governing the permissibility of mandatory exclusive representation.").

Plaintiffs argue Mentele can be distinguished because it considered the rights of only "partial" state employees with limited representation by the union, whereas Plaintiffs are full public employees.  Opp'n at 12-13.  This distinction does not help their claim survive.  Mentele's primary reasoning is based on Knight's analysis of full public employees; its application of Knight is not limited to "partial" state employees.

Because Supreme Court and Ninth Circuit precedent have "specifically acknowledged that exclusive representation is constitutionally permissible," the Court finds that Plaintiffs cannot state a claim that exclusive representation by the Union violates their First Amendment rights.  Mentele, 916 F.3d at 791.

Accordingly, the Court grants Becerra's motion to dismiss.

**C.    The Union's Motion to Dismiss**

**1.    Good Faith**

Case 2:18-cv-03426-NGG-BFM  Document 63  Filed 02/37/19  Page 86 of 100  PageID #: 1528
Case 2:19-cv-02289-JVS-DFM  Document 69  Filed 09/30/19  Page 11 of 14  Page ID #:664

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | | Date | September 30, 2019 |

| | |
|---|---|
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |

The Union argues that Plaintiffs' claim for retrospective relief for fair share feels collected from O'Callaghan is barred because the Union acted in good faith reliance on state and federal precedent.

Plaintiffs argue that the Union is not entitled to a "good faith" defense to § 1983 liability. Dkt. No. 57, Opp'n at 7-17. Plaintiffs argue that the defense conflicts with the text of the statute, is incompatible with the statutory basis for qualified immunity, and is inconsistent with equitable principles that injured parties should be compensated for their losses. See id.

The Court agrees with the Union. The analysis in Hernandez v. AFSCME California, 386 F. Supp. 3d 1300, 1304 (E.D. Cal. 2019) is directly on point:

The Ninth Circuit has held that private parties may be entitled to a good-faith defense to a claim under Section 1983 where they "did [their] best follow the law and had no reason to suspect that there would be a constitutional challenge to [their] actions." See Clement v. City of Glendale, 518 F.3d 1090, 1097 (9th Cir. 2008). In the agency fees context, not only did unions have authorization under state statute, but the practice of collecting agency fees in this manner had been upheld for decades as constitutional by the United States Supreme Court. See Abood [v. Detroit Bd. of Educ.], 431 U.S. [209,] 222-23, 97 S.Ct. 1782, 52 L.Ed.2d 261 [ (1977) ]; see also Locke v. Karass, 555 U.S. 207, 213, 129 S.Ct. 798, 172 L.Ed.2d 552 (2009) (describing Abood's rule, as reaffirmed in subsequent cases, as "a general First Amendment principle"). Thus, the union is entitled to the good-faith defense as a matter of law. See Lusnak v. Bank of Am., N.A., 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) (observing that affirmative defenses may be raised on a motion to dismiss where they do not implicate disputed issues of fact).

Faced with this good-faith defense, plaintiffs seek to avoid it by characterizing their demand for a refund as an equitable claim for restitution rather than a legal claim for damages. (See SAC ¶ 141.) They argue that defenses like qualified immunity and good faith are categorically inapplicable to claims for equitable relief. See Wood v. Strickland, 420 U.S. 308, 314 n.6, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ("[I]mmunity from damages does not ordinarily

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
|---|---|---|---|

| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |
|---|---|

bar equitable relief."). Even if this distinction is well taken, plaintiffs' refund claim fails for two independent reasons.

First, plaintiffs cannot simply plead around defenses by labeling the proposed remedy as equitable rather than legal. Instead, this court must look to "the substance of the remedy sought rather than the label placed on that remedy." Depot, Inc. v. Caring for Montanans, Inc., 915 F.3d 643, 661 (9th Cir. 2019) (citations and quotations omitted). It is uncontroverted that plaintiffs' claim seeks payment out of the general assets of the union defendants. And the Supreme Court has stressed that recovering money out of a defendant's general assets, as opposed to a segregated fund, "is a legal remedy, not an equitable one." Montanile v. Bd. of Tr. of Nat. Elevator Indus. Health Benefit Plan, —— U.S. ——, 136 S. Ct. 651, 658, 193 L. Ed. 2d 556 (2016) (emphasis in original); see also Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212-14, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002) (same).

Plaintiffs do not allege that the union defendants intentionally comingled agency fees with general funds to avoid claims for restitution. Further, unions dissipated any agency fees on nontraceable items. See Montanile, 136 S. Ct. at 658 (stating that expenditure on nontraceable items "destroys an equitable lien"). Plaintiffs' theory under Janus depends on the fact that the fees and dues collected were expended for expressive activities with which they disagreed. See Babb v. Cal.Teachers Ass'n, No. 2:18-cv-06793 JLS DFM, 378 F. Supp. 3d 857, 876, 2019 WL 2022222, at *8 (C.D. Cal. May 8, 2019) ("[I]t is not the case that the agency fees remain in a vault, to be returned like a seized automobile."). Accordingly, because plaintiffs' proposed remedy is legal in nature, the union defendants' good faith bars relief.

Second, the court would reach the same conclusion in a suit in equity. "The essence of equity jurisdiction" is that federal courts have the flexibility "to mould each decree to the necessities of the particular case." Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Even in constitutional adjudication, "equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (plurality). Given these considerations, "[i]t is well

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-2289 JVS (DFMx) | | Date | September 30, 2019 |
|---|---|---|---|---|

| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |
|---|---|

established that reliance interests weigh heavily in the shaping of an appropriate equitable remedy." Id. at 203, 93 S.Ct. 1463.

The reliance interests here are quite compelling. The union defendants relied on Supreme Court precedent and a state statute that explicitly authorized the challenged practice. See id. at 209, 93 S. Ct. 1463 ("[S]tate officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful."). Unions throughout the country collected billions of dollars under Abood's rule. See Janus, 138 S. Ct. at 2486. Allowing the recoupment of such a large sum of money would have potentially disruptive consequences that could threaten the operations of unions and significantly deplete their treasuries. See Am. Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 182-83, 110 S. Ct. 2323, 110 L. Ed. 2d 148 (1990) (plurality) (recognizing these as cognizable equitable interests).

Moreover, these plaintiffs presumably received some benefits from the fees they paid, through the representation provided by the unions. While the Supreme Court held in Janus that those benefits could not withstand First Amendment scrutiny, the majority did not deny the fact that nonunion members received such benefits. See 138 S. Ct. at 2466-69. It must also be observed here that "plaintiffs do not propose to give back the benefits that the union's efforts bestowed on them." Gilpin v. AFSCME, 875 F.2d 1310, 1316 (7th Cir. 1989). Consequently, granting plaintiffs a full refund would stand the equitable remedy on its head. See id. Based on these observations, it would be neither fair nor workable to entertain plaintiff' claim.

Nevertheless, plaintiffs argue that a defendant is never allowed to enrich itself by keeping property it took in violation of another's constitutional rights. See, e.g., United States v. Windsor, 570 U.S. 744, 775, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) (ordering the United States to refund taxes it collected in reliance on the Defense of Marriage Act); United States v. Lewis, 478 F.2d 835, 836 (5th Cir. 1973) (stating that fines collected under a statute that is subsequently determined to be unconstitutional must be repaid when suit is brought to recover them). Those cases, however, do not stand for such a sweeping proposition. Unlike in Windsor and Lewis, the union defendants are private parties who were not responsible for passing the legislation that is now unconstitutional. Instead, they relied on the type

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
|---|---|---|---|

| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. |
|---|---|

of statute the Supreme Court explicitly approved of in <u>Abood</u>.

<u>Id.</u> at 1304-06. This foregoing analysis applies just as forcefully to Plaintiffs' claims for refunds here, which are, in essence, identical.

Accordingly, the Court finds that the Union is entitled to the "good faith" defense, and Plaintiffs' claims against the Union are dismissed.

**2. Exclusive Representation**

The Court's reasoning regarding <u>Knight</u> and <u>Mentele</u> as they relate to Becerra's motion to dismiss is also applicable to the Union's motion.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |

# EXHIBIT "J"

Case 2:18-cv-03439-NGG-RLM   Document 63   Filed 12/17/19   Page 91 of 100 PageID #: 1133

Allen v. Santa Clara County Correctional Peace Officers..., 400 F.Supp.3d 998...

2019 WL 4302744

KeyCite Blue Flag – Appeal Notification

Appeal Filed by SEAN ALLEN, ET AL v. SANTA CLARA COUNTY
CORRECTIONA, ET AL, 9th Cir., November 1, 2019

400 F.Supp.3d 998
United States District Court, E.D. California.

Sean ALLEN, et al., Plaintiffs,

v.

SANTA CLARA COUNTY CORRECTIONAL PEACE
OFFICERS ASSOCIATION, et al., Defendants.

No. 2:18-cv-02230-MCE-CKD
|
Signed 09/10/2019
|
Filed 09/11/2019

**Synopsis**

**Background:** Public employee brought putative class action
on behalf of himself and former and current public employees
against union under § 1983, alleging that union involuntarily
collected fees from public employees to pay for collective
bargaining activities in violation of the First Amendment, and
that plaintiff's constitutional rights were further violated when
union deducted membership dues from two of his paychecks
after Supreme Court released decision holding that First
Amendment prohibited the collection of agency fees from
nonconsenting public employees. Union moved to dismiss.

**[Holding:]** The District Court, Morrison C. England, J., held
that union was entitled to good-faith defense to plaintiff's
claim.

Motion granted.

West Headnotes (15)

**[1]**  **Federal Courts**
          🔑 Limited jurisdiction;  jurisdiction as
          dependent on constitution or statutes

        **Federal Courts**
          🔑 Presumptions and burden of proof

Federal courts are courts of limited jurisdiction,
and are presumptively without jurisdiction over
civil actions; burden of establishing the contrary
rests upon the party asserting jurisdiction.

**[2]**  **Federal Courts**
          🔑 Waiver, estoppel, and consent

Because subject matter jurisdiction involves a
court's power to hear a case, it can never be
forfeited or waived.

**[3]**  **Federal Courts**
          🔑 Timeliness issues

        **Federal Courts**
          🔑 Pleadings and motions

Lack of subject matter jurisdiction may be raised
by either party at any point during the litigation,
through a motion to dismiss. Fed. R. Civ. P. 12(b)
(1).

**[4]**  **Federal Courts**
          🔑 Necessity of Objection;  Power and Duty of
          Court

        **Federal Courts**
          🔑 Sua sponte determination

Lack of subject matter jurisdiction may be raised
by the district court sua sponte; indeed, courts
have an independent obligation to determine
whether subject matter jurisdiction exists, even
in the absence of a challenge from any party. Fed.
R. Civ. P. 12(b)(1).

**[5]**  **Federal Courts**
          🔑 Pleadings and motions

        **Federal Courts**
          🔑 Evidence;  Affidavits

There are two types of motions to dismiss for
lack of subject matter jurisdiction: a facial attack,
and a factual attack; thus, a party may either
make an attack on the allegations of jurisdiction
contained in the nonmoving party's complaint,
or may challenge the existence of subject matter

Case 2:18-cv-03439-NGG-RLM  Document 63  Filed 12/17/19  Page 92 of 100 PageID #: 1134

Allen v. Santa Clara County Correctional Peace Officers..., 400 F.Supp.3d 998...

2019 WL 4302744

jurisdiction in fact, despite the formal sufficiency of the pleadings. Fed. R. Civ. P. 12(b)(1).

**[6]  Federal Courts**
   🔑 Pleadings and motions

When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges subject matter jurisdiction based solely on the pleadings. Fed. R. Civ. P. 12(b)(1).

**[7]  Federal Courts**
   🔑 Pleadings and motions

If the motion to dismiss constitutes a facial attack on subject matter jurisdiction, the court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

**[8]  Federal Courts**
   🔑 Pleadings and motions

In the case of a facial attack on subject matter jurisdiction, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. Fed. R. Civ. 12(b)(1).

**[9]  Federal Civil Procedure**
   🔑 Motion

**Federal Courts**
   🔑 Evidence;  Affidavits

In the case of a factual attack on subject matter jurisdiction, district courts may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(b)(1).

**[10]  Federal Courts**
   🔑 Presumptions and burden of proof

In the case of a factual attack on subject matter jurisdiction, no presumptive truthfulness

attaches to plaintiff's allegations. Fed. R. Civ. P. 12(b)(1).

**[11]  Federal Courts**
   🔑 Presumptions and burden of proof

The party opposing the motion to dismiss for lack of subject matter jurisdiction has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. Fed. R. Civ. P. 12(b)(1).

**[12]  Federal Courts**
   🔑 Presumptions and burden of proof

If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner on motion to dismiss for lack of subject matter jurisdiction, the plaintiff cannot rest on the mere assertion that factual issues may exist. Fed. R. Civ. P. 12(b)(1).

**[13]  Federal Courts**
   🔑 Evidence;  Affidavits

On motion to dismiss for lack of subject matter jurisdiction, the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. Fed. R. Civ. P. 12(b)(1).

**[14]  Federal Civil Procedure**
   🔑 Amendments

Leave to amend should be freely given where there is no undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. Fed. R. Civ. P. 15(a).

**[15]  Civil Rights**
   🔑 Privilege or Immunity;  Good Faith and Probable Cause

Case 2:18-cv-03439-NGG-RLM   Document 63   Filed 12/17/19   Page 93 of 100 PageID #: 1135

Allen v. Santa Clara County Correctional Peace Officers..., 400 F.Supp.3d 998...

2019 WL 4302744

Union was entitled to good-faith defense to public employees' § 1983 claim, seeking to recover "fair share" fees that were allegedly involuntarily collected to pay for collective bargaining activities in violation of the First Amendment; not only did union have authorization to collect fees under state statute, but the practice of collecting agency fees in such manner had been upheld for decades as constitutional by the United States Supreme Court. U.S. Const. Amend. 1.

1 Cases that cite this headnote

**Attorneys and Law Firms**

*1000 Bradley A. Benbrook, Benbrook Law Group, Sacramento, CA, Jonathan F. Mitchell, PHV, Mitchell Law, PLLC, Austin, TX, Talcott J. Franklin, PHV, Talcott Franklin P.C., Dallas, TX, for Plaintiffs.

Isaac Sean Stevens, Mastagni Holstedt, APC, Anthony Paul O'Brien, Attorney General's Office for the State of California Department of Justice, Sacramento, CA, Nancy J. Clark, Office of the County Counsel, San Jose, CA, for Defendants.

**ORDER**

MORRISON C. ENGLAND, JR., UNITED STATES DISTRICT JUDGE.

**1 Through the present class action, Plaintiffs Sean Allen, Stanley Graham, Bradley Taylor, Juanita Wiggins, James Kirkland, Eric Liddle, and Antonio Richardson (collectively "Plaintiffs") seek to recover so-called "fair share" fees on behalf of themselves and on behalf of a putative class of all former and current public employees represented by Defendant Santa Clara County Correctional Peace Officers Association ("SCCCPOA" or the "Union"). According to Plaintiffs, those fees were involuntarily collected under Janus v. AFSCME Council 31, ––– U.S. ––––, 138 S. Ct. 2448, 201 L.Ed.2d 924 (2018) to pay for collective bargaining activities in violation of the First Amendment of the United States Constitution. In addition, Plaintiff Allen contends his constitutional rights were further violated when, post-Janus, the Union deducted membership dues from two of his paychecks. Finally, Plaintiffs contend that

California's exclusive representation laws further violate their constitutional rights. [1] Presently before the Court are Defendants' two Motions to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), [2] which, for the following reasons, are GRANTED. [3] ECF Nos. 32, 38.

**STANDARDS**

**A. Rule 12(b)(1)**

[1] [2] [3] [4] Federal courts are courts of limited jurisdiction, and are presumptively *1001 without jurisdiction over civil actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. Id. Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived. United States v. Cotton, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Rule 12(b)(1). Arbaugh v. Y & H Corp., 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009). Lack of subject matter jurisdiction may also be raised by the district court sua sponte. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Indeed, "courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." Id.; see Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

**2 [5] There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack, and a factual attack. Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Thus, a party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings. Id.

[6] [7] [8] [9] When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the motion to dismiss constitutes a

Case 2:18-cv-03439-NGG-RLM  Document 63  Filed 12/17/19  Page 94 of 100 PageID #: 1136

Allen v. Santa Clara County Correctional Peace Officers..., 400 F.Supp.3d 998...

2019 WL 4302744

facial attack, the Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). In the case of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. Id. However, in the case of a factual attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039.

[10] [11] [12] [13] In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations." Thornhill, 594 F.2d at 733 (internal citation omitted). The party opposing the motion has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist. Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)). Furthermore, the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Thornhill, 594 F.2d at 733. If the nonmoving party fails to meet its burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

*1002 B. Rule 12(b)(6)

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

**3 Furthermore, "Rule 8(a)(2)...requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3, 127 S.Ct. 1955 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955. If the "plaintiffs...have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " Id. at 556, 127 S.Ct. 1955 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

C. Leave to Amend

[14] A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment...." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party...carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave

Case 2:18-cv-03439-NGG-RLM   Document 63   Filed 12/17/19   Page 95 of 100 PageID #: 1137

Allen v. Santa Clara County Correctional Peace Officers..., 400 F.Supp.3d 998...

2019 WL 4302744

to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing **1003 In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint...constitutes an exercise in futility....").

## ANALYSIS

[15] Plaintiffs' first cause of action for refund of unconstitutionally compelled payments fails because Defendants are entitled to a good faith defense. See Hernandez v. AFSCME California, 386 F. Supp. 3d 1300, 1304 (E.D. Cal. 2019). The thoughtful analysis in Hernandez is directly on point:

The Ninth Circuit has held that private parties may be entitled to a good-faith defense to a claim under Section 1983 where they "did [their] best follow the law and had no reason to suspect that there would be a constitutional challenge to [their] actions." See Clement v. City of Glendale, 518 F.3d 1090, 1097 (9th Cir. 2008). In the agency fees context, not only did unions have authorization under state statute, but the practice of collecting agency fees in this manner had been upheld for decades as constitutional by the United States Supreme Court. See Abood [v. Detroit Bd. of Educ.], 431 U.S. [209,] 222-23, 97 S.Ct. 1782, 52 L.Ed.2d 261 [ (1977) ]; see also Locke v. Karass, 555 U.S. 207, 213, 129 S.Ct. 798, 172 L.Ed.2d 552 (2009) (describing Abood's rule, as reaffirmed in subsequent cases, as "a general First Amendment principle"). Thus, the union is entitled to the good-faith defense as a matter of law. See Lusnak v. Bank of Am., N.A., 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) (observing that affirmative defenses may be raised on a motion to dismiss where they do not implicate disputed issues of fact).

Faced with this good-faith defense, plaintiffs seek to avoid it by characterizing their demand for a refund as an equitable claim for restitution rather than a legal claim for damages. (See SAC ¶ 141.) They argue that defenses like qualified immunity and good faith are categorically inapplicable to claims for equitable relief. See Wood v. Strickland, 420 U.S. 308, 314 n.6, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d

396 (1982) ("[I]mmunity from damages does not ordinarily bar equitable relief."). Even if this distinction is well taken, plaintiffs' refund claim fails for two independent reasons.

**4 First, plaintiffs cannot simply plead around defenses by labeling the proposed remedy as equitable rather than legal. Instead, this court must look to "the substance of the remedy sought rather than the label placed on that remedy." Depot, Inc. v. Caring for Montanans, Inc., 915 F.3d 643, 661 (9th Cir. 2019) (citations and quotations omitted). It is uncontroverted that plaintiffs' claim seeks payment out of the general assets of the union defendants. And the Supreme Court has stressed that recovering money out of a defendant's general assets, as opposed to a segregated fund, "is a legal remedy, not an equitable one." Montanile v. Bd. of Tr. of Nat. Elevator Indus. Health Benefit Plan, ―― U.S. ――, 136 S. Ct. 651, 193 L. Ed. 2d 556 (2016) (emphasis in original); see also Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212-14, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002) (same).

Plaintiffs do not allege that the union defendants intentionally comingled agency fees with general funds to avoid claims for restitution. Further, unions dissipated any agency fees on nontraceable items. See Montanile, 136 S. Ct. at 658 (stating that expenditure on nontraceable items "destroys an equitable **1004 lien"). Plaintiffs' theory under Janus depends on the fact that the fees and dues collected were expended for expressive activities with which they disagreed. See Babb v. Cal.Teachers Ass'n, No. 2:18-cv-06793 JLS DFM, 378 F. Supp. 3d 857, 876, 2019 WL 2022222, at *8 (C.D. Cal. May 8, 2019) ("[I]t is not the case that the agency fees remain in a vault, to be returned like a seized automobile."). Accordingly, because plaintiffs' proposed remedy is legal in nature, the union defendants' good faith bars relief.

Second, the court would reach the same conclusion in a suit in equity. "The essence of equity jurisdiction" is that federal courts have the flexibility "to mould each decree to the necessities of the particular case." Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Even in constitutional adjudication, "equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (plurality). Given these considerations, "[i]t is well established that reliance interests weigh heavily in the shaping of an appropriate equitable remedy." Id. at 203, 93 S.Ct. 1463.

Case 2:18-cv-03439-NGG-RLM Document 63 Filed 12/17/19 Page 96 of 100 PageID #: 1138
Allen v. Santa Clara County Correctional Peace Officers..., 400 F.Supp.3d 998...

2019 WL 4302744

The reliance interests here are quite compelling. The union defendants relied on Supreme Court precedent and a state statute that explicitly authorized the challenged practice. See id. at 209, 93 S. Ct. 1463 ("[S]tate officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful."). Unions throughout the country collected billions of dollars under Abood's rule. See Janus, 138 S. Ct. at 2486. Allowing the recoupment of such a large sum of money would have potentially disruptive consequences that could threaten the operations of unions and significantly deplete their treasuries. See Am. Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 182-83, 110 S. Ct. 2323, 110 L. Ed. 2d 148 (1990) (plurality) (recognizing these as cognizable equitable interests).

Moreover, these plaintiffs presumably received some benefits from the fees they paid, through the representation provided by the unions. While the Supreme Court held in Janus that those benefits could not withstand First Amendment scrutiny, the majority did not deny the fact that nonunion members received such benefits. See 138 S. Ct. at 2466-69. It must also be observed here that "plaintiffs do not propose to give back the benefits that the union's efforts bestowed on them." Gilpin v. AFSCME, 875 F.2d 1310, 1316 (7th Cir. 1989). Consequently, granting plaintiffs a full refund would stand the equitable remedy on its head. See id. Based on these observations, it would be neither fair nor workable to entertain plaintiffs' claim.

**5 Nevertheless, plaintiffs argue that a defendant is never allowed to enrich itself by keeping property it took in violation of another's constitutional rights. See, e.g., United States v. Windsor, 570 U.S. 744, 775, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) (ordering the United States to refund taxes it collected in reliance on the Defense of Marriage Act); United States v. Lewis, 478 F.2d 835, 836 (5th Cir. 1973) (stating that fines collected under a statute that is subsequently determined to be unconstitutional must be repaid when suit is brought to recover them). Those cases, however, do not stand for such a sweeping proposition. Unlike in Windsor and Lewis, the union defendants are private parties who were not responsible for passing the legislation that is now unconstitutional. Instead, they relied on the type of statute *1005 the Supreme Court explicitly approved of in Abood.

Id. at 1304-06. This foregoing analysis applies just as forcefully to Plaintiffs' claims for refunds here, which are materially identical. Accordingly, Plaintiffs' claims are likewise DISMISSED.

Nor is Plaintiff Allen entitled to relief on the second cause of action for violation of California Government Code § 1157.12(b). According to the First Amended Complaint ("FAC"), "[a]fter Janus, the union violated Mr. Allen's constitutional rights by taking membership dues from his paycheck even though the union knew full well that Mr. Allen was not a member of the union." FAC, ¶ 55. After being informed that it should cease withholding fees from Mr. Allen's paycheck, the union purportedly withdrew dues from two of his paychecks before it rectified the situation and refunded those moneys. Id., ¶ 26. It is unclear to the Court how the union's de minimis deduction and return of funds from two paychecks—funds that were apparently not expended toward the union's collective bargaining purposes in any event—give rise to a constitutional violation. Regardless, those funds were returned, and Mr. Allen's claim is thus moot. [4]

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 32, 38) are GRANTED with leave to amend. [5] Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiffs may (but are not required to) file an amended complaint. If no amended complaint is timely filed, this action will be deemed dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

### All Citations

400 F.Supp.3d 998, 2019 WL 4302744

Footnotes

1    Plaintiffs concede this final claim should be dismissed. Accordingly, Defendant's Motion is GRANTED as to this cause of action.

2    All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

3   Given this Court's disproportionately high case load, and in the interest of conserving judicial resources and expediting a decision in this case, the Court will not recount details with which the parties are intimately familiar. To be clear, the Court has considered all evidence and arguments in the record, but it limits its written decision to only that which is necessary to resolve the parties' instant arguments.

4   Mr. Allen's general challenge to § 1157.12(b) as unconstitutional on its face likewise fails because he is no longer a union member and there is no indication in the complaint that he ever intends to resume any union-related deductions. Accordingly, he lacks standing to challenge a statute where there is no apparent risk it will be enforced against him. Even if that was not the case, however, Plaintiff has failed to identify any constitutional provision actually violated by this statute.

5   Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "K"

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.3.1
### Eastern Division

Benito Casanova

                       Plaintiff,

v.                                    Case No.: 1:19–cv–00428

                                    Honorable Sharon Johnson Coleman

International Association of Machinists, Local 701

                       Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, September 11, 2019:

      MINUTE entry before the Honorable Sharon Johnson Coleman: Before the Court is defendant International Association of Machinists Local 701's motion to dismiss [12]. Plaintiff alleges Local 701 is liable under Section 1983 for the fair–share fees collected by the union prior to the Supreme Court's decision in Janus v. AFSCME Council 31, 138 S.Ct. 2448, 201 L.Ed.2d 924 (2018). Local 701 asserts that before the decision the collection of such fees was authorized by Illinois state law and existing Supreme Court precedent pursuant to Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). As such, Local 701 contends that the good–faith defense to Section 1983 liability disposes of the claim as a matter of law. Every court that has considered this issue has uniformly held that a plaintiff cannot collect damages for fair–share fees collected by a union before the change in Supreme Court precedent where a defendant establishes good–faith reliance as a matter of law. See, e.g., Janus v. AFSCME Council 31, No. 15 C 1235, 2019 WL 1239780 (N.D. Ill. Mar. 18, 2019) (Gettleman, J.); Danielson v. AFSCME Council 28, 340 F. Supp. 3d 1083 (W.D. Wash. 2018); Lee v. Ohio Educ. Ass'n, 366 F. Supp. 3d 980 (N.D. Ohio 2019). Casanova, however, did not address the cases that had been decided by the date he filed his opposition brief nor did he seek leave of Court to respond to any of the various notices of supplemental authority that Local 701 filed with the Court. The Court finds these cases, which include many decided at the motion to dismiss juncture, factually indistinguishable and persuasive. Casanova alleges Local 701 collected fees in accordance with Illinois's laws. Casanova further alleges Local 701 ceased collecting the fees once the Supreme Court decided Janus. Thus, the Court agrees that Local 701 satisfied the good–faith defense and declines to open discovery into the matter. The Court grants Local 701's motion [12] and dismisses Casanova's complaint with prejudice. Civil case terminated. Mailed notice. (ym, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.